## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

### Eastern Division

PENNYMAC LOAN SERVICES,
LLC,

     Plaintiff,

vs.                             Civil Action No.  2:19-cv-193-KS-MTP

SITCOMM ARBITRATION
ASSOCIATION, MARK MOFFETT,
SANDRA GOULETTE, RONNIE
KAHAPEA, MARK JOHNSON,
KIRK GIBBS, and ALARIC SCOTT,

     Defendants.

---

## COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF, LIBEL, TORTIOUS INTERFERENCE WITH CONTRACT, CIVIL CONSPIRACY, VIOLATION OF FEDERAL CIVIL RICO 18 U.S.C. § 1962(c), CONSPIRACY TO VIOLATE FEDERAL CIVIL RICO 18 U.S.C. § 1962(d), AND TO VACATE ARBITRATION AWARD

Plaintiff PennyMac Loan Services, LLC ("Plaintiff"), by and through its undersigned counsel, hereby files this Complaint for Declaratory Judgment, Injunctive Relief, Libel, Tortious Interference with Contract, Civil Conspiracy, Violation of Federal Civil RICO 18 U.S.C. §1962(c), Conspiracy to Violate Federal Civil RICO 18 U.S.C. 1962(d), and to Vacate Arbitration Award, as follows:

136044.01923/122274307v.8

**INTRODUCTION**

1.      Defendant Sitcomm Arbitration Association ("Sitcomm") is an illegitimate arbitration company that markets itself as an arbitration association for the "economically challenged" that has reduced arbitration fees by "75% of their competitors [*sic*]," which, it claims, "is a sure indicator that [it] cannot be bought by the person with the larger wallet."[1]

2.      In reality, and as outlined by defendant Mark Moffett ("Moffett"), one of Sitcomm's purported arbitrators who is neither a retired judge nor an attorney, in his in-court testimony given under penalty of perjury in a separate case pending in the Eastern District of Mississippi, Sitcomm is a sham arbitration organization that uses the guise of legitimacy to market itself as an authorized and legitimate arbitration company to attract paying customers and collect fees.  After Sitcomm extracts an arbitration "fee" from these customers, Sitcomm then issues fake exorbitant final arbitration awards against various entities, despite no arbitration hearing having ever been held, no arbitration provision existing that permits the parties to arbitrate their claims, and without proper notice or an opportunity for any party to be heard.

3.      Its final arbitration awards consist of variations of a standard form that fail to reference any specific details of the case, basis for wrongdoing, or outline

---

[1] *See* https://saalimited.com/index.html (accessed Dec. 5, 2019).

136044.01923/122274307v.8

the claims asserted against the various respondents.  Instead, the Sitcomm

"arbitrator," after conducting an arbitration "hearing" during which neither party is

present, concludes that the parties somehow formed a contract via a conditional

acceptance, to which the respondents somehow acquiesced.

4.      Sitcomm then instructs its paying customers to attempt to enforce

Sitcomm's six and seven-figure arbitration awards by filing petitions to confirm

arbitration awards in various district courts throughout the United States, including

Mississippi, New Mexico, Virginia, Oklahoma, and Texas, oftentimes despite none

of the parties having any nexus to the selected venue.  Plaintiff has been the victim

of this scheme on at least two occasions and seeks to prevent Sitcomm and its

agents from continuing this illicit practice.

5.      Plaintiff is informed and believes that the scheme is promulgated by

an individual who goes by the username "EeoN" on YouTube.  In a YouTube

video[2] posted on December 4, 2019, EeoN references Sitcomm and attempts to

distinguish the acts of individual arbitrators, who he claims are independent

contractors of Sitcomm, from the acts of Sitcomm in conducting arbitrations for

the sole purpose of avoiding exposing Sitcomm to liability for allegations of

_____

[2] Accessible at
https://www.youtube.com/watch?v=Ulx35hO_fS0&feature=youtube.

136044.01923/122274307v.8

collusion or fraud against Sitcomm for these phantom "arbitrations" and fake "arbitration awards."

## PARTIES

6.     Plaintiff is a Delaware limited liability company with its principal place of business in California.

### Individuals Participating in Conspiracy/Fraud/Scheme

7.     Defendant Sitcomm is a trade name registered in the State of Wyoming to Innovated Holdings, Inc. ("Innovated").  Innovated is incorporated in the State of Wyoming and its principal address is located in the State of Nevada. Innovated can be served with process through its registered agent, Wyoming Registered Agent, 1621 Central Ave., Cheyenne, WY 82001, USA.  Upon information and belief, Sitcomm has had regular, continuous, and ongoing contacts with Mississippi through its actions on behalf of, and business relationships with, the other defendants.

8.     Plaintiff is informed and believes that Defendant Mark Moffett ("Moffett") is an adult resident citizen of the State of Mississippi, who has filed for bankruptcy protection at least three different times, most recently in January of 2019.  Plaintiff is further informed and believes that Moffett has been employed as an arbitrator with Sitcomm since in or about July 2019.  Upon further information and belief, Moffett only began working with Sitcomm after he assisted his sister,

Denise Brown[3], in a similar case against Ally Financial Incorporated ("Ally"). As is further detailed below, during a hearing on Brown's motion to affirm and Ally's motion to vacate the arbitration award in question, Moffett provided detailed testimony regarding Sitcomm's arbitration scheme.

