# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

## Eastern Division

PENNYMAC LOAN SERVICES,
LLC,

     Plaintiff,

vs.

SITCOMM ARBITRATION
ASSOCIATION, MARK MOFFETT,
SANDRA GOULETTE, RONNIE
KAHAPEA, MARK JOHNSON,
KIRK GIBBS, and ALARIC SCOTT,

     Defendants.

Civil Action No. 2:19-CV-00193-KS-MTP

---

## PLAINTIFF PENNYMAC LOAN SERVICES, LLC'S RICO STATEMENT

Plaintiff PennyMac Loan Services, LLC ("PennyMac"), pursuant to Local Rule 83.8, respectfully submits the following RICO Statement in support of its civil RICO claims against defendants Sitcomm Arbitration Association ("Sitcomm"), Mark Moffett ("Moffett"), Sandra Goulette ("Goulette"), an Kirk Gibbs ("Gibbs," collectively with Sitcomm, Moffett, and Goulette, the "RICO Defendants"), as set forth in the complaint ("Complaint") (Dkt. No. 1):

1.    *State whether the alleged unlawful conduct is in violation of 18 U.S.C. §§ 1962(a), (b), (c), and/or (d).*

The alleged unlawful conduct is in violation of 18 U.S.C. §§ 1962(c) and (d).

2.   *List each Defendant and state the alleged misconduct and basis of liability of each Defendant.*

PennyMac alleges that the defendants that violated 18 U.S.C. §§ 1962(c) and (d) are Sitcomm, Moffett, Goulette, and Gibbs.  The alleged misconduct and basis of liability against each of the RICO Defendants is as follows:

As alleged in the Complaint, the RICO Defendants used wire and/or U.S. mail or private or commercial carriers to transmit payments, correspondence, and purported arbitration documents for the purpose of continuing their fraudulent arbitration scheme, and/or knowingly, willfully, and unlawfully conspired to facilitate an arbitration scheme, which included the operation or management of a RICO enterprise through a pattern of racketeering activity.  The RICO Defendants conspired to divert money from PennyMac and third parties to their own benefit via fraudulent arbitration awards.  More specifically, PennyMac alleges, on information and belief, that:

**Sitcomm**:

Sitcomm is the purported illegitimate arbitration company that markets itself as an arbitration association for the "economically challenged" that has reduced arbitration fees by "75% of their competitors [*sic*]," which, it claims, "is a sure indicator that [it] cannot be bought by the person with the larger wallet."   In reality, and as outlined by testimony elicited from Moffett in a separate action,

2

Sitcomm is a sham arbitration organization that uses the guise of legitimacy to market itself as an authorized and legitimate arbitration company to attract paying customers and collect fees.  After Sitcomm extracts an arbitration "fee" from these customers, Sitcomm then issues fake exorbitant final arbitration awards against various entities, despite no arbitration hearing having ever been held, no arbitration provision existing that permits the parties to arbitrate their claims, and without proper notice or an opportunity for any party to be heard.

Sitcomm's final arbitration awards consist of variations of a standard form that fail to reference any basis for wrongdoing, or outline the claims asserted against the various respondents.  Instead, the Sitcomm "arbitrator," after conducting an arbitration "hearing" during which neither party is present, concludes that the parties somehow formed a contract via a conditional acceptance, to which the respondents somehow acquiesced.  Sitcomm then instructs its paying customers to attempt to enforce Sitcomm's six and seven-figure arbitration awards by filing petitions to confirm arbitration awards in various district courts throughout the United States, including Mississippi, New Mexico, Virginia, Oklahoma, and Texas, oftentimes despite none of the parties having any nexus to the selected venue.

PennyMac has been the victim of this scheme on at least two occasions. PennyMac believes that the scheme is promulgated by an individual who goes by

the username "EeoN" on YouTube.  In a YouTube video[1] posted on December 4, 2019, EeoN references Sitcomm and attempts to distinguish the acts of its individual arbitrators, who he claims are independent contractors of Sitcomm, from the acts of Sitcomm in conducting arbitrations.  The purpose of the separation is to avoid exposing Sitcomm to liability for allegations of collusion or fraud against Sitcomm for these phantom "arbitrations" and fake "arbitration awards."

