SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**

FEB *10* 2020

ARTHUR JOHNSTON
BY_____ DEPUTY

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

PENNYMAC LOAN SERVICES, LLC,

       *Plaintiff(s),*

  v.

SITCOMM ARBITRATION ASSOCIATION,
MARK MOFFETT, SANDRA GOULETTE,
RONNIE KAHAPEA, MARK JOHNSON,
KIRK GIBBS, and ALARIC SCOTT

       *Defendant(s).*

Civil Action No. 2:19-CV-00193-KS-MTP

**ANSWER TO COMPLAINT, JURY
TRIAL DEMAND, NO CONSENT TO
MAGISTRATE, REQUEST FOR STAY 9
U.S.C. SECTIONS 3 & 4.**

**SECOND NOTICE**

    COMES NOW,  Defendant Sandra Goulette, in the above-captioned cause of action and

answers the Complaint of Plaintiff(s) by generally denying all of the allegations set forth in the

Complaint.

    1.  This matter stems from the Federal Arbitration Act (Hereinafter "F.A.A."), laws and

governing are those specified via the intentions of the United States Congress.[1]  See also: F.A.A.

9 U.S.C. § 1-16.

---

[1] *Henry Schein Inc. v. Archer & White Sales, Inc.*, (2019); *First Options of Chicago v. Kaplan*, 514
U.S. 938 (1995); *Southland Corp. v. Keating*, 465 U.S. 1 (1984).

1 | P A G E

2. "Therefore, absent a clear and unmistakable designated intent that the non-federal arbitrability law applies, "federal law governs the arbitrability question by default because the agreement is covered by the F.A.A."[2]

3. The Plaintiff(s), by and through its (3rd party) attorneys have admitted the following:

a. That the Plaintiff(s) (Pennymac Loan Services, LLC) had a prior relationship with at least two (2) of the party Defendant(s) (Kahapea & Johnson) (See: Para. 25, 26,36, 37 of Complaint).

b. That Plaintiff(s) began serving a loan, whereby the Defendant(s) notified the Plaintiff(s) of changes to the original contract.

c. The Plaintiff(s) admitted to receiving a response in the form of a Conditional Acceptance to the offer to re-contract via change in the terms of the original contract. Restatement (Second) of contract, recognizes this principal respecting the valid nature of contract. General Principals of Contract Law.

d. The Plaintiff(s) were given an opportunity to respond and reject/disaffirm the agreement and by their own admission: "29. Plaintiff did not respond..." "39. Plaintiff did not respond..." (Paragraphs 29 & 30 of Complaint). See: Jiangsu Changlong Chem. Co., Inc. v. Burlington Bio-Medical & Science Corp., 399 F.Supp.2d 165, 168 which sets the principal standard for Federal Arbitration Hearing Notification, "Notice reasonably calculated to inform of the proceedings and an opportunity to be heard."

---

[2] *Brenman v. Opus Bank*, 796 F.3d 1125, 1129 (9th Cir. 2015) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); *Cape Flattery Ltd. V. Titan Maritime*, 647 F.3d 914, 921 (9th Cir. 2011).

4. Consistent with this standard, the courts have continuously held that "'Claimant provided Respondent with the opportunity to participate (electronically) in the arbitration in a meaningful manner and the Respondent simply chose (as was admitted by the Plaintiffs) not to participate in the arbitration proceedings."[3]

## II.   PERFORMANCE AGREEMENT

5. The contract was timely presented and based on the actual conduct and performance by the parties which Plaintiff admits to having 1) knowledge of contract, to being 2) competent to enter into such an agreement, that the 3) contract involved consideration, value and was 4) between two (2) or more parties. The conduct or 5) performance contract had an expiration date and was workable, doable, unconsciousable.

6. To lend jurisdiction to the Federal Arbitration Act, the contract contained a commerce clause, as well as an arbitration clause as required via 9 U.S.C. § 1, 2.[4]

7. Challenges to the contract as a whole, per a standard of review as stated, "the issue of whether the underlying contract that is the subject of the arbitrated dispute was... fraudulently induced [is] a matter to be determined exclusively by the arbitrators."[5]

---

[3] *Tianjin Port Free Trade Zone International Trade Service Co., v. Tiancheng ChemPharm, Inc.* New York (2018).

