

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

| | |
|---|---|
| PENNYMAC LOAN SERVICES, LLC,<br><br>*Plaintiff(s),*<br><br>v.<br><br>SITCOMM ARBITRATION ASSOCIATION, MARK MOFFETT, SANDRA GOULETTE, RONNIE KAHAPEA, MARK JOHNSON, KIRK GIBBS, and ALARIC SCOTT<br><br>*Defendant(s).* | Civil Action No. 2:19-CV-00193-KS-MTP<br><br>**DEFENDANT SANDRA GOULETTE'S OPPOSITION TO PLAINTIFF(S) MOTION TO STRIKE** |

**DEFENDANT SANDRA GOULETTE'S OPPOSITION TO PLAINTIFF(S) MOTION TO STRIKE**

COMES NOW, Defendant Sandra Goulette, with this Opposition to Plaintiff(s) Motion to Strike and states as follows:

1. Defendant Sandra Goulette (Hereinafter "Goulette") did answer the Complaint in a timely manner and provided such information with Certificates of Service to this Court as well as to the Counsel on record on two separate occasions.

2. The Affidavit presented by the Plaintiff(s) in this matter does not contain firsthand and/or personal knowledge and was not executed after being fully sworn and/or deposed as evidenced by lack of any witness.

3. It is absurd to think that Goulette did not file responses in a timely manner. Furthermore, it is absurd that counsel for Plaintiff(s) are permitted to submit an Affidavit that alleges firsthand and/or personal knowledge in the above referenced matter.  Not only is the

1 | P A G E

"personal" and "firsthand" knowledge incorrect, but it also lacks any substantiated evidence as to the alleged claims.

4. Plaintiff(s) also allege that a Notice of Default was granted by this Court, however; Goulette never received such notification or order either from the Court or from the Plaintiff(s).

5. Plaintiff(s) have done nothing but submit alleged allegations to this Court which do not contain any facts or evidence that would entitle Plaintiff(s) to some form of legal remedy. The court does not accept conclusory allegations as true. *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

6. Furthermore, Defendant Goulette's name as well as the other individuals mentioned should be promptly removed from the above referenced matter. The Federal Arbitration Act (Hereinafter "Act") only allocates to the courts (9 U.S.C. § 7)[1] the duty to compel compliance in the instance that an arbitrator issues a summons or to punish for a failure to comply with a summons.

7. Absent from the Act is any provision for the court to intervene in the arbitral process itself. Such is not an accident as the Second Circuit Court has observed:

> Policy considerations, no less than the language of the [FAA]
> and precedent construing it, indicate that district courts should

---

[1] 9 U.S.C. § 7. "The arbitrators selected either as prescribed in this title or otherwise, or a majority of them, may summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case. The fees for such attendance shall be the same as the fees of witnesses before masters of the United States courts. Said summons shall issue in the name of the arbitrator or arbitrators, or a majority of them, and shall be signed by the arbitrators, or a majority of them, and shall be directed to the said person and shall be served in the same manner as subpoenas to appear and testify before the court; if any person or persons so summoned to testify shall refuse or neglect to obey said summons, upon petition the United States district court for the district in which such arbitrators, or a majority of them, are sitting may compel the attendance of such person or persons before said arbitrator or arbitrators, or punish said person or persons for contempt in the same manner provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States."

> not be called upon to review preliminary rulings of arbitrators. Most of the advantages inherent in arbitration are dissipated by interlocutory appeals to a district court....[A] district court should not "hold itself open as an appellate tribunal" during an ongoing arbitration proceeding, since applications for interlocutory relief "result only in a waste of time the interruption of the arbitration proceeding, and... delaying tactics in a proceeding that is supposed to produce a speedy decision."

*In re Arbitration Between Michaels & Mariform Shipping, S.A.*, 624 F.2d 411, 414 (2d. Cir. 1980), *quoting Compania Panemena Maritima San Gerassimo, C.A. v. J.E. Hurley Lumber*, 244 F.2d 286, 288-89 (2nd Cir. 1957).[2]

8. Hence, the Act does not grant the court jurisdiction over arbitration associations or arbitrators. It is clear that the Act affirmatively provides a post-award remedy, whereas a court may review and vacate an arbitration ruling based solely upon four (4) main factors which are specifically spelled out in the Act.[3]

9. Of great importance are the facts that arbitrators and arbitral institutions are immune

---

[2] *Also see: Old Republic Ins. Co. v. Meadows Indem. Co., Ltd.*, 870 F.Supp. 210, 211 (N.D. Ill. 1994) ("[T]he Act limits a court's involvement to the following situations: compelling arbitration, appointing an arbitrator..., confirming an arbitration award... and vacating an arbitration award.")(citations omitted); *In re Arbitration Between Northwestern Nat'l Ins. Co. and Gen. Mexico Compania de Seguros, S.A.*, 2000 WL 520638, *8 n.9 (S.D.N.Y. 2000)(stating that the prohibition against court review of interlocutory arbitration rulings is a matter of black letter law under the FAA); and *In re Arbitration Between Michaels and Mariforum Shipping*, 624 F.2d at 414:

> Under the Federal Arbitration Act, **a district court does not have the power to review an interlocutory ruling by an arbitration panel.** The language of the Act is unambiguous: it is only after an award has been made by the arbitrators that a party can seek to attack the arbitrators' determinations in court, by moving either to vacate the award, or modify or correct it....

[3] Sections 9, 10, 11, and 12 of the FAA provide the mechanisms whereby parties to an arbitration may obtain judicial review in the federal district court in the district in which the arbitration award is made through a motion to vacate the award. 9 U.S.C. §§ 9, 10, 11, 12; *Corey*, 691 F.2d at 1212.

