# Exhibit A

```
 1                IN THE UNITED STATES DISTRICT COURT

 2             FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

 3

 4   PENNYMAC LOAN SERVICES, LLC, )

 5            Plaintiff,         )

 6   vs.                         )  No. 2:19-cv-00193-KS-MTP

 7   SITCOMM ARBITRATION         )
     ASSOCIATION, MARK MOFFETT,
 8   SANDRA GOULETTE, RONNIE     )
     KAHAPEA, MARK JOHNSON, KIRK
 9   GIBBS, and ALARIC SCOTT,    )

10            Defendants.        )
     _____

11

12

13

14

15      REMOTE VIDEO RECORDED DEPOSITION OF SANDRA GOULETTE

16                    Laurel, Mississippi

17                  Tuesday, December 8, 2020

18                        Volume I

19

20

21

22   Reported by:
     LISA ANDREASEN
23   CSR No. 9584

24   Job No. 4367213

25   PAGES 1 - 86
```

Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT

 2           FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

 3

 4   PENNYMAC LOAN SERVICES, LLC, )

 5            Plaintiff,          )

 6   vs.                         )  No. 2:19-cv-00193-KS-MTP

 7   SITCOMM ARBITRATION          )

     ASSOCIATION, MARK MOFFETT,

 8   SANDRA GOULETTE, RONNIE      )

     KAHAPEA, MARK JOHNSON, KIRK

 9   GIBBS, and ALARIC SCOTT,     )

10            Defendants.         )

     _____

11

12

13

14           Remote video recorded deposition of SANDRA

15   GOULETTE, Volume I, taken on behalf of Plaintiff with

16   the witness located in Laurel, Mississippi, beginning

17   at 10:46 a.m. PST and ending at 3:09 p.m. PST on Tuesday,

18   December 8, 2020, before LISA ANDREASEN, Certified

19   Shorthand Reporter No. 9584.

20

21

22

23

24

25
```

Veritext Legal Solutions
866 299-5127

```
 1    APPEARANCES:

 2

 3      For Plaintiff:

 4          BLANK ROME LLP

 5          BY:  CHERYL S. CHANG, ESQ.

 6          2029 Century Park East, 6th Floor

 7          Los Angeles, California 90067-2907

 8          424.239.3400

 9          Chang@blankrome.com

10          (Appearing Remotely)

11

12          UPSHAW, WILLIAMS, BIGGERS & BECKHAM, LLP

13          BY:  HARRIS F. POWERS III, ESQ.

14          309 Fulton Street

15          Post Office Drawer 8230

16          Greenwood, Mississippi 38935-8230

17          662.455.1613

18          Hpowers@upshawwilliams.com

19          (Appearing Remotely)

20

21    Also Present:  Jonathan Manuel, Videographer

22

23

24

25
```

Page 3

```
 1                          INDEX
 2    WITNESS                            EXAMINATION
 3    SANDRA GOULETTE
      Volume I
 4
                      (By Ms. Chang)              6
 5
 6                        EXHIBITS
 7    NUMBER           DESCRIPTION             PAGE
 8    Exhibit 1    Notice of Deposition          11
 9    Exhibit 2    November 17, 2020, letter and 14
10                 attachments to Defendants from
11                 Nicole Metral
12    Exhibit 3    December 3, 2020, letter and  15
13                 attachments to Sandra Goulette
14                 from Nicole B. Metral
15    Exhibit 4    Plaintiff PennyMac Loan Services, 16
16                 LLC'S, Amended Notice of Deposition
17                 of Defendant Sandra Goulette
18    Exhibit 5    December 8, 2020, Emails sent to 82
19                 Sandra Goulette
20
21                 INFORMATION REQUESTED
22                      PAGE    LINE
23                       30      18
24                       76      12
25

                                          Page 4
```

```
 1              Laurel, Mississippi, Tuesday, December 8, 2020

 2                          10:46 A.M.

 3

 4              THE VIDEOGRAPHER:  Good morning.  We are

 5     now going on the record at 10:46 a.m. on Tuesday,        10:46:38

 6     December 8, 2020.  This is the Media Unit 1 of the

 7     video recorded deposition of Sandra Goulette in the

 8     matter of PennyMac Loan Services, LLC, versus

 9     Sitcomm Arbitration Association filed in the United

10     States District Court for the Southern District of       10:47:02

11     Mississippi, Eastern Division.  This is Case Number

12     2:19-cv-00193-KS-MTP.

13              This deposition being is being held via

14     Zoom technology.  My name is Jonathan Manuel from

15     the firm Veritext Legal Solutions, and I'm the           10:47:28

16     videographer.  The court reporter is Lisa Andreasen

17     from firm Veritext Legal Solutions.  I am not

18     authorized to administer an oath.  I'm not related

19     to any party in this action nor am I financially

20     interested in the outcome.                                10:47:41

21              Counsel and all present in the room and

22     everyone attending remotely will now state their

23     appearances and their affiliations for the record.

24     If there are any objections to proceeding, please

25     state them at the time of your appearance beginning      10:47:51
```

Page 5

 1   with the noticing attorney.

 2         MS. CHANG:  Good morning.  My name is

 3   Cheryl Chang of Blank Rome, and I am counsel for the

 4   plaintiff in this action, PennyMac Loan Services.

 5         MR. POWERS:  Hello, this Harris Powers of      10:48:03

 6   the Upshaw Williams law firm in Greenwood,

 7   Mississippi on behalf of the plaintiff, PennyMac

 8   Loan Services, LLC, appearing as local counsel and

 9   noting that I am on Central Time, which is a

10   two-hour offset from the videographer.              10:48:20

11         THE VIDEOGRAPHER:  Would the court reporter

12   please swear in the witness.

13                      SANDRA GOULETTE,

14   having been administered an oath, was examined and

15   testified as follows:                               10:49:02

16                      EXAMINATION

17   BY MS. CHANG:

18     Q    Good morning, Ms. Goulette, or good

19   afternoon where you are in Laurel, Mississippi.  My

20   name, as I mentioned to you earlier today off the   10:49:05

21   record, is Cheryl Chang, and I represent the

22   plaintiff in this action, PennyMac Loan Services,

23   and my co-counsel, Harris Powers, is also on this

24   Zoom deposition.  I will be doing the majority of

25   the questioning, but if Mr. Powers has any           10:49:23

                                               Page 6

```
 1    additional questions, he will be asking you some, as

 2    well.  Is there any reason that you will not be able

 3    to answer my questions truthfully and accurately

 4    today?

 5         A    No.                                    10:49:35

 6         Q    All right.  One thing that I'm noticing

 7    right off the bat is that you are answering

 8    verbally, which you need to do in order for

 9    Ms. Andreasen to get your answers on the record.  If

10    you shake your head or nod your head, she cannot    10:49:53

11    record that in the transcript even though there is a

12    videographer today recording you on video.  So

13    anytime I ask a question, just please provide a

14    verbal answer such as a yes or a no or, you know,

15    your explanation of your answer.  Don't just nod or   10:50:09

16    shake your head.  Okay?

17         A    I understand.

18         Q    Are you currently taking any medications

19    that would affect your testimony today?

20         A    No.                                    10:50:19

21         Q    Are you under the influence of alcohol this

22    morning?

23         A    No.

24         Q    Any drugs?

25         A    No.                                    10:50:29
```

Page 7

1     Q     And are you feeling well enough to testify?

2     A     Yes, ma'am.

3     Q     You understand that you are under oath

4  today and even though we are not together in a room,

5  as we would normally be doing in a deposition          10:50:44

6  pre-COVID, that you are still under oath and are

7  required to answer questions truthfully?

8     A     I understand.

9     Q     You understand that I'll ask you questions,

10  and as you answer, the court reporter will be taking    10:51:00

11  down everything we say today.

12     A     I understand.

13     Q     And if at any point I ask a question or

14  Mr. Powers asks a question that you don't understand

15  or if because of tech difficulties we all have to      10:51:18

16  deal with these days, there's a gap in the sound or

17  the video, please let me know, and I will repeat the

18  question or have the court reporter read it back.

19     A     Okay.  That's fine.

20     Q     So if you answer a question once I ask it,     10:51:34

21  I will assume that you understood the question.

22  Okay?

23     A     Yes.

24     Q     All right.  As we're taking video of this

25  deposition today and we're also having the court        10:51:50

Page 8

1    reporter take down the questions and answers, we may

2    use your testimony at trial in this case or in

3    another hearing in this case.  Do you understand

4    that?

5         A    Yes.                                    10:52:03

6         Q    And you've been very good about this so

7    far, but when I ask questions, please don't

8    interrupt my questions.  Sometimes I'm mid thought

9    process in crafting my questions; so just try to

10   wait before I finish my question and then give your    10:52:21

11   answer.  And you've been doing that perfectly today.

12   Okay?

13        A    Okay.

14        Q    And in answering my questions, I don't want

15   you to ever guess.  I want you to give your best    10:52:34

16   estimate.  Do you understand the difference between

17   a guess and an estimate?

18        A    Yes, I do.

19        Q    Okay.  Great.  Now, we'll take a break

20   every so often to give everyone in this deposition    10:52:47

21   some comfort to use the rest room or take a break

22   and walk around.  If you need a break at any time

23   before, you know, I request one or anyone else

24   requests one, just let me know.

25        A    Okay.                                    10:53:02

                                                    Page 9

1      Q     And anytime you request a break, I will

2    definitely allow you to take a break.  Just try not

3    to ask for break in the middle of a question I'm

4    asking before you give an answer.  Okay?

5      A     Yes.                                    10:53:14

6      Q     All right.  Since we're on Zoom and we're

7    not physically together, and Ms. Andreasen did you

8    ask this off the record, but is there anyone else in

9    the room that you're in currently?

10     A     No.                                     10:53:28

11     Q     And are you testifying from what appears to

12   be your home office?

13     A     Yes.

14     Q     Other than what I believe is a laptop with

15   camera access that you're using right now, what     10:53:42

16   other electronic devices do you have in the room

17   with you?

18     A     This is not a laptop.  This is a desktop.

19   And as far as another -- another -- other

20   electronics are concerned, there is a printer, a     10:54:03

21   camera and a keyboard and a speaker.

22     Q     All right.  Do you have any cell phones

23   with you?

24     A     Yes.

25     Q     How many cell phones do you have with you   10:54:27

Page 10

1    in the room?

2        A    One.

3        Q    And can you confirm that you will refrain

4    from using that cell phone or any of the other

5    electronic devices other than your computer during        10:54:38

6    this deposition?

7        A    Yes.

8        Q    And can you confirm that you will not

9    communicate with anyone during the deposition by

10   instant message, Skype, chat, email, texting or any       10:54:52

11   other method while we're in this deposition?

12       A    Correct.  I will not do that.

13       Q    At any time you do need to take an

14   important phone call or respond to an urgent text,

15   just let me know that you need break, and you can do       10:55:10

16   that off the record, but just do not do that while

17   we're in session.  All right?

18       A    Okay.

19       Q    All right.  I'm going to start by showing

20   you an exhibit.  I'm going to share the screen.  So        10:55:22

21   let me know if this comes up for you.

22       A    Okay.

23            (Exhibit 1 was marked for identification.)

24   BY MS. CHANG:

25       Q    Can you see it?                                   10:55:31

                                                    Page 11

1        A     Yes.

2        Q     All right.  This I will represent as

3    Exhibit 1 is the deposition notice for your

4    deposition that was sent to you, Ms. Goulette, and

5    it's PennyMac's notice of deposition of Defendant          10:55:58

6    Sandra Goulette.  And originally this deposition was

7    set for December 7, 2020, at 11:00 a.m. Central

8    Time.  Did you receive this notice of deposition?

9        A     Yes.

10       Q     I'll scroll down just so you can see the          10:56:17

11   rest of it.  So let me know if you want me to stop

12   at any point.

13             All right.  So this is a 10-page or an

14   11-page document that includes the proof of service

15   and the FedEx delivery confirmation.  And I'm          10:57:13

16   marking this as Exhibit 1 to your deposition.  And

17   you recognize this document.  Yes, Ms. Goulette?

18       A     Correct.

19       Q     Do you recall how you received this notice

20   of deposition?          10:57:28

21       A     I either received it via first-class mail

22   or Federal Express service.

23       Q     What was that last part?  You said it was

24   either by first-class mail or --

25       A     Federal Express service.          10:57:50

                                                    Page 12

1      Q    By normal express service?

2      A    Federal Express service.

3      Q    I'm sorry.  Federal Express.  My apologies,

4  Ms. Goulette.  There is -- there is a little bit

5  of -- I don't know if it's echo or it's just                10:58:05

6  difficult to hear you.  So that's why I asked you to

7  repeat the answer, and I apologize about that.

8           All right.  So we did send this by Federal

9  Express, and that is why there is a Federal Express

10  confirmation.  We sent it to your address in Laurel,        10:58:22

11  Mississippi at 3007 Crescent Hill Drive, and that's

12  on the proof of service to this notice of

13  deposition.  Is that your best address to receive

14  mail?

15      A    Yes, that's correct.                               10:58:37

16      Q    And is this the same address you have

17  advised the court in this case to use for you?

18      A    Yes, that's correct.

19      Q    Is there another address that you are using

20  at this time?                                               10:58:53

21      A    No.

22      Q    And this is your home address; is that

23  correct?

24      A    Yes.

25      Q    And you currently reside there?                    10:59:03

                                                     Page 13

1       A    I'm sorry.

2       Q    You currently reside at this address, 3007

3  Crescent Hill Drive, Laurel, Mississippi 39440?

4       A    Correct.

5       Q    All right.  We're going to mark as              10:59:18

6  Exhibit 2 another document that I'll show you.

7            (Exhibit 2 was marked for identification.)

8  BY MS. CHANG:

9       Q    This is a November 17, 2020, letter to the

10 defendants in this current action.  Do you recall         10:59:58

11 receiving this letter?

12      A    In regards to the deposition?

13      Q    I'm sorry.

14      A    Is this also in regards to the deposition?

15      Q    Yes.  It's a letter that's addressed to all     11:00:28

16 the defendants in this case.  It's regarding the

17 depositions that we've noticed to date.  And so as

18 you can see on first page of the letter, the

19 depositions of Mark Johnson, Ronnie Kahapea, Kirk

20 Gibbs, Sandra Goulette and Mark Moffett are all          11:00:47

21 listed.  Do you recall receiving this letter?

22      A    Yes.

23      Q    And for the record, I'll note that this is

24 a 41-page document that identifies the depositions

25 in the cover letter and then attaches all of the         11:01:05

                                          Page 14

1    various deposition notices.  Did you also receive

2    this letter by FedEx?

3        A    Correct.

4        Q    Okay.  I'm going to show you another

5    document that we'll mark as Exhibit 3.                11:01:23

6            (Exhibit 3 was marked for identification.)

7    BY MS. CHANG:

8        Q    This is a December 3rd, 2020, letter that

9    is addressed by FedEx to you at your Crescent Hill

10   Drive address, and it is a letter that identifies    11:01:44

11   your deposition to take place on December 7th at

12   11:00 a.m., and we provide the Veritext link for the

13   Zoom meeting.  Do you recall receiving this letter,

14   Ms. Goulette?

15       A    Yes.                                         11:02:00

16       Q    And then I believe after you received this

17   letter you contacted my office on December 4th.  Is

18   that correct?

19       A    That was Friday.  Yes.  Correct.

20       Q    I believe you contacted my co-counsel,      11:02:26

21   Nicole Metral.

22       A    Yes.

23       Q    And did you ask her to change the date of

24   the deposition?

25       A    Yes, I did.  I asked her to either postpone 11:02:41

                                                          Page 15

1   it to the afternoon of December the 7th or possibly

2   the following day or as a third alternative to even

3   maybe switch my time with Mr. Mark Moffett, yes.

4        Q    And why did you need to move the deposition

5   date and time?                                        11:03:16

6        A    Because I had a doctor's appointment this

7   morning that I needed to get to.

8        Q    All right.  So we accommodated that.  And I

9   will mark as Exhibit 4 we agreed to set your

10  deposition for today, and I'll show you that         11:03:32

11  document right now.

12            (Exhibit 4 was marked for identification.)

13  BY MS. CHANG:

14       Q    All right.  This is Exhibit 4, which is an

15  amended notice of deposition for Defendant Sandra     11:03:54

16  Goulette, and it sets the deposition for

17  December 8th, 2020, which is today at 12:30 Central

18  Time, which is 10:30 a.m. Pacific Time.  Did you

19  receive this amended deposition notice,

20  Ms. Goulette?                                         11:04:13

21       A    I did not receive this; however, I did

22  receive a telephone call from Attorney Metral that

23  told me that I would be receiving an email by Monday

24  morning.

25       Q    All right.  And did you receive that email?  11:04:31

                                                    Page 16

```
 1        A    Yes.

 2        Q    And did the email include a Zoom link that

 3   you're now using to access this deposition?

 4        A    Yes.

 5        Q    All right.  Now, you mentioned you asked      11:04:43

 6   Ms. Metral on December 4th to change the day of the

 7   deposition or to switch or swap with Mr. Mark

 8   Moffett his deposition date, which is set for

 9   tomorrow, December 9th.  Have you spoken to

10   Mr. Moffett about today's deposition in any manner?    11:05:05

11        A    No.  As a matter of fact, in my email to

12   Attorney Metral, I asked her that if it was possible

13   that she reach out to Mr. Moffett and ask him if he

14   would be willing to make those accommodations.

15        Q    And so you haven't spoken to Mr. Moffett      11:05:30

16   about this deposition?

17        A    No, sir -- no, ma'am.

18        Q    Have you spoken to Mr. Moffett about his

19   deposition?

20        A    No, ma'am.                                    11:05:44

21        Q    All right.  Have you had in your deposition

22   taken before?

23        A    Yes, ma'am.

24        Q    And how many times have you had your

25   deposition taken?                                       11:05:53
```

Page 17

1        A       One time quite a long time ago, actually

2    over 20 years ago.

3        Q       That is a long time ago.  Do you happen to

4    remember what type of case it was that you testified

5    in?                                                    11:06:09

6        A       It was -- yes, I do.  I was a paralegal for

7    a home inspection firm in Salem, Massachusetts, and

8    I was required to give a deposition in that case,

9    yes.

10       Q       And do you recall what the case was about?  11:06:29

11   I mean, I understand that you were testifying as a

12   paralegal at a home inspection firm in

13   Massachusetts.  But was it a personal injury case?

14   Was it an employment case?

15       A       No, it was actually a case where one of the  11:06:47

16   home inspectors was allegedly accused of not

17   conducting a proper home inspection.

18       Q       And the allegations against this home

19   inspector, is this a person that you worked with at

20   the law firm, or was it a client of the firm?         11:07:12

21       A       I did not work -- I did not work for a law

22   firm.  I was the paralegal for a home inspection

23   company.

24       Q       Okay.  So did you -- did you work with the

25   home inspector that was alleged to not have done a     11:07:30

                                                          Page 18

1    proper home inspection?

2        A    No.  The home inspectors, they worked all

3    throughout the state of Massachusetts, and so they

4    did not frequent the office because we only had one

5    office in a central location.  So many of the home         11:07:51

6    inspectors I had never even met.

7        Q    And so you testified as a witness, not a

8    party to the lawsuit?

9        A    I'm having a hard time hearing you.

10       Q    All right.  Were you a party to the            11:08:10

11   lawsuit?  Meaning were you a plaintiff or defendant

12   in the case?

13       A    No, I was not a party to the lawsuit.  No.

14       Q    All right.  So you were a witness?

15       A    Yes.  Because I was the paralegal, I was       11:08:24

16   the person in charge of handling all incoming

17   requests, and I was also the person in charge of

18   following through with the clients and finding an

19   appropriate remedy for the potential purchaser of

20   the home as well as for the inspector.                  11:08:56

21       Q    All right.  Did you end up testifying in

22   court for that case, in trial or any other hearing?

23       A    No.  The case was settled, ma'am.

24       Q    All right.  Thank you.  What have you done

25   to prepare for today's deposition?                      11:09:17

                                                    Page 19

1      A     I have -- not really all that much.  I mean

2   I have gone over some paperwork in regards to the

3   arbitrations that took place.  And aside from that,

4   I really don't have anything else to go over.

5      Q     All right.  And we'll get to the documents      11:09:51

6   that reviewed -- you said you reviewed about the

7   arbitration that took place.  But did you speak to

8   anyone about today's deposition?

9      A     No.

10     Q     And let's -- let's talk about the documents      11:10:05

11  that you said you reviewed in preparation for this

12  deposition.  What documents did you review?

13     A     I believe it was really documents that I

14  have given you, your -- any kind of correspondence

15  that was received on behalf of the client.  We have      11:10:29

16  a very strict policy here at the organization

17  and another -- excuse me -- clients are never

18  permitted prior to their request to speak with the

19  arbitrator.  Because that would be considered

20  ex parte communication.  So we never let this      11:11:00

21  happen --

22          THE REPORTER:  I'm sorry.  I have to

23  interrupt.  I cannot understand the witness.  I

24  don't know if anybody else is having difficulty.

25          MS. CHANG:  Yes.  So, Sandra, I think --      11:11:14

                                        Page 20

1    are you on a headset or earpods?

2           THE WITNESS:  Yes, because my speaker

3    doesn't work; so I have to speak through a phone.

4           MS. CHANG:  Oh, you have to speak through

5    the phone.  Do you want to try disconnecting the      11:11:29

6    earpods and just speaking directly into the phone

7    instead?  Can you do that?

8           THE WITNESS:  I can try that, yes.  Okay.

9    Is that -- is that better?

10          MS. CHANG:  Like a thousand times better.    11:12:32

11          THE WITNESS:  Okay.  Sorry about that,

12   ma'am.

13          MS. CHANG:  That's all right.  You know, it

14   will cause you a little bit of discomfort, I guess,

15   holding up the phone for a long time.  Do you have     11:12:42

16   maybe wired earbuds or a headset?  Because that

17   would work better than the earpods.

18          THE WITNESS:  These are Bluetooth.

19          MS. CHANG:  Oh, they're Bluetooth.  I think

20   that's part of the problem.  Because sometimes         11:12:59

21   Bluetooth has, like, a lot of ambient noise.  So

22   it's like we're listening to you under water or

23   something.  So now we can try having you hold the

24   phone, but I know that's going to be exhausting for

25   you.  So if it does get tiring, just let us know.      11:13:13

Page 21

1    We can take more frequent breaks, or, you know, on a

2    break, we can try and find another solution.  Is

3    that okay?

4            THE WITNESS:  That's fine.  Yes.  Thank

5    you.                                              11:13:25

6            MS. CHANG:  Okay.  Thank you.

7    BY MS. CHANG:

8        Q    Because I know Ms. Andreasen and I were

9    both having difficulty hearing you, let's start at

10   the beginning.  What documents did you review?  You  11:13:35

11   mentioned that they were correspondences with the

12   client.  Let's just start from the beginning on the

13   documents that you reviewed in preparation for the

14   deposition.

15       A    So the only documents that I, you know, go  11:13:46

16   over are the documents that clients submit to the

17   organization, and then I -- I hand those kind of

18   documents over to an arbitrator.  If an arbitrator

19   has any kind of conflict of interest or feels that

20   the arbitrator is not able to handle that dispute    11:14:28

21   for whatever reason, then it would be reassigned.

22   So basically I just make sure that the application

23   is filled out, all the documentation is received,

24   and that's pretty much it.

25       Q    Okay.  So that was an overview of what you  11:15:06

                                                    Page 22

1    do at Sitcomm, it sounds like.  But do you recall

2    what specific documents you reviewed in preparation

3    for this deposition?

4        A    Well, each -- each client who applies for

5    arbitration, they're required to fill out an                11:15:27

6    application.  And those are typically the documents

7    that -- that I review along with making sure -- I

8    mean, before we can move forward with arbitration,

9    we have to make sure that -- that we have a copy of

10   their -- of their contractual agreement.  Okay.  We         11:15:54

11   have to make sure that they have filled out the

12   application and that they have paid the appropriate

13   fees.  And so basically, you know, those are the

14   things that I look for before I pass those cases on

15   to an arbitrator.                                            11:16:30

16       Q    Okay.  So in preparation for today's

17   deposition, which clients' applications did you look

18   at?

19       A    In preparation for today's application?

20       Q    In preparation for today's deposition.             11:16:46

21   Because you mentioned that you look typically at

22   applications that clients submit in order to have an

23   arbitration, and you look at the contractual

24   agreement that they have in order to see if they can

25   do an arbitration.  Which clients' applications did          11:17:07

Page 23

1     you look at in preparation for today's deposition?

2          A     That would be Mr. Mark Johnson and

3     Mr. Ronnie Kahapea.

4          Q     Okay.  Anyone else?  Any other clients'

5     applications that you looked for in preparation for     11:17:34

6     today's deposition?

7          A     No.

8          Q     Now, as to Mark Johnson, when you looked at

9     his application, did you find a contract that

10    allowed him to conduct an arbitration?                  11:17:49

11         A     So as far as the arbitrations are concerned

12    and any kind of contractual issue that may have gone

13    on between the clients, I'll say it this way,

14    between the claimants and the respondents, okay, it

15    is absolutely not in my -- I'm not the arbitrator of   11:18:25

16    the issue.  Okay?  So it is absolutely -- the

17    determination is never left up to me to make that

18    determination.  That determination and once that is

19    signed to an arbitrator, that arbitrator is,

20    therefore, responsible, okay, for going through all    11:18:51

21    of the documentation and specifically finding out if

22    there is a valid arbitration clause and then -- and

23    then settling the dispute from there.

24              It is not in my position to go through

25    individual contracts to find out if people are        11:19:19

                                                   Page 24

1    coming forward in a, you know, quote, unquote, good

2    faith manner.  That is something that is completely

3    left up to the arbitrator to decide.

4        Q    Okay.  And thank you for that

5    clarification.  So when you looked at Mr. Johnson's      11:19:41

6    application specifically in preparation for today's

7    deposition, what did you -- what did you see?

8        A    I saw that he met the preliminary

9    requirements, okay, to have an arbitration hearing

10   heard, which was he submitted a contract, he paid      11:20:08

11   his fee, and he provided proof of notice of

12   informing PennyMac.  And so those types of things

13   that are requirements of our organization

14   specifically, you know, that would give me the

15   go-ahead to assign that to an arbitrator.              11:20:51

16           As far as whatever is in the contract, you

17   know, I don't sit down and read the contract.  I'm

18   not the arbitrator.  I can't settle those disputes,

19   and so that is primarily left up to the individual

20   who is assigned as a subcontractor to hear that       11:21:15

21   matter.

22       Q    Okay.  So is there any other requirement

23   that you need in these applications in order to send

24   this to an arbitrator for review?  So you said

25   contract, fees and proof of notice to the             11:21:35

                                                    Page 25

```
1    respondent.  Is there any other part of the

2    application that you have to look at in order for

3    the preliminary items to fulfill the necessary

4    requirements in order for you to pass -- pass it

5    along to the arbitrator?                          11:21:51

6        A    Yes, absolutely.  The client has to fill

7    out what's called a request for dispute resolution

8    upon complaint.  Okay?  And that is something else

9    that I -- that I do take a look of.  You know, when

10   I'm scrolling through it, you know, I particularly  11:22:19

11   make -- I particularly, excuse me, make sure that

12   the parties are the same as they are in the

13   contract.  Okay.  Those -- you know, those are --

14   those are basically, you know, my duties.  If they

15   were not, you know -- and so I'll give you an        11:22:45

16   example.  If a claimant was Mark Johnson versus, you

17   know, GMAC Mortgage and yet he had filled out an

18   application for Mark Johnson versus PennyMac, that

19   would -- the whole entire scenario would have been

20   returned back to Mr. Johnson.                       11:23:12

21       Q    Okay.  Thank you.  That's helpful.  So you

22   did find in your review of Mark Johnson's

23   application in preparation for this deposition a

24   contract between Mark Johnson and PennyMac?

25       A    Correct.                                   11:23:32
```

Page 26

1    Q    And do you recall what the name of that

2    contract was?

3    A    I -- I -- I -- I wouldn't want to say

4    because I -- I am not 100 percent, excuse me,

5    certain.  So I wouldn't want to give you, you know,    11:24:04

6    any kind of inclination that -- that I -- that I

7    knew because I'm not -- I'm not sure.  That's all.

8    Q    Right.  Like I said at the beginning of the

9    deposition, I do not want you to guess.  But after

10   the deposition, and I forgot to tell you this, but    11:24:21

11   Ms. Andreasen is going to create a transcript of

12   everything that's been said in this deposition, so

13   every question that I or Mr. Powers asks and every

14   answer that you give.  If I leave or have

15   Ms. Andreasen leave a blank next to this question    11:24:39

16   about the title of the contract that you found

17   between Mark Johnson and PennyMac in his

18   application, can you fill it in once you get a copy

19   of the transcript, which will be sent to you for

20   review and execution?                                 11:24:58

21   A    If I recall correctly, and I may not, I may

22   not be a hundred percent accurate, the Mr. Johnson

23   arbitration hearing may have taken place last summer

24   or in the summer of 2019.

25   Q    Okay.                                            11:25:24

Page 27

1      A     And so, therefore, I can honestly admit

2  that, yeah, I'm having a little bit of a difficult

3  time remembering, you know, the specifics of that at

4  all.

5      Q     Okay.  But in preparation for today,          11:25:54

6  meaning today's deposition, you did look at Mark

7  Johnson's application to Sitcomm for an arbitration

8  hearing?

9      A     Yes.  It's very standard for me to, you

10  know, for me to make sure that those four key          11:26:11

11  elements, okay, are present prior to even assigning

12  it to an arbitrator.  If one of those elements are

13  even remotely missing or questionable, I should say

14  that, I absolutely have to return those documents to

15  the client and inform them that we are unable to       11:26:41

16  move forward.

17      Q     In Mark Johnson's case, though, he had

18  those four elements in his application?

19      A     He did have the application, yes.  He did

20  have the contract.  He did have the request for        11:26:56

21  dispute resolution, and he did have his proof of

22  payment, yes.  Correct.

23      Q     And he also had the proof of notice to

24  PennyMac?

25      A     Yes.  He said -- yes.  He sent us the proof  11:27:11

Page 28

```
 1    that he had mailed the notice to PennyMac, yes.

 2        Q    All right.  And when did you do this review

 3    of Mark Johnson's application in preparation for

 4    today's deposition?

 5        A    When did I do the review of it?          11:27:35

 6        Q    To prepare for today's deposition.

 7        A    Probably a couple weeks ago.

 8        Q    Okay.

 9        A    I've had -- I've had a couple of pretty

10    serious things going on the past couple weeks that I  11:27:54

11    had to take care of.  So I have not been able to

12    look at it since.

13        Q    I understand.  Do you recall when you

14    looked at this file, Mark Johnson's file, a couple

15    weeks ago if you saw the contract?               11:28:17

16        A    If I saw the contract?

17        Q    Yes.

18        A    Yes.

19        Q    Okay.  And you don't recall as you sit here

20    today what the name of the contract is.  Is that     11:28:32

21    correct?