9.      Plaintiff is informed and believes that Defendant Sandra Goulette ("Goulette") is an adult resident citizen of the State of Mississippi and is a director of Sitcomm. Upon further information and belief, Goulette moves around the country frequently, filed bankruptcy in 1994, and was arrested in Massachusetts in 1994. Plaintiff is further informed and believes that Goulette resides with Moffett and Denise Brown in Laurel, Mississippi.

10.     Plaintiff is informed and believes that Defendant Ronnie Kahapea ("Kahapea") is an adult resident citizen of the State of Hawaii. Plaintiff is informed and believes that Kahapea paid Sitcomm to "conduct" an arbitration and issue a multimillion dollar arbitration award that Kahapea has attempted to pass off as valid and legitimate by filing a Petition to Confirm Arbitration award in a United States District Court.

---

[3] On April 20, 2018, Denise Brown filed a Complaint against Ally Financial Incorporated ("Ally"), title *Brown v. Ally Financial Incorporated, et al.*, Case No. 2:18-cv-00070-KS-MTP alleging various causes of action including violation of the Fair Debt Collection Practices Act.

136044.01923/122274307v.8

11.    Plaintiff is informed and believes that Defendant Mark Johnson ("Johnson") is an adult resident citizen of the State of Virginia.  Plaintiff is informed and believes that Johnson paid Sitcomm to "conduct" an arbitration and issue a multimillion dollar arbitration award that Johnson has attempted to pass off as valid and legitimate by filing a Petition to Confirm Arbitration award in a United States District Court.

12.    Plaintiff is informed and believes that Defendant Kirk Gibbs ("Gibbs") is an adult resident citizen of the State of Georgia, who has also previously filed bankruptcy, and is an arbitrator with Sitcomm.

13.    Plaintiff is informed and believes that Defendant Alaric Scott ("Scott") is an adult resident citizen of the State of Nevada.  Plaintiff is further informed and believes that Alaric Scott is the president of Innovated.

## JURISDICTION AND VENUE

14.    The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, in that this is a civil action between citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

15.    The Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this is a civil action under 18 U.S.C. § 1961, *et seq.* (civil -RICO) and such claims are related to the same transactions or occurrences and implicate the same questions of fact and related questions of law.

136044.01923/122274307v.8

16.    The Court has personal jurisdiction over defendants Sitcomm, Moffett, Goulette, Kahapea, Johnson, Gibbs, and Scott (collectively, "Defendants") because they intentionally instituted and participated in the alleged arbitrations that purportedly occurred in Laurel, Mississippi and/or issued arbitration notices or awards from Mississippi as stated in the arbitration awards and therefore purposefully availed themselves to the privilege of conducting activities in this forum, and the claims arise out of or result from forum-related activities in Mississippi consistent with Mississippi's long-arm statute, Mississippi Code § 13-3-57.

17.    Venue is proper in this judicial district pursuant to 9 U.S.C. § 12 because one of the alleged arbitration awards at issue was made in Laurel, Mississippi and the other was mailed and issued from Mississippi.

## STATEMENT OF ALLEGED FACTS

18.    Plaintiff is a national mortgage lender that provides its customers with a range of innovative solutions to help them purchase, refinance, or remain in a home and/or acts as the servicer of mortgage loans.

## **THE STICOMM ARBITRATION SCHEME**

19.    Plaintiff is informed and believes, and on that basis alleges that Sitcomm's arbitrations are a sham that are actually part of a scheme designed to

obtain compensation from borrowers and solicit payments from Plaintiff and other

entities under the false premise of an enforceable "final arbitration award."

20.     Plaintiff is informed and believes, and on that basis alleges that the

Sitcomm fraud scheme operates as follows:

a. An individual consumer, usually a debtor, under guidance and instruction
   from Sitcomm, transmits a sequence of formal-looking documents
   ("Transmission") over interstate U.S. mail, UPS or Federal Express,
   which include various "conditional" acceptances and "tacit" agreements,
   demanding that a creditor "prove its claim" that the debtor owes it
   money.  These documents contain several "provisions" that state, if the
   creditor refuses to respond, or does not do so in accordance with the
   terms set forth in the document, a new contract will be created – one that
   includes an arbitration provision, a forfeiture of certain rights and allows
   the fraudster to obtain a judgment;

b. When the creditor does not respond to the Transmission, the debtor
   submits the matter to Sitcomm and pays Sitcomm a fee (usually around
   $500).  Thereafter, Sitcomm or an employee, director or "arbitrator"
   working with Sitcomm issues a "Notice of Arbitration" and sends it to a
   creditor company over interstate U.S. mail, UPS, or Federal Express.
   The Notice of Arbitration which provides a date and time for an
   arbitration, but no location for the arbitration, no basis for the arbitration,
   no claims under which the arbitration is brought, and no other basic
   information that would allow the creditor to respond.

c. After the date listed in the Notice of Arbitration has passed, Sitcomm or
   an employee, director or "arbitrator" working with Sitcomm issues a
   "Final Arbitration Award" which falsely implies that the all parties to the
   arbitration participated and presented evidence at an arbitration hearing
   and the "arbitrator" issued a final multimillion dollar award to the debtor.
   No arbitration is actually held and not even the debtor or the "arbitrator"
   participate.

d. The debtor, under guidance and instruction from Sitcomm, then files a
   petition to confirm the arbitration award in a United States District Court
   in an attempt to reduce the multimillion dollar award to an enforceable
   judgment.