PennyMac alleges that the Sitcomm fraud scheme operates as follows:

a.  An individual consumer, usually a debtor, under guidance and instruction from Sitcomm, transmits a sequence of formal-looking documents ("Transmission") over interstate U.S. mail, UPS or Federal Express, which include various "conditional" acceptances and "tacit" agreements, demanding that a creditor[2] "prove its claim" that the debtor owes it money.  These documents contain several "provisions" that state, if the creditor refuses to respond, or does not do so in accordance with the

---

[1] Accessible at
https://www.youtube.com/watch?v=Ulx35hO_fS0&feature=youtube.
[2] PennyMac is informed and believes that such creditor entities include, but are not limited to, Albertelli Law; Ally Financial, Inc.; First Guaranty Home Mortgage; First Guaranty Mortgage Corp.; BAC Home Loan Servicing, LP; Bank of America Corporation; Bank of America NA; Cannae Holdings, Inc. f/k/a Fidelity National Financial Ventures; Carrington Mortgage Services LLC; Dorchester County Register of Deeds; Embrace Home Loans; Fay Servicing LLC; FCI Lender Service, Inc.; Federal Home Mortgage Corporation; First Mortgage, LLC; Google; Government National Mortgage Association; Imperial Industrial Supply Company d/b/d Duramax Power Equipment and/or d/b/a Factory Authorized Outlets; JP Morgan Chase Bank; J Stanley Claypoole; Lakeview Loan Servicing, LLC; Lawrence & Walsh PC; Lima One Capital, LLC; Loancare, LLC; Mortgage Electronic Registration System Inc.; Plaza Home Mortgage, Inc.; RoundPoint Mortgage Servicing Corporation; Rushmore Loan Management Services; South Carolina Secretary of State; Specialized Loan Servicing, LLC; US Bank NA; Wells Fargo Bank N.A.; Wells Fargo Home Mortgage; and Wilmington Savings Fund Society FSB.

4

terms set forth in the document, a new contract will be created – one that includes an arbitration provision, a forfeiture of certain rights and allows the fraudster to obtain a judgment;

b. When the creditor does not respond to the Transmission, the debtor submits the matter to Sitcomm and pays Sitcomm a fee (usually around $500).  Thereafter, Sitcomm or an employee, director or "arbitrator" working with Sitcomm issues a "Notice of Arbitration" and sends it to a creditor company over interstate U.S. mail, UPS, or Federal Express. The Notice of Arbitration references a date and time for an arbitration, but provides no location for the arbitration, no basis for the arbitration, no claims under which the arbitration is brought, and no other basic information that would allow the creditor to respond.

c. After the date listed in the Notice of Arbitration has passed, Sitcomm or an employee, director or "arbitrator" working with Sitcomm issues a "Final Arbitration Award" which falsely implies that all parties to the arbitration participated and presented evidence at an arbitration hearing and the "arbitrator" issued a final multimillion-dollar award to the debtor. No arbitration is actually held and not even the debtor or the "arbitrator" participate.

d. The debtor, under guidance and instruction from Sitcomm, then files a petition to confirm the arbitration award in a United States District Court in an attempt to reduce the multimillion-dollar award to an enforceable judgment.

PennyMac alleges that Sitcomm does not provide proper notice of the arbitrations to the respondents (the location of the phantom hearing is never provided), does not actually conduct arbitrations, does not hear testimony or evidence, and does not evaluate claims of the claimants.  Moreover, Sitcomm "conducts" these arbitrations in cases where there is no agreement to arbitrate between the parties.  Instead, Sitcomm sends false and vague notices of arbitration to respondents that do not contain the actual location of the arbitration or the

claims sought to be arbitrated and "conducts" arbitrations with the expectation that no party will appear, thereby clearing an unobstructed path for Sitcomm and its customers to reduce fake arbitration awards to judgment before the creditor companies are able to appear and oppose the petitions seeking to confirm the arbitration awards.  The final arbitration awards contain numerous discrepancies and purport to award the claimants hundreds of thousands or millions of dollars, without identifying any specific wrongdoing or basis for the award.[3]