[4] 9 U.S.C. § 1. "Maritime transactions", as herein defined, means charter parties, bills of lading of water carriers, agreements relating to wharfage, supplies furnished vessels or repairs to vessels, collisions, or any other matters in foreign commerce which, if the subject of controversy, would be embraced within admiralty jurisdiction; "commerce", as herein defined, means commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation, but nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."

[5] *Tianjin Port Free at 5*; See also: *Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 315 (2d. Cir. 1998); See also: *Prima Paint Corp. v. Flood*, et al., 388 US 395, 403-04 (1967).

3 | P A G E

### III. OPPORTUNITY AND CHOICE

8. The law holds that a party must be notified and "that due process requires, at a minimum, that an individual be given a meaningful opportunity to be heard...that thee hearing required by due process is subject to waiver (a party electing to not appear as is the case at present) and is not fixed in form, does not affect its root requirement that an individual be given an opportunity for a hearing..." (Emphasis ours).[6]

9. The Supreme Court has consistently held to this standard and have noted: "we said that the right to be heard has little value or worth unless one is informed that a matter is pending and can choose for himself whether to appear or default, acquiesce or contest." 339 US at 304, 306; 395 US 337, 339-40.

10. By the Plaintiff's own admission's "the Plaintiff did not respond, this was by said admissions deliberate, they are foreclosed, they whether or not they recognized illegitimately or not, if they valued their interests should have responded.

11. Plaintiff(s) stated that the arbitration notice (which was on also on a disc and contained a copy of notices, request for arbitration disposition, notice of fault and opportunity to cure and notice of default) did not document or provide details of the issues, however; Paragraph 31 documented the evidence and claims by Claimants. The notice of hearing included the statement "the arbitrator will presume your acceptance and may proceed to review the supporting documentation electronically and issue a binding decision." The Sitcomm Arbitration Association did not conduct the arbitration but assigned the arbitration to an independent neutral.

---

[6] *Randone v. Appellate Department*, 1971, S.C 3d 536, 550.

Sitcomm Arbitration Association only acted as certifier of the original final award issuance and process server and had no direct input upon the hearing (electronic) and/or the deliberation. The power to arbitrate to arbitrate originates from the contract, the contract allows for appointment and/or assignment of an independent neutral.

12. The Plaintiffs assert they were deceived, misled, defrauded, yet they bear the burden of providing proof, yet they list indirect quotes, "the Plaintiff is informed and believes that…" On over ten (10) different occasions they offer/proffer this vague statement, no firsthand account, or documentation of actual damage suffered and thus failed to state a claim whereby the F.A.A. offers relief.

13. This is a civil complaint, a lawsuit, and per the Constitution, a controversy; affording us THE RIGHT TO BE BEFORE AN ARTICLE 3 JUDGE, WE DO NOT CONSENT TO A MAGISTRATE.

14. We have the right to a jury trial, civil RICO without evidence, claim of defaming, in 2008 the country and world experienced a financial MELTDDOWN, a Global Crisis, as these financial institutions admitted to the fraudulent "Toxic Mortgage Asset," "credit default schemes," several executives pled guilty, some went to jail, et they settled for 23 billion dollars, received 798 billion in bailouts and yet the Plaintiffs state that they are being defrauded, damaged, economically injured, if this matter is to proceed we choose to seek a stay pending arbitration, as this complaint violates the "Estoppel Clause," the "Arbitration Clause," the "F.A.A.," and the Due Process Rights (along with equal protection rights of the Defendant(s).

### III. APPLICATION OF THE FEDERAL ARBITRATION ACT

15. Over the course of the past several decades, Supreme Court decisions have been held to ensure that the F.A.A.'s 'pro-arbitration mandate' must be broadly interpreted and universally

5 | P A G E

applied by both state and federal courts.  It is the F.A.A. that provides the legislative framework for the enforcement of arbitration agreements and arbitral awards in the United States.