3 | P A G E

from suit in the performance of their functions. The Plaintiff(s) alleged claims against the Sitcomm Arbitration Association (Hereinafter "SAA") and the Arbitrators (Subcontractors) are barred by the doctrine of arbitral immunity. The doctrine of arbitral immunity has long been recognized by the federal courts and applies to individual arbitrators as well as to the organizations that sponsor arbitrations, such as the SAA. The doctrine also immunizes both from civil liability for acts falling within the scope of the arbitral process even if the alleged misadministration arises from the sponsoring organizations' violation of its own rules or the bias or wrongdoing of the arbitrator or sponsoring organization. *See, e.g., New England Cleaning Serv., Inc. v. American Arbitration Ass'n*, 199 F.3d 542, 545 (1st Cir. 1999) (holding that the AAA's administrative acts of which the plaintiff complained, including the selection of the arbitrator, were sufficiently related to the arbitration to be protected by arbitral immunity).[4] This immunity is necessary to shield arbitrators and sponsoring organizations from bias or intimidation caused by the fear of a lawsuit arising out of the exercise of official functions. *Galuska*, 2000 WL 347851 at *2; *New England*, 199 F.3d at 545; *Olson*, 85 F.3d at 382-283; *Corey*, 691 F.2d at 1211.

10. The courts have identified a range of public policy reasons for providing immunity to

---

[4] *See also, Olson v. Nat'l Ass'n of Sec. Dealers*, 85 F.3d 381, 382-383 (8th Cir. 1996) (holding that a sponsoring organization is immune from civil liability for improperly selecting an arbitration panel, even when the selection violates the organization's own rules); *M.H. Alexander*, 2001 WL 868823 at *3-4 (holding that the expansive scope of arbitral immunity protects any violations made by the AAA of its own internal rules); *Honn v. Nat'l Ass'n of Sec. Dealers, Inc.*, 182 F.3d 1014, 1018 (8th Cir. 1998) (holding that even if the NASD carried out its functions improperly, the NASD is still protected by arbitral immunity because the acts upon which the plaintiff's claims were based were taken while NASD was carrying out its normal administrative functions); *Austern v. Chicago Board Options Exchange*, 898 F.2d 882, 886 (2nd Cir. 1990) (holding that arbitral immunity applied to the alleged improper selection of an arbitration panel); *Corey*, 691 F.2d at 1208-11 (holding that arbitral immunity applied to allegations of bias and wrongdoing of the arbitrator and the sponsoring organization); *Galuska v. New York Stock Exchange*, 2000 WL 347851, *2 (7th Cir. 2000).

4 | P A G E

arbitrators and arbitral institutions, all of them based ultimately on the "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24. Among the policy reasons discussed by the Courts of Appeals are as follows:

    a. "The functional comparability of the arbitrators' decision-making process and judgments to those of judges and agency hearing examiners generates the same need for independent judgment, free from the threat of lawsuits." *Corey*, 691 F.2d at 1211; *quoted in Austern*, 898 F.2d at 886.

    b. "As with judicial and quasi-judicial immunity, arbitral immunity is essential to protect the decision-maker from undue influence and [to] protect the decision-making process from reprisals by dissatisfied litigants." *Id.*; *New England*, 199 F.3d at 545; *Waysl, Inc. v. First Boston Corp.*, 813 F.2d 1579, 1582 (9th Cir. 1987).

    c. "[I]ndividuals…cannot be expected to volunteer to arbitrate disputes if they can be caught up in the struggle between the litigants and saddled with the burdens of defending a lawsuit. Defendants have no interest in the outcome of the dispute between [the parties], and they should not be compelled to become parties to that dispute." *Tamari v. Conrad*, 552 F.2d 778, 781 (7th Cir. 1977).

    d. "Not least, failure to extend immunity to the AAA in these circumstances could discourage it from sponsoring future arbitrations. <u>Reluctance by the AAA or similar organization to arrange arbitrations would impede the implementation of federal policy favoring arbitration of labor disputes</u>." *New England*, 199 F.3d at 546.

11. Arbitral immunity is not only limited to the protection of arbitrators and institutions from lawsuits challenging decisions on the merits, but also from lawsuits, such as the present one, challenging administrative acts such as those made here by the SAA. Accordingly, the First Circuit explained:

> A sponsoring organization's immunity extends to the administrative tasks it performs, insofar as these are integrally related to the arbitration…. [T]he AAA's administrative acts of… selecting an arbitrator, billing NECS for its services, and scheduling a hearing – were sufficiently related to the arbitration to be protected by immunity.

*New England*, 199 F.3d at 545.

5 | P A G E

## CONCLUSION

Pursuant to the Federal Arbitration Act, the doctrine of arbitral immunity and the agreement between the parties, the Plaintiff's Motion to Strike should not even be considered in this instant matter.

Executed on this 09th day of March 2020.

*Sandra Goulette*
Sandra Goulette

## CERTIFICATE OF SERVICE

I, <u>Sandra Goulette</u>, being at or above the age of 18; of the majority and a citizen of the United States of America, did mail the documents entitled:

**DEFENDANT SANDRA GOULETTE'S OPPOSITION TO PLAINTIFF(S) MOTION TO STRIKE**

To the following:

1. United States District Court
   Southern District of Mississippi
   701 Main Street
   Hattiesburg, Mississippi 39401

   *PRIORITY MAIL*
   U.S.P.S. Tracking 9405511699000618371175

2. Upshaw, Williams, Biggers & Beckham, LLP
   309 Fulton Street, P.O. Drawer 8230
   Greenwood, Mississippi 38935-8230

   *U.S.P.S. First Class Mail &*
   *Electronic via Court Clerk*

Via United States Postal Service Priority on this day March 09, 2020.

*Sandra Goulette*
Sandra Goulette

6 | PAGE