22        A    I don't.  It's been about a year; so I'm

23    not -- you know, I wouldn't want to commit myself to

24    saying what's the name or the specific name of the

25    contract was.                                     11:28:52
```

Veritext Legal Solutions
866 299-5127

1        Q     Okay.  But when you reviewed the

2    application for Mark Johnson a couple weeks ago,

3    were you doing that in a paper hard copy file, or

4    were you doing that on a computer screen?

5        A     On a computer screen.                   11:29:05

6        Q     Okay.  So if I were to ask you to look up

7    that file on the computer screen again, you would be

8    able to find it; correct?

9        A     Correct.

10       Q     All right.  So what I'm asking you is that,  11:29:17

11   I'm going to have Ms. Andreasen put a blank next to

12   the question about the name of the contract in the

13   transcript of today's proceedings.  After today's

14   deposition ends, I would like you to look up the

15   contract and then write in the name of the contract   11:29:38

16   in the transcript when you get it.  Is that okay?

17       A     Sure.

18             INFORMATION REQUESTED: _____

19   _____

20   BY MS. CHANG:                                    11:29:46

21       Q     Okay.  That's great.  And when you do get

22   the transcript after the deposition ends, and it

23   will be, you know, a couple weeks before it gets to

24   you, you'll have the opportunity to review all the

25   questions and answers.  And if there are any answers   11:29:58

                                        Page 30

```
1    that you believe are inaccurate, like the spelling

2    of a name or a number, you have every right to go in

3    and make changes.  And once you are comfortable that

4    everything in the transcript is accurate, you're

5    going to execute the transcript and return it to our      11:30:18

6    office or Mr. Powers' office.  Is that okay?

7         A    Yes, ma'am.

8         Q    Okay.  So you mentioned that there was a

9    fee paid by Mark Johnson.  How much was that fee?

10        A    The fee is for -- for our services depends.     11:30:35

11   So if there's -- if there's one respondent, anywhere

12   from one to five respondents, the fee would be $500.

13   Okay.  So anything from six to ten respondents, you

14   know, it gradually goes up.  To my best

15   recollection, I do not believe that Mr. Johnson had      11:31:21

16   more than five respondents.

17        Q    I'm sorry.  Your recollection is that he

18   paid more than $500 for a fee?

19        A    No.  My recollection would be that he paid

20   less.  He paid $500, which was the standard for five     11:31:44

21   respondents but --

22        Q    Okay.

23        A    -- again that -- huh?

24        Q    So he had one to five respondents in his

25   arbitration is what you recall?                           11:31:59
```

Page 31

```
1       A      That is what I recall, yes.  But, again, I

2   was not the arbitrator on that matter.  So, you

3   know, I wouldn't be able to give you a hundred

4   percent specifics on that, no.

5       Q      Okay.  And you said that there's four parts    11:32:17

6   that are required for this application, and it's the

7   contract, the fee, the proof of notice, all of which

8   Mr. Johnson had, and also a request for dispute

9   resolution upon complaint.  What is in the request

10  for dispute resolution upon complaint?  Can you       11:32:41

11  describe that document for us?

12      A      Sure.  The document basically lists the

13  parties, and it lists what the parties have done as

14  far as primarily the claimant getting in touch with

15  the respondent to potentially resolve the dispute.    11:33:04

16  And if the respondent fails to comply or respond, I

17  should say, not comply, there's an arbitration

18  clause in there that specifically gives the claimant

19  the opportunity to file for arbitration.

20      Q      All right.  Now, you mentioned that you       11:33:37

21  looked at one other application in preparation for

22  this deposition, and that was Ronnie Kahapea's

23  application.  What did you find in Ronnie Kahapea's

24  application, if you can remember?

25      A      All of the applications that we receive at    11:33:56
```

Veritext Legal Solutions
866 299-5127

1    SAA, okay, they have to meet those four specific

2    elements in order to be even referred to an

3    arbitrator.  So Mr. Kahapea, again he had to have

4    had a contract, okay, proof of his payment, request

5    for dispute resolution and an application.          11:34:30

6         Q    Okay.  And also a proof of notice to the

7    respondent; right?

8         A    Correct.

9         Q    Okay.  And just so it's easier for the

10   court reporter, Ronnie Kahapea is R-o-n-n-i-e,      11:34:53

11   Kahapea, K-a-h-a-p-e-a.  Now, also for the court

12   reporter, when you refer to SAA, that's S, as in

13   Sam, A as in apple, A as in apple, are you referring

14   to Sitcomm Arbitration Association?

15        A    Correct.                                  11:35:16

16        Q    And so if we use SAA or Sitcomm in this

17   deposition, you'll understand that we're all

18   referring to Sitcomm Arbitration Association?

19        A    Correct.

20        Q    All right.  Thank you.  Now, the same     11:35:29

21   questions for Mr. Kahapea's application.  Do you

22   recall the name of the contract that you found in

23   his application?

24        A    In Mr. Kahapea's application?

25        Q    Yes.                                      11:35:45

                                                Page 33

1      A     I don't recall the specific name of the

2   contract.   I believe that Mr. Kahapea is located in

3   Hawaii.

4      Q     Okay.   Were you able to confirm that the

5   contract was between Mr. Kahapea and PennyMac?            11:36:16

6      A     I'm not sure.   To be honest with you,

7   that's not part of my -- when I'm taking in

8   arbitrations, okay, an individual could have a

9   conflict against Sears Roebuck & Company.   Right?

10  They could have a conflict against JC Penney.   As      11:36:51

11  long as they present us with a contract and proof of

12  service and -- and proof of their payment and the

13  request for a dispute resolution -- right? -- then I

14  can go ahead and refer that to an arbitrator.   The

15  arbitrator will then issue a hearing notification to    11:37:18

16  both of the parties.

17          So in every single instance I couldn't

18  possibly tell you who -- who had a situation with

19  another party that they wanted a dispute resolved.

20  That would be impossible for me to remember all of      11:37:43

21  those scenarios.   So my basic thing is to make sure

22  that everybody has all the documentation that is

23  required to move forward, and then it's completely

24  left up to the arbitrator to solve that dispute.

25     Q     Okay.   Well, let me -- let me get some         11:38:11

                                            Page 34

```
 1    clarification because maybe I misunderstood you.

 2    But when we were talking about Mr. Johnson's file,

 3    you had said that part of your job on behalf of

 4    Sitcomm is that you have to find, you know, these

 5    four prerequisites before this file can be passed on    11:38:34

 6    to an arbitrator.  And one of the things that you do

 7    check is that the contract that the client provides

 8    is actually between the client and the respondent.

 9    So if Mr. Johnson had provided -- and this is the

10    example, I believe, you used, but please correct me     11:38:55

11    if I'm wrong.  If Mr. Johnson had provided you a

12    contract with GMAC but he wanted to file an

13    arbitration against PennyMac, you would return the

14    file to Mr. Johnson.  Is that accurate?

15        A    You're asking me that if Mr. Johnson had        11:39:13

16    a -- had a claim against GMAC and he also wanted to

17    bring in PennyMac, it would be upon me to return

18    that?

19        Q    More that, you know, if Mr. Johnson had an

20    application to bring a lawsuit or an arbitration        11:39:40

21    against PennyMac but the contract that he provided

22    you was not with PennyMac but instead with GMAC that

23    you would return the file to him.  Is that what you

24    would do?

25        A    Of course, yeah.                                11:39:53
```

Page 35

1      Q     Okay.  So I'm just trying to get

2    clarification.  Because here with Mr. Kahapea's

3    file, you used the example that, you know, it's not

4    your job to decide whether or not the contract is

5    between the right parties, that that's left up to        11:40:14

6    the arbitrator.  So I'm just trying to understand.

7    Is it your job as a gatekeeper to confirm that the

8    contract is between the client and the respondents

9    that they want to sue, or is that the arbitrator's

10   job?                                                     11:40:31

11     A     Excuse me.  Nine times out of ten, you

12   know, the contractual issue between two parties is

13   completely at the resolve of the arbitrator.  Okay?

14   It would have absolutely nothing to do with me

15   because I'm not the arbitrator listening to the          11:40:57

16   matter.  And so what you're asking me, it could play

17   several different variables.  Because, you know,

18   if -- if Mr. Brown, you know, would like to sue or

19   has a dispute, I should say, with a homeowner who he

20   found out has recently disclosed some information --     11:41:32

21   right? -- on a brand-new -- a supposed brand-new

22   air conditioning unit that has been brought in --

23   okay? -- Mr. Brown may have a case or some something

24   that he would want to be remedied between those two

25   parties, but that is not up to me to decide.  That       11:42:00

Page 36

1    is up to the arbitrator to decide.

2         Q    Okay.  So for Mr. Kahapea's file, you did

3    not review the contract to make sure that it was

4    between Mr. Kahapea and PennyMac?

5         A    I would have to go back and look again        11:42:22

6    because that was over a year ago.  And off the top

7    of my head, I don't specifically remember

8    Mr. Kahapea having anything to do with PennyMac, but

9    I'm not sure.

10        Q    So I understand that you recall            11:42:51

11   Mr. Kahapea's arbitration being about over a year

12   ago.  In preparation for today's deposition, when

13   did you last review his application?  Was it a

14   couple weeks ago, the same time that you reviewed

15   Mr. Johnson's file, or was it at a different time?   11:43:17

16        A    No, it was actually later than that because

17   I had received some kind of documentation, and I

18   don't know where it is right now, that Mr. Kahapea

19   had taken his situation or his matter to the United

20   States District Court in Hawaii.  So I was not sure, 11:43:56

21   you know, the surrounding or what was going on with

22   that, and so I -- excuse me -- specifically I don't

23   believe so.

24             And, again, all of this stuff, you know, we

25   rely on people to bring forth, you know, quote       11:44:23

                                                          Page 37

```
 1    unquote, you know, a good faith effort.  Okay?  In
 2    other words, if frivolous things come along, such as
 3    a hypothetical, you know, we're going to sue the
 4    wrong bank because they reassumed our mortgage, you
 5    know, that happens all the time, we rely on people      11:45:02
 6    to bring forth what's called a good faith effort.
 7    And if they're not going to do that, then they will
 8    never prevail.  And so it's not necessarily my job
 9    to go through, you know, contract after contract
10    after contract.  Because then I would be impeding      11:45:28
11    the arbitration hearing, okay, and I would also be
12    giving clues and inclinations towards the arbitrator
13    that may or may not put him one way or the other.
14    So I can't do that.  It's up to the arbitrator to
15    decide whether the contract is valid and whether the   11:45:58
16    parties appeared and made an attempt to appear and
17    wanted to appear, and it's up to the parties to --
18    you know, to provide all of their evidence.  They're
19    given ample opportunity to do so, and it's -- you
20    know, that is how the arbitrator bases their           11:46:29
21    determination, and it has absolutely nothing to do
22    with me.
23        Q    Okay.  Thank you for clarifying that.  In
24    addition to Mr. Kahapea's application, which you
25    reviewed more recently than you reviewed              11:46:49
```

Page 38

1    Mr. Johnson's application, but let's just say they

2    both happened within the last few weeks, did you

3    review any other documents in preparation for

4    today's deposition?

5        A    Did I review any documents for today's          11:47:03

6    deposition?  Is that what you said?

7        Q    Yes, other than Mr. Johnson's application

8    and Mr. Kahapea's application.

9        A    Yeah.  As a matter of fact, I reviewed --

10   let's see -- the documentation that was sent to me         11:47:29

11   from Blank & Rome in regards to the deposition, yes.

12   So, yes, I did go over these documents.

13       Q    And those were the notices of deposition

14   that I showed to you in exhibits 1 through 4 at the

15   beginning of the deposition?                               11:48:01

16       A    Correct.  Except for in this document,

17   it -- you know, it has space for all of the

18   defendants involved.  Okay?  So yours -- you know, I

19   think you just showed me my part in this part.

20   Yeah, so this shows everybody involved.                    11:48:27

21       Q    Okay.  So I'll represent to you that the

22   document that we marked as Exhibit 2 earlier today

23   has all of the deposition notices for the various

24   parties and defendants in this case.  I didn't

25   scroll through the entire document, the 41-page            11:48:43

Page 39

1    document, but I believe that that's --

2        A    I understand.

3        Q    Okay.  All right.  So other than those

4    notices of deposition, Mr. Kahapea's file and

5    Mr. Johnson's file, did you review any other          11:48:58

6    documents in preparation for today?

7        A    Off the top of my head, no, Ms. Attorney

8    Chang.  And the reason is I have been ill for the

9    past couple weeks.  I had a doctor's appointment

10   yesterday morning for a severe infection, which I'm   11:49:32

11   now on heavy antibiotics for.  So I've been down and

12   out in bed a lot, and, you know, this is -- it's

13   kind of been piling up.  I'm just now starting to

14   feel better, thank God, and I have all intentions

15   on, you know, getting -- getting back to this rather  11:50:01

16   quickly.  But I just haven't -- I ended up getting a

17   pretty bad infection, needed some IV treatment, as

18   well as antibiotics so -- but I will be pursuing

19   that relatively soon.

20       Q    All right.  And I'm sorry to hear about      11:50:34

21   your infection, but I'm glad that you are feeling

22   better, that you were able to see the doctor.

23       A    Thank you.

24       Q    Other than the antibiotics that you're on

25   right now, are you on any other medications today?    11:50:46

                                                   Page 40

```
 1        A     No, ma'am.

 2        Q     Okay.  And with regard to these documents

 3    that you reviewed, could you please produce them to

 4    my office or email them to Ms. Metral?

 5        A     Um-hmm.                              11:51:04

 6        Q     Okay.  I'd ask --

 7        A     I --

 8        Q     Go ahead.

 9        A     So you would like a copy of the Johnson

10    contract?                                     11:51:12

11        Q     I would like --

12        A     A lot these prep --

13        Q     Yes, the entire application for those

14    parties, not just the contract.  So anything that

15    you would have reviewed in preparation for this    11:51:23

16    deposition I would like you to send that to

17    Ms. Metral, if you could, after the deposition.

18        A     Okay.  Yes.  So our -- excuse me.  Our

19    subcontractors, you know, our arbitrators are hired

20    as -- strictly as subcontractors, and they are     11:51:47

21    responsible for notifying parties.  They're

22    responsible for going through all documentation and

23    evidence including any of these matters.  They're

24    also responsible for -- for getting any paperwork to

25    include any type of award, if one is merited, to    11:52:18
```

Page 41

1    both of the parties.  And so, you know, it's a

2    matter of them following through with and being

3    responsible and doing what they're supposed to do,

4    and I'm just kind of like somewhat the overseer of

5    that.  You know, if I get an email that a document      11:52:50

6    hasn't been received, then I take care of it

7    immediately.  You know, that's -- I have nothing to

8    do with the hearings or anything of that nature.

9         Q    Okay.  Well, let's get into your role at

10   Sitcomm.  Because I think that's kind of what you're    11:53:10

11   talking about right now.  When did you first

12   become -- become involved with Sitcomm Arbitration

13   Association?

14        A    I became involved with Sitcomm in January

15   of 2019.                                                11:53:31

16        Q    And how did you become involved with

17   Sitcomm?

18        A    I was informed by a friend of a friend that

19   they were looking for arbitrators.  Now, at that

20   time, there was a different director, which was not     11:53:58

21   a good situation.  So he after quite a few months, I

22   think by June of that year of 2019, he had left.

23   And unfortunately the founder of the organization

24   was predisposed and unable to get back into the

25   scene to -- to do anything about it, you know.  And     11:54:49

                                                    Page 42

1    so, I guess, because of my -- my background and my

2    degrees, I was just asked to, you know, just do kind

3    of like an oversee type of thing and make sure that

4    everybody was doing the right thing and not -- you

5    know, and not making absurd, you know, decisions and      11:55:26

6    whatnot.

7         I'm in the process of going back to law

8    school, and, you know, I made it very clear from the

9    beginning that I would be doing this temporarily

10   just to -- you know, just to help really.  I would      11:55:58

11   imagine that the founder of the organization will be

12   back within -- or I should say by the end of this

13   month.

14        Q    And who is that founder?

15        A    That is Brett Jones, J-o-n-e-s.                11:56:30

16        Q    Is Brett Jones known by any other names?

17        A    Legally, no.  Nickname-wise, yes.

18        Q    Okay.  What are his -- what are his

19   nicknames?

20        A    That would be Eeon, E-e-o-n.                   11:57:00

21        Q    Any other nicknames?

22        A    Nickname?

23        Q    Correct.

24        A    I -- nickname, I don't know, but prior

25   to -- prior to -- prior to Brett Jones his name was     11:57:34

Page 43

1   Branch, Keefe Branch.

2       Q    And is that Branch like a tree branch,

3   B-r-a-n-c-h?

4       A    Yes, ma'am.

5       Q    So his name was -- and was that -- was        11:57:57

6   Keefe Branch a prior legal name for Brett Jones?

7       A    Yes, ma'am.

8       Q    Okay.  Any other legal names that he has

9   gone by, if you know?

10      A    Not to my knowledge, ma'am.                    11:58:12

11      Q    All right.  So going back to January 2019

12  when you first became involved with Sitcomm, you

13  said that a friend of a friend referred you.  Do you

14  recall the names of those two friends?

15      A    Well, excuse me.  What was happening at the   11:58:33

16  time was that Brett was making Eeon videos on

17  YouTube.  Okay?  And a -- what do you call it?  A

18  friend of a -- a friend of a -- a friend of a

19  friend, you know, like an acquaintance of ours is

20  what I should say, had gone through something        11:59:12

21  similar in a situation.  However, his -- his

22  situation prevailed.

23      Q    And by his situation, do you mean

24  arbitration, or do you mean something else?  I'm not

25  clear on what you're --                               11:59:39

                                                    Page 44

```
 1      A    Arbitration.

 2      Q    Okay.  Do you recall the friend that

 3  referred you to Sitcomm?  Do you recall the name of

 4  the friend?

 5      A    That referred me to Sitcomm?              11:59:51

 6      Q    Yes.

 7      A    I think it was -- I think her name was

 8  Sheryl Taraquta.

 9      Q    Can you spell the last name for us.

10      A    T-a-r-a, Tara -- q-u-t-a.                 12:00:10

11      Q    And is that a Sheryl with an "S" or a

12  Sheryl with a "C"?

13      A    An "S".

14      Q    All right.  So Sheryl Taraquta referred you

15  to Brett Jones or to someone else at Sitcomm?        12:00:31

16      A    She didn't refer me to Brett Jones.  She

17  referred me to Eeon.

18      Q    And Eeon is the nickname for Brett

19  Jones; is that correct?

20      A    Eeon is the name that he is attempting to  12:00:46

21  change his legal name of Brett John -- Brett Jones

22  to, yeah.

23      Q    Okay.  Now, when Sheryl Taraquta referred

24  you to Eeon, did you meet him in person, or was

25  there a telephone call or email exchange?  How did   12:01:14
```

Page 45

1    you first meet Eeon?

2        A    I've never met Eeon in person.

3        Q    When --

4        A    He lives in California, and I live in

5    Mississippi.                                    12:01:26

6        Q    Okay.  So this friend, Sheryl Taraquta,

7    does she live in Mississippi or California or

8    somewhere else?

9        A    She lives in Michigan.

10       Q    Michigan?  Where in Michigan?          12:01:40

11       A    She owned a house in Saint Clair, but I

12   think she lost it a couple years ago.  So really I

13   haven't talked to her.  Sheryl has gotten in trouble

14   for having an extremely large amount of animals in

15   her house, and they took all the animals away, and   12:02:11

16   she kind of went -- she wasn't happy.  And I haven't

17   talked to her since.  But the Eeon videos on YouTube

18   have been along for a long time.

19       Q    Did Sheryl Taraquta hire Sitcomm to file an

20   arbitration on her behalf?                        12:02:47

21       A    Not that I know of, no.

22       Q    When Sheryl Taraquta referred you to Eeon,

23   did she say how she knew Eeon?

24       A    I think just through his videos, yes.

25       Q    All right.  And you mentioned that Eeon,   12:03:01

                                               Page 46

```
 1    a.k.a. Brett Jones, was predisposed at one point.

 2    What did you mean by that?

 3        A    He's currently in -- he's currently located

 4    in the California Department of Corrections and

 5    Rehabilitation.                                    12:03:26

 6        Q    So he's currently incarcerated?

 7        A    Yes, ma'am.

 8        Q    Do you know what crime or crimes he was

 9    convicted of to result in his current incarceration?

10        A    Yes.  In 1998 he was accused in Arizona of  12:03:42

11    something with a minor.  I'm sorry.  I don't know

12    all these criminal terms but something with a minor.

13    And then right after that, SORNA was enacted.  Okay?

14    And although his conviction was -- was pre-SORNA,

15    they put him on SORNA anyway.  And so consequently    12:04:32

16    after that he went to jail in New Mexico.  He went

17    to jail in Puerto Rico, and then in California

18    they've had him in jail now for a year and a half.

19    And it wasn't until just last week the California

20    appellate judge reversed his decision because the    12:05:05

21    superior court judge didn't have the appropriate

22    amount of evidence to give him the sentence that he

23    was supposed to get, and that's why he is supposed

24    to be out at the end of this month, December 28th to

25    be exact.                                            12:05:34
```

Page 47

1      Q    All right.  And you mentioned SORNA.  Is

2  that an acronym?  I'm not familiar with it.  What

3  did you mean by SORNA?

4      A    SORNA is the federal -- federal act for

5  people who have been convicted of sexual abuse          12:06:05

6  crimes, and they have to register.  That's what

7  SORNA is.

8      Q    Can you spell SORNA for us.

9      A    S-O-R-N-A.

10     Q    And you said that Eeon is getting released    12:06:38

11  December 28th?

12     A    Yes, ma'am.

13     Q    And how did you obtain this information

14  about Eeon's status at the appellate court?

15     A    It's online.                                    12:07:00

16     Q    And did you obtain that information by

17  looking it up online yourself?

18     A    Correct.

19     Q    Have you been in contact with Eeon while

20  he's been incarcerated?                                 12:07:15

21     A    Yes, ma'am.

22     Q    And how do you communicate with Eeon?  By

23  telephone?  By email?  By in-person visitation?

24     A    No, he calls me.  He doesn't have access to

25  computers.                                              12:07:35

                                                    Page 48

1            MS. CHANG:  All right.  Why don't we take a

2     15-minute break.  It's been a little over an hour, I

3     believe.

4            THE WITNESS:  Thank you.

5            THE VIDEOGRAPHER:  We're now going off the     12:07:51

6     record.  The time is 12:07 p.m. PST.

7            MS. CHANG:  All right.  Thank you.  So

8     we'll come back on at 12:22.

9            (Recess taken.)

10            THE VIDEOGRAPHER:  We're now going back on     12:36:50

11     the record.  The time is 12:36 p.m. Pacific Standard

12     Time.

13            MR. POWERS:  Ms. Chang, let the record

14     reflect that this is Harris Powers, local counsel,

15     still on the record.                                 12:36:59

16            MS. CHANG:  Thank you, Mr. Powers.

17     BY MS. CHANG:

18       Q    All right.  Ms. Goulette, before we took a

19     break, you were talking about Eeon or Mr. Brett

20     Jones and the appellate decision that reversed his     12:37:14

21     conviction, and you testified that he was going to

22     be released from prison on December 28th.  And you

23     mentioned that you do speak to him over the phone

24     while he's in prison because he doesn't have

25     computer access.  How often do you speak to          12:37:36

                                              Page 49

1    Mr. Jones on the phone?

2        A    It varies.  It could be two times a week,

3    three times a week, and it's only for fifteen-minute

4    increments, and then he gets cut off.

5        Q    And what do you usually discuss with          12:37:56

6    Mr. Jones on these phone calls?

7        A    We usually discuss his -- his case.

8        Q    I mean, was it appealed?

9        A    Yes, it was appealed, and it was reversed.

10       Q    And did you assist Mr. Jones with the         12:38:17

11   appeal in any manner?

12       A    No.  He had a court-appointed counsel, and

13   I did speak with him on just a couple of occasions,

14   and that was it.

15       Q    When you have these phone conversations       12:38:38

16   with Mr. Jones about twice a week for 15 minutes

17   each, do you ever discuss the business of Sitcomm?

18       A    Sitcomm or Sitcomm Arbitration Association?

19       Q    I was using those two names

20   interchangeably.  But is there a distinction between   12:39:01

21   the two in your mind?

22       A    Yes, ma'am.  Mr. Jones has three

23   organizations.  He has Satcomm, Sitcomm Arbitration

24   Association and Sitcomm, LLC.

25       Q    And if you know, do you know what the         12:39:23

                                                  Page 50

```
 1    difference is between those three entities?

 2        A    Sitcomm he -- I believe he founded in 2012.

 3        Q    And this is Sitcomm, LLC?

 4        A    Yes.

 5        Q    And what does Sitcomm, LLC, do?          12:39:49

 6        A    I'm not 100 percent sure because I know

 7    that they're a foreign -- they're a foreign

 8    corporation.

 9        Q    And when you say they're a foreign

10    corporation, where were they formed?  What state?   12:40:15

11        A    I think it was Nevis, but I'm not sure.  I

12    think it was Nevis.

13        Q    Can you spell -- did you say Nevis?

14        A    Yes, N-e-v-i-s.

15        Q    And is that a city?                      12:40:35

16        A    No, that is a -- that is a -- that's a

17    foreign island.

18        Q    Oh.

19        A    It's a -- it's a untarnished.  So it's

20    outside the United States.                         12:40:56

21        Q    All right.  And other than the fact that

22    it's a foreign LLC formed on the island of Nevis, do

23    you know anything else about what Sitcomm, LLC,

24    does?

25        A    I -- I'm not sure because he has different   12:41:13
```

Page 51

1    people that work for Sitcomm.

2        Q    Okay.  So let's move on to Sitcomm

3    Arbitration Association, then.  What does Sitcomm

4    Arbitration Association do?

5        A    Sitcomm Arbitration Association, what do        12:41:38

6    they do?

7        Q    Yes.

8        A    So they are responsible for handling

9    disputes between two different parties.

10       Q    And do you know when this entity was            12:42:09

11   formed?

12       A    In January of 2019.

13       Q    So it was formed at the time that you

14   started working with Sitcomm Arbitration

15   Association?  Is that accurate?                          12:42:27

16       A    Yes.  But when I first started working with

17   Sitcomm, there was, like, a different director, and

18   I wasn't really, like, involved in it as much

19   because there were three or four different

20   individuals who were working with Mr. Jones.            12:42:54

21       Q    Who was the director that was working with

22   Sitcomm Arbitration Association at that time in

23   January 2019?

24       A    That was Mr. Alan Hunt, H-u-n-t.

25       Q    And you say that -- you said before the         12:43:17

                                                             Page 52

```
 1   break that Mr. Alan Hunt eventually left.  When did

 2   Mr. Hunt leave?

 3       A    I think that Mr. Hunt was terminated by

 4   Mr. Jones.

 5       Q    And do you know why he was terminated?        12:43:35

 6       A    I think that it was for not sending out

 7   documentation in an appropriate manner, and I think

 8   it was for -- it was -- I don't know the specifics

 9   of it, but there was some kind of monetary issue,

10   like, going on.  So, in other words, I was told, not  12:44:17

11   by Mr. Jones or by Mr. Hunt, that monies were paid

12   to Mr. Hunt for not completing his assignments.

13       Q    All right.  And do you know where Mr. Hunt

14   is now?  Does he work for another company?  Do you

15   have any contact with him?                            12:44:51

16       A    I haven't ever really had any -- any

17   contact with him, but I know he -- I think he's in

18   the state of Missouri.

19       Q    And you testified before the break that

20   there was a new director that came in after          12:45:09

21   Mr. Hunt.  Who is that?

22       A    Well, after the situation with Mr. Hunt,

23   there really wasn't anybody that -- I think that

24   Mr. Jones could trust.  So he nominated me to be the

25   director.                                             12:45:38
```

                                                    Page 53

```
 1        Q     And what date was that that he nominated

 2   you to be the director?

 3        A     Well, Mr. Jones was taken into custody on

 4   May the 1st of 2019; so I want to say by, like, July

 5   or August of 2019.                              12:46:09

 6        Q     And once Mr. Jones nominated you, did it

 7   have to go through any additional approval processes

 8   by Sitcomm Arbitration Association, or did that mean

 9   that you were officially the director of Sitcomm

10   Arbitration Association?                         12:46:28

11        A     Hold on one second, ma'am.  Okay.  Sorry

12   about that.

13        Q     That's all right.

14        A     Can you please repeat that because my

15   roommate's dogs came in here.                    12:46:49

16        Q     Okay.  Are the dogs still with you?

17        A     No.  They came in here and followed her

18   around and left.

19        Q     Okay.  And your roommate is not in the room

20   with you?                                        12:47:07

21        A     No.

22        Q     All right.  So my question was, you

23   testified that Mr. Jones nominated you to be the new

24   director of Sitcomm Arbitration Association after

25   Mr. Hunt (sic) was taken into custody.  After    12:47:19
```

Page 54

1    Mr. Jones nominated you in July or August of 2019,

2    did that mean you automatically became the director,

3    or was there -- were there other approval processes

4    that were required before you became the official

5    director of Sitcomm Arbitration Association?          12:47:36

6        A    Well, as a matter of fact, at the time I

7    was working with an individual by the name of --

8    just bear with me for a minute.  I know he's in

9    Texas.  Alden Bennett.

10       Q    Ogden Bennett, and is that O-g-d-e-n       12:48:20

11   B-e-n-n --

12       A    No, no.  A, as in apple, A-l-d-e-n.

13       Q    Alden.

14       A    Bennett, yes.

15       Q    And was this individual also at Sitcomm    12:48:41

16   Arbitration Association?

17       A    No, he was with Satcomm.

18       Q    Okay.  So my question was:  Did you

19   officially become the director of Sitcomm

20   Arbitration Association after Mr. Jones nominated    12:48:58

21   you in July or August of 2019, or did other people

22   have to approve?  And are you saying that Alden

23   Bennett had to approve you as a director, as well?

24       A    No.  There was actually a whole entire

25   committee, and that consisted of Mr. Bennett,       12:49:17

Page 55

```
 1    Jacqueline Capa, Linnette Stanford, Kenzie Williams,

 2    Eric Taylor and Rod, but I forget Rod's last name.

 3        Q    All right.  So Linnette Sanford, is that

 4    L-i-n-e-t-t-e?

 5        A    L-i-n-n-e-t-t-e.                        12:50:11

 6        Q    Okay.

 7        A    Yes.

 8        Q    And Sanford is S-a-n-f-o-r-d?

 9        A    Yes, ma'am.

10        Q    And then the next name you listed was     12:50:19

11    Ms. Capa.  Can you spell her full name for us.

12        A    J-a-c-q-u-e-l-i-n-e Capa, C-a-p-a.

13        Q    And Mr. Williams, can you spell his full

14    name for us.

15        A    Mr. --                                   12:50:44

16        Q    I thought there was a Mr. Williams that

17    came after Ms. Cava.

18        A    Williams?  Williams?  Sorry.  This was so

19    long ago that I'm trying to remember.  So there

20    was -- there was Rod.  Oh, yeah, Rod, Kyle Eliker,    12:51:14

21    E-l-i-k-e-r, Jackie Capa, oh, Kenzie Williams,

22    W-i-l-l-i-a-m-s, Michael Peterson and Lafrancis --

23    Lafrancis -- I told you Linnette Sanford; right?

24        Q    Yes.

25        A    Okay.  Lafrancis O'Neil.                 12:52:32
```

Page 56

```
 1        Q    Okay.  Anyone else on that committee?