136044.01923/122274307v.8

21.     Plaintiff is informed and believes, and on that basis alleges that
Sitcomm does not provide proper notice of the arbitrations to the respondents, does
not actually conduct arbitrations, does not hear testimony or evidence, and does not
evaluate claims of the claimants.  Moreover, Sitcomm "conducts" these
arbitrations in cases where there is no agreement to arbitrate between the parties.
Instead, Sitcomm sends false and vague notices of arbitration to respondents that
do not contain the actual location of the arbitration or the claims sought to be
arbitrated and "conducts" arbitrations with the expectation that no party will
appear, thereby clearing an unobstructed path for Sitcomm and its customers to
reduce fake arbitration awards to judgment before the creditor companies are able
to appear and oppose the petitions seeking to confirm the arbitration awards.  The
final arbitration awards contain numerous discrepancies and purport to award the
claimants hundreds of thousands or millions of dollars, without identifying any
specific wrongdoing or basis for the award.  As one court recently explained, the
"purported arbitration awards are unlike any other [the] court has ever seen."  *U.S.
Bank Nat'l Ass'n v. Nichols*, No. 19-CV-482-JED-FHM, 2019 WL 4276995, at *3
(N.D. Okla. Sept. 10, 2019)

22.     Reviewing similar Sitcomm awards, two federal district courts have
recently agreed that they are "a bizarre jumble of inconsistent, nonsensical word
salad" full of "legally bizarre determination[s] contrary to hornbook contract law."

136044.01923/122274307v.8

*Kalmowitz v. Fed. Home Mortgage Corp., et al.*, 2019 WL 6249298, at *1 (E.D.

Tex. Oct. 22, 2019) (quoting *Nichols*, 2019 WL 4276995, at *4), report and

recommendation adopted at 2019 WL 6249426 (E.D. Tex. Nov. 21, 2019).  The

Kahapea Arbitration Award and Johnson Arbitration Award (as defined below) are

no different.

23.     Plaintiff is informed and believes that the scheme is being perpetrated

throughout the country and unless immediate injunctive relief is provided to

prevent Sitcomm and its "arbitrators" from filing additional cases, it will continue

its deceptive and misleading tactics, resulting in unnecessary litigation throughout

the country.[4]

24.     During a November 19, 2019 hearing in *Brown v. Ally Financial*

*Incorporated, et al.*, Moffett testified to the following:

---

[4] As further evidence of the Sitcomm scheme, in addition to the Kahapea and
Johnson Arbitrations referenced specifically herein, Plaintiff is aware of at least
one other individual, Carl Bourgeois ("Bourgeois"), who may also be involved
with Sitcomm.  On or about July 1, 2019, Plaintiff received a notice of arbitration
hearing ("Bourgeois Notice") from Sitcomm by Priority U.S. Mail mailed from
Laurel, Mississippi.  The Bourgeois Notice purports to set an arbitration hearing
for July 9, 2019 and states that if a response is not received within ten days from
receipt of the notice, the "Arbitrator will presume your acceptance and may
proceed to review the supporting documentation electronically and issue a binding
decision." The Bourgeois Notice provides no notice as to what claims are to be
arbitrated, where the arbitration will be held or the basis for the parties arbitrating
their claims. While Plaintiff is unaware of any actions filed by Bourgeois to date, it
anticipates that one may be filed in the near future.

136044.01923/122274307v.8

a. He began working as an arbitrator with Sitcomm in July 2019 after being involved with his sister's case;

b. He first became aware of Sitcomm after following Eeon online and watching his videos;

c. Sitcomm awards are not valid in the United States and they say this in the documents.  Instead, they are issued as foreign judgments;

d. Awards are only valid after a court confirms them, and Sitcomm has had "quite a few" confirmed;

e. Individuals make payments to a PayPal account for one of Sitcomm's sister companies because PayPal froze Sitcomm's account; and

f. Some of Sitcomm's arbitrators were let go because they were not actually holding arbitration hearings for the matters they were involved in.

## KAHAPEA'S PARTICIPATION IN THE SCHEME

25.    On or about April 1, 2016, Kahapea and his wife, Sunshine Mahana Hatsuko Kahapea, obtained a loan ("Kahapea Loan") in the amount of $277,634.00 from Plaza Home Mortgage, Inc. ("Plaza").  The Kahapea Loan was secured by the real property located at 11-2808 Kaleponi Drive, Volcano, HI 96785 (the "Kahapea Property").

26.    On or about August 2, 2017, Plaintiff began servicing the Kahapea Loan and on or about August 4, 2017, Plaza sold the Kahapea Loan to Plaintiff.

27.    In March 2019, Kahapea sent PennyMac a "Conditional Acceptance for Value and Counter Offer" in which he states that he is conditionally accepting an unspecified offer under a list of terms and conditions.  On or about April 22, 2019, Kahapea sent Plaintiff a "Legal Notification – Notice of Fault Opportunity to

Care" in which he states that Plaintiff is "in fault of the agreement" and has consented to the "self-executing irrevocable durable power of attorney coupled with interest."