Defendants Mark Johnson ("Johnson") and Ronnie Kahapea ("Kahapea") are among Sitcomm's customers.  Kahapea paid Sitcomm to "conduct" an arbitration and issue a multimillion-dollar arbitration award that Kahapea has attempted to pass off as valid and legitimate by filing a Petition to Confirm Arbitration award in a United States District Court.  Johnson also paid Sitcomm to "conduct" an arbitration and issue a multimillion-dollar arbitration award that

_____

[3] As one court recently explained, the "purported arbitration awards are unlike any other [the] court has ever seen."  *U.S. Bank Nat'l Ass'n v. Nichols*, No. 19-CV-482-JED-FHM, 2019 WL 4276995, at *3 (N.D. Okla. Sept. 10, 2019).  Reviewing similar Sitcomm awards, two federal district courts have recently agreed that they are "a bizarre jumble of inconsistent, nonsensical word salad" full of "legally bizarre determination[s] contrary to hornbook contract law." *Kalmowitz v. Fed. Home Mortgage Corp., et al.*, 2019 WL 6249298, at *1 (E.D. Tex. Oct. 22, 2019) (quoting *Nichols*, 2019 WL 4276995, at *4), report and recommendation adopted at 2019 WL 6249426 (E.D. Tex. Nov. 21, 2019).  The Kahapea Arbitration Award and Johnson Arbitration Award (as defined below) are no different.

Johnson has attempted to pass off as valid and legitimate by filing a Petition to Confirm Arbitration award in a United States District Court.

In or about June 2019, Kahapea instituted an illegitimate arbitration proceeding against PennyMac (the "Kahapea Arbitration"). On or about June 3, 2019, PennyMac received a notice of arbitration hearing ("Kahapea Notice") from Sitcomm by Priority U.S. Mail mailed from Laurel, Mississippi.  The Kahapea Notice purports to set an arbitration hearing for June 10, 2019 at 12:00 p.m. and states that if a response is not received within ten days from receipt of the notice, the "Arbitrator will presume your acceptance and may proceed to review the supporting documentation electronically and issue a binding decision."  The Kahapea Notice does not provide a location for the arbitration hearing.  The Kahapea Notice also does not indicate the nature of Kahapea's grievances or reference any claims asserted against PennyMac.

On June 10, 2019, Moffett and Goulette issued a Sitcomm arbitration award (the "Kahapea Arbitration Award") at Laurel, Mississippi against PennyMac which purports to award Kahapea $600,000 for "breach of the contractual agreement of the parties" and $1,200,000 "as punitive damages under the treble damages provision of the agreement for their admitted deceptive and fraudulent business practices inherent in the loan and foreclosure racket and their breach of terms agreed upon."   Pursuant to the Kahapea Arbitration Award, Sitcomm acted as the

7

arbitration organization.  The Kahapea Arbitration Award falsely implies that PennyMac participated in the Kahapea Arbitration and presented evidence, when it did not do so.  PennyMac was not given any notice of the claims asserted against it in the Kahapea Arbitration, did not receive any notice of where the phantom arbitration would be held, and did not receive an opportunity to be heard.

In or about October 2019, Johnson instituted an illegitimate arbitration proceeding against PennyMac (the "Johnson Arbitration").  On or about October 10, 2019, PennyMac received a notice of arbitration hearing ("Johnson Notice") from Sitcomm by Priority U.S. Mail mailed from Laurel, Mississippi.  The Johnson Notice purports to set an arbitration hearing for October 21, 2019 and states that if a response is not received within ten days from receipt of the notice, the "Arbitrator will presume your acceptance and may proceed to review the supporting documentation electronically and issue a binding decision." The Johnson Notice does not provide a location for the arbitration hearing. The Johnson Notice does not indicate the nature of Johnson's grievances or reference any claims asserted against PennyMac.