16.  Passed in 1925, the F.A.A. was intended to ensure agreements to arbitrate in maritime transactions and commerce were 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'[7]

17.  The F.A.A.'s implementing provisions provide that if a party to a contract containing an arbitration clause initiates contract-related litigation, either of the parties may ask the court to 'stay' or 'compel' the other party to resolve the dispute through arbitration.[8]

18.  Time and time again, the Supreme Court has clarified and held that many questions as to the validity and scope of an arbitration agreement should be decided by the arbitrators, rather than the court.  The F.A.A. also empowers arbitrators to call third-party witnesses, compel them to appear, and hold such witnesses in contempt if they fail to comply.[9]

-------------------

[7] 9 U.S.C. § 2. "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

[8] 9 U.S.C. § 4. "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement…"

[9] 9 U.S.C. § 7. "The arbitrators selected either as prescribed in this title or otherwise, or a majority of them, may summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case.  The fees for such attendance shall be the same as the fees of witnesses before masters of the United States courts.  Said summons shall issue in the name of the arbitrator or arbitrators, or a majority of them, and shall be signed by the arbitrators, or a majority of them, and shall be directed to the said person and shall be served in the same manner as subpoenas to appear and testify before the court; if any person or persons so summoned to testify shall refuse or neglect to obey said summons, upon petition the United States district court for the district in which such arbitrators, or a majority of them, are sitting may compel the attendance of such person or persons before said arbitrator or arbitrators, or punish said person or persons for contempt in the same manner provided by law for

6 | P A G E

19.  The F.A.A. provides the procedures by which the prevailing party may seek to enforce an arbitral award[10] and the procedures by which the non-prevailing party may seek to vacate the award.[11]  Additionally, the F.A.A. prescribes limited grounds under which a court may modify an arbitral award.[12]

20.  In 1976, Chief Justice Warren Burger called for 'a reappraisal of the values of the arbitration process,' and held that '[t]here is nothing incompatible between efficiency and justice,' and further recommended the use of 'the well-developed forms of arbitration' to settle disputes.[13]  In 1984, the Supreme Court declared that Congress's essential purpose in enacting

---

securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States."

[10]  9 U.S.C. § 9. "If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.  If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.  Notice of the application shall be served upon the adverse party, and thereupon the court shall have jurisdiction of such party as though he had appeared generally in the proceeding.  If the adverse party is a resident of the district within which the award was made, such service shall be made upon the adverse party or his attorney as prescribed by law for service of notice of motion in an action in the same court.  If the adverse party shall be a nonresident, then the notice of the application shall be served by the marshal of any district within which the adverse party may be found in like manner as other process of the court."

[11]  9 U.S.C. § 10(a)(1)-(4).  "(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration-- (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

[12]  9 U.S.C. § 11(a)-(c).  "In either of the following cases the United States court in and for the district wherein the award was made may make an order modifying or correcting the award upon the application of any party to the arbitration-- (a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award. (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted. (c) Where the award is imperfect in matter of form not affecting the merits of the controversy."

[13]  Agenda for 2000 A.D. – Burger, Warren E. *A Need for Systematic Anticipation*, 70 F.R.D. 79, 94 (1976).

7 | P A G E

the F.A.A. was to overcome the 'old [judicial] hostility toward arbitration.'[14]  Since this time, the Court has issued a multitude of decisions implementing a broad 'national policy favoring arbitration'[15] under the F.A.A. that requires courts in the United States to strictly enforce agreements to arbitrate and arbitral awards, while limiting judicial interference with the arbitral process.

21.  The Supreme Court has discussed the F.A.A.'s broad reaching power.  Declared that the F.A.A. is a 'congressional declaration of a liberal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary,' and that 'as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'[16]  Further, the Court held that the FAA not only controls state courts, it also preempts state law that would bar the enforcement of an arbitration agreement.  "The Arbitration Act creates a body of federal substantive law... applicable in state and federal court'[17] and 'In enacting [the F.A.A.], Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration,'[18] and 'In holding that the Arbitration Act preempts a state law that withdraws the power to enforce arbitration agreements, we do not hold that [state courts are bound by the act's procedural rules].'[19]

---

[14] *Southland Corp. v. Keating*, 465 U.S. 1, 14 (1984).
[15] Ibid.
[16] *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983).
[17] *Southland Corp. v. Keating*, 465 U.S. 1, 14 (1984).
[18] Ibid.
[19] Ibid.