 2        A    Rod.  Did I tell you Rod?

 3        Q    Yes.

 4        A    I don't -- I don't -- I don't remember his

 5   last name.                                          12:52:54

 6        Q    Okay.

 7        A    Oh, Alaric, A -- Alaric, you know, Alaric,

 8   A-l-a-r-i-c, Scott, Junior.

 9             MR. POWERS:  Just a second.  For the

10   record, ma'am, did you mention an individual named  12:53:26

11   Eric Peeler as part of your answer?

12             THE WITNESS:  Eric Taylor.

13             MR. POWERS:  Taylor.  I'm sorry.  Thanks

14   for the clarification.

15             THE WITNESS:  You're welcome.            12:53:39

16   BY MS. CHANG:

17        Q    Is there anyone else you can recall that's

18   on that committee?  I know you've listed a number of

19   names at this point.

20        A    No, ma'am, not that -- not that I can     12:53:54

21   recall.

22        Q    Okay.  So going back, Mr. Jones nominates

23   you to be the new director of Sitcomm Arbitration

24   Association in July or August of 2019.  And then

25   does that nomination then go to this committee of    12:54:13
```

Page 57

1    people to vote on your nomination?

2        A    Yes, ma'am, it does.  And I can honestly

3    say that all of these people on this committee

4    they -- I can't think of one of them that has any

5    kind of college background.  I can't think of any        12:54:47

6    kind of -- I can't think of any one of them that has

7    any paralegal or law background either so --

8        Q    Okay.  And you have a paralegal

9    certification, I believe, Ms. Goulette.

10       A    Yes, ma'am.                                      12:55:14

11       Q    And when did you get that certification?

12       A    1998.

13       Q    And do you take continuing legal education

14   courses in order to keep that certification up to

15   date?                                                     12:55:31

16       A    No.  As soon as I received that, I did get

17   my master's degree in public administration and

18   government law.

19       Q    And when did you get that master's degree?

20       A    In 1994.                                         12:55:49

21       Q    And what institution did you receive the

22   degree from?

23       A    Murray State University.

24       Q    I'm sorry.  Could you spell that for me.

25       A    Murray State University in Murray,               12:56:04

                                                    Page 58

1    Kentucky.  And then I got my master's in human

2    development and leadership from Murray State

3    University in Murray, Kentucky.  And then I got my

4    K through five teaching master's degree from the

5    University of Cumberlands in Kentucky, and I taught      12:56:35

6    on Fort Campbell in Clarksville, Kentucky.

7         Q    When did you get that master's in -- was it

8    human development from Murray State University?

9         A    2006.

10        Q    And then when did you get the K through       12:57:07

11   five teaching master's?

12        A    2008.

13        Q    And do you have any other degrees in

14   addition to the ones you've listed?

15        A    No, ma'am.                                    12:57:22

16        Q    All right.  So you mentioned that none of

17   the people on the committee that voted to approve

18   you as director have college degrees or paralegal

19   certifications.  Is that -- is that correct?

20        A    The only individual that I'm aware of, but    12:57:53

21   this is not verified, is Linnette Sanford, who

22   stated that she was a legal secretary.

23        Q    All right.  And given none of these people

24   have college degrees, I assume they also -- none of

25   them went to law school.                                12:58:30

                                                            Page 59

```
 1        A    Correct.

 2        Q    And to your knowledge, none of them are

 3   licensed as attorneys?

 4        A    Correct.

 5        Q    To your knowledge, none of them have        12:58:42

 6   practiced law?

 7        A    Correct.

 8        Q    Do you know what level of education

 9   Mr. Jones has?

10        A    I know that he has a college education, but  12:58:52

11   I cannot confirm for you what -- you know, what it

12   is in.

13        Q    Okay.  And, to your knowledge, he has have

14   never gone to law school?

15        A    He hasn't?  Is that what you said?          12:59:12

16        Q    Yes.  He has not gone to law school, to

17   your knowledge?

18        A    To my knowledge, no.

19        Q    And he has never practiced law, to your

20   knowledge?                                            12:59:22

21        A    No.

22        Q    All right.  So these people on the

23   committee, how long did it take them from the time

24   that you were nominated by Mr. Jones to the time

25   that they voted to make you director of Sitcomm      12:59:39
```

Page 60

```
 1    Arbitration Association, how long did that take?

 2        A    About two weeks.

 3        Q    And have you met each of the people on the

 4    committee?

 5        A    Have I left them?                          12:59:53

 6        Q    Met them, met them in person, met them over

 7    the phone, met them over video.

 8        A    I've met them over the phone, and I've met

 9    them over video.

10        Q    All right.  So then in -- let's say         01:00:12

11    sometime in the summer or fall of 2019, you became

12    the director of Sitcomm Arbitration Association.

13    Did your responsibilities at Sitcomm change at that

14    point?

15        A    Yes.  I was responsible for the mail.       01:00:30

16        Q    And is this before you became director or

17    after?

18        A    After.

19        Q    After.  Okay.  I'm skipping around a lot,

20    and that's because you're giving us a lot of useful   01:00:53

21    information.  So I'm trying to gather it all in my

22    head and make sure that we're covering all the bases

23    that we need to.  But why don't you first describe

24    what your responsibilities were in January of 2019

25    when you joined Sitcomm Arbitration Association.       01:01:08
```

Page 61

```
 1      A    You mean why did I -- why did I join in

 2   January 2019?

 3      Q    We can start there.  Why did you join in

 4   January of 2019?

 5      A    Primarily because I wanted to learn.  I        01:01:25

 6   was -- I was familiar with the National -- the

 7   National Arbitration -- the National Arbitration

 8   Association.  Right?  And I was intrigued by some of

 9   the things that they had to say.  So I just wanted

10   to learn about the FAA.                                01:01:56

11      Q    And when you say the FAA, you mean the

12   Federal Arbitration Association or the Federal --

13      A    No, the Federal Arbitration Act, 9 USC

14   Section 1 through 16.

15      Q    Okay.  And at the time that you joined         01:02:16

16   Sitcomm Arbitration Association in January of 2019,

17   were you employed elsewhere before you joined?

18      A    No.

19      Q    No.  Did you have a job prior to

20   January 2019?                                          01:02:38

21      A    Yeah, I did.  I worked overseas.  I worked

22   in Egypt, and I worked in Libya.  I was a full-time

23   teacher.

24      Q    And where were you -- go ahead.  No, go

25   ahead.  Finish your sentence.                          01:02:57
```

Page 62

1       A     I worked for Harvard University School of

2    Dental Medicine.  I was an administrative assistant

3    to the dean of the school.

4       Q     And who was the dean?  What is the name of

5    the dean of the school?                          01:03:14

6       A     Oh, my gosh.  He passed away several years

7    ago.  But his predecessor who took his place, her

8    name was Joan Fink, and I -- I worked very closely

9    with her.

10      Q     And that was your job prior to joining    01:03:37

11   Sitcomm in January of 2019, is working in Egypt and

12   Libya teaching?

13      A     Yes.

14      Q     What were you teaching in Egypt and Libya?

15      A     In Egypt I was teaching second grade, and  01:03:51

16   in Libya I was teaching third grade.

17      Q     And were you teaching in English?

18      A     No, I was teaching all of the courses

19   because the children at the American international

20   schools, they could all speak English.            01:04:08

21      Q     Okay.  So you were teaching subjects all in

22   English, not in a different language?

23      A     Correct.

24      Q     When did you return to the United States?

25      A     In 2012.                                  01:04:22

Page 63

```
 1        Q     And in 2012 when you returned to the United

 2   States, what were you doing at that time?

 3        A     Nothing.  It was very difficult to find

 4   work.

 5        Q     So how long were you unemployed from the        01:04:37

 6   time that you returned to the United States in 2012

 7   until -- well, did you ever find a job in between

 8   2012 and starting to work with Sitcomm in January of

 9   2019?

10        A     No.  Because during that time, my mother        01:04:52

11   had gotten really sick.  She just recently passed

12   away this past summer.  So I moved in with her, and

13   I became her primary caregiver.

14        Q     Well, I'm sorry to hear that.  My

15   condolences.                                               01:05:13

16        A     Thank you.

17        Q     Now, in January 2019, you described why you

18   joined Sitcomm.  You were very interested in the

19   Federal Arbitration Act.  What in particular about

20   Sitcomm Arbitration Association caused you to want        01:05:29

21   to join this particular company versus another

22   arbitration company?

23        A     I think that they -- the way that they

24   portrayed it is that they were up and coming.

25   Mr. Jones is very, very knowledgeable about the FAA.     01:05:57
```

Page 64

1    I learned quite a bit from him.  I also did quite a

2    bit of studying on my own.  I don't, you know,

3    necessarily just take one person's perspective.

4    That's just never -- never been in my nature.  I

5    studied the Supreme Court Justice Cavanaugh to a          01:06:25

6    great extent and all of the case law, prior case law

7    and everything else.  And I found that basically

8    what Mr. Jones was reaching, you know, the

9    conclusions of, it was pretty synonymous to what I

10   had found myself.                                         01:07:04

11       Q    And you did mention at the very beginning

12   of the deposition that, you know, you've been a

13   little bit sick and ill and you're getting better

14   and you do want to get back to going to law school.

15   Did you attend law school at any point in the past       01:07:23

16   or currently?

17       A    Well, many, many years ago when I lived in

18   Boston, I was accepted to Suffolk, and I didn't

19   stay.  Upon entry I had a pretty horrible time with

20   peers, and I decided not to stay.  And so shortly        01:07:59

21   thereafter I did get married.  My husband was a

22   soldier in the United States Army.  We began to

23   have, you know, our children, and I did not graduate

24   even until 1998 when my last child was born.  And

25   once we moved to 101st Airborne is when I decided to     01:08:27

Page 65

1    go back to school and pursue my first degree in

2    public administration government law.

3        Q    Okay.  I'm just going to clean up some of

4    that because I didn't hear all of it, and maybe the

5    court reporter didn't get it, as well.  But you said    01:08:52

6    you were accepted to Suffolk while you were in

7    Massachusetts.  Is that the institution?

8        A    Suffolk, yes.

9        Q    Suffolk.  And that's a four-year college,

10   or what is that institution?                            01:09:05

11       A    Suffolk University Law School is a very

12   well-known law school in Boston.

13       Q    Okay.  And so you -- did you take the LSATs

14   before you applied?

15       A    No.  I wasn't required to because my grades    01:09:24

16   were very well -- very good.  So I wasn't required

17   to take an LSAT test.

18       Q    Okay.  And -- go ahead.

19       A    I am required to now because of the time

20   lapse, and so I've been studying to do that.  And      01:09:54

21   it's not -- you know, as you can see, it's not --

22   it's really not that hard.  If you do it once, you

23   can probably do it again but --

24       Q    So I didn't ask this question.  But where

25   did you go for undergrad, and what degree did you      01:10:27

Page 66

1    get?

2        A    I went to a private college.  I went to

3    Champlain College in Burlington, Vermont, and I got

4    my undergrad in paralegal, and then I got my

5    bachelor's of science degree.                    01:10:41

6        Q    And what years was that?

7        A    I graduated in 1998.

8        Q    All right.  So you were accepted into

9    Suffolk.  And was it your testimony that you didn't

10   get along with your peers?  Did I hear that    01:10:59

11   correctly?

12       A    I wasn't -- I wasn't accepted, like, right

13   after I graduated from -- from Champlain in 1998,

14   and it wasn't necessarily that I did not get along

15   with all my peers.  It was more or less an issue of  01:11:25

16   I did not get along with my professors.

17       Q    So how long were you enrolled at Suffolk

18   before you left?

19       A    Not even a month.

20       Q    And you never returned to Suffolk?     01:11:48

21       A    Never returned to Suffolk, no.

22       Q    All right.  And so then you said you got

23   married.  Are you still currently married?

24       A    No.

25       Q    What year did you get married?         01:12:02

Page 67

1      A    We got married in 1992.

2      Q    And what was your -- what is the name of

3   your then husband?

4      A    Kevin Goulette.

5      Q    And when did you get divorced?          01:12:19

6      A    We got divorced in 1996.

7      Q    And you mentioned that you had children

8   with Mr. Goulette.  How many children and what are

9   their names and ages?

10     A    I had three children.  Jacob was born in    01:12:34

11  1994.  Nicholas was born in 1998 -- 1996.  Megan was

12  born in 1998, the year that I graduated from

13  Champlain College.

14     Q    All right.  And you mentioned that you have

15  a roommate.  Who is that roommate?              01:12:58

16     A    The roommate here where I'm at now?

17     Q    Yes.  Correct.

18     A    Her name is Denise.

19     Q    Denise?

20     A    Yes.                                    01:13:14

21     Q    And what's her last name?

22     A    Brown.

23     Q    Does she work for Sitcomm Arbitration

24  Association?

25     A    No.                                     01:13:24

Page 68

1    Q    And how long has Denise Brown been your

2    roommate?

3    A    For three years.

4    Q    All right.  So going back, you haven't been

5    enrolled in another law school since Suffolk, but        01:13:44

6    you're currently practicing to take your LSATs

7    again.  Is that -- is that an accurate assessment of

8    where you are in that path?

9    A    Absolutely.  Although, over the past of the

10   course five years -- the past five years, more and      01:14:07

11   more law schools are not requiring L -- you know,

12   the test to get in, especially out in California.

13   Q    Okay.  So going back to when you joined

14   Sitcomm Arbitration Association in January 2019,

15   what was your title at that time?                        01:14:29

16   A    Just arbitrator secretary.

17   Q    So secretary to an arbitrator but not an

18   arbitrator; correct?

19   A    Right.  I scheduled.  I scheduled hearings.

20   I took care of accounting.  I sent out notices, sent    01:14:48

21   out contracts, and I was -- I was scheduling

22   arbitration hearings, yeah.

23   Q    And how many arbitrators did you act as

24   secretary for at that time?

25   A    At that time we actually had nine            01:15:17

                                                        Page 69

1    arbitrators.

2        Q    And you did all of the scheduling and

3    notices for all nine?

4        A    Correct.

5        Q    Were you the only secretary to the          01:15:35

6    arbitrators at Sitcomm at that time?

7        A    Correct.

8        Q    Have there been any other secretaries since

9    January 2019 other than you?

10       A    No.                                          01:15:47

11       Q    So when you then became the director of

12   Sitcomm Arbitration Association sometime in, let's

13   say, August or September of 2019, did you continue

14   with all of those responsibilities that you had as

15   secretary to the arbitrators?                        01:16:05

16       A    Absolutely, yes.  Because I did not feel

17   and nor did Mr. Jones that anyone, you know, could

18   handle those responsibilities, and, you know, it

19   just wouldn't have -- it just wouldn't have worked

20   out.                                                 01:16:30

21       Q    And how did your responsibilities increase

22   at the time that you became director in August or

23   September of 2019?

24       A    I would be responsible for handling any

25   complaints.                                          01:16:54

                                               Page 70

1        Q     What do you mean by --

2        A     -- and customer --

3        Q     Go ahead.  Go ahead.

4        A     That's okay.  Any customer service

5     questions, inquiries, comments, anything about          01:17:05

6     arbitration procedure, how long does it take, you

7     know, things of that nature, which, you know, I

8     could answer depending upon how the question was

9     posed.  Certain questions in regard to, you know,

10    what's my arbitrator going to do, I could not answer    01:17:33

11    those questions.  What can I do once I, you know,

12    receive my award?  I could not answer those

13    questions.  I made it very clear to every single

14    client that I was not privy to that information nor

15    could I disclose that kind of information to them.      01:18:06

16       Q     And when you joined Sitcomm Arbitration

17    Association in January 2019, what was your salary at

18    that time?

19       A     My salary -- I was considered a

20    subcontractor.  I didn't have a salary.                 01:18:23

21       Q     How were you paid, if at all?

22       A     Well, basically individuals as

23    subcontractors are paid according to the work that

24    they complete.  So if -- you know, if they're asked

25    to answer ten emails, then Mr. Jones would, you         01:18:55

                                                     Page 71

 1    know, compensate them for doing things of that

 2    nature.  And back then that would be between

 3    Mr. Jones, Mr. Alan.  So I could not possibly give

 4    you a figure.

 5        Q    But you were paid by task essentially?      01:19:23

 6        A    Yes.

 7        Q    Do you have an idea of how much you earned

 8    with Sitcomm, just a ballpark estimate, as a

 9    secretary to the arbitrators prior to becoming a

10    director?                                            01:19:44

11        A    Well, I -- I didn't -- I didn't have, like,

12    you know A, B, C, D things that I -- that I

13    necessarily got compensated for.  If I answered

14    emails and I gave clients a substantial response --

15    right? -- that I thought, you know, they would --    01:20:14

16    they would feel satis -- satisfied -- you know what

17    I mean? -- then I would be consti -- I would be

18    constip -- I can't talk today.

19        Q    That's all right.  And if we need a break,

20    just let me know.  But continue.                     01:20:36

21        A    I would be -- I would be con --

22    compensated, like, $5 for -- you know, per

23    substantial email that I would, you know, respond to

24    a client.  So if I just said something like, you

25    know -- well, you know, we'll get to it when we get   01:21:04

                                                        Page 72

```
1    to it or, you know, something that I would never
2    say -- you know what I mean? -- or, you know, you'll
3    just have to be patient.  You know, I would actually
4    take the time and explain the process to the client,
5    and that is something that would -- that, you know,      01:21:32
6    warrants the $5 of compensation for doing something
7    like that.
8        Q    All right.  Did you ever get paid per
9    application that you processed?
10       A    No.                                             01:21:53
11       Q    So you were just really getting paid by --
12   by email?
13       A    Right.  Because the applications would come
14   in along with the request for dispute resolution and
15   the proof of payment and a copy of the contract.        01:22:16
16   Okay?  At that point, I would just take all that
17   information, make sure that, you know, names were
18   correct, addresses were correct, things of that
19   nature.  And then I would take all those documents
20   and send out hearing notifications so that all of       01:22:44
21   the parties involved received the same
22   documentation.  And I think -- don't quote me on
23   this.  But I think for doing all of that we were --
24   we were compensated, like, $10.
25       Q    Okay.  So it sounds like you were             01:23:14
```

Page 73

1    compensated maybe $10 for each application and the

2    whole processing of that application.

3        A    Yeah.  Once everything was submitted, yes.

4        Q    All right.  You testified that there were

5    situations where, you know, those four prerequisites    01:23:35

6    in the application were not complete in some

7    fashion, and you had to send the file back to the

8    client, basically reject it and not -- and not pass

9    it along to an arbitrator.  In those situations,

10   were you still paid $10, or were you not paid         01:23:53

11   because it was a rejected file?

12       A    No, I wasn't paid.  Because it wouldn't

13   have even gone out.  The hearing notifications would

14   not have gone out.  And so what we would do is just

15   out of like a common courtesy type of situation, you  01:24:12

16   know, we would say, okay, well, thank you for

17   submitting your application.  Thank you for

18   submitting the contract, but we still need the proof

19   of service, and then we can send it out.  And then

20   once it's sent out, that person would receive the     01:24:31

21   $10 compensation.

22       Q    Got it.  Now, when you became director in

23   August or September of 2019, did your compensation

24   structure change?

25       A    Not a whole lot.                             01:24:50

                                                  Page 74

1        Q     So you got a promotion -- go ahead.

2        A     Right now because Brett has these three

3    organizations and he's incapacitated, to say the

4    least, I have been helping him with all three of the

5    organizations.  Over the past six months, you know,        01:25:26

6    people have -- people have not answered emails

7    correctly and kind of let, you know, the clients'

8    papers, you know, slip, things like that.  So, you

9    know, I let him know on every occasion, but he also

10   wants me to let them know that, you know, until it          01:26:01

11   gets fixed and until the customer is happy, they

12   will not be receiving their grant funds.

13       Q     Now, at the time that you became the

14   director, did they hire any additional, meaning

15   Brett Jones, did he hire anyone additional to assist        01:26:26

16   you with operating Sitcomm Arbitration Association?

17       A     No, ma'am.

18       Q     Now, let's talk about the arbitrators.  You

19   said that at the time that you started working as a

20   secretary for Sitcomm Arbitration Association there         01:26:55

21   were nine arbitrators.  Do you recall their names?

22       A     Yes.  We had Timothy Simpson, and he was

23   located in Nashville, Tennessee.  Steven -- it will

24   come to me.  Keisha Jones, she is in Georgia.  There

25   was another lady named Tracy, and she was in                01:27:55

                                                    Page 75

```
 1    Tennessee.  Alden Bennett, yeah, Alden Bennett, and
 2    he was in Texas.  Alan Hunt, even though he was a
 3    director, he was doing arbitrations, and he's in
 4    Missouri.  And then I can't forget -- I can't
 5    remember the other person.                      01:29:05
 6        Q    Okay.  Well, just as we left a blank
 7    earlier in the deposition transcript, you know,
 8    you've listed six names now, if you can remember the
 9    other three once you see the deposition transcript,
10    you can fill that in on the transcript.  Okay?  01:29:22
11        A    Okay.
12             INFORMATION REQUESTED:_____
13    _____
14    BY MS. CHANG:
15        Q    Now, the people you've named, do you know  01:29:28
16    if any of them were law school graduates?
17        A    There was an individual named -- he was in
18    Texas, too -- Gonzo.
19        Q    Is that G-o --
20        A    G-o-n-z-o.  I think his real name was      01:30:05
21    Mark -- Mark -- I'll find it.  But shortly after
22    Brett went to jail, I took a look at Mark's résumé,
23    and it was stated that he graduated from law school
24    in New York; although, New York has no record of him
25    graduating law school.  And then he further told a    01:31:01
```

Page 76

1    couple people that he was disbarred in Texas, and

2    when I looked at the -- Lily, stop.  I'm sorry, you

3    guys.  When I looked at the Texas Bar Association,

4    Mark was never -- was never part of that.  He also

5    said that his mother was an attorney and she          01:31:45

6    owned it.  She actually owned an insurance company.

7    And I couldn't find her.  Well, he said she was a

8    judge, but I couldn't find her either.

9          And so Gonzo wanted to be a part of SAA,

10   like, desperately, and I had to do some checking     01:32:22

11   into him.  And when I did do some checking into him,

12   I found out that he's had a pretty ongoing and to

13   this day serious narcotics issue.  And I also found

14   out that he had his children taken away from him and

15   that you know -- you know, this isn't about          01:33:03

16   retaliation.  I feel -- I feel bad for him.  But

17   then I had to stop and think even -- excuse me --

18   even if all of these things were alleged --

19   right? -- and even if before he went to court and

20   everything, it was, like, shortly thereafter that he  01:33:44

21   was indicted.  And I have a copy of his résumé,

22   which is, you know, almost unheard of to be a nurse

23   and then an attorney and a professional, you know,

24   veterinarian.  And I mean it just goes on and on and

25   on.  Right?                                           01:34:20

                                                  Page 77

```
 1           And then Gonzo I found out took quite a bit
 2    of money from a few of my friends, which really hurt
 3    my feelings because they were already down and out
 4    as it was losing their houses and stuff.  So I --
 5           Q    What --                                01:34:45
 6           A    -- haven't talked to him.
 7           Q    Sorry.  What did Gonzo take money from your
 8    friend for, or was he representing that he was going
 9    to assist them with not losing their homes?
10           A    No.  Gonzo took money from them saying  01:35:11
11    that -- that he could use some kind of, like,
12    sheik-like sovereign citizen.  Like, you know, he's
13    big into that, like that kind of stuff, ran patents
14    and discharging debt for mortgages and all this kind
15    of weird stuff.  And I'm not talking about, you      01:36:02
16    know, just like a little bit of money here and
17    there.  I'm talking about thousands of dollars that
18    he did this to some of my friends for.  And then
19    like they didn't have money to eat even for a long
20    time.  So it was kind of sad.  So I wasn't going to  01:36:28
21    let Gonzo have anything to do with Sitcomm, SAA.
22           But he also got into some serious trouble
23    last year.  He called me up and he said that he got
24    busted for marijuana, and he was going to get his
25    kids taken away.  And I kind of called his bluff,   01:37:02
```

Page 78

```
 1    and I said, "You know, Gonzo, unless you have like a

 2    lot of marijuana -- you know what I mean? -- people

 3    aren't really out to take kids away anymore, you

 4    know."  And then I got a phone call like a week

 5    later that they wanted to do, like, a hair test on      01:37:29

 6    him, and they found heroin, and they found this, and

 7    they found that.  And they did take the kids away.

 8    But I guess what bothered me the most was the fact

 9    that Gonzo was doing this in front of his kids, and

10    I thought that, you know, that was really sad, and      01:38:07

11    also he lied.

12        Q    Well, you know, that's -- that's

13    unfortunate but -- so from what I can gather from

14    your testimony, he was never made an arbitrator of

15    Sitcomm Arbitration Association because of all these    01:38:31

16    red flags that you just described.  Correct?

17        A    Correct.  But his address in Texas --

18    okay? -- the -- what is it?  The 1001 address in

19    Texas where he was serving as our resident agent,

20    and he was -- he was getting our mail, you know, and    01:38:57

21    doing all this stuff at the same time.  He never

22    ever ever gave us our mail.

23        Q    And who authorized him to serve as Sitcomm

24    Arbitration Association's registered agent?

25        A    That would be Brett.                           01:39:20
```

Page 79

1        Q     Brett.  Okay.  And I just had one question.

2   You said that you received Gonzo's résumé after

3   Brett had been -- had gone to prison.  When did

4   Brett go to prison, and was he in prison when you

5   joined Sitcomm in January of 2019?                01:39:44

6        A     No, Brett didn't go to prison until May 1st

7   of 2019.  Brett had -- he had Gonzo's résumé before

8   that.  I guess he just never checked into it.

9   Because as soon as I got a hold of it, I checked

10  into it, and I was like there's no way.  You can't   01:40:13

11  get through law school in two years and -- well,

12  maybe you can if you're a genius.  Right?  But Gonzo

13  is not a genius.

14       Q     Okay.  Now, when you -- when you joined

15  Sitcomm Arbitration Association in January of 2019,  01:40:41

16  Brett was not incarcerated.  Brett Jones was not

17  incarcerated; correct?

18       A     Correct.

19       Q     Did you ever meet him in person before he

20  went --                                             01:40:55

21       A     No.

22       Q     So you've never met him in person, period?

23       A     Hmm-um.

24            MS. CHANG:  All right.  Well, you know, I

25  think it's been a little bit more than an hour.  Why  01:41:02

                                                    Page 80

1   don't we take a 20-minute break at this point, if

2   that's okay with you, Ms. Goulette, and go back on

3   the record around 2:00 Pacific Time, 4:00 your time

4   in Mississippi.

5           THE VIDEOGRAPHER:  Sounds good.  We are now      01:41:22

6   going off the record.  The time is 1:41 p.m. Pacific

7   Standard Time.

8           (Recess taken.)

9           THE VIDEOGRAPHER:  We are now back on the

10  record.  The time is 3:05 p.m.                          03:05:49

11          MS. CHANG:  All right.

12          MR. POWERS:  This is Harris Powers on the

13  record also as local counsel.

14          MS. CHANG:  Okay.  Thank you, Mr. Powers.

15  This is Cheryl Chang.  As we broke for a 15- or         03:06:00

16  20-minute break back at 1:40 p.m. Pacific, 3:40 p.m.

17  Central Time, we all came back at 2:00 p.m. Pacific

18  and 4:00 p.m. Central Time as we agreed to after a

19  20-minute break.  Mr. Powers, the court reporter and

20  videographer and myself have been here waiting since    03:06:28

21  2:00 p.m. Pacific, 4:00 p.m. Central, and it's now

22  3:06 p.m. Pacific and 5:06 p.m. Central, and we have

23  not been able to reach Ms. Goulette.  I have called

24  her twice and left her two voicemails, and I've now

25  sent her three emails just trying to follow up with     03:06:50

Page 81

```
 1    her because I wasn't able to reach her on her phone.

 2    My co-counsel in Los Angeles, Nicole Metral, has

 3    also tried calling Ms. Goulette and left a voicemail

 4    and has been unable to reach her, as well.

 5           Since it does not appear that the witness    03:07:06

 6    is returning to the deposition, we will suspend the

 7    deposition for now, and we will coordinate with her

 8    to reconvene and continue her deposition to a later

 9    date and time.

10           I will mark as Exhibit 5 an email exchange    03:07:23

11    that I have been sending to Ms. Goulette at her

12    email address at sandy@saalimited.com.  The email

13    chain is carbon copied to Nicole Metral, Harris

14    Powers and my other colleague in LA, Jessica

15    McElroy, and we'll make that Exhibit 5 to the    03:07:49

16    deposition.

17           (Exhibit 5 was marked for identification.)