28.     In or about June 2019, Plaintiff is informed and believes that Kahapea instituted an illegitimate arbitration proceeding against Plaintiff and Plaza (the "Kahapea Arbitration"). On or about June 3, 2019, Plaintiff received a notice of arbitration hearing ("Kahapea Notice") from Sitcomm by Priority U.S. Mail mailed from Laurel, Mississippi. The Kahapea Notice states that if a response is not received within ten days from receipt of the notice, the "Arbitrator will presume your acceptance and may proceed to review the supporting documentation electronically and issue a binding decision." The Kahapea Notice purports to set an arbitration hearing for June 10, 2019 at 12:00 p.m. and states that if a response is not received within ten days from receipt of the notice, the "Arbitrator will presume your acceptance and may proceed to review the supporting documentation electronically and issue a binding decision." The Kahapea Notice does not provide a location for the arbitration hearing. Goulette electronically signed the Kahapea Notice. The Kahapea Notice does not indicate the nature of Kahapea's grievances or reference any claims asserted against Plaintiff. A copy of the Kahapea Notice is attached hereto as Exhibit A.

136044.01923/122274307v.8

29.     Plaintiff did not respond to the Kahapea Notice because it was clearly illegitimate in that Sitcomm, the entity issuing the Kahapea Notice, is not a recognized arbitration program.  According to Sitcomm's website, it represents distressed borrowers in debt relief matters and does not conduct legitimate arbitrations.  Plaintiff in no way waived any rights by declining to respond to the Kahapea Notice.

30.     On June 10, 2019, Moffett and Goulette issued an arbitration award (the "Kahapea Arbitration Award") at Laurel, Mississippi against Plaintiff and Plaza which purports to award Kahapea $600,000 for "breach of the contractual agreement of the parties" and $1,200,000 "as punitive damages under the treble damages provision of the agreement for their admitted deceptive and fraudulent business practices inherent in the loan and foreclosure racket and their breach of terms agreed upon."  Pursuant to the Kahapea Arbitration Award, Sitcomm acted as the arbitration organization, Moffett presided as the arbitrator, and Goulette acted as a Sitcomm committee member.  A copy of the Kahapea Arbitration Award is attached as Exhibit B.

31.     The Kahapea Arbitration Award falsely implies that Plaintiff participated in the Kahapea Arbitration and presented evidence in that it states that:

    a.  "The parties have agreed that a judgment of the court shall be entered," p. 2;

b. The parties "Have entered into an agreement whereby they knowingly and intentionally agreed to the following ' … Failure or refusal to respond and provide the requested and necessary Proof of Claims shall be held and noted as agreed to by all parties…'," p. 3;

c. "Respondent(s) NOT ONLY expressly affirm the truth and validity of said facts set," p. 3;

d. "The above-captioned matter was set for arbitration after the receipt of the application and dispute resolution complaint on May 23, 2019," p. 3; and

e. "The parties stipulated and agreed that the related matters including any judgment associated thereto, any claims, and any collateral attacks by the Respondent(s) are null and void," p. 4, among others.

32.    Plaintiff in no way agreed to, participated in, affirmed the truth or validity of, or stipulated to the Kahapea Arbitration.

33.    On or about November 30, 2019, Kahapea sent Plaintiff an invoice dated August 16, 2019 in the amount of $941,013.60, consisting of $900,000 due for breach of contract, $500 for failure to credit account, and $3,840 for fraud and harassment.   Plaintiff in no way agreed to or participated in the August 16, 2019 "arbitration" referenced in the August 16, 2019 invoice:

136044.01923/122274307v.8

NOTICE · An arbitration award has been entered against your organization

**INVOICE**

Invoice number: 001
Invoice Date: AUGUST 18, 2019
Due Date: SEPTEMBER 17, 2019

**BILL FROM**
Ronnie L. M. Kahapea
11-2808 Kaleponi Rd.
P.O. Box 875 Volcano, Hawaii 96785
(808) 936-9137

**BILL TO**
PENNYMAC LOAN SERVICES, LLC
P.O. Box 30597
Los Angeles, California 90030

PENNYMAC LOAN SERVICES, LLC, et al ARE LIABLE TO Ronnie Louis Marvel Kahapea, et al, FOR THE AMOUNT INDICATED ON THE AWARD. PLEASE KNOW THAT THIS IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. PLEASE CONSIDER THE FOLLOWING CAREFULLY, AS YOU MAY WISH TO CONSULT WITH AN ATTORNEY FOR ADVICE ON HOW TO PROCEED. We are willing to accept certified letters of credit, however, notification of such a payment must accompany the payment, and is subject to approval/denial and/or penalty fees.

Account number - SEQ30P-53719IUXZA95-PMKL1©

| ID | ACCOUNT NUMBER = SEQ30P-53719IUXZA95-PMKL1© | QTY | PRICE | TOTAL |
|----|------------------------|-----|-------|-------|
| 01 | BREACH OF AGREEMENT | 1 | $900,000.00 | $900,000.00 |
| 02 | FAILURE to CREDIT ACCOUNT | 1 | $500.00 | $500.00 |
| 03 | FRAUD and HARRASSMENT | 16 | $240.00 | $3,840.00 |
| | | | | |
| | | | Sub Total | $904,340.00 |
| | | | Sales tax (4%) | $36,173.60 |
| | | | Shipping & Handling | $500.00 |
| | | | TOTAL | $941,013.60 |

34.    Plaintiff was not given proper notice of the claims asserted against it in the Kahapea Arbitration and did not receive an opportunity to be heard.