On October 21, 2019, Gibbs and Goulette issued a Sitcomm arbitration award (the "Johnson Arbitration Award") at Lilburn, Georgia against PennyMac which purports to award Johnson $2,250,000 "as stipulated according to the terms of the contractual agreement as agreed to by the parties."  The Johnson Arbitration

8

Award falsely implies that PennyMac participated in the Johnson Arbitration and

presented evidence in that it states that:

    a.  "The parties have agreed that a judgment of the court shall be entered," p. 1;

    b.  "An arbitration hearing was held on Date at which time the Arbitrator reviewed all contractual agreements and documentary evidence submitted by the parties in this matter" p. 3;

    c.  "The Arbitrator fully considered . . . all the evidence," p. 3;

    d.  "[A]fter careful consideration of the evidence presented, this Arbitrators finds as follows . . .The arbitration hearing was held on October 21, 2019," p. 4; and

    e.  "[T]his Arbitrator finds that the amount stipulated to be paid to the Claimant is $2,250,000.00," p. 5, among others.

In early November 2019, Sitcomm mailed PennyMac a copy of the Johnson

Arbitration Award through the United States Postal Service from Laurel,

Mississippi.[4]

---

[4] As further evidence of the Sitcomm scheme, PennyMac is aware of at least one other individual, Carl Bourgeois ("Bourgeois"), who may also be involved with Sitcomm.  On or about July 1, 2019, Plaintiff received a notice of arbitration hearing ("Bourgeois Notice") from Sitcomm by Priority U.S. Mail mailed from Laurel, Mississippi.  The Bourgeois Notice purports to set an arbitration hearing for July 9, 2019 and states that if a response is not received within ten days from receipt of the notice, the "Arbitrator will presume your acceptance and may proceed to review the supporting documentation electronically and issue a binding decision." The Bourgeois Notice provides no notice as to what claims are to be arbitrated, where the arbitration will be held or the basis for the parties arbitrating their claims. While Plaintiff is unaware of any actions filed by Bourgeois to date, it anticipates that one may be filed in the near future.

**<u>Moffett</u>**:

Moffett has been employed as an arbitrator with Sitcomm since in or about July 2019.  Moffett began working with Sitcomm after he assisted his sister, Denise Brown[5], in a similar case against Ally Financial Incorporated ("Ally"). During a November 19, 2019 hearing on Brown's motion to affirm and Ally's motion to vacate the arbitration award in question, Moffett provided detailed testimony[6] regarding Sitcomm's arbitration scheme, as follows:

a. Moffett began working as an arbitrator with Sitcomm in July 2019 after being involved with his sister's case;

b. He first became aware of Sitcomm after following Eeon online and watching his videos;

c. Sitcomm awards are not valid in the United States and they say this in the documents.  Instead, they are issued as foreign judgments;

d. Awards are only valid after a court confirms them, and Sitcomm has had "quite a few" confirmed;

e. Individuals make payments to a PayPal account for one of Sitcomm's sister companies because PayPal froze Sitcomm's account; and

---

[5] On April 20, 2018, Denise Brown filed a Complaint against Ally Financial Incorporated ("Ally"), title *Brown v. Ally Financial Incorporated, et al.*, Case No. 2:18-cv-00070-KS-MTP (*Brown*), alleging various causes of action including violation of the Fair Debt Collection Practices Act.

[6] On December 10, 2019 in the *Brown* case, the Court issued a Memorandum Opinion and Order and Order to Show Cause, denying Brown's motion to compel arbitration and vacating the purported arbitration award issued in her favor.  The Court also ordered Brown to show cause why she should not be sanctioned for seeking confirmation of the alleged arbitration award.

    f.  Some of Sitcomm's arbitrators were let go because they were not actually holding arbitration hearings for the matters they were involved in.

On June 10, 2019, Moffett and Goulette issued the Kahapea Arbitration Award at Laurel, Mississippi against PennyMac, after purportedly presiding over the Kahapea Arbitration as a Sitcomm arbitrator.