22.   Any challenges to a contract  that contain an arbitration clause greatly curtails a court's involvement.[20]  In a contractual agreement that contains an arbitration clause, that agreement is always severable from the rest of the contract and is the only part of the agreement that a court may consider.[21]  In other words, any challenge to the contract must be sent to the arbitrator to decide as explained by the Court:  '…A challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator.'[22]

23.   As time went on, the Supreme Court continued to uphold an arbitrator's power to resolve contract challenges raised by parties seeking judicial review of such challenges.  The Court used the severability doctrine to enforce a sub-clause of a challenged arbitration agreement stating that the arbitrator, rather than the courts, would decide all questions of arbitrability, including any gateway challenge to the validity of the arbitration agreement itself.[23]  Further, the Court underlined the breadth of the severability doctrine by holding that the arbitration agreement's sub-clause to 'arbitrate arbitrability' was severable from the greater 'agreement to arbitrate,' and the threshold issue of arbitrability must be decided by an arbitrator.[24]

24.   The Courts have very limited grounds to vacate or modify arbitration awards as the Supreme Court has reinforced the F.A.A.'s 'liberal policy favoring arbitration' when considering a court's power to vacate an arbitral award[25] (noting that the 'national policy favoring arbitration' requires 'just the limited review needed to maintain arbitration's essential virtue of

---

[20] *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967).
[21] *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006).
[22] Ibid.
[23] *Rent-A-Center, West v. Jackson*, 130 S. Ct. 2772, 2779 (2010).
[24] Ibid.
[25] *Hall St. Assoc., LLC v. Mattel*, 552 U.S. 576, 588 (2008).

resolving disputes straightaway').[26]  A party seeking to have an arbitral award vacated must

apply to the courts and the courts may only vacate arbitral awards in four very limited

circumstances.[27]  A party seeking to vacate an arbitral award may move the appropriate court in

the following circumstances: a.  Fraud by the opposing party in securing the award;[28] b.

Corruption or evident partiality to one of the parties;[29] c.  Other misconduct in granting the

award;[30] and d.  Grossly 'exceed[ing] its powers' in issuing the award.[31]  The Supreme Court has

held that the four grounds for vacatur enumerated by the F.A.A. are 'exclusive.'[32]

    25.  Of equal importance, the Second Circuit noted, "Whatever 'final' means, it at least

expresses the intent of the parties that the issues joined and resolved in the arbitration may not be

tried de novo in any court, state or federal."[33]  Whereas the parties agreed that arbitration  would

be final and binding, and where the appellant invoked the jurisdiction of the federal court by

initially filing a complaint on the underlying contract, the district court was authorized to enter

judgment on the award.[34]

---

[26] Ibid.
[27] *Karaha Bodas v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 500 F.3d 111, 115 n.1 (2d Cir. 2007).
[28] 9 U.S.C. § 10(a)(1). "(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration-- (1) where the award was procured by corruption, fraud, or undue means."
[29] 9 U.S.C. § 10(a)(2). "(2) where there was evident partiality or corruption in the arbitrators, or either of them."
[30] 9 U.S.C. § 10(a)(3). "(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or"
[31] 9 U.S.C. § 10(a)(4). "(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."
[32] *Stolt-Nielsen SA v. Animal Feeds Int'l*, 559 U.S. 662 (2010).
[33] *I/S Stavborg v. National Metal Converters*, 500 F.2d 424, 427 (2d Cir. 1974).
[34] *T R Enterprises v. Continental Grain Co.*, 613 F.2d 1272, 1278-79 (5th Cir. 1980); *Accord Place St. Charles v. J.A. Jones Constr.*, 823 F.2d 120, 124 (5th Cir. 1987).

26.  **The F.A.A.'s specific three (3) month time-frame clearly states, "Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered..."[35]  Many Courts have held that a party's failure to move to vacate an arbitral award within the three-month limitations period bars him from raising the alleged invalidity of the award as a defense in opposition to a motion to confirm the award.[36]  In this instant matter, Plaintiff(s) have failed to move to vacate the award within three months of the time the award was issued and as such Plaintiff(s) are barred from raising any 9 U.S.C. § 10, 11 defenses.**

27.  Clearly, the F.A.A. was enacted to effectuate the speedy resolution of disputes and the F.A.A. allows arbitration to proceed with only a summary hearing and with restricted inquiry into factual issues.[37] Upon completion of arbitration, judicial review of the arbitration process and of the amount of the award is narrowly limited.[38]

IV.    **ARBITRAL IMMUNITY**

28.  "Arbitration is  a matter of contract," The United States has adopted the "Restatement (Second) of  contract"  Lets also highlight U.C.C. § 2 208, 209 which references performance/conduct contracts.  In doing so, any issues  of arbitrator misconduct must be based on the contract and the F.A.A.