18           MS. CHANG:  Anything else I need to add,

19    Mr. Powers?

20           MR. POWERS:  Just verify that Ms. Chang has    03:07:54

21    had the benefit of local counsel during this

22    deposition consistent with the Uniform Rules of

23    Practice for the northern and southern districts of

24    Mississippi.  There have been numerous good faith

25    attempts made by Ms. Chang to resolve what I    03:08:13
```

Page 82

1    perceive as to be a discovery dispute under Rule 30

2    and Rule 37 of the Federal Rules of Civil Procedure.

3    And to the extent that further efforts are made to

4    resolve this discovery dispute and go unresponded

5    to, this is our record that's being made in support        03:08:35

6    of a motion to compel and a motion for sanctions

7    pursuant to the Federal Rules of Civil Procedure and

8    the local rules of practice.

9           MS. CHANG:  Thank you, Mr. Powers.  I join

10   in all of that, and with that I think we can go off        03:08:49

11   the record.

12          MR. POWERS:  Good evening, everyone.  And

13   I'm going to shoot you a quick email, Cheryl.

14          MS. CHANG:  Okay.  All right.  And, Lisa,

15   I'm going to send you -- and I'll send it to               03:09:00

16   Jonathan, as well, just, you know, in case.  I'll

17   just follow on that last email.  I will forward you

18   all the exhibits for today.  And I don't need a

19   rough right away, but it would be nice and

20   interesting to see what we've got so far.  So if you       03:09:14

21   can get it to me by the end of the week, that would

22   be fabulous.

23          THE REPORTER:  I can do that.

24          MS. CHANG:  All right.

25          THE VIDEOGRAPHER:  Okay.  We're now going            03:09:22

Page 83

1    off the record, and this concludes the video

2    deposition of Sandra Goulette.  The time is

3    3:09 p.m. Pacific Standard Time.

4

5               (TIME NOTED:  3:09 P.M. PST.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 84

1

2

3       I, SANDRA GOULETTE, do hereby declare under penalty

4   of perjury that I have read the foregoing transcript;

5   that I have made any corrections as appear noted, in ink,

6   initialed by me, or attached hereto; that my testimony as

7   contained herein, as corrected, is true and correct.

8

9       EXECUTED this _____ day of _____,

10   2020, at_____,_____.
                     (City)                   (State)

11

12

13             _____
                     SANDRA GOULETTE

14

15

16

17

18

19

20

21

22

23

24

25

                                              Page 85

1            I, the undersigned, a Certified Shorthand

2     Reporter of the State of California, do hereby

3     certify:

4            That the foregoing proceedings were taken

5     before me at the time and place herein set forth; that

6     any witnesses in the foregoing proceedings, prior to

7     testifying, were administered an oath; that a record of

8     the proceedings was made by me using machine shorthand

9     which was thereafter transcribed under my direction;

10    that the foregoing transcript is a true record of the

11    testimony given.

12            Further, that if the foregoing pertains to

13    the original transcript of a deposition in a Federal

14    Case, before completion of the proceedings, review of the

15    transcript [ ] was [ ] was not requested.

16            I further certify I am neither financially

17    interested in the action nor a relative or employee of

18    any attorney or any party to this action.

19            IN WITNESS WHEREOF, I have this date

20    subscribed my name.

21    Dated:  December 22, 2020

22

23

24            LISA ANDREASEN

25            CSR No. 9584, RPR

                                        Page 86

[& - address]

**&**

**&**   3:12 34:9 39:11

**0**

**00193**   1:6 2:6 5:12

**1**

**1**   1:25 4:8 5:6
    11:23 12:3,16
    39:14 62:14
**10**   12:13 73:24
    74:1,10,21
**100**   27:4 51:6
**1001**   79:18
**101st**   65:25
**10:30**   16:18
**10:46**   2:17 5:2,5
**11**   4:8 12:14
**11:00**   12:7 15:12
**12**   4:24
**12:07**   49:6
**12:22**   49:8
**12:30**   16:17
**12:36**   49:11
**14**   4:9
**15**   4:12 49:2 50:16
    81:15
**16**   4:15 62:14
**17**   4:9 14:9
**18**   4:23
**1992**   68:1
**1994**   58:20 68:11
**1996**   68:6,11
**1998**   47:10 58:12
    65:24 67:7,13
    68:11,12
**1:40**   81:16
**1:41**   81:6
**1st**   54:4 80:6

**2**

**2**   4:9 14:6,7 39:22
**20**   18:2 81:1,16,19
**2006**   59:9
**2008**   59:12
**2012**   51:2 63:25
    64:1,6,8
**2019**   27:24 42:15
    42:22 44:11 52:12
    52:23 54:4,5 55:1
    55:21 57:24 61:11
    61:24 62:2,4,16,20
    63:11 64:9,17
    69:14 70:9,13,23
    71:17 74:23 80:5
    80:7,15
**2020**   1:17 2:18 4:9
    4:12,18 5:1,6 12:7
    14:9 15:8 16:17
    85:10 86:21
**2029**   3:6
**22**   86:21
**28th**   47:24 48:11
    49:22
**2:00**   81:3,17,21
**2:19**   1:6 2:6 5:12

**3**

**3**   4:12,12 15:5,6
**30**   4:23 83:1
**3007**   13:11 14:2
**309**   3:14
**37**   83:2
**38935-8230**   3:16
**39440**   14:3
**3:05**   81:10
**3:06**   81:22
**3:09**   2:17 84:3,5
**3:40**   81:16
**3rd**   15:8

**4**

**4**   4:15 16:9,12,14
    39:14
**41**   14:24 39:25
**424.239.3400**   3:8
**4367213**   1:24
**4:00**   81:3,18,21
**4th**   15:17 17:6

**5**

**5**   4:18 72:22 73:6
    82:10,15,17
**500**   31:12,18,20
**5:06**   81:22

**6**

**6**   4:4
**662.455.1613**   3:17
**6894**   86:23
**6th**   3:6

**7**

**7**   12:7
**76**   4:24
**7th**   15:11 16:1

**8**

**8**   1:17 2:18 4:18
    5:1,6
**82**   4:18
**8230**   3:15
**86**   1:25
**8th**   16:17

**9**

**9**   62:13
**90067-2907**   3:7
**9584**   1:23 2:19
    86:25
**9th**   17:9

**a**

**a.k.a.**   47:1

**a.m.**   2:17 5:2,5
    12:7 15:12 16:18
**able**   7:2 22:20
    29:11 30:8 32:3
    34:4 40:22 81:23
    82:1
**absolutely**   24:15
    24:16 26:6 28:14
    36:14 38:21 69:9
    70:16
**absurd**   43:5
**abuse**   48:5
**accepted**   65:18
    66:6 67:8,12
**access**   10:15 17:3
    48:24 49:25
**accommodated**
    16:8
**accommodations**
    17:14
**accounting**   69:20
**accurate**   27:22
    31:4 35:14 52:15
    69:7
**accurately**   7:3
**accused**   18:16
    47:10
**acquaintance**
    44:19
**acronym**   48:2
**act**   48:4 62:13
    64:19 69:23
**action**   5:19 6:4,22
    14:10 86:17,18
**add**   82:18
**addition**   38:24
    59:14
**additional**   7:1
    54:7 75:14,15
**address**   13:10,13
    13:16,19,22 14:2

Page 1

[address - asks]

15:10 79:17,18
82:12
**addressed** 14:15
15:9
**addresses** 73:18
**administer** 5:18
**administered** 6:14
86:7
**administration**
58:17 66:2
**administrative**
63:2
**admit** 28:1
**advised** 13:17
**affect** 7:19
**affiliations** 5:23
**afternoon** 6:19
16:1
**agent** 79:19,24
**ages** 68:9
**ago** 18:1,2,3 29:7
29:15 30:2 37:6
37:12,14 46:12
56:19 63:7 65:17
**agreed** 16:9 81:18
**agreement** 23:10
23:24
**ahead** 25:15 34:14
41:8 62:24,25
66:18 71:3,3 75:1
**air** 36:22
**airborne** 65:25
**alan** 52:24 53:1
72:3 76:2
**alaric** 1:9 2:9 57:7
57:7,7
**alcohol** 7:21
**alden** 55:9,13,22
76:1,1
**allegations** 18:18

**alleged** 18:25
77:18
**allegedly** 18:16
**allow** 10:2
**allowed** 24:10
**alternative** 16:2
**ambient** 21:21
**amended** 4:16
16:15,19
**american** 63:19
**amount** 46:14
47:22
**ample** 38:19
**andreasen** 1:22
2:18 5:16 7:9 10:7
22:8 27:11,15
30:11 86:24
**angeles** 3:7 82:2
**animals** 46:14,15
**answer** 7:3,14,15
8:7,10,20 9:11
10:4 13:7 27:14
57:11 71:8,10,12
71:25
**answered** 72:13
75:6
**answering** 7:7
9:14
**answers** 7:9 9:1
30:25,25
**antibiotics** 40:11
40:18,24
**anybody** 20:24
53:23
**anymore** 79:3
**anytime** 7:13 10:1
**anyway** 47:15
**apologies** 13:3
**apologize** 13:7
**appeal** 50:11

**appealed** 50:8,9
**appear** 38:16,17
82:5 85:5
**appearance** 5:25
**appearances** 3:1
5:23
**appeared** 38:16
**appearing** 3:10,19
6:8
**appears** 10:11
**appellate** 47:20
48:14 49:20
**apple** 33:13,13
55:12
**application** 22:22
23:6,12,19 24:9
25:6 26:2,18,23
27:18 28:7,18,19
29:3 30:2 32:6,21
32:23,24 33:5,21
33:23,24 35:20
37:13 38:24 39:1
39:7,8 41:13 73:9
74:1,2,6,17
**applications** 23:17
23:22,25 24:5
25:23 32:25 73:13
**applied** 66:14
**applies** 23:4
**appointed** 50:12
**appointment** 16:6
40:9
**appropriate** 19:19
23:12 47:21 53:7
**approval** 54:7
55:3
**approve** 55:22,23
59:17
**arbitration** 1:7 2:7
5:9 20:7 23:5,8,23
23:25 24:10,22

25:9 27:23 28:7
31:25 32:17,19
33:14,18 35:13,20
37:11 38:11 42:12
44:24 45:1 46:20
50:18,23 52:3,4,5
52:14,22 54:8,10
54:24 55:5,16,20
57:23 61:1,12,25
62:7,7,12,13,16
64:19,20,22 68:23
69:14,22 70:12
71:6,16 75:16,20
79:15,24 80:15
**arbitrations** 20:3
24:11 34:8 76:3
**arbitrator** 20:19
22:18,18,20 23:15
24:15,19,19 25:3
25:15,18,24 26:5
28:12 32:2 33:3
34:14,15,24 35:6
36:6,13,15 37:1
38:12,14,20 69:16
69:17,18 71:10
74:9 79:14
**arbitrator's** 36:9
**arbitrators** 41:19
42:19 69:23 70:1
70:6,15 72:9
75:18,21
**arizona** 47:10
**army** 65:22
**aside** 20:3
**asked** 13:6 15:25
17:5,12 43:2
71:24
**asking** 7:1 10:4
30:10 35:15 36:16
**asks** 8:14 27:13

[assessment - cava]

assessment   69:7
assign   25:15
assigned   25:20
assigning   28:11
assignments   53:12
assist   50:10 75:15
  78:9
assistant   63:2
association   1:7 2:7
  5:9 33:14,18
  42:13 50:18,24
  52:3,4,5,15,22
  54:8,10,24 55:5,16
  55:20 57:24 61:1
  61:12,25 62:8,12
  62:16 64:20 68:24
  69:14 70:12 71:17
  75:16,20 77:3
  79:15 80:15
association's
  79:24
assume   8:21 59:24
attached   85:6
attaches   14:25
attachments   4:10
  4:13
attempt   38:16
attempting   45:20
attempts   82:25
attend   65:15
attending   5:22
attorney   6:1 16:22
  17:12 40:7 77:5
  77:23 86:18
attorneys   60:3
august   54:5 55:1
  55:21 57:24 70:13
  70:22 74:23
authorized   5:18
  79:23

automatically
  55:2
award   41:25 71:12
aware   59:20

**b**

b   4:14 44:3 55:11
  72:12
bachelor's   67:5
back   8:18 26:20
  37:5 40:15 42:24
  43:7,12 44:11
  49:8,10 57:22
  65:14 66:1 69:4
  69:13 72:2 74:7
  81:2,9,16,17
background   43:1
  58:5,7
bad   40:17 77:16
ballpark   72:8
bank   38:4
bar   77:3
bases   38:20 61:22
basic   34:21
basically   22:22
  23:13 26:14 32:12
  65:7 71:22 74:8
bat   7:7
bear   55:8
beckham   3:12
becoming   72:9
bed   40:12
began   65:22
beginning   2:16
  5:25 22:10,12
  27:8 39:15 43:9
  65:11
behalf   2:15 6:7
  20:15 35:3 46:20
believe   10:14
  15:16,20 20:13
  31:1,15 34:2

35:10 37:23 40:1
  49:3 51:2 58:9
benefit   82:21
bennett   55:9,10,14
  55:23,25 76:1,1
best   9:15 13:13
  31:14
better   21:9,10,17
  40:14,22 65:13
big   78:13
biggers   3:12
bit   13:4 21:14 28:2
  65:1,2,13 78:1,16
  80:25
blank   3:4 6:3
  27:15 30:11 39:11
  76:6
blankrome.com
  3:9
bluetooth   21:18
  21:19,21
bluff   78:25
born   65:24 68:10
  68:11,12
boston   65:18
  66:12
bothered   79:8
branch   44:1,1,2,2
  44:6
brand   36:21,21
break   9:19,21,22
  10:1,2,3 11:15
  22:2 49:2,19 53:1
  53:19 72:19 81:1
  81:16,19
breaks   22:1
brett   43:15,16,25
  44:6,16 45:15,16
  45:18,21,21 47:1
  49:19 75:2,15
  76:22 79:25 80:1

80:3,4,6,7,16,16
bring   35:17,20
  37:25 38:6
broke   81:15
brought   36:22
brown   36:18,23
  68:22 69:1
burlington   67:3
business   50:17
busted   78:24

**c**

c   44:3 45:12 56:12
  56:12 57:8 72:12
california   3:7 46:4
  46:7 47:4,17,19
  69:12 86:2
call   11:14 16:22
  44:17 45:25 79:4
called   26:7 38:6
  78:23,25 81:23
calling   82:3
calls   48:24 50:6
camera   10:15,21
campbell   59:6
capa   56:1,11,12,21
carbon   82:13
care   29:11 42:6
  69:20
caregiver   64:13
case   5:11 9:2,3
  13:17 14:16 18:4
  18:8,10,13,14,15
  19:12,22,23 28:17
  36:23 39:24 50:7
  65:6,6 83:16
  86:14
cases   23:14
cause   21:14
caused   64:20
cava   56:17

[cavanaugh - convicted]

**cavanaugh** 65:5
**cell** 10:22,25 11:4
**central** 6:9 12:7
  16:17 19:5 81:17
  81:18,21,22
**century** 3:6
**certain** 27:5 71:9
**certification** 58:9
  58:11,14
**certifications**
  59:19
**certified** 2:18 86:1
**certify** 86:3,16
**chain** 82:13
**champlain** 67:3,13
  68:13
**chang** 3:5,9 4:4
  6:2,3,17,21 11:24
  14:8 15:7 16:13
  20:25 21:4,10,13
  21:19 22:6,7
  30:20 40:8 49:1,7
  49:13,16,17 57:16
  76:14 80:24 81:11
  81:14,15 82:18,20
  82:25 83:9,14,24
**change** 15:23 17:6
  45:21 61:13 74:24
**changes** 31:3
**charge** 19:16,17
**chat** 11:10
**check** 35:7
**checked** 80:8,9
**checking** 77:10,11
**cheryl** 3:5 6:3,21
  81:15 83:13
**child** 65:24
**children** 63:19
  65:23 68:7,8,10
  77:14

**citizen** 78:12
**city** 51:15 85:10
**civil** 83:2,7
**claim** 35:16
**claimant** 26:16
  32:14,18
**claimants** 24:14
**clair** 46:11
**clarification** 25:5
  35:1 36:2 57:14
**clarifying** 38:23
**clarksville** 59:6
**class** 12:21,24
**clause** 24:22 32:18
**clean** 66:3
**clear** 43:8 44:25
  71:13
**client** 18:20 20:15
  22:12 23:4 26:6
  28:15 35:7,8 36:8
  71:14 72:24 73:4
  74:8
**clients** 19:18 20:17
  22:16 23:17,22,25
  24:4,13 72:14
  75:7
**closely** 63:8
**clues** 38:12
**colleague** 82:14
**college** 58:5 59:18
  59:24 60:10 66:9
  67:2,3 68:13
**come** 38:2 49:8
  73:13 75:24
**comes** 11:21
**comfort** 9:21
**comfortable** 31:3
**coming** 25:1 64:24
**comments** 71:5
**commit** 29:23

**committee** 55:25
  57:1,18,25 58:3
  59:17 60:23 61:4
**common** 74:15
**communicate** 11:9
  48:22
**communication**
  20:20
**company** 18:23
  34:9 53:14 64:21
  64:22 77:6
**compel** 83:6
**compensate** 72:1
**compensated**
  72:13,22 73:24
  74:1
**compensation**
  73:6 74:21,23
**complaint** 26:8
  32:9,10
**complaints** 70:25
**complete** 71:24
  74:6
**completely** 25:2
  34:23 36:13
**completing** 53:12
**completion** 86:14
**comply** 32:16,17
**computer** 11:5
  30:4,5,7 49:25
**computers** 48:25
**con** 72:21
**concerned** 10:20
  24:11
**concludes** 84:1
**conclusions** 65:9
**conditioning**
  36:22
**condolences** 64:15
**conduct** 24:10

**conducting** 18:17
**confirm** 11:3,8
  34:4 36:7 60:11
**confirmation**
  12:15 13:10
**conflict** 22:19 34:9
  34:10
**consequently**
  47:15
**considered** 20:19
  71:19
**consisted** 55:25
**consistent** 82:22
**consti** 72:17
**constip** 72:18
**contact** 48:19
  53:15,17
**contacted** 15:17
  15:20
**contained** 85:7
**continue** 70:13
  72:20 82:8
**continuing** 58:13
**contract** 24:9
  25:10,16,17,25
  26:13,24 27:2,16
  28:20 29:15,16,20
  29:25 30:12,15,15
  32:7 33:4,22 34:2
  34:5,11 35:7,12,21
  36:4,8 37:3 38:9,9
  38:10,15 41:10,14
  73:15 74:18
**contracts** 24:25
  69:21
**contractual** 23:10
  23:23 24:12 36:12
**conversations**
  50:15
**convicted** 47:9
  48:5

Veritext Legal Solutions
866 299-5127

[conviction - direction]

**conviction**  47:14
 49:21
**coordinate**  82:7
**copied**  82:13
**copy**  23:9 27:18
 30:3 41:9 73:15
 77:21
**corporation**  51:8
 51:10
**correct**  11:12
 12:18 13:15,18,23
 14:4 15:3,18,19
 26:25 28:22 29:21
 30:8,9 33:8,15,19
 35:10 39:16 43:23
 45:19 48:18 59:19
 60:1,4,7 63:23
 68:17 69:18 70:4
 70:7 73:18,18
 79:16,17 80:17,18
 85:7
**corrected**  85:7
**corrections**  47:4
 85:5
**correctly**  27:21
 67:11 75:7
**correspondence**
 20:14
**correspondences**
 22:11
**counsel**  5:21 6:3,8
 6:23 15:20 49:14
 50:12 81:13 82:2
 82:21
**couple**  29:7,9,10
 29:14 30:2,23
 37:14 40:9 46:12
 50:13 77:1
**course**  35:25
 69:10

**courses**  58:14
 63:18
**court**  1:1 2:1 5:10
 5:16 6:11 8:10,18
 8:25 13:17 19:22
 33:10,11 37:20
 47:21 48:14 50:12
 65:5 66:5 77:19
 81:19
**courtesy**  74:15
**cover**  14:25
**covering**  61:22
**covid**  8:6
**crafting**  9:9
**create**  27:11
**crescent**  13:11
 14:3 15:9
**crime**  47:8
**crimes**  47:8 48:6
**criminal**  47:12
**csr**  1:23 86:25
**cumberlands**  59:5
**current**  14:10 47:9
**currently**  7:18
 10:9 13:25 14:2
 47:3,3,6 65:16
 67:23 69:6
**custody**  54:3,25
**customer**  71:2,4
 75:11
**cut**  50:4
**cv**  1:6 2:6 5:12

**d**

**d**  55:10,12 56:8
 72:12
**date**  14:17 15:23
 16:5 17:8 54:1
 58:15 82:9 86:19
**dated**  86:21
**day**  16:2 17:6
 77:13 85:9

**days**  8:16
**deal**  8:16
**dean**  63:3,4,5
**debt**  78:14
**december**  1:17
 2:18 4:12,18 5:1,6
 12:7 15:8,11,17
 16:1,17 17:6,9
 47:24 48:11 49:22
 86:21
**decide**  25:3 36:4
 36:25 37:1 38:15
**decided**  65:20,25
**decision**  47:20
 49:20
**decisions**  43:5
**declare**  85:3
**defendant**  4:17
 12:5 16:15 19:11
**defendants**  1:10
 2:10 4:10 14:10
 14:16 39:18,24
**definitely**  10:2
**degree**  58:17,19
 58:22 59:4 66:1
 66:25 67:5
**degrees**  43:2 59:13
 59:18,24
**delivery**  12:15
**denise**  68:18,19
 69:1
**dental**  63:2
**department**  47:4
**depending**  71:8
**depends**  31:10
**deposition**  1:15
 2:14 4:8,16 5:7,13
 6:24 8:5,25 9:20
 11:6,9,11 12:3,4,5
 12:6,8,16,20 13:13
 14:12,14 15:1,11

**15:24 16:4,10,15**
 16:16,19 17:3,7,8
 17:10,16,19,21,25
 18:8 19:25 20:8
 20:12 22:14 23:3
 23:17,20 24:1,6
 25:7 26:23 27:9
 27:10,12 28:6
 29:4,6 30:14,22
 32:22 33:17 37:12
 39:4,6,11,13,15,23
 40:4 41:16,17
 65:12 76:7,9 82:6
 82:7,8,16,22 84:2
 86:13
**depositions**  14:17
 14:19,24
**describe**  32:11
 61:23
**described**  64:17
 79:16
**description**  4:7
**desktop**  10:18
**desperately**  77:10
**determination**
 24:17,18,18 38:21
**development**  59:2
 59:8
**devices**  10:16 11:5
**difference**  9:16
 51:1
**different**  36:17
 37:15 42:20 51:25
 52:9,17,19 63:22
**difficult**  13:6 28:2
 64:3
**difficulties**  8:15
**difficulty**  20:24
 22:9
**direction**  86:9

Veritext Legal Solutions
866 299-5127

**[directly - extremely]**

directly 21:6
director 42:20
52:17,21 53:20,25
54:2,9,24 55:2,5
55:19,23 57:23
59:18 60:25 61:12
61:16 70:11,22
72:10 74:22 75:14
76:3
disbarred 77:1
discharging 78:14
disclose 71:15
disclosed 36:20
discomfort 21:14
disconnecting
21:5
discovery 83:1,4
discuss 50:5,7,17
dispute 22:20
24:23 26:7 28:21
32:8,10,15 33:5
34:13,19,24 36:19
73:14 83:1,4
disputes 25:18
52:9
distinction 50:20
district 1:1,2 2:1,2
5:10,10 37:20
districts 82:23
division 5:11
divorced 68:5,6
doctor 40:22
doctor's 16:6 40:9
document 12:14
12:17 14:6,24
15:5 16:11 32:11
32:12 39:16,22,25
40:1 42:5
documentation
22:23 24:21 34:22
37:17 39:10 41:22

53:7 73:22
documents 20:5
20:10,12,13 22:10
22:13,15,16,18
23:2,6 28:14 39:3
39:5,12 40:6 41:2
73:19
dogs 54:15,16
doing 6:24 8:5
9:11 30:3,4 42:3
43:4,9 64:2 72:1
73:6,23 76:3 79:9
79:21
dollars 78:17
drawer 3:15
drive 13:11 14:3
15:10
drugs 7:24
duties 26:14

**e**

e 33:10,11 43:15
43:20,20 51:14
55:10,11,12 56:4,4
56:5,5,12,12,21,21
earbuds 21:16
earlier 6:20 39:22
76:7
earned 72:7
earpods 21:1,6,17
easier 33:9
east 3:6
eastern 5:11
eat 78:19
echo 13:5
education 58:13
60:8,10
eeon 43:20 44:16
45:17,18,20,24
46:1,2,17,22,23,25
48:10,19,22 49:19

eeon's 48:14
effort 38:1,6
efforts 83:3
egypt 62:22 63:11
63:14,15
either 12:21,24
15:25 58:7 77:8
electronic 10:16
11:5
electronics 10:20
elements 28:11,12
28:18 33:2
eliker 56:20
email 11:10 16:23
16:25 17:2,11
41:4 42:5 45:25
48:23 72:23 73:12
82:10,12,12 83:13
83:17
emails 4:18 71:25
72:14 75:6 81:25
employed 62:17
employee 86:17
employment 18:14
enacted 47:13
ended 40:16
ends 30:14,22
english 63:17,20
63:22
enrolled 67:17
69:5
entire 26:19 39:25
41:13 55:24
entities 51:1
entity 52:10
entry 65:19
eric 56:2 57:11,12
especially 69:12
esq 3:5,13
essentially 72:5

estimate 9:16,17
72:8
evening 83:12
eventually 53:1
everybody 34:22
39:20 43:4
evidence 38:18
41:23 47:22
ex 20:20
exact 47:25
examination 4:2
6:16
examined 6:14
example 26:16
35:10 36:3
exchange 45:25
82:10
excuse 20:17
26:11 27:4 36:11
37:22 41:18 44:15
77:17
execute 31:5
executed 85:9
execution 27:20
exhausting 21:24
exhibit 4:8,9,12,15
4:18 11:20,23
12:3,16 14:6,7
15:5,6 16:9,12,14
39:22 82:10,15,17
exhibits 4:6 39:14
83:18
explain 73:4
explanation 7:15
express 12:22,25
13:1,2,3,9,9
extent 65:6 83:3
extremely 46:14

Page 6

[f - gosh]

| f | | | |
|---|---|---|---|
| **f** 3:13 56:8 | **financially** 5:19 | **found** 27:16 33:22 | **give** 9:10,15,20 |
| **faa** 62:10,11 64:25 | 86:16 | 36:20 65:7,10 | 10:4 18:8 25:14 |
| **fabulous** 83:22 | **find** 22:2 24:9,25 | 77:12,13 78:1 | 26:15 27:5,14 |
| **fact** 17:11 39:9 | 26:22 30:8 32:23 | 79:6,6,7 | 32:3 47:22 72:3 |
| 51:21 55:6 79:8 | 35:4 64:3,7 76:21 | **founded** 51:2 | **given** 20:14 38:19 |
| **fails** 32:16 | 77:7,8 | **founder** 42:23 | 59:23 86:11 |
| **faith** 25:2 38:1,6 | **finding** 19:18 | 43:11,14 | **gives** 32:18 |
| 82:24 | 24:21 | **four** 28:10,18 32:5 | **giving** 38:12 61:20 |
| **fall** 61:11 | **fine** 8:19 22:4 | 33:1 35:5 52:19 | **glad** 40:21 |
| **familiar** 48:2 62:6 | **finish** 9:10 62:25 | 66:9 74:5 | **gmac** 26:17 35:12 |
| **far** 9:7 10:19 | **fink** 63:8 | **frequent** 19:4 22:1 | 35:16,22 |
| 24:11 25:16 32:14 | **firm** 5:15,17 6:6 | **friday** 15:19 | **go** 20:4 22:15 |
| 83:20 | 18:7,12,20,20,22 | **friend** 42:18,18 | 24:24 25:15 31:2 |
| **fashion** 74:7 | **first** 12:21,24 | 44:13,13,18,18,18 | 34:14 37:5 38:9 |
| **federal** 12:22,25 | 14:18 42:11 44:12 | 44:19 45:2,4 46:6 | 39:12 41:8 54:7 |
| 13:2,3,8,9 48:4,4 | 46:1 52:16 61:23 | 78:8 | 57:25 62:24,24 |
| 62:12,12,13 64:19 | 66:1 | **friends** 44:14 78:2 | 66:1,18,25 71:3,3 |
| 83:2,7 86:13 | **five** 31:12,16,20 | 78:18 | 75:1 80:4,6 81:2 |
| **fedex** 12:15 15:2,9 | 31:24 59:4,11 | **frivolous** 38:2 | 83:4,10 |
| **fee** 25:11 31:9,9,10 | 69:10,10 | **front** 79:9 | **god** 40:14 |
| 31:12,18 32:7 | **fixed** 75:11 | **fulfill** 26:3 | **goes** 31:14 77:24 |
| **feel** 40:14 70:16 | **flags** 79:16 | **full** 56:11,13 62:22 | **going** 5:5 11:19,20 |
| 72:16 77:16,16 | **floor** 3:6 | **fulton** 3:14 | 14:5 15:4 21:24 |
| **feeling** 8:1 40:21 | **follow** 81:25 83:17 | **funds** 75:12 | 24:20 27:11 29:10 |
| **feelings** 78:3 | **followed** 54:17 | **further** 76:25 83:3 | 30:11 31:5 37:21 |
| **feels** 22:19 | **following** 16:2 | 86:12,16 | 38:3,7 41:22 43:7 |
| **fees** 23:13 25:25 | 19:18 42:2 | | 44:11 49:5,10,21 |
| **fifteen** 50:3 | **follows** 6:15 | g | 53:10 57:22 65:14 |
| **figure** 72:4 | **foregoing** 85:4 | **g** 55:10 76:19,20 | 66:3 69:4,13 |
| **file** 29:14,14 30:3 | 86:4,6,10,12 | **gap** 8:16 | 71:10 78:8,20,24 |
| 30:7 32:19 35:2,5 | **foreign** 51:7,7,9 | **gatekeeper** 36:7 | 81:6 83:13,15,25 |
| 35:12,14,23 36:3 | 51:17,22 | **gather** 61:21 | **gonzo** 76:18 77:9 |
| 37:2,15 40:4,5 | **forget** 56:2 76:4 | 79:13 | 78:1,7,10,21 79:1 |
| 46:19 74:7,11 | **forgot** 27:10 | **genius** 80:12,13 | 79:9 80:12 |
| **filed** 5:9 | **formed** 51:10,22 | **georgia** 75:24 | **gonzo's** 80:2,7 |
| **fill** 23:5 26:6 27:18 | 52:11,13 | **getting** 32:14 | **good** 5:4 6:2,18,18 |
| 76:10 | **fort** 59:6 | 40:15,15,16 41:24 | 9:6 25:1 38:1,6 |
| **filled** 22:23 23:11 | **forth** 37:25 38:6 | 48:10 65:13 73:11 | 42:21 66:16 81:5 |
| 26:17 | 86:5 | 79:20 | 82:24 83:12 |
| | **forward** 23:8 25:1 | **gibbs** 1:9 2:9 | **gosh** 63:6 |
| | 28:16 34:23 83:17 | 14:20 | |

Veritext Legal Solutions
866 299-5127

**[gotten - institution]**

**gotten** 46:13 64:11
**goulette** 1:8,15 2:8
  2:15 4:3,13,17,19
  5:7 6:13,18 12:4,6
  12:17 13:4 14:20
  15:14 16:16,20
  49:18 58:9 68:4,8
  81:2,23 82:3,11
  84:2 85:3,13
**government** 58:18
  66:2
**grade** 63:15,16
**grades** 66:15
**gradually** 31:14
**graduate** 65:23
**graduated** 67:7,13
  68:12 76:23
**graduates** 76:16
**graduating** 76:25
**grant** 75:12
**great** 9:19 30:21
  65:6
**greenwood** 3:16
  6:6
**guess** 9:15,17
  21:14 27:9 43:1
  79:8 80:8
**guys** 77:3

**h**

**h** 33:11 44:3 52:24
**hair** 79:5
**half** 47:18
**hand** 22:17
**handle** 22:20
  70:18
**handling** 19:16
  52:8 70:24
**happen** 18:3 20:21
**happened** 39:2
**happening** 44:15

**happens** 38:5
**happy** 46:16 75:11
**hard** 19:9 30:3
  66:22
**harris** 3:13 6:5,23
  49:14 81:12 82:13
**harvard** 63:1
**hawaii** 34:3 37:20
**head** 7:10,10,16
  37:7 40:7 61:22
**headset** 21:1,16
**hear** 13:6 25:20
  40:20 64:14 66:4
  67:10
**heard** 25:10
**hearing** 9:3 19:9
  19:22 22:9 25:9
  27:23 28:8 34:15
  38:11 73:20 74:13
**hearings** 42:8
  69:19,22
**heavy** 40:11
**held** 5:13
**hello** 6:5
**help** 43:10
**helpful** 26:21
**helping** 75:4
**hereto** 85:6
**heroin** 79:6
**hill** 13:11 14:3
  15:9
**hire** 46:19 75:14
  75:15
**hired** 41:19
**hmm** 41:5 80:23
**hold** 21:23 54:11
  80:9
**holding** 21:15
**home** 10:12 13:22
  18:7,12,16,17,18
  18:22,25 19:1,2,5

  19:20
**homeowner** 36:19
**homes** 78:9
**honest** 34:6
**honestly** 28:1 58:2
**horrible** 65:19
**hour** 6:10 49:2
  80:25
**house** 46:11,15
**houses** 78:4
**hpowers** 3:18
**huh** 31:23
**human** 59:1,8
**hundred** 27:22
  32:3
**hunt** 52:24 53:1,2
  53:3,11,12,13,21
  53:22 54:25 76:2
**hurt** 78:2
**husband** 65:21
  68:3
**hypothetical** 38:3

**i**

**idea** 72:7
**identification**
  11:23 14:7 15:6
  16:12 82:17
**identifies** 14:24
  15:10
**iii** 3:13
**imagine** 43:11
**immediately** 42:7
**impeding** 38:10
**important** 11:14
**impossible** 34:20
**inaccurate** 31:1
**incapacitated** 75:3
**incarcerated** 47:6
  48:20 80:16,17
**incarceration** 47:9

**inclination** 27:6
**inclinations** 38:12
**include** 17:2 41:25
**includes** 12:14
**including** 41:23
**incoming** 19:16
**increase** 70:21
**increments** 50:4
**index** 4:1
**indicted** 77:21
**individual** 24:25
  25:19 34:8 55:7
  55:15 57:10 59:20
  76:17
**individuals** 52:20
  71:22
**infection** 40:10,17
  40:21
**influence** 7:21
**inform** 28:15
**information** 4:21
  30:18 36:20 48:13
  48:16 61:21 71:14
  71:15 73:17 76:12
**informed** 42:18
**informing** 25:12
**initialed** 85:6
**injury** 18:13
**ink** 85:5
**inquiries** 71:5
**inspection** 18:7,12
  18:17,22 19:1
**inspector** 18:19,25
  19:20
**inspectors** 18:16
  19:2,6
**instance** 34:17
**instant** 11:10
**institution** 58:21
  66:7,10

Veritext Legal Solutions
866 299-5127

[insurance - large]

insurance  77:6
intentions  40:14
interchangeably
  50:20
interest  22:19
interested  5:20
  64:18 86:17
interesting  83:20
international
  63:19
interrupt  9:8
  20:23
intrigued  62:8
involved  39:18,20
  42:12,14,16 44:12
  52:18 73:21
island  51:17,22
issue  24:12,16
  34:15 36:12 53:9
  67:15 77:13
items  26:3
iv  40:17

**j**

j  43:15 56:12
jackie  56:21
jacob  68:10
jacqueline  56:1
jail  47:16,17,18
  76:22
january  42:14
  44:11 52:12,23
  61:24 62:2,4,16,20
  63:11 64:8,17
  69:14 70:9 71:17
  80:5,15
jc  34:10
jessica  82:14
joan  63:8
job  1:24 35:3 36:4
  36:7,10 38:8
  62:19 63:10 64:7

john  45:21
johnson  1:8 2:8
  14:19 24:2,8
  26:16,18,20,24
  27:17,22 30:2
  31:9,15 32:8 35:9
  35:11,14,15,19
  41:9
johnson's  25:5
  26:22 28:7,17
  29:3,14 35:2
  37:15 39:1,7 40:5
join  62:1,3 64:21
  83:9
joined  61:25 62:15
  62:17 64:18 69:13
  71:16 80:5,14
joining  63:10
jonathan  3:21
  5:14 83:16
jones  43:15,16,25
  44:6 45:15,16,19
  45:21 47:1 49:20
  50:1,6,10,16,22
  52:20 53:4,11,24
  54:3,6,23 55:1,20
  57:22 60:9,24
  64:25 65:8 70:17
  71:25 72:3 75:15
  75:24 80:16
judge  47:20,21
  77:8
july  54:4 55:1,21
  57:24
june  42:22
junior  57:8
justice  65:5

**k**

k  33:11 56:21 59:4
  59:10

kahapea  1:8 2:8
  14:19 24:3 33:3
  33:10,11 34:2,5
  37:4,8,18
kahapea's  32:22
  32:23 33:21,24
  36:2 37:2,11
  38:24 39:8 40:4
keefe  44:1,6
keep  58:14
keisha  75:24
kentucky  59:1,3,5
  59:6
kenzie  56:1,21
kevin  68:4
key  28:10
keyboard  10:21
kids  78:25 79:3,7
  79:9
kind  20:14 22:17
  22:19 24:12 27:6
  37:17 40:13 42:4
  42:10 43:2 46:16
  53:9 58:5,6 71:15
  75:7 78:11,13,14
  78:20,25
kirk  1:8 2:8 14:19
knew  27:7 46:23
know  7:14 8:17
  9:23,24 11:15,21
  12:11 13:5 20:24
  21:13,24,25 22:1,8
  22:15 23:13 25:1
  25:14,17 26:9,10
  26:13,14,15,17
  27:5 28:3,10
  29:23 30:23 31:14
  32:3 35:4,19 36:3
  36:12,17,18 37:18
  37:21,24,25 38:1,3
  38:5,9,18,20 39:17

39:18 40:12,15
  41:19 42:1,5,7,25
  43:2,5,5,8,10,24
  44:9,19 46:21
  47:8,11 50:25,25
  51:6,23 52:10
  53:5,8,13,17 55:8
  57:7,18 60:8,10,11
  65:2,8,12,23 66:21
  69:11 70:17,18
  71:7,7,9,11,24
  72:1,12,15,16,20
  72:22,23,25,25
  73:1,2,2,3,5,17
  74:5,16 75:5,7,8,9
  75:9,10,10 76:7,15
  77:15,15,22,23
  78:12,16 79:1,2,4
  79:10,12,20 80:24
  83:16
knowledge  44:10
  60:2,5,13,17,18,20
knowledgeable
  64:25
known  43:16
  66:12
ks  1:6 2:6 5:12
kyle  56:20

**l**

l  55:12 56:4,5,12
  56:21,22,22 57:8
  69:11
la  82:14
lady  75:25
lafrancis  56:22,23
  56:25
language  63:22
lapse  66:20
laptop  10:14,18
large  46:14

Veritext Legal Solutions
866 299-5127

[laurel - metral]

laurel  1:16 2:16
  5:1 6:19 13:10
  14:3
law  6:6 18:20,21
  43:7 58:7,18
  59:25 60:6,14,16
  60:19 65:6,6,14,15
  66:2,11,12 69:5,11
  76:16,23,25 80:11
lawsuit  19:8,11,13
  35:20
leadership  59:2
learn  62:5,10
learned  65:1
leave  27:14,15
  53:2
left  24:17 25:3,19
  34:24 36:5 42:22
  53:1 54:18 61:5
  67:18 76:6 81:24
  82:3
legal  5:15,17 44:6
  44:8 45:21 58:13
  59:22
legally  43:17
letter  4:9,12 14:9
  14:11,15,18,21,25
  15:2,8,10,13,17
level  60:8
libya  62:22 63:12
  63:14,16
licensed  60:3
lied  79:11
lily  77:2
line  4:22
link  15:12 17:2
linnette  56:1,3,23
  59:21
lisa  1:22 2:18 5:16
  83:14 86:24

listed  14:21 56:10
  57:18 59:14 76:8
listening  21:22
  36:15
lists  32:12,13
little  13:4 21:14
  28:2 49:2 65:13
  78:16 80:25
live  46:4,7
lived  65:17
lives  46:4,9
llc  1:4 2:4 5:8 6:8
  50:24 51:3,5,22,23
llc's  4:16
llp  3:4,12
loan  1:4 2:4 4:15
  5:8 6:4,8,22
local  6:8 49:14
  81:13 82:21 83:8
located  2:16 34:2
  47:3 75:23
location  19:5
long  18:1,3 21:15
  34:11 46:18 56:19
  60:23 61:1 64:5