35.    On November 18, 2019, Kahapea initiated an action against Plaintiff and Plaza in the United States District Court, District of New Mexico by filing a "Motion" to confirm the Kahapea Arbitration Award. *Kahapea v. PennyMac Loan Services, LLC et al.,* Case No. 1:19-mc-00028-MV.[5]

---

[5] Simultaneously with the filing of this Complaint, Plaintiff has filed a motion to dismiss the New Mexico action for lack of personal jurisdiction, improper service and improper venue, and will seek to transfer the action to this Court.

136044.01923/122274307v.8

## JOHNSON'S PARTICIPATION IN THE SCHEME

36.     On or about June 12, 2015, Johnson obtained a loan ("Johnson Loan")

in the amount of $272,000 from Alcova Mortgage, LLC.  The Johnson Loan was

secured by the real property located at 451 May Lane, Louisa, VA 23093 (the

"Virginia Property").  PennyMac currently services the Johnson Loan.

37.     On or about December 20, 2018, Johnson sent PennyMac a

handwritten note, written on Johnson's monthly mortgage statement dated

September 13, 2018, explaining that he is "changing the terms of this contract for

legal reasons" and further explained that he "will address the particulars in detail at

a later date."  On or about July 5, 2019, Johnson sent PennyMac a "Conditional

Acceptance for Value and Counter Offer" on a form substantially similar to the one

use by Kahapea.  The form also states that Johnson is conditionally accepting an

unspecified offer under a list of terms and conditions.

38.     Plaintiff is informed and believes that in or about October 2019,

Johnson instituted an illegitimate arbitration proceeding against Plaintiff (the

"Johnson Arbitration").  On or about October 10, 2019, Plaintiff received a notice

of arbitration hearing ("Johnson Notice") from Sitcomm by Priority U.S. Mail

mailed from Laurel, Mississippi.  The Johnson Notice purports to set an arbitration

hearing for October 21, 2019 and states that if a response is not received within ten

days from receipt of the notice, the "Arbitrator will presume your acceptance and

136044.01923/122274307v.8

may proceed to review the supporting documentation electronically and issue a

binding decision." The Johnson Notice does not provide a location for the

arbitration hearing. Gibbs electronically signed the Johnson Notice. The Johnson

Notice does not indicate the nature of Johnson's grievances or reference any claims

asserted against Plaintiff. A copy of the Johnson Notice is attached hereto as

Exhibit C.

39.     Again, Plaintiff did not respond to the Johnson Notice because it was

clearly illegitimate in that Sitcomm, the entity issuing the Johnson Notice, is not a

recognized arbitration program. According to Sitcomm's website, it represents

distressed borrowers in debt relief matters and does not conduct legitimate

arbitrations. Plaintiff in no way waived any rights by declining to respond to the

Johnson Notice.

40.     On October 21, 2019, Gibbs and Goulette issued an arbitration award

(the "Johnson Arbitration Award") at Lilburn, Georgia against Plaintiff which

purports to award Johnson $2,250,000 "as stipulated according to the terms of the

contractual agreement as agreed to by the parties." Pursuant to the Johnson

Arbitration Award, Sitcomm acted as the arbitration organization, Gibbs presided

as the arbitrator, and Goulette acted as a Sitcomm committee member. A copy of

the Johnson Arbitration Award is attached as Exhibit D.

136044.01923/122274307v.8

41.     On or about November 12, 2019, Plaintiff received a copy of the

Johnson Arbitration Award.  The Johnson Arbitration Award was mailed by

Sitcomm through the United States Postal Service from Laurel, Mississippi.

42.     The Johnson Arbitration Award falsely implies that Plaintiff

participated in the Johnson Arbitration and presented evidence in that it states that:

a.   "The parties have agreed that a judgment of the court shall be entered," p.
     1;

b.   "An arbitration hearing was held on Date at which time the Arbitrator
     reviewed all contractual agreements and documentary evidence submitted
     by the parties in this matter" p. 3;

c.   "The Arbitrator fully considered . . . all the evidence," p. 3;

d.   "[A]fter careful consideration of the evidence presented, this Arbitrators
     finds as follows . . .The arbitration hearing was held on October 21,
     2019," p. 4; and

e.   "[T]his Arbitrator finds that the amount stipulated to be paid to the
     Claimant is $2,250,000.00," p. 5, among others.

43.     Plaintiff in no way agreed to, attended, presented evidence at, or

stipulated to the Johnson Arbitration.

44.     Plaintiff was not given proper notice of the claims asserted against it

in the Johnson Arbitration and did not receive an opportunity to be heard.

45.     On November 12, 2019, Johnson initiated an action against Plaintiff in

the United States District Court, Eastern District of Virginia by filing a "Petition"

to confirm the Johnson Arbitration Award. *Johnson v. PennyMac Loan Services, LLC,* Case No. 3:19-cv-00837-DJN.[6]

## FIRST CLAIM

## DECLARATORY JUDGMENT

### (Against all Defendants)

46.     Plaintiff repeats, realleges, and incorporates herein by reference the preceding paragraphs as if set forth fully herein.

47.     There is no valid, enforceable contract between the parties named in this suit to submit any dispute(s) among them to arbitration.  Accordingly, the Kahapea Arbitration Award and the Johnson Arbitration Award are void.