**<u>Goulette</u>**:

Goulette is a director of Sitcomm.  Goulette resides with Moffett and Denise Brown in Laurel, Mississippi.

On May 22, 2019, Goulette electronically signed the Kahapea Notice and may have mailed it to PennyMac on behalf of Sitcomm.  On June 10, 2019, Moffett and Goulette issued the Kahapea Arbitration Award at Laurel, Mississippi against PennyMac.  Pursuant to the Kahapea Arbitration Award, Goulette acted as a Sitcomm committee member in connection with the Kahapea Arbitration.  On June 12, 2019, Goulette, as a Sitcomm committee member, executed a document certifying that Moffett created and executed the Kahapea Arbitration Award.

On October 21, 2019, Gibbs and Goulette issued the Johnson Arbitration Award at Lilburn, Georgia.  Pursuant to the Johnson Arbitration Award, Goulette acted as a Sitcomm committee member in connection with the Johnson Arbitration.

**<u>Gibbs</u>**:

Gibbs purports to be a Sitcomm arbitrator.  On October 7, 2019, Gibbs electronically signed the Johnson Notice and may have mailed it to PennyMac on

11

behalf of Sitcomm.  On October 21, 2019, Gibbs and Goulette issued the Johnson Arbitration Award at Lilburn, Georgia.  Pursuant to the Johnson Arbitration Award, Gibbs presided as the arbitrator.

3.  *List the alleged wrongdoers, other than the Defendant(s) listed above, and state the alleged misconduct of each wrongdoer.*

Johnson and Kahapea engaged in wrongdoing in that they hired Sitcomm to conduct fraudulent arbitrations involving PennyMac.  They are not currently named as RICO Defendants.

4.  *List the alleged victims and state how each victim was allegedly injured.*

PennyMac alleges it is the victim of the RICO scheme at issue.  Specifically, PennyMac has been damaged by being required to defend against the confirmation of numerous illegitimate arbitration awards nationwide and forced to expend resources to do so.  Additionally, PennyMac has suffered damage to its business interests and reputation as a result of the racketeering activity.

5.  *Describe in detail the pattern of racketeering activity or collection of unlawful debts alleged for each RICO claim.  A description of the pattern of racketeering shall include the following information:*

a.  *List the alleged predicate acts and the specific statutes which were allegedly violated;*

12

The RICO Defendants conducted and/or participated in and conspired to conduct the affairs of the RICO enterprise by engaging in mail fraud and wire fraud in furtherance of the unlawful scheme in violation of 18 U.S.C. §§ 1341 and 1343.

> b.    *Provide the dates of the predicate acts, the participants in the predicate acts, and a description of the facts surrounding the predicate acts;*

As further outlined above, relevant dates of the predicate acts include, but are not limited to:

- May 22, 2019: Goulette electronically signs the Kahapea Notice and, thereafter, mails it to PennyMac on behalf of Sitcomm;

- In or about June 2019: Kahapea institutes the Kahapea Arbitration and presumably pays Sitcomm via wire transfer through PayPal to do so;

- On or around June 3, 2019: Sitcomm, via Priority U.S. Mail from Laurel, Mississippi, mails PennyMac the Kahapea Notice;

- June 10, 2019: Moffett and Goulette, acting on behalf of Sitcomm, issue the Kahapea Arbitration Award;

- June 12, 2019: Goulette, as a Sitcomm committee member, executes a document certifying that Moffett created and executed the Kahapea Arbitration Award;

- In or around June 2019: Sitcomm pays Moffett and Goulette via wire transfer for their roles in preparing the Kahapea Notice and Kohapea Arbitration Award;

- October 2019:  Johnson institutes the Johnson Arbitration and presumably pays Sitcomm via wire transfer through PayPal to do so;

- October 7, 2019: Gibbs electronically signs the Johnson Notice and may have mailed it to PennyMac on behalf of Sitcomm;