---

[35] 9 U.S.C. § 12.
[36] *Cullen v. Paine, Webber, Jackson Curtis, Inc.*, 863 F.2d 851, 854 (11th Cir. 1989).
[37] *O.R. Securities*, 857 F.2d at 747-48.
[38] *Diapulse Corp.*, 626 F.2d at 1110.  See also *Amicizia Societa Navegazione v. Chilean Nitrate and Iodine Sales Corp.*, 274 F.2d 805, 808 (ed Cir.)

29. The general rule of arbitral immunity "is that neutral arbitrators (Goulette, Moffett & Gibbs) are absolutely immune from arbitral acts in cases over which they have jurisdiction. As the Arbitrator functions in a way comparable to a judge, the Arbitrator's immunity will extent at least as far as a judge would. Over the course of the last century, American courts have responded to actions brought against arbitrators by developing a doctrine of arbitral immunity. With very few exceptions, that doctrine protects arbitrators both from personal liability for their actions[39] and from compelled involvement in postaward legal actions. The Supreme Court expressed the doctrine of judicial immunity most forcefully in the 1871 case of *Bradley v. Fisher*: "[J]udges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, or are alleged to have been done maliciously or corruptly."[40] The Supreme Court has strictly adhered to this rule ever since,[41] even to the point of taking an extraordinarily narrow view of the "judicial act" limitation on immunity: an act is judicial, said the Court in *Stump v. Sparkman*[42] in 1978, if it is one "normally performed by a judge."

30. Accordingly, courts have extended a quasi-judicial immunity to the quasi-judicial acts of those serving as neutrals between disputing parties. As such, jurors are absolutely immune from liability, in the words of an English treatise, "lest they should be biased with the

---

[39] Rubin, *Arbitrators' Immunity from Damage Claims*, in Arbitration 1986: Current and Expanding Roles, Proceedings of the 39th Annual Meeting, National Academy of Arbitrators, ed. Walter J. Gershenfeld (Washington: BNA Books, 1987), 19.
[40] 80 U.S. (13 Wall.) 335, 351 (1871).
[41] E.g., *Pierson v. Ray*, 386 U.S. 547 (1967); Stump v. Sparkman, 435 U.S. 349 (1978).
[42] *Supra* note 41.

12 | P A G E

fear of being harassed by a vicious suit for acting according to their consciences."[43]  Hence,

referees and masters perform judicial tasks and possess a similar immunity.[44]  The most

frequently cited initial case involving arbitrator immunity was in 1880 in the Iowa decision of

*Jones v. Brown*[45]  Since this time, arbitral immunity has been the almost unquestioned rule in

commercial and labor arbitration.[46]

31.   Centuries of case law can be cited in regard to arbitral immunity that the Supreme

Court continues to uphold.  A common practice, to date; if the imposition of sanctions in cases

involving arbitral issues.  Rule 11 has virtually abolished any remaining judicial hesitation to

award sanctions.  Some courts, notably the Court of Appeals for the Seventh Circuit, now award

them with a vengeance.  In *Dreis & Krump Mfg. Co. v. Machinists District* 8,[47] Judge Posner

awarded sanctions against a comply that filed an untimely and frivolous action to set aside an

arbitration award.  Rules to discourage groundless litigation, he warned, "are being and will

continue to be enforced in this circuit to the heed…Lawyers practicing in the Seventh Circuit,

take heed!"[48]  Judge Matthew Perry of the District Court for the District of South Carolina relied

on arbitral immunity, denied the company's motion to enforce its subpoena, and found that the