  67:17 69:1 71:6
  78:19
look  23:14,17,21
  23:23 24:1 26:2,9
  28:6 29:12 30:6
  30:14 37:5 76:22
looked  24:5,8 25:5
  29:14 32:21 77:2
  77:3
looking  42:19
  48:17
los  3:7 82:2
losing  78:4,9
lost  46:12
lot  21:21 40:12
  41:12 61:19,20

74:25 79:2
lsat  66:17
lsats  66:13 69:6

m

m  56:22
ma'am  8:2 17:17
  17:20,23 19:23
  21:12 31:7 41:1
  44:4,7,10 47:7
  48:12,21 50:22
  54:11 56:9 57:10
  57:20 58:2,10
  59:15 75:17
machine  86:8
mail  12:21,24
  13:14 61:15 79:20
  79:22
mailed  29:1
majority  6:24
making  23:7 43:5
  44:16
manner  17:10
  25:2 50:11 53:7
manuel  3:21 5:14
marijuana  78:24
  79:2
mark  1:7,8 2:7,8
  14:5,19,20 15:5
  16:3,9 17:7 24:2,8
  26:16,18,22,24
  27:17 28:6,17
  29:3,14 30:2 31:9
  76:21,21 77:4
  82:10
mark's  76:22
marked  11:23
  14:7 15:6 16:12
  39:22 82:17
marking  12:16
married  65:21
  67:23,23,25 68:1

massachusetts
  18:7,13 19:3 66:7
master's  58:17,19
  59:1,4,7,11
matter  5:8 17:11
  25:21 32:2 36:16
  37:19 39:9 42:2
  55:6
matters  41:23
mcelroy  82:15
mean  18:11 20:1
  23:8 44:23,24
  47:2 48:3 50:8
  54:8 55:2 62:1,11
  71:1 72:17 73:2
  77:24 79:2
meaning  19:11
  28:6 75:14
media  5:6
medications  7:18
  40:25
medicine  63:2
meet  33:1 45:24
  46:1 80:19
meeting  15:13
megan  68:11
mention  57:10
  65:11
mentioned  6:20
  17:5 22:11 23:21
  31:8 32:20 46:25
  48:1 49:23 59:16
  68:7,14
merited  41:25
message  11:10
met  19:6 25:8 46:2
  61:3,6,6,6,7,8,8
  80:22
method  11:11
metral  4:11,14
  15:21 16:22 17:6

Page 10

**[metral - okay]**

17:12 41:4,17
82:2,13
**mexico** 47:16
**michael** 56:22
**michigan** 46:9,10
46:10
**mid** 9:8
**middle** 10:3
**mind** 50:21
**minor** 47:11,12
**minute** 49:2 50:3
55:8 81:1,16,19
**minutes** 50:16
**missing** 28:13
**mississippi** 1:2,16
2:2,16 3:16 5:1,11
6:7,19 13:11 14:3
46:5,7 81:4 82:24
**missouri** 53:18
76:4
**misunderstood**
35:1
**moffett** 1:7 2:7
14:20 16:3 17:8
17:10,13,15,18
**monday** 16:23
**monetary** 53:9
**money** 78:2,7,10
78:16,19
**monies** 53:11
**month** 43:13
47:24 67:19
**months** 42:21 75:5
**morning** 5:4 6:2
6:18 7:22 16:7,24
40:10
**mortgage** 26:17
38:4
**mortgages** 78:14
**mother** 64:10 77:5

**motion** 83:6,6
**move** 16:4 23:8
28:16 34:23 52:2
**moved** 64:12
65:25
**mtp** 1:6 2:6 5:12
**murray** 58:23,25
58:25 59:2,3,8

**n**

**n** 33:10,10 43:15
43:20 44:3 48:9
51:14 52:24 55:10
55:11,11,12 56:4,5
56:5,8,12 76:20
**name** 5:14 6:2,20
27:1 29:20,24,24
30:12,15 31:2
33:22 34:1 43:25
44:5,6 45:3,7,9,20
45:21 55:7 56:2
56:10,11,14 57:5
63:4,8 68:2,18,21
76:20 86:20
**named** 57:10
75:25 76:15,17
**names** 43:16 44:8
44:14 50:19 57:19
68:9 73:17 75:21
76:8
**narcotics** 77:13
**nashville** 75:23
**national** 62:6,7,7
**nature** 42:8 65:4
71:7 72:2 73:19
**necessarily** 38:8
65:3 67:14 72:13
**necessary** 26:3
**need** 7:8 9:22
11:13,15 16:4
25:23 61:23 72:19
74:18 82:18 83:18

**needed** 16:7 40:17
**neither** 86:16
**never** 19:6 20:17
20:20 24:17 38:8
46:2 60:14,19
65:4,4 67:20,21
73:1 77:4,4 79:14
79:21 80:8,22
**nevis** 51:11,12,13
51:22
**new** 36:21,21
47:16 53:20 54:23
57:23 76:24,24
**nice** 83:19
**nicholas** 68:11
**nickname** 43:17
43:22,24 45:18
**nicknames** 43:19
43:21
**nicole** 4:11,14
15:21 82:2,13
**nine** 36:11 69:25
70:3 75:21
**nod** 7:10,15
**noise** 21:21
**nominated** 53:24
54:1,6,23 55:1,20
60:24
**nominates** 57:22
**nomination** 57:25
58:1
**normal** 13:1
**normally** 8:5
**northern** 82:23
**note** 14:23
**noted** 84:5 85:5
**notice** 4:8,16 12:3
12:5,8,19 13:12
16:15,19 25:11,25
28:23 29:1 32:7
33:6

**noticed** 14:17
**notices** 15:1 39:13
39:23 40:4 69:20
70:3
**noticing** 6:1 7:6
**notification** 34:15
**notifications** 73:20
74:13
**notifying** 41:21
**noting** 6:9
**november** 4:9
14:9
**number** 4:7 5:11
31:2 57:18
**numerous** 82:24
**nurse** 77:22

**o**

**o** 33:10 43:15,20
48:9 55:10 56:8
76:19,20,20
**o'neil** 56:25
**oath** 5:18 6:14 8:3
8:6 86:7
**objections** 5:24
**obtain** 48:13,16
**occasion** 75:9
**occasions** 50:13
**office** 3:15 10:12
15:17 19:4,5 31:6
31:6 41:4
**official** 55:4
**officially** 54:9
55:19
**offset** 6:10
**ogden** 55:10
**oh** 21:4,19 51:18
56:20,21 57:7
63:6
**okay** 7:16 8:19,22
9:12,13,19,25 10:4
11:18,22 15:4

[okay - posed]

18:24 21:8,11
22:3,6,25 23:10,16
24:4,14,16,20 25:4
25:9,22 26:8,13,21
27:25 28:5,11
29:8,19 30:1,6,16
30:21 31:6,8,13,22
32:5 33:1,4,6,9
34:4,8,25 36:1,13
36:23 37:2 38:1
38:11,23 39:18,21
40:3 41:2,6,18
42:9 43:18 44:8
44:17 45:2,23
46:6 47:13 52:2
54:11,16,19 55:18
56:6,25 57:1,6,22
58:8 60:13 61:19
62:15 63:21 66:3
66:13,18 69:13
71:4 73:16,25
74:16 76:6,10,11
79:18 80:1,14
81:2,14 83:14,25
**once** 8:20 24:18
27:18 31:3 54:6
65:25 66:22 71:11
74:3,20 76:9
**ones** 59:14
**ongoing** 77:12
**online** 48:15,17
**operating** 75:16
**opportunity** 30:24
32:19 38:19
**order** 7:8 23:22,24
25:23 26:2,4 33:2
58:14
**organization**
20:16 22:17 25:13
42:23 43:11

**organizations**
50:23 75:3,5
**original** 86:13
**originally** 12:6
**outcome** 5:20
**outside** 51:20
**overseas** 62:21
**oversee** 43:3
**overseer** 42:4
**overview** 22:25
**owned** 46:11 77:6
77:6

**p**

**p** 33:11 56:12
**p.m.** 2:17 49:6,11
81:6,10,16,16,17
81:18,21,21,22,22
84:3,5
**pacific** 16:18
49:11 81:3,6,16,17
81:21,22 84:3
**page** 4:7,22 12:13
12:14 14:18,24
39:25
**pages** 1:25
**paid** 23:12 25:10
31:9,18,19,20
53:11 71:21,23
72:5 73:8,11
74:10,10,12
**paper** 30:3
**papers** 75:8
**paperwork** 20:2
41:24
**paralegal** 18:6,12
18:22 19:15 58:7
58:8 59:18 67:4
**park** 3:6
**part** 12:23 21:20
26:1 34:7 35:3
39:19,19 57:11

77:4,9
**parte** 20:20
**particular** 64:19
64:21
**particularly** 26:10
26:11
**parties** 26:12
32:13,13 34:16
36:5,12,25 38:16
38:17 39:24 41:14
41:21 42:1 52:9
73:21
**parts** 32:5
**party** 5:19 19:8,10
19:13 34:19 86:18
**pass** 23:14 26:4,4
74:8
**passed** 35:5 63:6
64:11
**patents** 78:13
**path** 69:8
**patient** 73:3
**payment** 28:22
33:4 34:12 73:15
**peeler** 57:11
**peers** 65:20 67:10
67:15
**penalty** 85:3
**penney** 34:10
**pennymac** 1:4 2:4
4:15 5:8 6:4,7,22
25:12 26:18,24
27:17 28:24 29:1
34:5 35:13,17,21
35:22 37:4,8
**pennymac's** 12:5
**people** 24:25
37:25 38:5 48:5
52:1 55:21 58:1,3
59:17,23 60:22
61:3 75:6,6 76:15

77:1 79:2
**perceive** 83:1
**percent** 27:4,22
32:4 51:6
**perfectly** 9:11
**period** 80:22
**perjury** 85:4
**permitted** 20:18
**person** 18:19
19:16,17 45:24
46:2 48:23 61:6
74:20 76:5 80:19
80:22
**person's** 65:3
**personal** 18:13
**perspective** 65:3
**pertains** 86:12
**peterson** 56:22
**phone** 11:4,14
21:3,5,6,15,24
49:23 50:1,6,15
61:7,8 79:4 82:1
**phones** 10:22,25
**physically** 10:7
**piling** 40:13
**place** 15:11 20:3,7
27:23 63:7 86:5
**plaintiff** 1:5 2:5,15
3:3 4:15 6:4,7,22
19:11
**play** 36:16
**please** 5:24 6:12
7:13 8:17 9:7
35:10 41:3 54:14
**point** 8:13 12:12
47:1 57:19 61:14
65:15 73:16 81:1
**policy** 20:16
**portrayed** 64:24
**posed** 71:9

Veritext Legal Solutions
866 299-5127

[position - record]

**position** 24:24
**possible** 17:12
**possibly** 16:1
  34:18 72:3
**post** 3:15
**postpone** 15:25
**potential** 19:19
**potentially** 32:15
**powers** 3:13 6:5,5
  6:23,25 8:14
  27:13 31:6 49:13
  49:14,16 57:9,13
  81:12,12,14,19
  82:14,19,20 83:9
  83:12
**practice** 82:23
  83:8
**practiced** 60:6,19
**practicing** 69:6
**pre** 8:6 47:14
**predecessor** 63:7
**predisposed** 42:24
  47:1
**preliminary** 25:8
  26:3
**prep** 41:12
**preparation** 20:11
  22:13 23:2,16,19
  23:20 24:1,5 25:6
  26:23 28:5 29:3
  32:21 37:12 39:3
  40:6 41:15
**prepare** 19:25
  29:6
**prerequisites** 35:5
  74:5
**present** 3:21 5:21
  28:11 34:11
**pretty** 22:24 29:9
  40:17 65:9,19
  77:12

**prevail** 38:8
**prevailed** 44:22
**primarily** 25:19
  32:14 62:5
**primary** 64:13
**printer** 10:20
**prior** 20:18 28:11
  43:24,25,25 44:6
  62:19 63:10 65:6
  72:9 86:6
**prison** 49:22,24
  80:3,4,4,6
**private** 67:2
**privy** 71:14
**probably** 29:7
  66:23
**problem** 21:20
**procedure** 71:6
  83:2,7
**proceeding** 5:24
**proceedings** 30:13
  86:4,6,8,14
**process** 9:9 43:7
  73:4
**processed** 73:9
**processes** 54:7
  55:3
**processing** 74:2
**produce** 41:3
**professional** 77:23
**professors** 67:16
**promotion** 75:1
**proof** 12:14 13:12
  25:11,25 28:21,23
  28:25 32:7 33:4,6
  34:11,12 73:15
  74:18
**proper** 18:17 19:1
**provide** 7:13
  15:12 38:18

**provided** 25:11
  35:9,11,21
**provides** 35:7
**pst** 2:17,17 49:6
  84:5
**public** 58:17 66:2
**puerto** 47:17
**purchaser** 19:19
**pursuant** 83:7
**pursue** 66:1
**pursuing** 40:18
**put** 30:11 38:13
  47:15

**q**

**question** 7:13 8:13
  8:14,18,20,21 9:10
  10:3 27:13,15
  30:12 54:22 55:18
  66:24 71:8 80:1
**questionable**
  28:13
**questioning** 6:25
**questions** 7:1,3 8:7
  8:9 9:1,7,8,9,14
  30:25 33:21 71:5
  71:9,11,13
**quick** 83:13
**quickly** 40:16
**quite** 18:1 42:21
  65:1,1 78:1
**quote** 25:1 37:25
  73:22

**r**

**r** 33:10 44:3 45:10
  48:9 56:8,21 57:8
**ran** 78:13
**reach** 17:13 81:23
  82:1,4
**reaching** 65:8

**read** 8:18 25:17
  85:4
**real** 76:20
**really** 20:1,4,13
  43:10 46:12 52:18
  53:16,23 64:11
  66:22 73:11 78:2
  79:3,10
**reason** 7:2 22:21
  40:8
**reassigned** 22:21
**reassumed** 38:4
**recall** 12:19 14:10
  14:21 15:13 18:10
  23:1 27:1,21
  29:13,19 31:25
  32:1 33:22 34:1
  37:10 44:14 45:2
  45:3 57:17,21
  75:21
**receive** 12:8 13:13
  15:1 16:19,21,22
  16:25 32:25 58:21
  71:12 74:20
**received** 12:19,21
  15:16 20:15 22:23
  37:17 42:6 58:16
  73:21 80:2
**receiving** 14:11,21
  15:13 16:23 75:12
**recess** 49:9 81:8
**recognize** 12:17
**recollection** 31:15
  31:17,19
**reconvene** 82:8
**record** 5:5,23 6:21
  7:9,11 10:8 11:16
  14:23 49:6,11,13
  49:15 57:10 76:24
  81:3,6,10,13 83:5
  83:11 84:1 86:7

Veritext Legal Solutions
866 299-5127

[record - saalimited.com.]

| | | | |
|---|---|---|---|
| 86:10 | **reported** 1:22 | **response** 72:14 | 45:14 46:25 47:13 |
| **recorded** 1:15 | **reporter** 2:19 5:16 | **responsibilities** | 48:1 49:1,7,18 |
| 2:14 5:7 | 6:11 8:10,18 9:1 | 61:13,24 70:14,18 | 51:21 53:13 54:13 |
| **recording** 7:12 | 20:22 33:10,12 | 70:21 | 54:22 56:3,23 |
| **red** 79:16 | 66:5 81:19 83:23 | **responsible** 24:20 | 59:16,23 60:22 |
| **refer** 33:12 34:14 | 86:2 | 41:21,22,24 42:3 | 61:10 62:8 67:8 |
| 45:16 | **represent** 6:21 | 52:8 61:15 70:24 | 67:12,22 68:14 |
| **referred** 33:2 | 12:2 39:21 | **rest** 9:21 12:11 | 69:4,19 72:15,19 |
| 44:13 45:3,5,14,17 | **representing** 78:8 | **result** 47:9 | 73:8,13 74:4 75:2 |
| 45:23 46:22 | **request** 9:23 10:1 | **retaliation** 77:16 | 77:19,25 80:12,24 |
| **referring** 33:13,18 | 20:18 26:7 28:20 | **return** 28:14 31:5 | 81:11 83:14,19,24 |
| **reflect** 49:14 | 32:8,9 33:4 34:13 | 35:13,17,23 63:24 | **rod** 56:2,20,20 |
| **refrain** 11:3 | 73:14 | **returned** 26:20 | 57:2,2 |
| **regard** 41:2 71:9 | **requested** 4:21 | 64:1,6 67:20,21 | **rod's** 56:2 |
| **regarding** 14:16 | 30:18 76:12 86:15 | **returning** 82:6 | **roebuck** 34:9 |
| **regards** 14:12,14 | **requests** 9:24 | **reversed** 47:20 | **role** 42:9 |
| 20:2 39:11 | 19:17 | 49:20 50:9 | **rome** 3:4 6:3 39:11 |
| **register** 48:6 | **required** 8:7 18:8 | **review** 20:12 | **ronnie** 1:8 2:8 |
| **registered** 79:24 | 23:5 32:6 34:23 | 22:10 23:7 25:24 | 14:19 24:3 32:22 |
| **rehabilitation** | 55:4 66:15,16,19 | 26:22 27:20 29:2 | 32:23 33:10 |
| 47:5 | **requirement** | 29:5 30:24 37:3 | **room** 5:21 8:4 |
| **reject** 74:8 | 25:22 | 37:13 39:3,5 40:5 | 9:21 10:9,16 11:1 |
| **rejected** 74:11 | **requirements** 25:9 | 86:14 | 54:19 |
| **related** 5:18 | 25:13 26:4 | **reviewed** 20:6,6 | **roommate** 54:19 |
| **relative** 86:17 | **requiring** 69:11 | 20:11 22:13 23:2 | 68:15,15,16 69:2 |
| **relatively** 40:19 | **reside** 13:25 14:2 | 30:1 37:14 38:25 | **roommate's** 54:15 |
| **released** 48:10 | **resident** 79:19 | 38:25 39:9 41:3 | **rough** 83:19 |
| 49:22 | **resolution** 26:7 | 41:15 | **rpr** 86:25 |
| **rely** 37:25 38:5 | 28:21 32:9,10 | **rico** 47:17 | **rule** 83:1,2 |
| **remedied** 36:24 | 33:5 34:13 73:14 | **right** 7:6,7 8:24 | **rules** 82:22 83:2,7 |
| **remedy** 19:19 | **resolve** 32:15 | 10:6,15,22 11:17 | 83:8 |
| **remember** 18:4 | 36:13 82:25 83:4 | 11:19 12:2,13 | **résumé** 76:22 |
| 32:24 34:20 37:7 | **resolved** 34:19 | 13:8 14:5 16:8,11 | 77:21 80:2,7 |
| 56:19 57:4 76:5,8 | **respond** 11:14 | 16:14,25 17:5,21 | **s** |
| **remembering** 28:3 | 32:16 72:23 | 19:10,14,21,24 | **s** 3:5 33:12 43:15 |
| **remote** 1:15 2:14 | **respondent** 26:1 | 20:5 21:13 27:8 | 45:11,13 48:9 |
| **remotely** 3:10,19 | 31:11 32:15,16 | 29:2 30:10 31:2 | 51:14 56:8,22 |
| 5:22 28:13 | 33:7 35:8 | 32:20 33:7,20 | **saa** 33:1,12,16 |
| **repeat** 8:17 13:7 | **respondents** 24:14 | 34:9,13 36:5,21 | 77:9 78:21 |
| 54:14 | 31:12,13,16,21,24 | 37:18 40:3,20,25 | **saalimited.com.** |
| | 36:8 | 42:11 43:4 44:11 | 82:12 |

[sad - speaker]

| | | | |
|---|---|---|---|
| **sad**  78:20 79:10 | **scrolling**  26:10 | **settle**  25:18 | 61:13,25 62:16 |
| **saint**  46:11 | **sears**  34:9 | **settled**  19:23 | 63:11 64:8,18,20 |
| **salary**  71:17,19,20 | **second**  54:11 57:9 | **settling**  24:23 | 68:23 69:14 70:6 |
| **salem**  18:7 | 63:15 | **severe**  40:10 | 70:12 71:16 72:8 |
| **sam**  33:13 | **secretaries**  70:8 | **sexual**  48:5 | 75:16,20 78:21 |
| **sanctions**  83:6 | **secretary**  59:22 | **shake**  7:10,16 | 79:15,23 80:5,15 |
| **sandra**  1:8,15 2:8 | 69:16,17,24 70:5 | **share**  11:20 | **situation**  34:18 |
| 2:14 4:3,13,17,19 | 70:15 72:9 75:20 | **sheik**  78:12 | 37:19 42:21 44:21 |
| 5:7 6:13 12:6 | **section**  62:14 | **sheryl**  45:8,11,12 | 44:22,23 53:22 |
| 14:20 16:15 20:25 | **see**  11:25 12:10 | 45:14,23 46:6,13 | 74:15 |
| 84:2 85:3,13 | 14:18 23:24 25:7 | 46:19,22 | **situations**  74:5,9 |
| **sandy**  82:12 | 39:10 40:22 66:21 | **shoot**  83:13 | **six**  31:13 75:5 76:8 |
| **sanford**  56:3,8,23 | 76:9 83:20 | **shorthand**  2:19 | **skipping**  61:19 |
| 59:21 | **send**  13:8 25:23 | 86:1,8 | **skype**  11:10 |
| **satcomm**  50:23 | 41:16 73:20 74:7 | **shortly**  65:20 | **slip**  75:8 |
| 55:17 | 74:19 83:15,15 | 76:21 77:20 | **soldier**  65:22 |
| **satis**  72:16 | **sending**  53:6 | **show**  14:6 15:4 | **solution**  22:2 |
| **satisfied**  72:16 | 82:11 | 16:10 | **solutions**  5:15,17 |
| **saw**  25:8 29:15,16 | **sent**  4:18 12:4 | **showed**  39:14,19 | **solve**  34:24 |
| **saying**  29:24 55:22 | 13:10 27:19 28:25 | **showing**  11:19 | **somewhat**  42:4 |
| 78:10 | 39:10 69:20,20 | **shows**  39:20 | **soon**  40:19 58:16 |
| **scenario**  26:19 | 74:20 81:25 | **sic**  54:25 | 80:9 |
| **scenarios**  34:21 | **sentence**  47:22 | **sick**  64:11 65:13 | **sorna**  47:13,14,15 |
| **scene**  42:25 | 62:25 | **signature**  86:23 | 48:1,3,4,7,8 |
| **scheduled**  69:19 | **september**  70:13 | **signed**  24:19 | **sorry**  13:3 14:1,13 |
| 69:19 | 70:23 74:23 | **similar**  44:21 | 20:22 21:11 31:17 |
| **scheduling**  69:21 | **serious**  29:10 | **simpson**  75:22 | 40:20 47:11 54:11 |
| 70:2 | 77:13 78:22 | **single**  34:17 71:13 | 56:18 57:13 58:24 |
| **school**  43:8 59:25 | **serve**  79:23 | **sir**  17:17 | 64:14 77:2 78:7 |
| 60:14,16 63:1,3,5 | **service**  12:14,22 | **sit**  25:17 29:19 | **sound**  8:16 |
| 65:14,15 66:1,11 | 12:25 13:1,2,12 | **sitcomm**  1:7 2:7 | **sounds**  23:1 73:25 |
| 66:12 69:5 76:16 | 34:12 71:4 74:19 | 5:9 23:1 28:7 | 81:5 |
| 76:23,25 80:11 | **services**  1:4 2:4 | 33:14,16,18 35:4 | **southern**  1:2 2:2 |
| **schools**  63:20 | 4:15 5:8 6:4,8,22 | 42:10,12,14,17 | 5:10 82:23 |
| 69:11 | 31:10 | 44:12 45:3,5,15 | **sovereign**  78:12 |
| **science**  67:5 | **serving**  79:19 | 46:19 50:17,18,18 | **space**  39:17 |
| **scott**  1:9 2:9 57:8 | **session**  11:17 | 50:23,24 51:2,3,5 | **speak**  20:7,18 21:3 |
| **screen**  11:20 30:4 | **set**  12:7 16:9 17:8 | 51:23 52:1,2,3,5 | 21:4 49:23,25 |
| 30:5,7 | 86:5 | 52:14,17,22 54:8,9 | 50:13 63:20 |
| **scroll**  12:10 39:25 | **sets**  16:16 | 54:24 55:5,15,19 | **speaker**  10:21 |
| | | 57:23 60:25 61:12 | 21:2 |

[speaking - think]

speaking 21:6
specific 23:2 29:24
  33:1 34:1
specifically 24:21
  25:6,14 32:18
  37:7,22
specifics 28:3 32:4
  53:8
spell 45:9 48:8
  51:13 56:11,13
  58:24
spelling 31:1
spoken 17:9,15,18
standard 28:9
  31:20 49:11 81:7
  84:3
stanford 56:1
start 11:19 22:9,12
  62:3
started 52:14,16
  75:19
starting 40:13
  64:8
state 5:22,25 19:3
  51:10 53:18 58:23
  58:25 59:2,8
  85:10 86:2
stated 59:22 76:23
states 1:1 2:1 5:10
  37:20 51:20 63:24
  64:2,6 65:22
status 48:14
stay 65:19,20
steven 75:23
stop 12:11 77:2,17
street 3:14
strict 20:16
strictly 41:20
structure 74:24
studied 65:5

studying 65:2
  66:20
stuff 37:24 78:4,13
  78:15 79:21
subcontractor
  25:20 71:20
subcontractors
  41:19,20 71:23
subjects 63:21
submit 22:16
  23:22
submitted 25:10
  74:3
submitting 74:17
  74:18
subscribed 86:20
substantial 72:14
  72:23
sue 36:9,18 38:3
suffolk 65:18 66:6
  66:8,9,11 67:9,17
  67:20,21 69:5
summer 27:23,24
  61:11 64:12
superior 47:21
support 83:5
supposed 36:21
  42:3 47:23,23
supreme 65:5
sure 22:22 23:7,9
  23:11 26:11 27:7
  28:10 30:17 32:12
  34:6,21 37:3,9,20
  43:3 51:6,11,25
  61:22 73:17
surrounding
  37:21
suspend 82:6
swap 17:7
swear 6:12

switch 16:3 17:7
synonymous 65:9

**t**

t 45:10,10 52:24
  56:4,4,5,5
take 9:1,19,21
  10:2 11:13 15:11
  22:1 26:9 29:11
  42:6 49:1 58:13
  60:23 61:1 65:3
  66:13,17 69:6
  71:6 73:4,16,19
  78:7 79:3,7 81:1
taken 2:15 17:22
  17:25 27:23 37:19
  49:9 54:3,25
  77:14 78:25 81:8
  86:4
talk 20:10 72:18
  75:18
talked 46:13,17
  78:6
talking 35:2 42:11
  49:19 78:15,17
tara 45:10
taraquta 45:8,14
  45:23 46:6,19,22
task 72:5
taught 59:5
taylor 56:2 57:12
  57:13
teacher 62:23
teaching 59:4,11
  63:12,14,15,16,17
  63:18,21
tech 8:15
technology 5:14
telephone 16:22
  45:25 48:23
tell 27:10 34:18
  57:2

temporarily 43:9
ten 31:13 36:11
  71:25
tennessee 75:23
  76:1
terminated 53:3,5
terms 47:12
test 66:17 69:12
  79:5
testified 6:15 18:4
  19:7 49:21 53:19
  54:23 74:4
testify 8:1
testifying 10:11
  18:11 19:21 86:7
testimony 7:19 9:2
  67:9 79:14 85:6
  86:11
texas 55:9 76:2,18
  77:1,3 79:17,19
text 11:14
texting 11:10
thank 19:24 22:4,6
  25:4 26:21 33:20
  38:23 40:14,23
  49:4,7,16 64:16
  74:16,17 81:14
  83:9
thanks 57:13
thing 7:6 34:21
  43:3,4
things 23:14 25:12
  29:10 35:6 38:2
  62:9 71:7 72:1,12
  73:18 75:8 77:18
think 20:25 21:19
  39:19 42:10,22
  45:7,7 46:12,24
  51:11,12 53:3,6,7
  53:17,23 58:4,5,6
  64:23 73:22,23

Veritext Legal Solutions
866 299-5127

[think - want]

| | | u | v |
|---|---|---|---|
| 76:20 77:17 80:25 83:10 | 30:13,13 37:12 39:4,5 | **u**  45:10 52:24 56:12 | **v**  51:14 |

76:20 77:17 80:25
83:10
**third**  16:2 63:16
**thought**  9:8 56:16
72:15 79:10
**thousand**  21:10
**thousands**  78:17
**three**  50:3,22 51:1
52:19 68:10 69:3
75:2,4 76:9 81:25
**time**  5:25 6:9 9:22
11:13 12:8 13:20
16:3,5,18,18 18:1
18:1,3 19:9 21:15
28:3 37:14,15
38:5 42:20 44:16
46:18 49:6,11,12
52:13,22 55:6
60:23,24 62:15,22
64:2,6,10 65:19
66:19 69:15,24,25
70:6,22 71:18
73:4 75:13,19
78:20 79:21 81:3
81:3,6,7,10,17,18
82:9 84:2,3,5 86:5
**times**  17:24 21:10
36:11 50:2,3
**timothy**  75:22
**tiring**  21:25
**title**  27:16 69:15
**today**  6:20 7:4,12
7:19 8:4,11,25
9:11 16:10,17
28:5 29:20 39:22
40:6,25 72:18
83:18
**today's**  17:10
19:25 20:8 23:16
23:19,20 24:1,6
25:6 28:6 29:4,6

30:13,13 37:12
39:4,5
**told**  16:23 53:10
56:23 76:25
**tomorrow**  17:9
**top**  37:6 40:7
**touch**  32:14
**tracy**  75:25
**transcribed**  86:9
**transcript**  7:11
27:11,19 30:13,16
30:22 31:4,5 76:7
76:9,10 85:4
86:10,13,15
**treatment**  40:17
**tree**  44:2
**trial**  9:2 19:22
**tried**  82:3
**trouble**  46:13
78:22
**true**  85:7 86:10
**trust**  53:24
**truthfully**  7:3 8:7
**try**  9:9 10:2 21:5,8
21:23 22:2
**trying**  36:1,6
56:19 61:21 81:25
**tuesday**  1:17 2:17
5:1,5
**twice**  50:16 81:24
**two**  6:10 36:12,24
44:14 50:2,19,21
52:9 61:2 80:11
81:24
**type**  18:4 41:25
43:3 74:15
**types**  25:12
**typically**  23:6,21

**u**  45:10 52:24
56:12
**um**  41:5 80:23
**unable**  28:15
42:24 82:4
**undergrad**  66:25
67:4
**undersigned**  86:1
**understand**  7:17
8:3,8,9,12,14 9:3
9:16 18:11 20:23
29:13 33:17 36:6
37:10 40:2
**understood**  8:21
**unemployed**  64:5
**unfortunate**  79:13
**unfortunately**
42:23
**unheard**  77:22
**uniform**  82:22
**unit**  5:6 36:22
**united**  1:1 2:1 5:9
37:19 51:20 63:24
64:1,6 65:22
**university**  58:23
58:25 59:3,5,8
63:1 66:11
**unquote**  25:1 38:1
**unresponded**  83:4
**untarnished**  51:19
**upshaw**  3:12 6:6
**upshawwilliams...**
3:18
**urgent**  11:14
**usc**  62:13
**use**  9:2,21 13:17
33:16 78:11
**useful**  61:20
**usually**  50:5,7

**v**  51:14
**valid**  24:22 38:15
**variables**  36:17
**varies**  50:2
**various**  15:1 39:23
**verbal**  7:14
**verbally**  7:8
**verified**  59:21
**verify**  82:20
**veritext**  5:15,17
15:12
**vermont**  67:3
**versus**  5:8 26:16
26:18 64:21
**veterinarian**  77:24
**video**  1:15 2:14
5:7 7:12 8:17,24
61:7,9 84:1
**videographer**  3:21
5:4,16 6:10,11
7:12 49:5,10 81:5
81:9,20 83:25
**videos**  44:16 46:17
46:24
**visitation**  48:23
**voicemail**  82:3
**voicemails**  81:24
**volume**  1:18 2:15
4:3
**vote**  58:1
**voted**  59:17 60:25
**vs**  1:6 2:6

| w | |
|---|---|
| **w**  56:22 | |

**w**  56:22
**wait**  9:10
**waiting**  81:20
**walk**  9:22
**want**  9:14,15
12:11 21:5 27:3,5

Page 17

**[want - zoom]**

27:9 29:23 36:9
36:24 54:4 64:20
65:14
**wanted**  34:19
35:12,16 38:17
62:5,9 77:9 79:5
**wants**  75:10
**warrants**  73:6
**water**  21:22
**way**  24:13 38:13
64:23 80:10
**we've**  14:17 83:20
**week**  47:19 50:2,3
50:16 79:4 83:21
**weeks**  29:7,10,15
30:2,23 37:14
39:2 40:9 61:2
**weird**  78:15
**welcome**  57:15
**went**  46:16 47:16
47:16 59:25 67:2
67:2 76:22 77:19
80:20
**whatnot**  43:6
**whereof**  86:19
**williams**  3:12 6:6
56:1,13,16,18,18
56:21
**willing**  17:14
**wired**  21:16
**wise**  43:17
**witness**  2:16 4:2
6:12 19:7,14
20:23 21:2,8,11,18
22:4 49:4 57:12
57:15 82:5 86:19
**witnesses**  86:6
**words**  38:2 53:10
**work**  18:21,21,24
21:3,17 52:1
53:14 64:4,8

68:23 71:23
**worked**  18:19 19:2
62:21,21,22 63:1,8
70:19
**working**  52:14,16
52:20,21 55:7
63:11 75:19
**write**  30:15
**wrong**  35:11 38:4

## y

**yeah**  28:2 35:25
39:9,20 45:22
56:20 62:21 69:22
74:3 76:1
**year**  29:22 37:6,11
42:22 47:18 66:9
67:25 68:12 78:23
**years**  18:2 46:12
63:6 65:17 67:6
69:3,10,10 80:11
**yesterday**  40:10
**york**  76:24,24
**youtube**  44:17
46:17

## z

**z**  76:20
**zoom**  5:14 6:24
10:6 15:13 17:2

Federal Rules of Civil Procedure

Rule 30


(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.


DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

## VERITEXT LEGAL SOLUTIONS
### COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**

**Eastern Division**

PENNYMAC LOAN SERVICES, LLC,

                  Plaintiff,

    -vs-

SITCOMM ARBITRATION
ASSOCIATION, MARK MOFFETT,
SANDRA GOULETTE, RONNIE
KAHAPEA, MARK JOHNSON, KIRK
GIBBS, and ALARIC SCOTT,

                  Defendants.

CIVIL ACTION
**Case No: 2:19-cv-00193-KS-MTP**

**PLAINTIFF PENNYMAC LOAN SERVICES, LLC'S NOTICE OF
DEPOSITION OF DEFENDANT SANDRA GOULETTE PURSUANT TO
FED. R. CIV. P. 26 AND 30**

TO:              ALL PARTIES AND THEIR ATTORNEYS OF RECORD

DEPONENT:    SANDRA GOULETTE

DATE:         December 7, 2020

TIME:         11:00 a.m. Central Standard Time

LOCATION:    Remote by videoconference.  See Exhibit A.  Contact Veritext's
                 calendar team at calendar-LA@Veritext.com to retrieve the
                 necessary credentials to access the remote deposition.

1

**EXHIBIT**

**1**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

Please take notice that pursuant to Rules 26 and 30 of the Federal Rules of Civil Procedure, plaintiff PennyMac Loan Services, LLC ("PennyMac") will take the deposition by oral examination of defendant Sandra Goulette ("Deponent") on December 7, 2020 at 11:00 a.m. Central Standard Time via remote video conference pursuant to Exhibit A.

The remote deposition will be coordinated by Veritext Legal Solutions, with a business address of 707 Wilshire Boulevard, Suite 3500, Los Angeles, CA 90017.  Contact Veritext's calendar team at calendar-LA@Veritext.com to retrieve the necessary credentials to access the remote deposition, as well as information related to any technical assistance you may require to assist with carrying out the virtual deposition.  We encourage you to access www.veritext.com/remote for additional remote deposition information.

The deposition will be taken, via remote means, before an officer authorized to administer the oath to the Deponent.  If the deposition is not completed on the above date, the deposition will continue from day to day, weekends and holiday excluded, until completed.  Pursuant to Rule 30(b)(3)(A) of the Federal Rules of Civil Procedure, PennyMac reserves the right to record the deposition by audio or audiovisual means in addition to the stenographic method.  PennyMac further reserves the right to utilize software to generate the instant visual display of testimony.  Further, PennyMac reserves the right to conduct this deposition utilizing the secure web-based deposition option afforded by Veritext or in the alternative video teleconferencing (VTC) services or telephonically to provide remote/virtual access for those parties wishing to participate in the deposition via the internet and/or telephone.  Take note that the deposition officer may also be remote and out of the presence of the deponent via one of the options above for the

2

purposes of providing the oath/affirmation to the deponent and capturing the proceeding.  We further reserve the right to utilize the following: (1) Exhibit Capture (picture-in-picture) technology in which any exhibit reviewed by the deponent during the deposition can be captured visually; and (2) To conduct this deposition utilizing a paperless exhibit display process called Exhibit Share or a similar paperless virtual display platform. The parties are advised that in lieu of a paper set of exhibits they may be provided and displayed digitally to the deposition officer, deponent, parties and counsel.  The exhibits will be compiled by the deposition officer for the purposes of exhibit stamping, and ultimate production of the final certified transcript.

Please contact the noticing attorney at least three (3) calendar days prior to the deposition to advise that it is your desire to appear via these remote participating means so that the necessary credentials, call-in numbers, email address, services, testing and information, if necessary, can be arranged and provided to you prior to the proceeding(s).

Dated: November 11, 2020

Respectfully submitted,

*/s/ Nicole Bartz Metral*
Cheryl S. Chang (admitted *pro hac vice*)
Nicole Bartz Metral (admitted *pro hac vice*)
Jessica A. McElroy (admitted *pro hac vice*)

BLANK ROME LLP
2029 Century Park East, 6th Floor
Los Angeles, California 90067-2907
Telephone: 424.239.3400
Facsimile:  424.239.3434
Chang@blankrome.com

3

Nbmetral@blankrome.com
Jmcelroy@blankrome.com


Harris F. Powers III
Steven C. Cookston

Upshaw, Williams, Biggers & Beckham, LLP
309 Fulton Street
Post Office Drawer 8230
Greenwood, MS 38935-8230
Telephone No.: 662-455-1613
Fax No. 662-453-9245
hpowers@upshawwilliams.com
scookston@upshawwilliams.com

*Counsel for Plaintiff*

4

EXHIBIT A

1.      Physical Presence Prohibited.  The witness will be made available for deposition by video, with no attendees physically in the presence of the deponent. Witnesses may not use any communication devices other than those to facilitate the deposition during questioning and may not consult in any fashion with anyone other than with representing counsel during questioning.  Witnesses may not privately confer with counsel at all during questioning except as to questions of privilege.

2.      Participant List.  At least three calendar days prior to the noticed deposition date, each individual planning to participate in the deposition must notify the party noticing the deposition of his/her intent to participate and provide the following information to the noticing party: (a) name, (b) email address, (c) phone number.  The noticing party will share this information with the vendor arranging the deposition for the limited purpose of facilitating each participating party's access to the video web portal for the deposition.

3.      Technology Requirements.  All video depositions will be stenographically recorded by a court reporter with real-time feed capabilities. Each individual participating in a deposition conducted by video must have a webcam-equipped device (such as a desktop, laptop, or tablet), and a device with audio-capabilities or access to a telephone for calling into the deposition.  Other than this equipment, the witness shall not be permitted to have access to any other devices (such as a cellphone) while on the record.

Noticing counsel are not responsible for the quality or functionality of the video and audio stream for the witness, observers, or other participants.  Attendees agree to work in good faith to facilitate remote participation.