48.     As such, there is a real, substantial, and justiciable controversy between the parties concerning whether they are bound by a valid agreement to arbitrate.  Accordingly, this is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 for the purpose of determining questions of actual controversy between the parties.

49.     A party cannot be compelled to arbitrate a dispute unless there is a contract to do so.  Relevant factors to determining arbitrability include: (1) whether the parties have entered into a valid agreement to arbitrate and, if so, (2) whether

---

[6] Plaintiff will be filing a motion to dismiss the Virginia action and will seek to transfer the action to this Court.

136044.01923/122274307v.8

the disputed issue comes within the scope of the arbitration agreement.  There is no

agreement to arbitrate between Plaintiff and Kahapea or Plaintiff and Johnson.

50.    Based on the foregoing, Plaintiff respectfully requests that the Court

enter an order declaring that no valid and enforceable contract or consent to

arbitrate exists between the parties to this action and that the Kahapea Arbitration

Award and the Johnson Arbitration Award were issued without authority, consent,

or jurisdiction, and are therefore void and unenforceable as a matter of law and that

the same be vacated and set aside.

## SECOND CLAIM

## PRELIMINARY AND PERMANENT INJUNCTION

(Against all Defendants)

51.    Plaintiff repeats, realleges, and incorporates herein by reference the

preceding paragraphs as if set forth fully herein.

52.    Plaintiff moves the court pursuant to F.R.C.P. 65(a) for a preliminary

injunction enjoining Defendants from attempting to confirm or enforce the

Kahapea Arbitration Award and the Johnson Arbitration Award because:

a.    There is a substantial likelihood that Plaintiff will prevail on the merits of its claims to vacate the awards;

b.    Plaintiff will suffer irreparable injury unless the injunction is issued;

c.    The threatened injury to Plaintiff outweighs whatever harm the proposed injunction may cause to Defendants; and

d.    The injunction, if issued, would not be adverse to the public interest.

53.     As outlined above, Sitcomm's arbitration process is illegitimate and is not based upon any agreement between the parties.  Additionally, it is clear that Sitcomm is continuously and repeatedly attempting to employ this scheme against Plaintiff and others and is likely to continue to do so in the future.

54.     Based on the foregoing, Plaintiff is entitled to a preliminary injunction against Defendants and their agents, servants, and employees, and all persons in active concert and participation with them, until further order of this Court, restraining them from attempting to confirm or enforce the Kahapea Arbitration Award and the Johnson Arbitration Award.

55.     Plaintiff requests that the Court fix a date for a hearing on this Complaint or, in the alternative, that the Court issue an order for Defendants to show cause why the preliminary injunction should not be granted, and to fix the form and extent of notice of the hearing to be given to the Defendants, and for all such other and proper relief as the Court deems appropriate.

56.     Plaintiff further requests that the court enter a permanent injunction against Defendants forever enjoining them from conducting any purported arbitration proceeding against Plaintiff.

### **THIRD CLAIM**

### **LIBEL/DEFAMATION**

(Against Defendants Sitcomm, Moffett, Goulette, Gibbs, and Scott)

57.     Plaintiff repeats, realleges, and incorporates herein by reference the preceding paragraphs as if set forth fully herein.

58.     Defendants Sitcomm, Moffett, Goulette, Gibbs, and Scott knowingly published false and derogatory statements about Plaintiff by way of the arbitration awards, including that Plaintiff had arbitration awards issued against it, was subject to punitive and treble damages, admitted to engaging in deceptive and fraudulent business practices, and failed to fully perform under the terms of unspecified agreements.

59.     The false and defamatory statements concerning Plaintiff constitute defamation and/or defamation *per se.*

60.     Defendants Sitcomm, Moffett, Goulette, Gibbs, and Scott published these false statements of fact to third persons with the purpose of inflicting harm upon Plaintiff; specifically, the false statements were published with the purpose of harming Plaintiff's business reputation, impugning the integrity of Plaintiff's business, causing clients to terminate their business relations with, and causing potential clients to withhold future business from Plaintiff;

61.     The false statements did in fact harm Plaintiff in that it has suffered damage to its reputation and has been forced to expend resources to defend itself in litigation because of Defendants' false statements.

136044.01923/122274307v.8

62.     Defendants Sitcomm, Moffett, Goulette, Gibbs, and Scott's false and defamatory statements concerning Plaintiff were made maliciously, knowingly, willfully and in conscious disregard of Plaintiff's rights, and were specifically intended to – and did – cause damage to Plaintiff's reputation.

63.     Plaintiff has suffered, and continues to suffer, substantial damages as a result of Defendants' defamatory statements.

64.     By reason of the foregoing, Plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

### FOURTH CLAIM

### TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

(Against Defendants Sitcomm, Moffett, Goulette, Gibbs, and Scott)

65.     Plaintiff repeats, realleges, and incorporates herein by reference the preceding paragraphs as if set forth fully herein.

66.     By their actions in communicating with third parties, including but not limited to Kahapea, Johnson and Bourgeois, and attempting to interfere with business transactions and relations involving those parties, Defendants Sitcomm, Moffett, Goulette, Gibbs, and Scott have damaged relations between Plaintiff and those third parties to the detriment of Plaintiff's prospective economic advantage with them, in that the efforts to under Plaintiff's reputation are likely to cause disruption of business relations between Plaintiff and those parties into the future.