136044.01923/122345755v.2

- On or around October 10, 2019: Sitcomm, via Priority U.S. Mail from Laurel, Mississippi, mails PennyMac the Johnson Notice;

- October 21, 2019: Gibbs and Goulette, acting on behalf of Sitcomm, issue the Johnson Arbitration Award;

- In early November 2019: Sitcomm mails PennyMac a copy of the Johnson Arbitration Award through the United States Postal Service from Laurel, Mississippi; and

- In or around November 2019: Sitcomm pays Gibbs and Goulette via wire transfer for their roles in preparing the Johnson Notice and Johnson Arbitration Award.

c.     *If the RICO claim is based on the predicate offenses of wire fraud, mail fraud, or fraud in the sale of securities, the "circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b).  Identify the time, place and contents of the alleged misrepresentations, and the identity of persons to whom and by whom the alleged misrepresentations were made;*

PennyMac incorporates by reference its answer to paragraph (b) above.

d.     *State whether there has been a criminal conviction for violation of the predicate acts;*

Upon information and belief, there has not been a criminal conviction for violation of the predicate acts.

e.     *State whether civil litigation has resulted in a judgment in regard to the predicate acts;*

Upon information and belief, civil litigation has not resulted in a judgment in regard to the predicate acts.

14

>    *f.*    *Describe how the predicate acts form a "pattern of*
*racketeering activity"; and*

The RICO Defendants, through the RICO enterprise, engaged repeatedly in the racketeering activity set forth in PennyMac's RICO claims in the Complaint throughout 2019, and beginning as early as early 2018, the date of initiation of the *Brown v. Ally Financial Incorporated, et al.*, Case No. 2:18-cv-00070-KS-MTP litigation involving Moffett's sister, the case in which he testifies as to the details of Sitcomm's general scheme. The predicate acts described herein are, on information and belief, just a few examples of Sitcomm's use of the mail and wire transfers to effectuate their overall scheme.[7]

---

[7] PennyMac has located the following actions, filed in various courts, which appear to involve the same or a substantially similar fraudulent scheme that is being perpetrated by the RICO Defendants in this action:

- *Grant v. Bank of America, N.A.*, 8:19-cv-01977 (C.D. Cal.);
- *Brown v. Ally Financial Inc.*, 2:18-cv-70 (S.D. Miss.);
- *Imperial Industrial Supply Co. v. Thomas*, 2:19-cv-129 (S.D. Miss.);
- *Teverbaugh v. Lime One Capital, LLC*, No 2:19-mc-159 (S.D. Miss.);
- *Kahapea v. PennyMac Loan Services, LLC*, 1:19-mc-28 (D.N.M.);
- *Campbell v. FCI Lender Service, Inc.*, 1:19-cv-02368 (E.D.N.Y.);
- *US Bank NA v. Nichols*, 19-cv-482 (N.D. Okla.);
- *Bruce v. Wilmington Savings Fund Society*, 2:18-cv-02555 (D.S.C.);
- *Kalmowitz v. Federal Home Mortgage Corp.*, 6:19-mc-00010 (E.D. Tex.);
- *Meekins v. Lakeview Loan Servicing, LLC*, 3:29-cv-00501 (E.D. Va.);
- *Hosea v. Dimon, et al.*, 2:19-mc-00034 (E.D. Va.);
- *Johnson v. PennyMac Loan Services, LLC*, 3:19-cv-00837-DJN (E.D. Va.); and

g.      State whether the alleged predicate acts relate to each other as part of a common plan.  If so, describe in detail.

The alleged predicate acts relate to each other as part of and in furtherance of a common plan to perpetrate the arbitration scheme alleged herein with respect to Sitcomm, through which Sitcomm and its arbitrators and directors receive compensation to conduct fraudulent arbitrations, including the Kahapea and Johnson Arbitrations.