---

[43] 1 Hawkins, Pleas of the Crown 349 (6th ed. 1787), quoted in *Yaselli v. Goff*, 12 F.2d 396, 403 (2d Cir. 1926), *aff'd*, 275 U.S. 503 (1927).  See also *Imbler v. Pachtman*, 424 U.S. 409, 423 n.20 (1976).
[44] *Butz v. Economou*, 438 U.S. 478, 511 (1978).
[45] 54 Iowa 74, 6 N.W. 140 (1880). Jones was not, in fact; the first American case on arbitral immunity. The Defendant in *Shiver v. Ross*, 3 S.C.L. (1 Brev.) 293 (1803), sought leave to examine an arbitrator about an alleged error. The district court refused the request, stating that only the voluntary statements of a majority of the arbitrators could be used to impeach an award, and the Constitutional Court affirmed.  Arbitral immunity was applied but without use of the term.
[46] *Hoosac Tunnel, Dock & Elevator Co. v. O'Brien*, 137 Mass. 424 (1884); *Babylon Milk & Ice Cream Co. v. Horvitz*, 151 N.Y.S.2d 221 (Sup. Ct. 1956), *aff'd mem.*, 4 A.D.2d 777, 165 N.Y.S.2d 717 (1957).
[47] 802 F.2d 247, 123 LRRM 2654 (7th Cir. 1986).
[48] Id. At 255-56.  See also *Bonds v. Coca Cola Co.*, 806 F.2d 1324, 123 LRRM 3284, 3286 (7th Cir. 1986); *Plumbers Local 32 v. Lockheed Shipbuilding Co.*, 124 LRRM 2552 (W.D. Wash. 1986).
13 | P A G E

motion was not "substantially justified" as required by Rule 37(a)(4); he therefore awarded attorney's fees.[49]

32. In commercial arbitrations (F.A.A. applicable) all arbitrators, however chosen; are supposed to act as neutrals. Accordingly, party-appointed commercial arbitrators are entitled to and have received the full protection of arbitral immunity. One of the primary reasons for arbitral immunity, preservation of arbitral independence, secondary is recruitment and decisional finality. See: 552 F.2d 778, 781 (1977); 586 F. Supp. 545, 550 (N.D. 111 1984); 451 F. Supp. 522, 527 (E.D. Pa. 1978); 123 LRRM 2262 (N.D. Ga. 1985).

33. Each claim and/or reference evidences the arbitrator acting only when engaged to act and only within the limits of the F.A.A. and the contract between the parties. The award amount is agreed upon by the parties within the contract per the terms of the contract. The Arbitrators are not being accused of an obvious miscalculation by the Plaintiff(s) thus the F.A.A. renders such a claim Moot.

34. Therefore, Defendant requests that this Court order sanctions against the Plaintiff(s) amounting to legal fees, attorney fees and all other expenses that may arise.

The aforementioned is true and wholly accurate and presented this 06th day of February 2020 as such, so help me God.

Sandra Goulette

February 06, 2020.

---

[49] *Yost v. Torok*, 256 Ga. 92 (1986). See also *Northern Cal. Dist. Council of Laborers v. Robles Concrete Co.*, 100 ALC ¶10,943 (Cal. App. 1984). *Liggett Group v. Bakery, Confectionery & Tobacco Workers Local 176-T*, *supra* note 113, slip op. at 10-13. A few months after this decision another federal court awarded arbitrator Stephen Goldberg attorney's fees. *Dugger v. National Elevator Indus.*, No. 86 C 740 (N.D. Ill., Jan. 6, 1987).

14 | P A G E

**CERTIFICATE OF SERVICE**

I, <u>Sandra Goulette</u>, being at or above the age of 18; of the majority and a citizen of the United States of America, did mail the documents entitled:

Answer to Complaint, Jury Trial Demand, No Consent to Magistrate, Request for Stay 9 U.S.C. Sections 3 & 4.  Second Notice.  Exhibits and Affidavit.

To the following:

1.  United States District Court
    Southern District of Mississippi
    701 Main Street                                  **EXPRESS MAIL**
    Hattiesburg, Mississippi 39401        U.S.P.S. Tracking 9470111699000689138840

2.  Upshaw, Williams, Biggers & Beckham, LLP
    309 Fulton Street, P.O. Drawer 8230
    Greenwood, Mississippi 38935-8230      U.S.P.S. Tracking 9405511699000689138950

Via United States Postal Service Priority & Overnight Mail by affixing the proper postage and depositing it with the local postal carrier, also being of the age of the majority, and not a party to this action who upon receipt guarantees delivery as addressed and/or local drop box guaranteeing the same as prescribed in law. If called upon I provide this sworn testimony based on first-hand knowledge of the aforementioned events attesting and ascribing to these facts on this day February 07, 2020.

Sandra Goulette

February 07, 2020

15 | P A G E