4.      Identification of Individuals in Attendance.  Each witness, attorney, and other person attending the deposition shall be identified on the record at the commencement of the deposition.  Under no circumstances may a person attend the deposition remotely in any manner without identifying themselves on the record at the commencement of the deposition.

5.      Conduct by Participants Appearing Remotely.  Each individual participating in the deposition (including counsel for the deponent) must do so remotely and must have an active video stream and audio line for the duration of the deposition.  Each participant should attend from a quiet, private location.

5

6.    Deponent Communication During a Video Deposition.  During the deposition, Deponent shall not communicate with anyone at all outside of the video/audio stream.  This includes, but is not limited to, instant messaging, text messaging, or any equivalent.  In the event any such communications occur, the parties agree that the communications are discoverable.

7.    Disruptions.  In the event a participant's video feed is interrupted or otherwise becomes hidden from view, the deposition will be suspended, and the parties will go back on the record only when the participant's video stream functionality has been restored.  Disruptions due to video streaming, phone line interruptions, or other technical problems shall not be counted against record time. If a party believes that the transmission and/or recording was disrupted in bad faith, including but not limited to for purposes of delay, it may request that an additional videographer record other participants and may seek further appropriate relief from the Court.

8.    Court Reporter and Videographer.  The parties will stipulate, in accordance with Federal Rule of Civil Procedure 30(b)(5), that the court reporter or videographer may participate in the deposition by remote means, and that the deposition will be deemed to have been conducted "before" that officer, even though the officer is not physically present with the deponent, so long as that officer is able to identify the deponent.

9.    Official Record.  The court reporter's transcript, and the videographer's recording (if any), shall constitute the official record of the deposition for all purposes.

10.    Other Recording.  No participant other than the court reporter and videographer (if any) may record or photograph any of the proceedings.  This shall include recording using any form of remote transmitting device, computer recording device, laptops, camera, and personal device, including smart phones, tablets, iPads, Androids, iPhones, Blackberries, or other PDAs.  Nothing in this provision prevents or limits the taking of notes by those identified on the record.

11.    Use of Remote Depositions at Trial.  Remote depositions conducted in accordance with this Protocol may be admitted at trial with the same effect as a deposition conducted inperson.

12.    Instant Visual Display Technology.  In the event the noticing party utilizes instant visual display technology such that the court reporter's writing of

6

the proceeding will be displayed in real-time, the witness shall not have access to the instant visual display.

13.     <u>Applicable Authority</u>.  Unless otherwise set forth herein, the Federal Rules of Civil Procedure, Federal Rules of Evidence, and other applicable authority shall govern as though the deposition was conducted in-person.

14.     <u>Duration</u>.  Nothing herein prevents a noticing party from conducting an in-person deposition once COVID-19 related preventative measures are lifted in the states where the parties and counsel reside.  If, however, a noticing party elects to conduct a deposition by remote means even after such measures are lifted, the terms of this Protocol shall continue to govern.

7

<u>**PROOF OF SERVICE**</u>

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

     I am employed in the county of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is **BLANK ROME LLP**, 2029 Century Park East, 6th Floor, Los Angeles, California 90067.

     On **November 11, 2020**, I served the foregoing document(s):

**PLAINTIFF PENNYMAC LOAN SERVICES, LLC'S NOTICE OF DEPOSITION OF DEFENDANT SANDRA GOULETTE PURSUANT TO FED. R. CIV. P. 26 AND 30**

**on the interested parties in this action addressed and sent as follows:**

**SEE ATTACHED SERVICE LIST**

☒ **BY ENVELOPE:** by placing ☐ the original ☒ a true copy thereof enclosed in sealed envelope(s) addressed as indicated and delivering such envelope(s):

☒ **BY MAIL:** I caused such envelope(s) to be deposited in the mail at Los Angeles, California with postage thereon fully prepaid to the office or home of the addressee(s) as indicated.  I am "readily familiar" with this firm's practice of collection and processing documents for mailing.  It is deposited with the U.S. Postal Service on that same day, with postage fully prepaid, in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

☒ **BY FEDEX:** I caused such envelope(s) to be deposited in a box or other facility regularly maintained by FedEx, an express service carrier, or delivered to a courier or driver authorized by said express service carrier to receive documents in an envelope designated by the said express service carrier, addressed as indicated, with delivery fees paid or provided for, to be transmitted by FedEx.

8

☒ **FEDERAL:** I declare that I am employed in the office of a member of the bar of this court at whose direction service was made.

Executed on **November 11, 2020** at Los Angeles, California.

/s/Charman S. Bee
Charman S. Bee

9

# SERVICE LIST

*Pennymac Loan Services, LLC v. Sitcomm Arbitration Association, et al.*;
Case No. 2:19-cv-00193-KS-MTP

**BY U.S. MAIL**
Ronnie Kahapea                          Defendant
P.O. Box 875
Volcano, HI 96785

**BY FED EX**
Mark Johnson                            Defendant
451 May Lane
Louisa, VA 23093

**BY FED EX**
Kirk Gibbs                              Defendant
3115 Lawrenceville Rd.
PMB 8119
Lilburn, GA 30047

**BY FED EX**
Sandra Goulette                         Defendant
3007 Crescent Hill Drive
Laurel, MS 39440

**BY FED EX**
Mark Moffett                            Defendant
345 Coon Jeffcoat Road
Soso, MS 39480

10

398819597276

# Delivered
## Thursday 11/12/2020 at 1:59 pm

**DELIVERED**

Signature not required

**GET STATUS UPDATES**

**OBTAIN PROOF OF DELIVERY**

| FROM | TO |
|------|-----|
| Los Angeles, CA US | LAUREL, MS US |

## Shipment Facts

| | | |
|---|---|---|
| **TRACKING NUMBER** | **SERVICE** | **WEIGHT** |
| 398819597276 | FedEx Priority Overnight | 0.5 lbs / 0.23 kgs |
| **DELIVERED TO** | **TOTAL PIECES** | **TOTAL SHIPMENT WEIGHT** |
| Residence | 1 | 0.5 lbs / 0.23 kgs |
| **TERMS** | **SHIPPER REFERENCE** | **PACKAGING** |
| Shipper | 136044.01923-04319 | FedEx Envelope |
| **SPECIAL HANDLING SECTION** | **STANDARD TRANSIT** | **SHIP DATE** |
| Deliver Weekday, Residential Delivery, No Signature Required | 11/12/2020 by 12:00 pm | Wed 11/11/2020 |
| **ACTUAL DELIVERY** | | |
| Thu 11/12/2020 1:59 pm | | |

## Travel History

Local Scan Time

Thursday , 11/12/2020

| | | |
|---|---|---|
| 1:59 pm | Laurel, MS | Delivered |
| | | Left at garage. Package delivered to recipient address - release authorized |
| 9:09 am | HATTIESBURG, MS | On FedEx vehicle for delivery |
| 8:18 am | HATTIESBURG, MS | At local FedEx facility |
| 4:33 am | KENNER, LA | At destination sort facility |
| 3:41 am | MEMPHIS, TN | Departed FedEx location |

| 12:45 am | MEMPHIS, TN | Arrived at FedEx location |
|---|---|---|
| Wednesday , 11/11/2020 | | |
| 6:11 pm | MARINA DEL REY, CA | Left FedEx origin facility |
| 4:18 pm | MARINA DEL REY, CA | Picked up |
| 2:53 pm | | Shipment information sent to FedEx |

**BLANK**ROME

2029 Century Park East | 6th Floor | Los Angeles, CA 90067
*Phone:*         *(424) 239-3483*
*Fax:*           *(424) 239-3845*
*Email:*         *nbmetral@blankrome.com*

November 17, 2020

**<u>TO DEFENDANTS</u>**

SEE CERTIFICATE OF SERVICE AND SERVICE LIST

                    Re:    *PennyMac Loan Services, LLC v. Sitcomm Arbitration Association, et al.*
                           Case No. 2:19-cv-00193-KS-MTP (Southern District of Mississippi)

Dear Defendants:

        As you know, Blank Rome LLP and Upshaw, Williams, Biggers & Beckham, LLP
represent plaintiff PennyMac Loan Services, LLC ("PennyMac") in the above-referenced matter.

        We wanted to provide each of you with the enclosed five notices of deposition for Mark
Johnson, Ronnie Kahapea, Kirk Gibbs, Sandra Goulette, and Mark Moffett.  Each of these
deposition notices were previously served to the corresponding deponent on November 11, 2020.
We also wanted you to be aware that each of you may attend the other depositions.  The deposition
schedule is as follows:

- November 24, 2020 at 11:00 a.m. Central Time - Mark Johnson

- November 30, 2020 at 1:00 p.m. Central Time – Ronnie Kahapea

- December 4, 2020 at 11:00 a.m. Central Time – Kirk Gibbs

- December 7, 2020 at 11:00 a.m. Central Time – Sandra Goulette

- December 9, 2020 at 11:00 a.m. Central Time - Mark Moffett

        As stated in each of the notices of deposition, the depositions will take place remotely by
video conference.  Please contact Veritext's calendar team at calendar-LA@Veritext.com to
retrieve the necessary credentials to access the remote deposition.  Please also contact my office
at least three (3) calendar days prior to the deposition to advise that it is your desire to appear via
these remote participating means so that the necessary credentials, call-in numbers, email address,
services, testing and information, if necessary, can be arranged and provided to you prior to the
proceeding(s).   The following webpage - www.veritext.com/remote may also be accessed for
additional remote deposition information.

EXHIBIT

2

BLANKROME

ALL DEFENDANTS
November 17, 2020
Page 2


       Please feel free to contact the undersigned if you have any additional questions.

                          Sincerely,

                          Nicole B. Metral

NBM
Enclosures (Five Notices of Deposition)

cc:     Harris Powers, Esq. (e-mail only)
        Steven Cookston, Esq. (e-mail only)
        Cheryl Chang, Esq. (e-mail only)
        Jessica McElroy (e-mail only)

## <u>CERTIFICATE OF SERVICE</u>

I, Nicole B. Metral, hereby certify that I have this day caused to be served true and correct copies of the following:   (1) LETTER DATED NOVEMBER 17, 2020; (2) PLAINTIFF PENNYMAC LOAN SERVICES, LLC'S NOTICE OF DEPOSITION OF DEFENDANT MARK JOHNSON PURSUANT TO FED. R. CIV. P. 26 AND 30; (3) PLAINTIFF PENNYMAC LOAN SERVICES, LLC'S NOTICE OF DEPOSITION OF DEFENDANT RONNIE KAHAPEA PURSUANT TO FED. R. CIV. P. 26 AND 30; (4) PLAINTIFF PENNYMAC LOAN SERVICES, LLC'S NOTICE OF DEPOSITION OF DEFENDANT KIRK GIBBS PURSUANT TO FED. R. CIV. P. 26 AND 30; (5) PLAINTIFF PENNYMAC LOAN SERVICES, LLC'S NOTICE OF DEPOSITION OF DEFENDANT SANDRA GOULETTE PURSUANT TO FED. R. CIV. P. 26 AND 30; AND (6) PLAINTIFF PENNYMAC LOAN SERVICES, LLC'S NOTICE OF DEPOSITION OF DEFENDANT MARK MOFFETT PURSUANT TO FED. R. CIV. P. 26 AND 30 **<u>via Federal Express</u>** to:

> <u>Mark Johnson</u>
> 451 May Lane
> Louisa, VA 23093
> Defendant
> Federal Express Tracking No. 3990 5981 2115
>
> <u>Kirk Gibbs</u>
> 4155 Lawrenceville Rd.
> PMB 8119
> Lilburn, GA 30047
> Defendant
> Federal Express Tracking No. 3990 6012 3963
>
> <u>Kirk Gibbs</u>
> 525 Arlington Circle NW
> Lenoir, NC 28645
> Defendant
> Federal Express Tracking No. 3990 6030 0913

BLANKROME

ALL DEFENDANTS
November 17, 2020
Page 4


       <u>Sandra Goulette</u>
       3007 Crescent Hill Drive
       Laurel, MS 39440
       Defendant
       Federal Express Tracking No. 3990 6063 5879

       <u>Mark Moffett</u>
       345 Coon Jefcoat Road
       Soso, MS 39480
       Defendant
       Federal Express Tracking No. 3990 6076 6984

And **<u>via United States Postal Service Priority Mail</u>** to:

       Ronnie Kahapea
       P.O. Box 875
       Volcano, HI 96785
       Defendant
       United Stated Postal Service Priority Mail Tracking No. 9114902307224670949779


       SO CERTIFIED this the 17th day of November, 2020.




                         */s/ Nicole B. Metral*
                         NICOLE B. METRAL

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**

**Eastern Division**

PENNYMAC LOAN SERVICES, LLC,

Plaintiff,

-vs-

SITCOMM ARBITRATION
ASSOCIATION, MARK MOFFETT,
SANDRA GOULETTE, RONNIE
KAHAPEA, MARK JOHNSON, KIRK
GIBBS, and ALARIC SCOTT,

Defendants.

CIVIL ACTION
**Case No: 2:19-cv-00193-KS-MTP**

**PLAINTIFF PENNYMAC LOAN SERVICES, LLC'S NOTICE OF
DEPOSITION OF DEFENDANT MARK JOHNSON PURSUANT TO FED.
R. CIV. P. 26 AND 30**

TO:             ALL PARTIES AND THEIR ATTORNEYS OF RECORD

DEPONENT:   MARK JOHNSON

DATE:         November 24, 2020

TIME:         11:00 a.m. Central Standard Time

LOCATION:   Remote by videoconference.  See Exhibit A.  Contact Veritext's
              calendar team at calendar-LA@Veritext.com to retrieve the
              necessary credentials to access the remote deposition.

1

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

Please take notice that pursuant to Rules 26 and 30 of the Federal Rules of Civil Procedure, plaintiff PennyMac Loan Services, LLC ("PennyMac") will take the deposition by oral examination of defendant Mark Johnson ("Deponent") on November 24, 2020 at 11:00 a.m. Central Standard Time via remote video conference pursuant to Exhibit A.

The remote deposition will be coordinated by Veritext Legal Solutions, with a business address of 707 Wilshire Boulevard, Suite 3500, Los Angeles, CA 90017.  Contact Veritext's calendar team at calendar-LA@Veritext.com to retrieve the necessary credentials to access the remote deposition, as well as information related to any technical assistance you may require to assist with carrying out the virtual deposition.  We encourage you to access www.veritext.com/remote for additional remote deposition information.

The deposition will be taken, via remote means, before an officer authorized to administer the oath to the Deponent.  If the deposition is not completed on the above date, the deposition will continue from day to day, weekends and holiday excluded, until completed.  Pursuant to Rule 30(b)(3)(A) of the Federal Rules of Civil Procedure, PennyMac reserves the right to record the deposition by audio or audiovisual means in addition to the stenographic method.  PennyMac further reserves the right to utilize software to generate the instant visual display of testimony.  Further, PennyMac reserves the right to conduct this deposition utilizing the secure web-based deposition option afforded by Veritext or in the alternative video teleconferencing (VTC) services or telephonically to provide remote/virtual access for those parties wishing to participate in the deposition via the internet and/or telephone.  Take note that the deposition officer may also be remote and out of the presence of the deponent via one of the options above for the

purposes of providing the oath/affirmation to the deponent and capturing the proceeding.  We further reserve the right to utilize the following: (1) Exhibit Capture (picture-in-picture) technology in which any exhibit reviewed by the deponent during the deposition can be captured visually; and (2) To conduct this deposition utilizing a paperless exhibit display process called Exhibit Share or a similar paperless virtual display platform. The parties are advised that in lieu of a paper set of exhibits they may be provided and displayed digitally to the deposition officer, deponent, parties and counsel.  The exhibits will be compiled by the deposition officer for the purposes of exhibit stamping, and ultimate production of the final certified transcript.

Please contact the noticing attorney at least three (3) calendar days prior to the deposition to advise that it is your desire to appear via these remote participating means so that the necessary credentials, call-in numbers, email address, services, testing and information, if necessary, can be arranged and provided to you prior to the proceeding(s).

Dated: November 11, 2020

Respectfully submitted,

*/s/ Nicole Bartz Metral*
Cheryl S. Chang (admitted *pro hac vice*)
Nicole Bartz Metral (admitted *pro hac vice*)
Jessica A. McElroy (admitted *pro hac vice*)

BLANK ROME LLP
2029 Century Park East, 6th Floor
Los Angeles, California 90067-2907
Telephone: 424.239.3400
Facsimile:  424.239.3434
Chang@blankrome.com

3

Nbmetral@blankrome.com
Jmcelroy@blankrome.com


Harris F. Powers III
Steven C. Cookston

Upshaw, Williams, Biggers & Beckham,
LLP
309 Fulton Street
Post Office Drawer 8230
Greenwood, MS 38935-8230
Telephone No.: 662-455-1613
Fax No. 662-453-9245
hpowers@upshawwilliams.com
scookston@upshawwilliams.com

*Counsel for Plaintiff*

136044.01923/124015928v.1

EXHIBIT A

1.      Physical Presence Prohibited.  The witness will be made available for deposition by video, with no attendees physically in the presence of the deponent. Witnesses may not use any communication devices other than those to facilitate the deposition during questioning and may not consult in any fashion with anyone other than with representing counsel during questioning.  Witnesses may not privately confer with counsel at all during questioning except as to questions of privilege.

2.      Participant List.  At least three calendar days prior to the noticed deposition date, each individual planning to participate in the deposition must notify the party noticing the deposition of his/her intent to participate and provide the following information to the noticing party: (a) name, (b) email address, (c) phone number.  The noticing party will share this information with the vendor arranging the deposition for the limited purpose of facilitating each participating party's access to the video web portal for the deposition.

3.      Technology Requirements.  All video depositions will be stenographically recorded by a court reporter with real-time feed capabilities. Each individual participating in a deposition conducted by video must have a webcam-equipped device (such as a desktop, laptop, or tablet), and a device with audio-capabilities or access to a telephone for calling into the deposition.  Other than this equipment, the witness shall not be permitted to have access to any other devices (such as a cellphone) while on the record.

Noticing counsel are not responsible for the quality or functionality of the video and audio stream for the witness, observers, or other participants.  Attendees agree to work in good faith to facilitate remote participation.

4.      Identification of Individuals in Attendance.  Each witness, attorney, and other person attending the deposition shall be identified on the record at the commencement of the deposition.  Under no circumstances may a person attend the deposition remotely in any manner without identifying themselves on the record at the commencement of the deposition.

5.      Conduct by Participants Appearing Remotely.  Each individual participating in the deposition (including counsel for the deponent) must do so remotely and must have an active video stream and audio line for the duration of the deposition.  Each participant should attend from a quiet, private location.

5

6.     <u>Deponent Communication During a Video Deposition</u>.  During the deposition, Deponent shall not communicate with anyone at all outside of the video/audio stream.  This includes, but is not limited to, instant messaging, text messaging, or any equivalent.  In the event any such communications occur, the parties agree that the communications are discoverable.

7.     <u>Disruptions</u>.  In the event a participant's video feed is interrupted or otherwise becomes hidden from view, the deposition will be suspended, and the parties will go back on the record only when the participant's video stream functionality has been restored.  Disruptions due to video streaming, phone line interruptions, or other technical problems shall not be counted against record time. If a party believes that the transmission and/or recording was disrupted in bad faith, including but not limited to for purposes of delay, it may request that an additional videographer record other participants and may seek further appropriate relief from the Court.

8.     <u>Court Reporter and Videographer</u>.  The parties will stipulate, in accordance with Federal Rule of Civil Procedure 30(b)(5), that the court reporter or videographer may participate in the deposition by remote means, and that the deposition will be deemed to have been conducted "before" that officer, even though the officer is not physically present with the deponent, so long as that officer is able to identify the deponent.

9.     <u>Official Record</u>.  The court reporter's transcript, and the videographer's recording (if any), shall constitute the official record of the deposition for all purposes.

10.     <u>Other Recording</u>.  No participant other than the court reporter and videographer (if any) may record or photograph any of the proceedings.  This shall include recording using any form of remote transmitting device, computer recording device, laptops, camera, and personal device, including smart phones, tablets, iPads, Androids, iPhones, Blackberries, or other PDAs.  Nothing in this provision prevents or limits the taking of notes by those identified on the record.

11.     <u>Use of Remote Depositions at Trial</u>.  Remote depositions conducted in accordance with this Protocol may be admitted at trial with the same effect as a deposition conducted inperson.

12.     <u>Instant Visual Display Technology</u>.  In the event the noticing party utilizes instant visual display technology such that the court reporter's writing of

6

the proceeding will be displayed in real-time, the witness shall not have access to the instant visual display.

13.     <u>Applicable Authority</u>.  Unless otherwise set forth herein, the Federal Rules of Civil Procedure, Federal Rules of Evidence, and other applicable authority shall govern as though the deposition was conducted in-person.

14.     <u>Duration</u>.  Nothing herein prevents a noticing party from conducting an in-person deposition once COVID-19 related preventative measures are lifted in the states where the parties and counsel reside.  If, however, a noticing party elects to conduct a deposition by remote means even after such measures are lifted, the terms of this Protocol shall continue to govern.

136044.01923/124015928v.1

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

## Eastern Division

PENNYMAC LOAN SERVICES, LLC,

                    Plaintiff,

      -vs-

SITCOMM ARBITRATION
ASSOCIATION, MARK MOFFETT,
SANDRA GOULETTE, RONNIE
KAHAPEA, MARK JOHNSON, KIRK
GIBBS, and ALARIC SCOTT,

                 Defendants.

CIVIL ACTION
**Case No: 2:19-cv-00193-KS-MTP**

**PLAINTIFF PENNYMAC LOAN SERVICES, LLC'S NOTICE OF DEPOSITION OF DEFENDANT RONNIE KAHAPEA PURSUANT TO FED. R. CIV. P. 26 AND 30**

TO:              ALL PARTIES AND THEIR ATTORNEYS OF RECORD

DEPONENT:     RONNIE KAHAPEA

DATE:          November 30, 2020

TIME:          1:00 p.m. Central Standard Time

LOCATION:     Remote by videoconference.  See Exhibit A.  Contact Veritext's calendar team at calendar-LA@Veritext.com to retrieve the necessary credentials to access the remote deposition.

1

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

Please take notice that pursuant to Rules 26 and 30 of the Federal Rules of Civil Procedure, plaintiff PennyMac Loan Services, LLC ("PennyMac") will take the deposition by oral examination of defendant Ronnie Kahapea ("Deponent") on November 30, 2020 at 1:00 p.m. Central Standard Time via remote video conference pursuant to Exhibit A.

The remote deposition will be coordinated by Veritext Legal Solutions, with a business address of 707 Wilshire Boulevard, Suite 3500, Los Angeles, CA 90017.  Contact Veritext's calendar team at calendar-LA@Veritext.com to retrieve the necessary credentials to access the remote deposition, as well as information related to any technical assistance you may require to assist with carrying out the virtual deposition.  We encourage you to access www.veritext.com/remote for additional remote deposition information.

The deposition will be taken, via remote means, before an officer authorized to administer the oath to the Deponent.  If the deposition is not completed on the above date, the deposition will continue from day to day, weekends and holiday excluded, until completed.  Pursuant to Rule 30(b)(3)(A) of the Federal Rules of Civil Procedure, PennyMac reserves the right to record the deposition by audio or audiovisual means in addition to the stenographic method.  PennyMac further reserves the right to utilize software to generate the instant visual display of testimony.  Further, PennyMac reserves the right to conduct this deposition utilizing the secure web-based deposition option afforded by Veritext or in the alternative video teleconferencing (VTC) services or telephonically to provide remote/virtual access for those parties wishing to participate in the deposition via the internet and/or telephone.  Take note that the deposition officer may also be remote and out of the presence of the deponent via one of the options above for the

2

purposes of providing the oath/affirmation to the deponent and capturing the proceeding.  We further reserve the right to utilize the following: (1) Exhibit Capture (picture-in-picture) technology in which any exhibit reviewed by the deponent during the deposition can be captured visually; and (2) To conduct this deposition utilizing a paperless exhibit display process called Exhibit Share or a similar paperless virtual display platform. The parties are advised that in lieu of a paper set of exhibits they may be provided and displayed digitally to the deposition officer, deponent, parties and counsel.  The exhibits will be compiled by the deposition officer for the purposes of exhibit stamping, and ultimate production of the final certified transcript.

Please contact the noticing attorney at least three (3) calendar days prior to the deposition to advise that it is your desire to appear via these remote participating means so that the necessary credentials, call-in numbers, email address, services, testing and information, if necessary, can be arranged and provided to you prior to the proceeding(s).

Dated: November 11, 2020

Respectfully submitted,

*/s/ Nicole Bartz Metral*
Cheryl S. Chang (admitted *pro hac vice*)
Nicole Bartz Metral (admitted *pro hac vice*)
Jessica A. McElroy (admitted *pro hac vice*)

BLANK ROME LLP
2029 Century Park East, 6th Floor
Los Angeles, California 90067-2907
Telephone: 424.239.3400
Facsimile:  424.239.3434
Chang@blankrome.com

3

Nbmetral@blankrome.com
Jmcelroy@blankrome.com


Harris F. Powers III
Steven C. Cookston

Upshaw, Williams, Biggers & Beckham,
LLP
309 Fulton Street
Post Office Drawer 8230
Greenwood, MS 38935-8230
Telephone No.: 662-455-1613
Fax No. 662-453-9245
hpowers@upshawwilliams.com
scookston@upshawwilliams.com

*Counsel for Plaintiff*

4

EXHIBIT A

1.    Physical Presence Prohibited.  The witness will be made available for deposition by video, with no attendees physically in the presence of the deponent. Witnesses may not use any communication devices other than those to facilitate the deposition during questioning and may not consult in any fashion with anyone other than with representing counsel during questioning.  Witnesses may not privately confer with counsel at all during questioning except as to questions of privilege.

2.    Participant List.  At least three calendar days prior to the noticed deposition date, each individual planning to participate in the deposition must notify the party noticing the deposition of his/her intent to participate and provide the following information to the noticing party: (a) name, (b) email address, (c) phone number.  The noticing party will share this information with the vendor arranging the deposition for the limited purpose of facilitating each participating party's access to the video web portal for the deposition.

3.    Technology Requirements.  All video depositions will be stenographically recorded by a court reporter with real-time feed capabilities. Each individual participating in a deposition conducted by video must have a webcam-equipped device (such as a desktop, laptop, or tablet), and a device with audio-capabilities or access to a telephone for calling into the deposition.  Other than this equipment, the witness shall not be permitted to have access to any other devices (such as a cellphone) while on the record.

Noticing counsel are not responsible for the quality or functionality of the video and audio stream for the witness, observers, or other participants.  Attendees agree to work in good faith to facilitate remote participation.

4.    Identification of lndividuals in Attendance.  Each witness, attorney, and other person attending the deposition shall be identified on the record at the commencement of the deposition.  Under no circumstances may a person attend the deposition remotely in any manner without identifying themselves on the record at the commencement of the deposition.