136044.01923/122274307v.8

67.    Such interference was intentional, knowing, reckless and/or negligent, and has caused Plaintiff damages.

## FIFTH CLAIM

## CIVIL CONSPIRACY

(Against Defendants Sitcomm, Moffett, Goulette, and Gibbs)

68.    Plaintiff repeats, realleges, and incorporates herein by reference the preceding paragraphs as if set forth fully herein.

69.    Defendants Sitcomm, Moffett, Goulette, and Gibbs, either working together or as a combined group or in sub-combinations of two or more, conspired to commit the wrongful actions outlined in Claims I through V above, all of which directly and proximately caused Plaintiff to sustain damages in the form of damage to reputation and decreased profits.  Each of the defendants understood the objectives of the scheme, and accepted them, and was an active and knowing participant in the conspiracy.

70.    Defendants' conspiracy was implemented through the commission of various wrongful and overt acts, including but not limited to, publishing and disseminating false statements about Plaintiff and committing other unlawful acts.

71.    As a direct and proximate result of the operation and execution of the conspiracy committed by Defendants Sitcomm, Moffett, Goulette, and Gibbs, Plaintiff has suffered and continues to suffer substantial damages.

136044.01923/122274307v.8

## SIXTH CLAIM

## FEDERAL CIVIL RICO, 18 U.S.C. § 1962(c)

(Against Defendants Sitcomm, Moffett, Goulette, and Gibbs)

72.     Plaintiff repeats, realleges, and incorporates herein by reference the preceding paragraphs as if set forth fully herein.

73.     Defendants Sitcomm, Moffett, Goulette, and Gibbs (collectively, "RICO Defendants") violated RICO and Plaintiff was injured as a result.

74.     Each RICO Defendant is a "person" capable of holding legal or beneficial interest in property within the meaning of 18 U.S.C. § 1961(3).

75.     Each RICO Defendant violated 18 U.S.C. § 1962(c) by the acts described in the prior paragraphs, and as further described below.

76.     The Enterprise.  RICO Defendants form an association-in-fact for the common and continuing purpose described herein and constitute an enterprise within the meaning of 18 U.S.C. § 1961(4), and engaged in the conduct of their affairs through a continuing pattern of racketeering activity.  There may also be other members of the enterprise who are unknown at this time.

77.     Pattern of Racketeering Activity.  RICO Defendants, each of whom are persons associated with, or employed by, the enterprise, did knowingly, willfully and unlawfully conduct or participate, directly or indirectly, in the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18

136044.01923/122274307v.8

U.S.C. §§ 1961(1), 1961(5), and 1962(c).  The racketeering activity was made

possible by RICO Defendants' regular and repeated use of the facilities and

services of the enterprise.  RICO Defendants had the specific intent to engage in

the substantive RICO violations alleged herein.

78.   <u>Predicate Act: Use of Mails and Wires to Defraud Plaintiff in</u>

<u>Violation of 18 U.S.C. §§ 1341 and 1343</u>.  RICO Defendants committed acts in

violation of 18 U.S.C. §§ 1341 and 1343 in that they devised or intended to devise

a scheme to defraud Plaintiff and other parties or to obtain money from Plaintiff by

means of false or fraudulent pretenses, representations or promises.  For the

purpose of executing their scheme or artifice, RICO Defendants caused delivery of

various documents and things by the U.S. mails or by private or commercial

interstate carriers, or received such therefrom.  RICO Defendants also transmitted

or caused to be transmitted by means of wire communications in interstate or

foreign commerce various writings, signs and signals.  The acts of RICO

Defendants set forth above were done with knowledge that the use of the mails or

wires would follow in the ordinary course of business or that such use could have

been foreseen, even if not actually intended.  These acts were done intentionally

and knowingly with the specific intent to advance RICO Defendants' scheme.

RICO Defendants carried out their scheme in different states and could not have

done so unless they used the U.S. mails or private or commercial interstate carriers

136044.01923/122274307v.8

or interstate wires.  In furtherance of their scheme alleged herein, RICO

Defendants communicated among themselves in furtherance of the scheme to

defraud Plaintiff and others.  Plaintiff is informed and believes that these

communications were typically transmitted by wire (i.e., electronically) and/or

through the United States mails or private or commercial carriers.

79.    More specifically, RICO Defendants used wire and/or U.S. mail or

private or commercial carriers to transmit payments, correspondence, and

purported arbitration documents for the purpose of continuing their fraudulent

scheme.

80.    RICO Defendants' shared objective was and is to divert funds to their

own benefit and to facilitate the payment of illegitimate arbitration awards.

81.    As a direct and proximate result of RICO Defendants' false

representations, false pretenses and deceptive communications and RICO

Defendants' participation in such enterprise, Plaintiff has been damaged in being

required to defend against the confirmation of numerous illegitimate arbitration

awards nationwide.

82.    Continuity of Conduct.  RICO Defendants' violations of law as set

forth herein, each of which directly and proximately injured Plaintiff, constituted a

continuous course of conduct spanning a period from approximately early 2018 to

present, which was intended to obtain money through false representations, fraud,

136044.01923/122274307v.8

deceit, and other improper means.  Therefore, said violations were a part of a pattern of racketeering activity under 18 U.S.C. §§ 1961(1) and (5).