6.      Describe in detail the alleged enterprise for each RICO claim.  A description of each enterprise shall include the following information:

a.      State the names of the individuals, partnerships, corporations, associations, or other legal entities, which allegedly constitute the enterprise;

The RICO enterprise which was engaged in and the activities of which affected interstate commerce, is comprised of an association in fact consisting of Sitcomm, acting as the arbitration association, Goulette, acting as a director of Sitcomm, and Gibbs and Moffett acting as arbitrators of Sitcomm.

b.      Describe the structure, purpose, function and course of conduct of the enterprise;

---

o   *Cannae Holdings v. Innovated Holdings, Inc.*, 19Sl-CC01658 (St. Louis Cir. Court).

16

The RICO enterprise at issue has an organizational structure, whose purpose is to generate income by conducting fraudulent arbitrations, and, thereafter, attempting to enforce those arbitration awards through use of the courts so as to obtain payment of arbitration awards from third party entities such as PennyMac.

   *c. State whether any Defendants are employees, officers or directors of the alleged enterprise;*

On information and belief, Goulette is director and/or officer of Sitcomm and Gibbs and Moffett are employees of Sitcomm.

   *d. State whether any Defendants are associated with the alleged enterprise;*

Defendants Sitcomm, Moffett, Goulette, and Gibbs are directly associated with the enterprise and Kahapea and Johnson are either directly or indirectly associated with the enterprise.

   *e. State whether you are alleging that the Defendants are individuals or entities separate from the alleged enterprise, or that the Defendants are the enterprise itself, or are members of the enterprise; and*

Sitcomm, Goulette, Moffett, and Gibbs are alleged members of the enterprise.  Sitcomm operates as a separate entity, and Goulette, Moffett, and Gibbs are separate individuals.  The enterprise exists independently from the racketeering activity.

f.      If any Defendants are alleged to be either the enterprise itself or members of the enterprise, explain whether such Defendants are perpetrators, passive instruments, or victims of the alleged racketeering activity.

As described above, the RICO Defendants are alleged to be perpetrators of the alleged racketeering activity.  It is unclear whether Kahapea and Johnson are perpetrators, passive instruments, or victims.  Accordingly, they are not named as RICO Defendants.

7.      State whether you are alleging that the pattern of racketeering activity and the enterprise are separate or have merged into one entity.  In either event, describe in detail.

PennyMac alleges that the pattern of racketeering activity (i.e. mail and wire fraud) and the enterprise (i.e. the scheme of conducting fake arbitrations and issuing fraudulent arbitration awards) are separate, though related, as described in more detail above.

8.      Describe the alleged relationship between the activities of the enterprise and the pattern of racketeering activity.  Discuss how the racketeering activity differs from the usual and daily activities of the enterprise, if at all.

Upon information and belief, Sitcomm acts under the guise of being a legitimate arbitration association, complete with directors and arbitrators.  The racketeering activity involves the transmission of fraudulent arbitration documents

and transfer of payments from Sitcomm clients to Sitcomm-controlled accounts and from Sitcomm-controlled accounts to the Sitcomm arbitrators and/or other agents.  It is unclear what Sitcomm's usual and daily activities consist of other than perpetuating the fraudulent arbitration scheme.

9.      *Describe what benefits, if any, the alleged enterprise receives from the alleged pattern of racketeering.*

The enterprise receives compensation in the form of payments from individuals who retain Sitcomm to resolve disputes with third parties such as PennyMac.

10.      *Describe the effect of the activities of the enterprise on interstate or foreign commerce.*

The activities of the RICO Defendants consist of numerous and repeated use of the interstate mails and wire communications to execute a scheme to defraud, resulting in the members of the enterprise obtaining payments and/or compensation as part of the scheme.  Upon information and belief, the RICO enterprise at issue has further impacted interstate and foreign commerce by perpetrating the same scheme to defraud in connection with other, non-party lenders and creditors throughout the United States.

11.      *If the complaint alleges a violation of 18 U.S.C. § 1962(a), provide the following information:*

19

   *a. State who received the income derived either from the pattern of racketeering activity or through the collection of an unlawful debt; and*

   *b. Describe the use, investment or locus of such income.*

The Complaint does not allege a violation of 18 U.S.C. § 1962(a).