5.    Conduct by Participants Appearing Remotely.  Each individual participating in the deposition (including counsel for the deponent) must do so remotely and must have an active video stream and audio line for the duration of the deposition.  Each participant should attend from a quiet, private location.

5

6.    <u>Deponent Communication During a Video Deposition</u>.  During the deposition, Deponent shall not communicate with anyone at all outside of the video/audio stream.  This includes, but is not limited to, instant messaging, text messaging, or any equivalent.  In the event any such communications occur, the parties agree that the communications are discoverable.

7.    <u>Disruptions</u>.  In the event a participant's video feed is interrupted or otherwise becomes hidden from view, the deposition will be suspended, and the parties will go back on the record only when the participant's video stream functionality has been restored.  Disruptions due to video streaming, phone line interruptions, or other technical problems shall not be counted against record time.  If a party believes that the transmission and/or recording was disrupted in bad faith, including but not limited to for purposes of delay, it may request that an additional videographer record other participants and may seek further appropriate relief from the Court.

8.    <u>Court Reporter and Videographer</u>.  The parties will stipulate, in accordance with Federal Rule of Civil Procedure 30(b)(5), that the court reporter or videographer may participate in the deposition by remote means, and that the deposition will be deemed to have been conducted "before" that officer, even though the officer is not physically present with the deponent, so long as that officer is able to identify the deponent.

9.    <u>Official Record</u>.  The court reporter's transcript, and the videographer's recording (if any), shall constitute the official record of the deposition for all purposes.

10.    <u>Other Recording</u>.  No participant other than the court reporter and videographer (if any) may record or photograph any of the proceedings.  This shall include recording using any form of remote transmitting device, computer recording device, laptops, camera, and personal device, including smart phones, tablets, iPads, Androids, iPhones, Blackberries, or other PDAs.  Nothing in this provision prevents or limits the taking of notes by those identified on the record.

11.    <u>Use of Remote Depositions at Trial</u>.  Remote depositions conducted in accordance with this Protocol may be admitted at trial with the same effect as a deposition conducted inperson.

12.    <u>Instant Visual Display Technology</u>.  In the event the noticing party utilizes instant visual display technology such that the court reporter's writing of

6

the proceeding will be displayed in real-time, the witness shall not have access to the instant visual display.

13.     <u>Applicable Authority</u>.  Unless otherwise set forth herein, the Federal Rules of Civil Procedure, Federal Rules of Evidence, and other applicable authority shall govern as though the deposition was conducted in-person.

14.     <u>Duration</u>.  Nothing herein prevents a noticing party from conducting an in-person deposition once COVID-19 related preventative measures are lifted in the states where the parties and counsel reside.  If, however, a noticing party elects to conduct a deposition by remote means even after such measures are lifted, the terms of this Protocol shall continue to govern.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**

**Eastern Division**

PENNYMAC LOAN SERVICES, LLC,          CIVIL ACTION
                                      **Case No: 2:19-cv-00193-KS-MTP**

       Plaintiff,

   -vs-

SITCOMM ARBITRATION
ASSOCIATION, MARK MOFFETT,
SANDRA GOULETTE, RONNIE
KAHAPEA, MARK JOHNSON, KIRK
GIBBS, and ALARIC SCOTT,

      Defendants.

**PLAINTIFF PENNYMAC LOAN SERVICES, LLC'S NOTICE OF**
**DEPOSITION OF DEFENDANT KIRK GIBBS PURSUANT TO FED. R.**
**CIV. P. 26 AND 30**

TO:     ALL PARTIES AND THEIR ATTORNEYS OF RECORD

DEPONENT:   KIRK GIBBS

DATE:    December 4, 2020

TIME:    11:00 a.m. Central Standard Time

LOCATION:  Remote by videoconference.  See Exhibit A.  Contact Veritext's
      calendar team at calendar-LA@Veritext.com to retrieve the
      necessary credentials to access the remote deposition.

1

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

Please take notice that pursuant to Rules 26 and 30 of the Federal Rules of Civil Procedure, plaintiff PennyMac Loan Services, LLC ("PennyMac") will take the deposition by oral examination of defendant Kirk Gibbs ("Deponent") on December 4, 2020 at 11:00 a.m. Central Standard Time via remote video conference pursuant to Exhibit A.

The remote deposition will be coordinated by Veritext Legal Solutions, with a business address of 707 Wilshire Boulevard, Suite 3500, Los Angeles, CA 90017.  Contact Veritext's calendar team at calendar-LA@Veritext.com to retrieve the necessary credentials to access the remote deposition, as well as information related to any technical assistance you may require to assist with carrying out the virtual deposition.  We encourage you to access www.veritext.com/remote for additional remote deposition information.

The deposition will be taken, via remote means, before an officer authorized to administer the oath to the Deponent.  If the deposition is not completed on the above date, the deposition will continue from day to day, weekends and holiday excluded, until completed.  Pursuant to Rule 30(b)(3)(A) of the Federal Rules of Civil Procedure, PennyMac reserves the right to record the deposition by audio or audiovisual means in addition to the stenographic method.  PennyMac further reserves the right to utilize software to generate the instant visual display of testimony.  Further, PennyMac reserves the right to conduct this deposition utilizing the secure web-based deposition option afforded by Veritext or in the alternative video teleconferencing (VTC) services or telephonically to provide remote/virtual access for those parties wishing to participate in the deposition via the internet and/or telephone.  Take note that the deposition officer may also be remote and out of the presence of the deponent via one of the options above for the

2

purposes of providing the oath/affirmation to the deponent and capturing the proceeding.  We further reserve the right to utilize the following: (1) Exhibit Capture (picture-in-picture) technology in which any exhibit reviewed by the deponent during the deposition can be captured visually; and (2) To conduct this deposition utilizing a paperless exhibit display process called Exhibit Share or a similar paperless virtual display platform. The parties are advised that in lieu of a paper set of exhibits they may be provided and displayed digitally to the deposition officer, deponent, parties and counsel.  The exhibits will be compiled by the deposition officer for the purposes of exhibit stamping, and ultimate production of the final certified transcript.

Please contact the noticing attorney at least three (3) calendar days prior to the deposition to advise that it is your desire to appear via these remote participating means so that the necessary credentials, call-in numbers, email address, services, testing and information, if necessary, can be arranged and provided to you prior to the proceeding(s).

Dated: November 11, 2020

Respectfully submitted,

*/s/ Nicole Bartz Metral*
Cheryl S. Chang (admitted *pro hac vice*)
Nicole Bartz Metral (admitted *pro hac vice*)
Jessica A. McElroy (admitted *pro hac vice*)

BLANK ROME LLP
2029 Century Park East, 6th Floor
Los Angeles, California 90067-2907
Telephone: 424.239.3400
Facsimile:  424.239.3434
Chang@blankrome.com

3

Nbmetral@blankrome.com
Jmcelroy@blankrome.com


Harris F. Powers III
Steven C. Cookston

Upshaw, Williams, Biggers & Beckham,
LLP
309 Fulton Street
Post Office Drawer 8230
Greenwood, MS 38935-8230
Telephone No.: 662-455-1613
Fax No. 662-453-9245
hpowers@upshawwilliams.com
scookston@upshawwilliams.com

*Counsel for Plaintiff*

4

EXHIBIT A

1.    Physical Presence Prohibited.  The witness will be made available for deposition by video, with no attendees physically in the presence of the deponent. Witnesses may not use any communication devices other than those to facilitate the deposition during questioning and may not consult in any fashion with anyone other than with representing counsel during questioning.  Witnesses may not privately confer with counsel at all during questioning except as to questions of privilege.

2.    Participant List.  At least three calendar days prior to the noticed deposition date, each individual planning to participate in the deposition must notify the party noticing the deposition of his/her intent to participate and provide the following information to the noticing party: (a) name, (b) email address, (c) phone number.  The noticing party will share this information with the vendor arranging the deposition for the limited purpose of facilitating each participating party's access to the video web portal for the deposition.

3.    Technology Requirements.  All video depositions will be stenographically recorded by a court reporter with real-time feed capabilities. Each individual participating in a deposition conducted by video must have a webcam-equipped device (such as a desktop, laptop, or tablet), and a device with audio-capabilities or access to a telephone for calling into the deposition.  Other than this equipment, the witness shall not be permitted to have access to any other devices (such as a cellphone) while on the record.

Noticing counsel are not responsible for the quality or functionality of the video and audio stream for the witness, observers, or other participants.  Attendees agree to work in good faith to facilitate remote participation.

4.    Identification of Individuals in Attendance.  Each witness, attorney, and other person attending the deposition shall be identified on the record at the commencement of the deposition.  Under no circumstances may a person attend the deposition remotely in any manner without identifying themselves on the record at the commencement of the deposition.

5.    Conduct by Participants Appearing Remotely.  Each individual participating in the deposition (including counsel for the deponent) must do so remotely and must have an active video stream and audio line for the duration of the deposition.  Each participant should attend from a quiet, private location.

5

6.      <u>Deponent Communication During a Video Deposition</u>.  During the deposition, Deponent shall not communicate with anyone at all outside of the video/audio stream.  This includes, but is not limited to, instant messaging, text messaging, or any equivalent.  In the event any such communications occur, the parties agree that the communications are discoverable.

7.      <u>Disruptions</u>.  In the event a participant's video feed is interrupted or otherwise becomes hidden from view, the deposition will be suspended, and the parties will go back on the record only when the participant's video stream functionality has been restored.  Disruptions due to video streaming, phone line interruptions, or other technical problems shall not be counted against record time.  If a party believes that the transmission and/or recording was disrupted in bad faith, including but not limited to for purposes of delay, it may request that an additional videographer record other participants and may seek further appropriate relief from the Court.

8.      <u>Court Reporter and Videographer</u>.  The parties will stipulate, in accordance with Federal Rule of Civil Procedure 30(b)(5), that the court reporter or videographer may participate in the deposition by remote means, and that the deposition will be deemed to have been conducted "before" that officer, even though the officer is not physically present with the deponent, so long as that officer is able to identify the deponent.

9.      <u>Official Record</u>.  The court reporter's transcript, and the videographer's recording (if any), shall constitute the official record of the deposition for all purposes.

10.     <u>Other Recording</u>.  No participant other than the court reporter and videographer (if any) may record or photograph any of the proceedings.  This shall include recording using any form of remote transmitting device, computer recording device, laptops, camera, and personal device, including smart phones, tablets, iPads, Androids, iPhones, Blackberries, or other PDAs.  Nothing in this provision prevents or limits the taking of notes by those identified on the record.

11.     <u>Use of Remote Depositions at Trial</u>.  Remote depositions conducted in accordance with this Protocol may be admitted at trial with the same effect as a deposition conducted inperson.

12.     <u>Instant Visual Display Technology</u>.  In the event the noticing party utilizes instant visual display technology such that the court reporter's writing of

6

the proceeding will be displayed in real-time, the witness shall not have access to the instant visual display.

13.   <u>Applicable Authority</u>.  Unless otherwise set forth herein, the Federal Rules of Civil Procedure, Federal Rules of Evidence, and other applicable authority shall govern as though the deposition was conducted in-person.

14.   <u>Duration</u>.  Nothing herein prevents a noticing party from conducting an in-person deposition once COVID-19 related preventative measures are lifted in the states where the parties and counsel reside.  If, however, a noticing party elects to conduct a deposition by remote means even after such measures are lifted, the terms of this Protocol shall continue to govern.

7

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**

**Eastern Division**

PENNYMAC LOAN SERVICES, LLC,

Plaintiff,

-vs-

SITCOMM ARBITRATION
ASSOCIATION, MARK MOFFETT,
SANDRA GOULETTE, RONNIE
KAHAPEA, MARK JOHNSON, KIRK
GIBBS, and ALARIC SCOTT,

Defendants.

CIVIL ACTION
**Case No: 2:19-cv-00193-KS-MTP**

**PLAINTIFF PENNYMAC LOAN SERVICES, LLC'S NOTICE OF
DEPOSITION OF DEFENDANT SANDRA GOULETTE PURSUANT TO
FED. R. CIV. P. 26 AND 30**

TO:             ALL PARTIES AND THEIR ATTORNEYS OF RECORD

DEPONENT:       SANDRA GOULETTE

DATE:           December 7, 2020

TIME:           11:00 a.m. Central Standard Time

LOCATION:       Remote by videoconference.  See Exhibit A.  Contact Veritext's
                calendar team at calendar-LA@Veritext.com to retrieve the
                necessary credentials to access the remote deposition.

1

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

Please take notice that pursuant to Rules 26 and 30 of the Federal Rules of Civil Procedure, plaintiff PennyMac Loan Services, LLC ("PennyMac") will take the deposition by oral examination of defendant Sandra Goulette ("Deponent") on December 7, 2020 at 11:00 a.m. Central Standard Time via remote video conference pursuant to Exhibit A.

The remote deposition will be coordinated by Veritext Legal Solutions, with a business address of 707 Wilshire Boulevard, Suite 3500, Los Angeles, CA 90017. Contact Veritext's calendar team at calendar-LA@Veritext.com to retrieve the necessary credentials to access the remote deposition, as well as information related to any technical assistance you may require to assist with carrying out the virtual deposition. We encourage you to access www.veritext.com/remote for additional remote deposition information.

The deposition will be taken, via remote means, before an officer authorized to administer the oath to the Deponent. If the deposition is not completed on the above date, the deposition will continue from day to day, weekends and holiday excluded, until completed. Pursuant to Rule 30(b)(3)(A) of the Federal Rules of Civil Procedure, PennyMac reserves the right to record the deposition by audio or audiovisual means in addition to the stenographic method. PennyMac further reserves the right to utilize software to generate the instant visual display of testimony. Further, PennyMac reserves the right to conduct this deposition utilizing the secure web-based deposition option afforded by Veritext or in the alternative video teleconferencing (VTC) services or telephonically to provide remote/virtual access for those parties wishing to participate in the deposition via the internet and/or telephone. Take note that the deposition officer may also be remote and out of the presence of the deponent via one of the options above for the

2

purposes of providing the oath/affirmation to the deponent and capturing the proceeding.  We further reserve the right to utilize the following: (1) Exhibit Capture (picture-in-picture) technology in which any exhibit reviewed by the deponent during the deposition can be captured visually; and (2) To conduct this deposition utilizing a paperless exhibit display process called Exhibit Share or a similar paperless virtual display platform. The parties are advised that in lieu of a paper set of exhibits they may be provided and displayed digitally to the deposition officer, deponent, parties and counsel.  The exhibits will be compiled by the deposition officer for the purposes of exhibit stamping, and ultimate production of the final certified transcript.

Please contact the noticing attorney at least three (3) calendar days prior to the deposition to advise that it is your desire to appear via these remote participating means so that the necessary credentials, call-in numbers, email address, services, testing and information, if necessary, can be arranged and provided to you prior to the proceeding(s).

Dated: November 11, 2020

Respectfully submitted,

/s/ Nicole Bartz Metral
Cheryl S. Chang (admitted *pro hac vice*)
Nicole Bartz Metral (admitted *pro hac vice*)
Jessica A. McElroy (admitted *pro hac vice*)

BLANK ROME LLP
2029 Century Park East, 6th Floor
Los Angeles, California 90067-2907
Telephone: 424.239.3400
Facsimile:  424.239.3434
Chang@blankrome.com

3

Nbmetral@blankrome.com
Jmcelroy@blankrome.com


Harris F. Powers III
Steven C. Cookston

Upshaw, Williams, Biggers & Beckham, LLP
309 Fulton Street
Post Office Drawer 8230
Greenwood, MS 38935-8230
Telephone No.: 662-455-1613
Fax No. 662-453-9245
hpowers@upshawwilliams.com
scookston@upshawwilliams.com

*Counsel for Plaintiff*

4

EXHIBIT A

1.     Physical Presence Prohibited.  The witness will be made available for deposition by video, with no attendees physically in the presence of the deponent. Witnesses may not use any communication devices other than those to facilitate the deposition during questioning and may not consult in any fashion with anyone other than with representing counsel during questioning.  Witnesses may not privately confer with counsel at all during questioning except as to questions of privilege.

2.     Participant List.  At least three calendar days prior to the noticed deposition date, each individual planning to participate in the deposition must notify the party noticing the deposition of his/her intent to participate and provide the following information to the noticing party: (a) name, (b) email address, (c) phone number.  The noticing party will share this information with the vendor arranging the deposition for the limited purpose of facilitating each participating party's access to the video web portal for the deposition.

3.     Technology Requirements.  All video depositions will be stenographically recorded by a court reporter with real-time feed capabilities. Each individual participating in a deposition conducted by video must have a webcam-equipped device (such as a desktop, laptop, or tablet), and a device with audio-capabilities or access to a telephone for calling into the deposition.  Other than this equipment, the witness shall not be permitted to have access to any other devices (such as a cellphone) while on the record.

Noticing counsel are not responsible for the quality or functionality of the video and audio stream for the witness, observers, or other participants.  Attendees agree to work in good faith to facilitate remote participation.

4.     Identification of Individuals in Attendance.  Each witness, attorney, and other person attending the deposition shall be identified on the record at the commencement of the deposition.  Under no circumstances may a person attend the deposition remotely in any manner without identifying themselves on the record at the commencement of the deposition.

5.     Conduct by Participants Appearing Remotely.  Each individual participating in the deposition (including counsel for the deponent) must do so remotely and must have an active video stream and audio line for the duration of the deposition.  Each participant should attend from a quiet, private location.

5

6.    <u>Deponent Communication During a Video Deposition</u>.  During the deposition, Deponent shall not communicate with anyone at all outside of the video/audio stream.  This includes, but is not limited to, instant messaging, text messaging, or any equivalent.  In the event any such communications occur, the parties agree that the communications are discoverable.

7.    <u>Disruptions</u>.  In the event a participant's video feed is interrupted or otherwise becomes hidden from view, the deposition will be suspended, and the parties will go back on the record only when the participant's video stream functionality has been restored.  Disruptions due to video streaming, phone line interruptions, or other technical problems shall not be counted against record time.  If a party believes that the transmission and/or recording was disrupted in bad faith, including but not limited to for purposes of delay, it may request that an additional videographer record other participants and may seek further appropriate relief from the Court.

8.    <u>Court Reporter and Videographer</u>.  The parties will stipulate, in accordance with Federal Rule of Civil Procedure 30(b)(5), that the court reporter or videographer may participate in the deposition by remote means, and that the deposition will be deemed to have been conducted "before" that officer, even though the officer is not physically present with the deponent, so long as that officer is able to identify the deponent.

9.    <u>Official Record</u>.  The court reporter's transcript, and the videographer's recording (if any), shall constitute the official record of the deposition for all purposes.

10.    <u>Other Recording</u>.  No participant other than the court reporter and videographer (if any) may record or photograph any of the proceedings.  This shall include recording using any form of remote transmitting device, computer recording device, laptops, camera, and personal device, including smart phones, tablets, iPads, Androids, iPhones, Blackberries, or other PDAs.  Nothing in this provision prevents or limits the taking of notes by those identified on the record.

11.    <u>Use of Remote Depositions at Trial</u>.  Remote depositions conducted in accordance with this Protocol may be admitted at trial with the same effect as a deposition conducted inperson.

12.    <u>Instant Visual Display Technology</u>.  In the event the noticing party utilizes instant visual display technology such that the court reporter's writing of

6

the proceeding will be displayed in real-time, the witness shall not have access to the instant visual display.

13.   <u>Applicable Authority</u>.  Unless otherwise set forth herein, the Federal Rules of Civil Procedure, Federal Rules of Evidence, and other applicable authority shall govern as though the deposition was conducted in-person.

14.   <u>Duration</u>.  Nothing herein prevents a noticing party from conducting an in-person deposition once COVID-19 related preventative measures are lifted in the states where the parties and counsel reside.  If, however, a noticing party elects to conduct a deposition by remote means even after such measures are lifted, the terms of this Protocol shall continue to govern.

7

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

### Eastern Division

PENNYMAC LOAN SERVICES, LLC,

                              Plaintiff,

        -vs-

SITCOMM ARBITRATION
ASSOCIATION, MARK MOFFETT,
SANDRA GOULETTE, RONNIE
KAHAPEA, MARK JOHNSON, KIRK
GIBBS, and ALARIC SCOTT,

                         Defendants.

CIVIL ACTION
**Case No: 2:19-cv-00193-KS-MTP**

---

### PLAINTIFF PENNYMAC LOAN SERVICES, LLC'S NOTICE OF DEPOSITION OF DEFENDANT MARK MOFFETT PURSUANT TO FED. R. CIV. P. 26 AND 30

TO:            ALL PARTIES AND THEIR ATTORNEYS OF RECORD

DEPONENT:     MARK MOFFETT

DATE:        December 9, 2020

TIME:        11:00 a.m. Central Standard Time

LOCATION:    Remote by videoconference.  See Exhibit A.  Contact Veritext's calendar team at calendar-LA@Veritext.com to retrieve the necessary credentials to access the remote deposition.

1

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

Please take notice that pursuant to Rules 26 and 30 of the Federal Rules of Civil Procedure, plaintiff PennyMac Loan Services, LLC ("PennyMac") will take the deposition by oral examination of defendant Mark Moffett ("Deponent") on December 9, 2020 at 11:00 a.m. Central Standard Time via remote video conference pursuant to Exhibit A.

The remote deposition will be coordinated by Veritext Legal Solutions, with a business address of 707 Wilshire Boulevard, Suite 3500, Los Angeles, CA 90017.  Contact Veritext's calendar team at calendar-LA@Veritext.com to retrieve the necessary credentials to access the remote deposition, as well as information related to any technical assistance you may require to assist with carrying out the virtual deposition.  We encourage you to access www.veritext.com/remote for additional remote deposition information.

The deposition will be taken, via remote means, before an officer authorized to administer the oath to the Deponent.  If the deposition is not completed on the above date, the deposition will continue from day to day, weekends and holiday excluded, until completed.  Pursuant to Rule 30(b)(3)(A) of the Federal Rules of Civil Procedure, PennyMac reserves the right to record the deposition by audio or audiovisual means in addition to the stenographic method.  PennyMac further reserves the right to utilize software to generate the instant visual display of testimony.  Further, PennyMac reserves the right to conduct this deposition utilizing the secure web-based deposition option afforded by Veritext or in the alternative video teleconferencing (VTC) services or telephonically to provide remote/virtual access for those parties wishing to participate in the deposition via the internet and/or telephone.  Take note that the deposition officer may also be remote and out of the presence of the deponent via one of the options above for the

2

purposes of providing the oath/affirmation to the deponent and capturing the proceeding.  We further reserve the right to utilize the following: (1) Exhibit Capture (picture-in-picture) technology in which any exhibit reviewed by the deponent during the deposition can be captured visually; and (2) To conduct this deposition utilizing a paperless exhibit display process called Exhibit Share or a similar paperless virtual display platform. The parties are advised that in lieu of a paper set of exhibits they may be provided and displayed digitally to the deposition officer, deponent, parties and counsel.  The exhibits will be compiled by the deposition officer for the purposes of exhibit stamping, and ultimate production of the final certified transcript.

Please contact the noticing attorney at least three (3) calendar days prior to the deposition to advise that it is your desire to appear via these remote participating means so that the necessary credentials, call-in numbers, email address, services, testing and information, if necessary, can be arranged and provided to you prior to the proceeding(s).

Dated: November 11, 2020

Respectfully submitted,

*/s/ Nicole Bartz Metral*
Cheryl S. Chang (admitted *pro hac vice*)
Nicole Bartz Metral (admitted *pro hac vice*)
Jessica A. McElroy (admitted *pro hac vice*)

BLANK ROME LLP
2029 Century Park East, 6th Floor
Los Angeles, California 90067-2907
Telephone: 424.239.3400
Facsimile:  424.239.3434
Chang@blankrome.com

3

Nbmetral@blankrome.com
Jmcelroy@blankrome.com


Harris F. Powers III
Steven C. Cookston

Upshaw, Williams, Biggers & Beckham,
LLP
309 Fulton Street
Post Office Drawer 8230
Greenwood, MS 38935-8230
Telephone No.: 662-455-1613
Fax No. 662-453-9245
hpowers@upshawwilliams.com
scookston@upshawwilliams.com

*Counsel for Plaintiff*

4

EXHIBIT A

1.    Physical Presence Prohibited.  The witness will be made available for deposition by video, with no attendees physically in the presence of the deponent. Witnesses may not use any communication devices other than those to facilitate the deposition during questioning and may not consult in any fashion with anyone other than with representing counsel during questioning.  Witnesses may not privately confer with counsel at all during questioning except as to questions of privilege.