83.    Upon information and belief, RICO Defendants have conducted and/or participated, directly and/or indirectly, in the conduct of the affairs of the alleged enterprise through a pattern of racketeering activity as defined herein in violation of 18 U.S.C. § 1962(c).  The unlawful actions of RICO Defendants, and each of them, have directly, illegally, and proximately caused and continue to cause injuries to Plaintiff in its business in that Plaintiff has been compelled to expend resources and has suffered damage to its business interests and reputation as a result of such racketeering activity.  Plaintiff seeks an award of damages in compensation for the injury.  Plaintiff accordingly seeks an award of three times the damages it sustained, and the recovery of reasonable attorneys' fees and costs of investigation and litigation, as well as any other relief as authorized by statute

## SEVENTH CLAIM

## CONSPIRACY TO VIOLATE FEDERAL CIVIL RICO, 18 U.S.C. § 1962(d)

(Against Defendants Sitcomm, Moffett, Goulette, and Gibbs)

84.    Plaintiff repeats, realleges, and incorporates herein by reference the preceding paragraphs as if set forth fully herein.

136044.01923/122274307v.8

85.    In violation of 18 U.S.C. § 1962(d), RICO Defendants, and each of them, knowingly, willfully, and unlawfully conspired to facilitate a scheme which included the operation or management of a RICO enterprise through a pattern of racketeering activity as alleged above.  The conspiracy commenced at least as early as early 2018 and is ongoing.  The conspiracy's purpose was to divert money from Plaintiff and third parties to their own benefit via fraudulent arbitration awards. Each of the RICO Defendants committed at least one overt act in furtherance of such conspiracy.

86.    These acts in furtherance of the conspiracy include creating and transmitting false arbitration documents, participating in illegitimate arbitrations, and facilitating the payment of monies to Sitcomm and the "arbitrators" via wire transfer.

87.    Even if any of the RICO Defendants did not agree to harm Plaintiff specifically, the purpose of the acts they engaged in was to advance the overall object of the conspiracy, and the harm to Plaintiff was a reasonably foreseeable consequence of RICO Defendants' actions.

88.    Plaintiff has been injured and continues to be injured in its business and property by RICO Defendants' conspiracy in violation of 18 U.S.C. § 1962(d). The unlawful actions of RICO Defendants, and each of them, have directly, illegally, and proximately caused and continue to cause injuries to Plaintiff in its

business or property in that Plaintiff has been compelled to expend resources and has suffered damage to its business interests and reputation as a result of such racketeering activity.

89.     Plaintiff seeks an award of damages in compensation for the injury suffered. Plaintiff further seeks an award of three times the damages it sustained, and the recovery of reasonable attorneys' fees and costs of investigation and litigation, as well as any other relief as authorized.

## EIGHTH CLAIM

## VACATION OF AWARD UNDER 9 U.S.C. § 10

(Against all Defendants)

90.     Plaintiff repeats, realleges, and incorporates herein by reference the preceding paragraphs as if set forth fully herein.

91.     In the alternative, Plaintiff submits that the Kahapea Arbitration Award and the Johnson Arbitration Award should be vacated under 9 U.S.C. § 10 because they were made without jurisdiction or consent and:

a.     The awards were procured by corruption, fraud, or undue means;

b.     The awards evidence partiality or corruption in the arbitrators;

c.     The arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; and of other misbehavior by which Plaintiff's rights have been prejudiced; and

136044.01923/122274307v.8

d.    Because the arbitrators exceeded their powers or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

92.    By reason of the foregoing, the Court should issue an order vacating

the Kahapea Arbitration Award and the Johnson Arbitration Award.

## REQUEST FOR RELIEF

**WHEREFORE, PRMISES CONSIDERED,** Plaintiff respectfully requests

that the Court enter an order or orders as follows:

a.    Declaring that no valid and enforceable contract or consent to arbitrate existed between the parties to this action and that the Kahapea Arbitration Award and the Johnson Arbitration Award were issued without authority, consent, or jurisdiction, and are therefore void and unenforceable, as a matter of law; and

b.    That the Court issue an order, pursuant to 9 U.S.C. § 10, vacating the Kahapea Arbitration Award and the Johnson Arbitration Award and issuing preliminary and permanent injunctions prohibiting Defendants from undertaking any effort to seek to confirm or initiate enforcement of the Kahapea Arbitration Award and the Johnson Arbitration Award or otherwise taking any action against Plaintiff in or related to arbitration;

c.    Awarding compensatory damages in an amount to be determined at trial;

d.    Awarding reasonable attorneys' fees and costs of investigation; and

e.    Providing Plaintiff any such further relief as the Court deems appropriate.

136044.01923/122274307v.8

DATED:  December 11, 2019.

Respectfully submitted,

/s/ *Harris Powers III*   MBN 100331

Harris F. Powers III
Steven C. Cookston

Upshaw, Williams, Biggers &
Beckham, LLP
309 Fulton Street
Post Office Drawer 8230
Greenwood, MS 38935-8230
Telephone No.: 662-455-1613

*Counsel for Plaintiff*

Cheryl S. Chang (*pro hac vice*
pending)
Nicole Bartz Metral (*pro hac vice*
pending)
Jessica A. McElroy (*pro hac vice* to be
filed)

BLANK ROME LLP
2029 Century Park East, 6th Floor
Los Angeles, California 90067-2907
Telephone: 424.239.3400
Facsimile:  424.239.3434

*Counsel for Plaintiff*

136044.01923/122274307v.8