  *12. If the Complaint alleges a violation of 18 U.S.C. § 1962(b), describe in detail the acquisition or maintenance of any interest in or control of the alleged enterprise.*

The Complaint does not allege a violation of 18 U.S.C. § 1962(b).

  *13. If the complaint alleges a violation of 18 U.S.C. § 1962(c), provide the following information:*

   *a. State who is employed by or associated with the enterprise; and*

   *b. State whether the same entity is both the liable "person" and the "enterprise" under § 1962(c).*

PennyMac alleges that Sitcomm, Gibbs, Goulette, and Moffett are employed by or associated with the enterprise. The same entities and individuals are not both the liable "person" and the "enterprise" under 18 U.S.C. § 1962(c). Rather, each entity and individual are separate and distinct from one another.

14.     *If the complaint alleges a violation of 18 U.S.C. § 1962(d), describe in detail the alleged conspiracy.*

PennyMac alleges that at all relevant times, Sitcomm and Goulette were associated with the enterprise alleged herein and in the Complaint, and agreed and conspired with Gibbs and Moffett to perpetrate the racketeering activity alleged herein and in the Complaint involving the deceptive scheme to conduct fraudulent arbitrations, in furtherance of which numerous materials were to be sent, mailed or transmitted using interstate mails and/or wire communications, including but not limited to the Kahapea Notice, the Johnson Notice, the Kahapea Arbitration Award, and the Johnson Arbitration Award, as well as payments sent by Kahapea and Johnson to Sitcomm-controlled accounts to "conduct" the arbitrations, and payments sent by Sitcomm to Gibbs, Moffett, and Goulette to administer and/or oversee the arbitrations.

15.     *Describe the direct causal relationship between the alleged injury and the violation of the RICO statute.*

By reason of and as a result of the racketeering activity alleged herein and in the Complaint, PennyMac has been injured by being required to defend against the confirmation of the Johnson Arbitration Award and the Kahapea Arbitration Award and has been compelled to expend resources to affirmatively act to prevent the attempted confirmation of any future fraudulent awards. PennyMac has also

21

been injured in the damage to its publication that has resulted from the public filing of fake arbitration awards.

16.     *List the actual damages for which Defendant is allegedly liable.*

PennyMac alleges that the RICO Defendants are liable to PennyMac for actual damages consisting of the total amount spent to defend against the confirmation of the Johnson Arbitration Award and the Kahapea Arbitration Award, initiate and continue the instant proceedings, and investigate the underlying scheme.

17.     *List all other federal causes of action, if any, and provide citations to the relevant statute(s).*

The Complaint alleges an eighth claim for vacation of the fraudulent Kahapea Arbitration Award and the Johnson Arbitration Award under 9 U.S.C. § 10.

18.     *List all pendent state claims, if any.*

The Complaint additionally alleges claims for: (1) declaratory judgment, (2) injunctive relief, (3) libel, (4) tortious interference with contract, and (5) civil conspiracy.

19.     *Provide any additional information that you feel would be helpful to the Court in considering your RICO claim.*

PennyMac does not believe there is currently additional information not already provided in this statement and in the Complaint that would be helpful to the Court in considering PennyMac's RICO claim.

DATED:  December 31, 2019.

**RESPECTFULLY SUBMITTED,**

/s/ *Cheryl S. Chang*
Cheryl S. Chang
Harris F. Powers III
Steven C. Cookston

Upshaw, Williams, Biggers &
Beckham, LLP
309 Fulton Street
Post Office Drawer 8230
Greenwood, MS 38935-8230
Telephone No.: 662-455-1613

*Counsel for Plaintiff*

Cheryl S. Chang (admitted *pro hac vice*)
Nicole Bartz Metral (admitted *pro hac vice*)
Jessica A. McElroy (*pro hac vice* pending)

BLANK ROME LLP
2029 Century Park East, 6th Floor
Los Angeles, California 90067-2907
Telephone: 424.239.3400
Facsimile:  424.239.3434

*Counsel for Plaintiff*

136044.01923/122345755v.2