2.    Participant List.  At least three calendar days prior to the noticed deposition date, each individual planning to participate in the deposition must notify the party noticing the deposition of his/her intent to participate and provide the following information to the noticing party: (a) name, (b) email address, (c) phone number.  The noticing party will share this information with the vendor arranging the deposition for the limited purpose of facilitating each participating party's access to the video web portal for the deposition.

3.    Technology Requirements.  All video depositions will be stenographically recorded by a court reporter with real-time feed capabilities. Each individual participating in a deposition conducted by video must have a webcam-equipped device (such as a desktop, laptop, or tablet), and a device with audio-capabilities or access to a telephone for calling into the deposition.  Other than this equipment, the witness shall not be permitted to have access to any other devices (such as a cellphone) while on the record.

Noticing counsel are not responsible for the quality or functionality of the video and audio stream for the witness, observers, or other participants.  Attendees agree to work in good faith to facilitate remote participation.

4.    Identification of Individuals in Attendance.  Each witness, attorney, and other person attending the deposition shall be identified on the record at the commencement of the deposition.  Under no circumstances may a person attend the deposition remotely in any manner without identifying themselves on the record at the commencement of the deposition.

5.    Conduct by Participants Appearing Remotely.  Each individual participating in the deposition (including counsel for the deponent) must do so remotely and must have an active video stream and audio line for the duration of the deposition.  Each participant should attend from a quiet, private location.

5

6.    <u>Deponent Communication During a Video Deposition</u>.  During the deposition, Deponent shall not communicate with anyone at all outside of the video/audio stream.  This includes, but is not limited to, instant messaging, text messaging, or any equivalent.  In the event any such communications occur, the parties agree that the communications are discoverable.

7.    <u>Disruptions</u>.  In the event a participant's video feed is interrupted or otherwise becomes hidden from view, the deposition will be suspended, and the parties will go back on the record only when the participant's video stream functionality has been restored.  Disruptions due to video streaming, phone line interruptions, or other technical problems shall not be counted against record time. If a party believes that the transmission and/or recording was disrupted in bad faith, including but not limited to for purposes of delay, it may request that an additional videographer record other participants and may seek further appropriate relief from the Court.

8.    <u>Court Reporter and Videographer</u>.  The parties will stipulate, in accordance with Federal Rule of Civil Procedure 30(b)(5), that the court reporter or videographer may participate in the deposition by remote means, and that the deposition will be deemed to have been conducted "before" that officer, even though the officer is not physically present with the deponent, so long as that officer is able to identify the deponent.

9.    <u>Official Record</u>.  The court reporter's transcript, and the videographer's recording (if any), shall constitute the official record of the deposition for all purposes.

10.    <u>Other Recording</u>.  No participant other than the court reporter and videographer (if any) may record or photograph any of the proceedings.  This shall include recording using any form of remote transmitting device, computer recording device, laptops, camera, and personal device, including smart phones, tablets, iPads, Androids, iPhones, Blackberries, or other PDAs.  Nothing in this provision prevents or limits the taking of notes by those identified on the record.

11.    <u>Use of Remote Depositions at Trial</u>.  Remote depositions conducted in accordance with this Protocol may be admitted at trial with the same effect as a deposition conducted inperson.

12.    <u>Instant Visual Display Technology</u>.  In the event the noticing party utilizes instant visual display technology such that the court reporter's writing of

6

the proceeding will be displayed in real-time, the witness shall not have access to the instant visual display.

13.    <u>Applicable Authority</u>.  Unless otherwise set forth herein, the Federal Rules of Civil Procedure, Federal Rules of Evidence, and other applicable authority shall govern as though the deposition was conducted in-person.

14.    <u>Duration</u>.  Nothing herein prevents a noticing party from conducting an in-person deposition once COVID-19 related preventative measures are lifted in the states where the parties and counsel reside.  If, however, a noticing party elects to conduct a deposition by remote means even after such measures are lifted, the terms of this Protocol shall continue to govern.

7

**From:**        TrackingUpdates@fedex.com
**Sent:**        Wednesday, November 18, 2020 8:22 AM
**To:**          Metral, Nicole
**Subject:**     FedEx Shipment 399060635879 Delivered

_____

This tracking update has been requested by:

Company Name:        Blank Rome LLP
Name:                Nicole Metral
E-mail:              nbmetral@blankrome.com

Message:             PSShip eMail Notification
_____

Our records indicate that the following  shipment has been delivered:

Reference:                 136044.01923-04319
Ship date:                 Nov 17,  2020
Signed for by:             Signature  not required
Delivery location:         LAUREL,  MS
Delivered to:              Residence
Delivery date:             Wed,  11/18/2020 10:20 am
Service type:              FedEx  Priority Overnight®
Packaging type:            FedEx®  Envelope
Number of pieces:          1
Weight:                    0.50  lb.
Special handling/Services  Deliver  Weekday
                           Residential  Delivery
Standard transit:          11/18/2020  by 12:00 pm

Tracking number:           399060635879

Shipper Information         Recipient Information
Nicole Metral              Sandra  Goulette
Blank Rome LLP             3007 CRESCENT HILL DR
2029 Century Park East     LAUREL
6th Floor                  MS
Los Angeles                US
CA             39440
US
90067

1

Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 10:21 AM CST on 11/18/2020.

All weights are estimated.

The shipment is scheduled for delivery on or before the scheduled delivery displayed above. FedEx does not determine money-back guarantee or delay claim requests based on the scheduled delivery. Please see the FedEx Service Guide for terms and
conditions of service, including the FedEx Money-Back Guarantee, or contact your FedEx customer support representative.

To track the status of this shipment online, please use the following:
https://urldefense.com/v3/__https://www.fedex.com/apps/fedextrack/?action=track&tracknumbers=399060635879
&language=en&opco=FX&clienttype=ivother__;!!BzMsqVLNNjU!f96Ae2TU1XJcVkdewfwMI6_fZCxZJjeJgcdi6L-
H2NY4SVe8iAoRTtH6SsxWoqVnhQ$

This tracking update has been sent to you by FedEx on behalf of the Requestor nbmetral@blankrome.com. FedEx does not validate the authenticity of the requestor and does not validate, guarantee or warrant the authenticity of the request, the requestor's message, or the accuracy of this tracking update.

Standard transit is the date and time the package is scheduled to be delivered by, based on the selected service, destination and ship date. Limitations and exceptions may apply. Please see the FedEx Service Guide for terms and conditions of service, including the FedEx Money-Back Guarantee, or contact your FedEx Customer Support representative.

© 2020 Federal Express Corporation. The content of this message is protected by copyright and trademark laws under U.S. and international law. You can access our privacy policy by searching the term on fedex.com. All rights reserved.

Thank you for your business.

# BLANKROME

2029 Century Park East | 6th Floor | Los Angeles, CA 90067

| | |
|---|---|
| **Phone:** | *(424) 239-3483* |
| **Fax:** | *(424) 239-3845* |
| **Email:** | *nbmetral@blankrome.com* |

December 3, 2020

**VIA FEDEX**

Sandra Goulette
3007 Crescent Hill Drive
Laurel, MS 39440
Federal Express Tracking No. 3998 0475 7135

> Re:  *PennyMac Loan Services, LLC v. Sitcomm Arbitration Association, et al.*
>       Case No. 2:19-cv-00193-KS-MTP (Southern District of Mississippi)

Dear Ms. Goulette:

As you know, plaintiff PennyMac Loan Services, LLC has noticed your deposition for Monday, December 7, 2020 at 11:00 a.m. Central Time. You have not contacted my office to receive the credentials to access the remote deposition. We also understand that you have not contacted Veritext.

Please find the link to access your deposition here:

https://veritext.zoom.us/j/96475078502?pwd=cjlUNjd0ZTFaQkpVZGJxd3I2RjNQUT09

Meeting ID: 96475078502
Password: 0382605763

Should you have any questions, please feel free to contact the undersigned.

Sincerely,

Nicole B. Metral

NBM/tm

136044.01923/124140524v.1

EXHIBIT

3

**From:**        TrackingUpdates@fedex.com
**Sent:**        Friday, December 4, 2020 12:04 PM
**To:**          Metral, Nicole
**Subject:**     FedEx Shipment 399804757135 Delivered

_____

This tracking update has been requested by:

Company Name:        Blank Rome LLP
Name:                Nicole Metral
E-mail:              nbmetral@blankrome.com

Message:             PSShip eMail Notification
_____

Our records indicate that the following shipment has been delivered:


Reference:                   136044.01923-04319
Ship date:                   Dec 3, 2020
Signed for by:               Signature Release on file
Delivery location:           LAUREL, MS
Delivered to:                Residence
Delivery date:               Fri, 12/4/2020 11:03 am
Service type:                FedEx Priority Overnight®
Packaging type:              FedEx® Envelope
Number of pieces:            1
Weight:                      0.50 lb.
Special handling/Services    Deliver Weekday
                             No Signature Required
                             Residential Delivery
Standard transit:            12/4/2020 by 12:00 pm

Tracking number:             399804757135


Shipper Information          Recipient Information
Nicole Metral                Sandra Goulette
Blank Rome LLP               3007 CRESCENT HILL DR
2029 Century Park East       LAUREL
6th Floor             MS
Los Angeles           US
CA                    39440
US
90067

1

Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 11:04 AM CST on 12/04/2020.

All weights are estimated.

The shipment is scheduled for delivery on or before the scheduled delivery displayed above. FedEx does not determine money-back guarantee or delay claim requests based on the scheduled delivery. Please see the FedEx Service Guide for terms and
conditions of service, including the FedEx Money-Back Guarantee, or contact your FedEx customer support representative.

To track the status of this shipment online, please use the following:
https://urldefense.com/v3/__https://www.fedex.com/apps/fedextrack/?action=track&tracknumbers=399804757135&language=en&opco=FX&clienttype=ivother__;!!BzMsqVLNNjU!e4pS8uaaUYR1adL4U3bzjddM7_GuJD88uTULXf_LOfHfDCRy1yP33bFBIDo5jSs9Zw$

This tracking update has been sent to you by FedEx on behalf of the Requestor nbmetral@blankrome.com. FedEx does not validate the authenticity of the requestor and does not validate, guarantee or warrant the authenticity of the request, the requestor's message, or the accuracy of this tracking update.

Standard transit is the date and time the package is scheduled to be delivered by, based on the selected service, destination and ship date. Limitations and exceptions may apply. Please see the FedEx Service Guide for terms and conditions of service, including the FedEx Money-Back Guarantee, or contact your FedEx Customer Support representative.

© 2020 Federal Express Corporation. The content of this message is protected by copyright and trademark laws under U.S. and international law. You can access our privacy policy by searching the term on fedex.com. All rights reserved.

Thank you for your business.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

### Eastern Division

PENNYMAC LOAN SERVICES, LLC,    CIVIL ACTION
                               **Case No: 2:19-cv-00193-KS-MTP**

                Plaintiff,

    -vs-

SITCOMM ARBITRATION
ASSOCIATION, MARK MOFFETT,
SANDRA GOULETTE, RONNIE
KAHAPEA, MARK JOHNSON, KIRK
GIBBS, and ALARIC SCOTT,

                Defendants.

### PLAINTIFF PENNYMAC LOAN SERVICES, LLC'S AMENDED NOTICE OF DEPOSITION OF DEFENDANT SANDRA GOULETTE PURSUANT TO FED. R. CIV. P. 26 AND 30

TO:           ALL PARTIES AND THEIR ATTORNEYS OF RECORD

DEPONENT:    SANDRA GOULETTE

DATE:        December 8, 2020

TIME:        12:30 p.m. Central Standard Time

LOCATION:    Remote by videoconference.  See Exhibit A.  The link for the deposition is below:

https://proceedings.veritext.com/?token=88aa739ff44be349d5c593427d105d5b

1

136044.01923/124168690v.1

EXHIBIT

4

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

Please take notice that pursuant to Rules 26 and 30 of the Federal Rules of Civil Procedure, plaintiff PennyMac Loan Services, LLC ("PennyMac") will take the deposition by oral examination of defendant Sandra Goulette ("Deponent") on December 8, 2020 at 12:30 p.m. Central Standard Time via remote video conference pursuant to Exhibit A.

The remote deposition will be coordinated by Veritext Legal Solutions, with a business address of 707 Wilshire Boulevard, Suite 3500, Los Angeles, CA 90017.  The link for the deposition is https://proceedings.veritext.com/?token=88aa739ff44be349d5c593427d105d5b. Contact Veritext's calendar team at calendar-LA@Veritext.com if you need additional information or for any technical assistance you may require to assist with carrying out the virtual deposition.  We encourage you to access www.veritext.com/remote for additional remote deposition information.

The deposition will be taken, via remote means, before an officer authorized to administer the oath to the Deponent.  If the deposition is not completed on the above date, the deposition will continue from day to day, weekends and holiday excluded, until completed.  Pursuant to Rule 30(b)(3)(A) of the Federal Rules of Civil Procedure, PennyMac reserves the right to record the deposition by audio or audiovisual means in addition to the stenographic method.  PennyMac further reserves the right to utilize software to generate the instant visual display of testimony.  Further, PennyMac reserves the right to conduct this deposition utilizing the secure web-based deposition option afforded by Veritext or in the alternative video teleconferencing (VTC) services or telephonically to provide remote/virtual access for those parties wishing to participate in the deposition via the internet and/or telephone.  Take note that the deposition officer may also be remote and out of the presence of the deponent via one of the options above for the

136044.01923/124168690v.1

purposes of providing the oath/affirmation to the deponent and capturing the proceeding.  We further reserve the right to utilize the following: (1) Exhibit Capture (picture-in-picture) technology in which any exhibit reviewed by the deponent during the deposition can be captured visually; and (2) To conduct this deposition utilizing a paperless exhibit display process called Exhibit Share or a similar paperless virtual display platform. The parties are advised that in lieu of a paper set of exhibits they may be provided and displayed digitally to the deposition officer, deponent, parties and counsel.  The exhibits will be compiled by the deposition officer for the purposes of exhibit stamping, and ultimate production of the final certified transcript.

Dated: December 7, 2020

Respectfully submitted,

*/s/ Nicole Bartz Metral*
Cheryl S. Chang (admitted *pro hac vice*)
Nicole Bartz Metral (admitted *pro hac vice*)
Jessica A. McElroy (admitted *pro hac vice*)

BLANK ROME LLP
2029 Century Park East, 6th Floor
Los Angeles, California 90067-2907
Telephone: 424.239.3400
Facsimile:  424.239.3434
Chang@blankrome.com
Nbmetral@blankrome.com
Jmcelroy@blankrome.com

Harris F. Powers III
Steven C. Cookston

Upshaw, Williams, Biggers & Beckham, LLP

3

309 Fulton Street
Post Office Drawer 8230
Greenwood, MS 38935-8230
Telephone No.: 662-455-1613
Fax No. 662-453-9245
hpowers@upshawwilliams.com
scookston@upshawwilliams.com

*Counsel for Plaintiff*

4

EXHIBIT A

1.     <u>Physical Presence Prohibited</u>.  The witness will be made available for deposition by video, with no attendees physically in the presence of the deponent. Witnesses may not use any communication devices other than those to facilitate the deposition during questioning and may not consult in any fashion with anyone other than with representing counsel during questioning.  Witnesses may not privately confer with counsel at all during questioning except as to questions of privilege.

2.     <u>Participant List</u>.  At least three calendar days prior to the noticed deposition date, each individual planning to participate in the deposition must notify the party noticing the deposition of his/her intent to participate and provide the following information to the noticing party: (a) name, (b) email address, (c) phone number.  The noticing party will share this information with the vendor arranging the deposition for the limited purpose of facilitating each participating party's access to the video web portal for the deposition.

3.     <u>Technology Requirements</u>.  All video depositions will be stenographically recorded by a court reporter with real-time feed capabilities. Each individual participating in a deposition conducted by video must have a webcam-equipped device (such as a desktop, laptop, or tablet), and a device with audio-capabilities or access to a telephone for calling into the deposition.  Other than this equipment, the witness shall not be permitted to have access to any other devices (such as a cellphone) while on the record.

Noticing counsel are not responsible for the quality or functionality of the video and audio stream for the witness, observers, or other participants.  Attendees agree to work in good faith to facilitate remote participation.

4.     <u>Identification of lndividuals in Attendance</u>.  Each witness, attorney, and other person attending the deposition shall be identified on the record at the commencement of the deposition.  Under no circumstances may a person attend the deposition remotely in any manner without identifying themselves on the record at the commencement of the deposition.

5.     <u>Conduct by Participants Appearing Remotely</u>.  Each individual participating in the deposition (including counsel for the deponent) must do so remotely and must have an active video stream and audio line for the duration of the deposition.  Each participant should attend from a quiet, private location.

136044.01923/124168690v.1

6.     <u>Deponent Communication During a Video Deposition</u>.  During the deposition, Deponent shall not communicate with anyone at all outside of the video/audio stream.  This includes, but is not limited to, instant messaging, text messaging, or any equivalent.  In the event any such communications occur, the parties agree that the communications are discoverable.

7.     <u>Disruptions</u>.  In the event a participant's video feed is interrupted or otherwise becomes hidden from view, the deposition will be suspended, and the parties will go back on the record only when the participant's video stream functionality has been restored.  Disruptions due to video streaming, phone line interruptions, or other technical problems shall not be counted against record time. If a party believes that the transmission and/or recording was disrupted in bad faith, including but not limited to for purposes of delay, it may request that an additional videographer record other participants and may seek further appropriate relief from the Court.

8.     <u>Court Reporter and Videographer</u>.  The parties will stipulate, in accordance with Federal Rule of Civil Procedure 30(b)(5), that the court reporter or videographer may participate in the deposition by remote means, and that the deposition will be deemed to have been conducted "before" that officer, even though the officer is not physically present with the deponent, so long as that officer is able to identify the deponent.

9.     <u>Official Record</u>.  The court reporter's transcript, and the videographer's recording (if any), shall constitute the official record of the deposition for all purposes.

10.     <u>Other Recording</u>.  No participant other than the court reporter and videographer (if any) may record or photograph any of the proceedings.  This shall include recording using any form of remote transmitting device, computer recording device, laptops, camera, and personal device, including smart phones, tablets, iPads, Androids, iPhones, Blackberries, or other PDAs.  Nothing in this provision prevents or limits the taking of notes by those identified on the record.

11.     <u>Use of Remote Depositions at Trial</u>.  Remote depositions conducted in accordance with this Protocol may be admitted at trial with the same effect as a deposition conducted inperson.

12.     <u>Instant Visual Display Technology</u>.  In the event the noticing party utilizes instant visual display technology such that the court reporter's writing of

6

the proceeding will be displayed in real-time, the witness shall not have access to the instant visual display.

13.     <u>Applicable Authority</u>.  Unless otherwise set forth herein, the Federal Rules of Civil Procedure, Federal Rules of Evidence, and other applicable authority shall govern as though the deposition was conducted in-person.

14.     <u>Duration</u>.  Nothing herein prevents a noticing party from conducting an in-person deposition once COVID-19 related preventative measures are lifted in the states where the parties and counsel reside.  If, however, a noticing party elects to conduct a deposition by remote means even after such measures are lifted, the terms of this Protocol shall continue to govern.

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the county of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is **BLANK ROME LLP**, 2029 Century Park East, 6th Floor, Los Angeles, California 90067.

On **December 7, 2020**, I served the foregoing document(s):

**PLAINTIFF PENNYMAC LOAN SERVICES, LLC'S AMENDED NOTICE OF DEPOSITION OF DEFENDANT SANDRA GOULETTE PURSUANT TO FED. R. CIV. P. 26 AND 30**

**on the interested parties in this action addressed and sent as follows:**

### SEE ATTACHED SERVICE LIST

☒ **BY ENVELOPE:** by placing ☐ the original ☒ a true copy thereof enclosed in sealed envelope(s) addressed as indicated and delivering such envelope(s):

☒ **BY CERTIFIED MAIL:** I caused such envelope(s) to be deposited in the mail at Los Angeles, California with postage thereon fully prepaid to the office or home of the addressee(s) as indicated.  I am "readily familiar" with this firm's practice of collection and processing documents for mailing.  It is deposited with the U.S. Postal Service on that same day, with postage fully prepaid, in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

☒ **BY FEDEX:** I caused such envelope(s) to be deposited in a box or other facility regularly maintained by FedEx, an express service carrier, or delivered to a courier or driver authorized by said express service carrier to receive documents in an envelope designated by the said express service carrier, addressed as indicated, with delivery fees paid or provided for, to be transmitted by FedEx.

☒ **FEDERAL:** I declare that I am employed in the office of a member of the bar of this court at whose direction service was made.

Executed on **December 7, 2020** at Los Angeles, California.

*/s/Charman S. Bee*
Charman S. Bee

136044.01923/124168690v.1

## SERVICE LIST

*Pennymac Loan Services, LLC v. Sitcomm Arbitration Association, et al.*;
Case No. 2:19-cv-00193-KS-MTP

### VIA CERTIFIED MAIL & EMAIL:

Ronnie Kahapea                              Defendant
P.O. Box 875
Volcano, HI 96785

Brett "Eeon" Jones                          Defendant
c/o California Institution for Men Post
Box 3100
Chino, CA 91708

### VIA FEDEX & EMAIL:

Sandra Goulette                             Defendant
3007 Crescent Hill Drive
Laurel, MS 39440
Email: sandy@saalimited.com

### VIA FEDEX

Mark Johnson                                Defendant
451 May Lane
Louisa, VA 23093

Kirk Gibbs                                  Defendant
4155 Lawrenceville Rd.
PMB 8119
Lilburn, GA 30047

Kirk Gibbs                                  Defendant
525 Arlington Circle NW
Lenoir, NC 28645

136044.01923/124168690v.1

Mark Moffett                    Defendant
345 Coon Jeffcoat Road
Soso, MS 39480

10

12/14/2020                                  RE: Depositions - andreasencsr@gmail.com

## Subject: RE: Depositions

 **Chang, Cheryl S.** <Chang@blankrome.com>                    Tue, Dec 8, 3:05 PM (6 days a
to sandy@saalimited.com, Metral, Nicole, Harris Powers, McElroy, Jessica

**You are viewing an attached message.** Gmail can't verify the
authenticity of attached messages.

Ms. Goulette,

It is now 3pm PT/5pm CT, and it has been nearly an hour and a half since we took a break. We have not been abl
reach you.  I've called you twice and left two voicemails and Ms. Metral has called and left you a voicemail as well. Sin
it appears you are not rejoining the deposition today, we will suspend the deposition for now and put on the record
that you did not return.  And we will coordinate with you to continue the deposition to another date.  Please advise
soon as possible when you are available this month to start your deposition again.

Thanks,
Cheryl

Cheryl S. Chang | Blank Rome LLP
2029 Century Park East | 6th Floor | Los Angeles, CA 90067
O: 424.239.3472 | F: 424.239.3478 | chang@blankrome.com
-----Original Message-----
From: Chang, Cheryl S.
Sent: Tuesday, December 8, 2020 2:47 PM
To: 'sandy@saalimited.com' <sandy@saalimited.com>
Cc: Metral, Nicole <NBMetral@BlankRome.com>; 'Harris Powers' <hpowers@upshawwilliams.com>; McElroy,
Jessica <JMcElroy@BlankRome.com>
Subject: RE: Depositions
Importance: High

Ms. Goulette,

It's been over an hour since we went on break.  Can you let us know if you are ok and are able to come back to th
Zoom deposition? We were scheduled to reconvene at 2pm PT/4pm CT.

I've left two voicemails on your cell but have not been able to reach you.

Thanks,
Cheryl

Cheryl S. Chang | Blank Rome LLP
2029 Century Park East | 6th Floor | Los Angeles, CA 90067
O: 424.239.3472 | F: 424.239.3478 | chang@blankrome.com  -----Original Message-----
From: Chang, Cheryl S.
Sent: Tuesday, December 8, 2020 2:18 PM
To: 'sandy@saalimited.com' <sandy@saalimited.com>
Cc: Metral, Nicole <NBMetral@BlankRome.com>; Harris Powers <hpowers@upshawwilliams.com>; McElroy,

**EXHIBIT**

**1**

I've left two voicemails on your cell but have not been able to reach you.

Thanks,
Cheryl

Cheryl S. Chang | Blank Rome LLP
2029 Century Park East | 6th Floor | Los Angeles, CA 90067
O: 424.239.3472 | F: 424.239.3478 | chang@blankrome.com -----Original Message-----
From: Chang, Cheryl S.
Sent: Tuesday, December 8, 2020 2:18 PM
To: 'sandy@saalimited.com' <sandy@saalimited.com>
Cc: Metral, Nicole <NBMetral@BlankRome.com>; Harris Powers <hpowers@upshawwilliams.com>; McElroy,

Jessica <JMcElroy@BlankRome.com>
Subject: RE: Depositions

Ms. Goulette,

Mr. Powers, the court reporter, the videographer and I are all ready and waiting for you to begin the deposition aga
Please join us on Zoom as soon as you can.

Thank you,
Cheryl

Cheryl S. Chang | Blank Rome LLP
2029 Century Park East | 6th Floor | Los Angeles, CA 90067
O: 424.239.3472 | F: 424.239.3478 | chang@blankrome.com

-----Original Message-----
From: sandy@saalimited.com <sandy@saalimited.com>
Sent: Tuesday, December 8, 2020 8:37 AM
To: Metral, Nicole <NBMetral@BlankRome.com>
Subject: Re: Depositions


Dear Ms Metral:
I will be in attendance today for the deposition and I agree to accept electronic service to amend the new time and
date of the proceeding.  I will go to the veritext.com site now and log in to make the arrangements.

  In regard to your second questions, I do not have an email address for Mr. Moffett outside of his SAA email and h
has not utilized that for the past year to the best of my knowledge.  Therefore, I do apologize but I do not speak to
him and I do not  have any access as to how to reach him via email.  Looking in my cell phone, I do have a numbe
for him, however; I am not aware if it is still functional as I have not made any attempts to contact him.  I will be m
than happy to give that you you if you think that it may  help.  The number for Mr. Moffett is 601-580-1733

A do apologize that I am not able to supply you with more information, however; I do home this this will help you.
Talk Soon
Sandra Goulette