# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

MARK C. JOHNSON,
    *Pro se* Petitioner,

v.                                     Civil No. 3:19cv837 (DJN)

PENNYMAC LOAN SERVICES, LLC,
    Respondent.

## MEMORANDUM OPINION

This matter comes before the Court on Petitioner Mark C. Johnson's ("Petitioner") Petition to Confirm Arbitration Award ("Motion to Confirm" (ECF No. 1)), Respondent PennyMac Loan Services, LLC's ("Respondent") Cross Motion to Vacate Fraudulent Arbitration Award ("Motion to Vacate" (ECF No. 6)) and Motion for Sanctions Under Fed. R. Civ. P. 11 ("Motion for Sanctions" (ECF Nos. 10, 40)). On August 31, 2020, the Court held an evidentiary hearing on these several motions. For the reasons stated herein and from the bench during the evidentiary hearing, Petitioner's Motion to Confirm will be DENIED and Respondent's Motion to Vacate and Motion for Sanctions will be GRANTED.

### I.    BACKGROUND

This dispute arises out of a sham arbitration award issued by Sitcomm Arbitration Association ("SAA") that Petitioner has asked this Court to confirm. Before that, however, Respondent began servicing Petitioner's mortgage on June 30, 2015. (ECF No. 7-1 ¶ 5.) Nowhere in the mortgage documents did the parties agree to arbitrate any disputes with SAA or any other arbitrator. No other agreement provides for arbitration.

On November 12, 2019, Petitioner filed his Motion to Confirm along with a copy of the Final Arbitration Award (the "Award" (ECF No. 1-1)). Petitioner did not file any contract between the parties along with his Motion to Confirm — only the Award. The Award claimed that a hearing had taken place on October 21, 2019, in Lilburn, Georgia with arbitrator Kirk Gibbs ("Gibbs"). (Award at 1, 4.) The Award purported to derive its validity from a contractual agreement that Petitioner mailed to Respondent on April 1, 2015. (Award at 5.) Gibbs awarded Petitioner $2.25 million against Respondent. (Award at 6.) On January 7, 2020, Respondent moved to vacate the Award, arguing that it lacked any basis in a contract between the parties and instead "is a complete fabrication based on a fraudulent scheme by [Petitioner] to eliminate his debt held by PennyMac." (Mem. in Supp. of Mot. to Vacate ("Resp.'s Br.") (ECF No. 7) at 2.)

On November 25, 2019, after receiving notice of this lawsuit, counsel for Respondent sent a letter to Petitioner, advising him that the Motion to Confirm had no factual or legal basis. (the "Rule 11 Letter" (ECF No. 11-4 at 5-6).) The Rule 11 Letter detailed the deficiencies in the Award and demanded that Petitioner dismiss his suit. In response, Petitioner refused to dismiss the Petition, instead claiming to be Respondent's creditor. (ECF No. 11-4 at 25-27.) On January 7, 2020, Respondent sent a copy of its proposed Motion for Sanctions, advising him that it would file the Motion if he did not dismiss the Petition. (ECF No. 11-4 at 28.) Petitioner did not dismiss.

On January 9, 2020, the Court scheduled an evidentiary hearing and ordered Petitioner to file certain evidentiary support for his Motion to Confirm, including the contract that gave rise to the obligation to arbitrate.[1] (ECF No. 8.) Additionally, the Court ordered Gibbs to appear on behalf of himself and SAA and to file certain documents, including the contract that he

---

[1] The Court originally scheduled the evidentiary hearing for April 2, 2020. Because of COVID-19, the Court had to continue the hearing, ultimately holding it on August 31, 2020.

2

referenced in the Award and an itemization of the documents that he relied on in awarding Petitioner $2.25 million. Neither filed any documents with the Court.

On January 29, 2020, Respondent moved the Court to sanction Petitioner under Rule 11 of the Federal Rules of Civil Procedure. Respondent argues that the lawsuit has no basis in law or fact and constitutes "a bogus scheme to defraud the Court and obtain a quick — and illegitimate — judgment against PennyMac to offset his mortgage obligations." (ECF No. 11 at 2.) Petitioner did not file an opposition to the Motion.

On April 24, 2020, the Court received a letter from Petitioner stating, "I come before the Court, this gracious body to inform all parties that I was beset with the Coronavirus, and it has taken great effort to combat this disease." (ECF No. 29 at 3.) As a result, because of the scheduled evidentiary hearing and the possibility that Petitioner had recently visited the Courthouse, the Court ordered Petitioner to submit documentation of his diagnosis and detail any recent visits to the Courthouse.[2] (ECF No. 30.) In response, Petitioner stated in a letter to the Court that "I don't have the Coronavirus." (ECF No. 32.) Given this patent misrepresentation, on May 14, 2020, the Court ordered Petitioner to show cause why his false statements should not subject him to sanctions under Rule 11. (ECF No. 33.) The Court further ordered that it would hear argument and evidence regarding possible sanctions during the evidentiary hearing. The Court explicitly stated that it would hear "any evidence relating to Petitioner's ability to pay a monetary sanction imposed by the Court." (ECF No. 33.)

---

[2]      Importantly, on March 16, 2020 (more than a month before Petitioner sent his letter to the Court), Chief Judge Mark S. Davis issued General Order No. 2020-03, prohibiting anyone diagnosed with COVID-19 from entering the Courthouse. Petitioner had repeatedly entered the Courthouse to file his pleadings. Consequently, his filing stating that he had contracted COVID-19 caused great alarm in the Courthouse.

3

The Court held the evidentiary hearing on August 31, 2020. Petitioner put on no evidence regarding his Motion to Confirm. He did not produce a contract giving rise to a duty to arbitrate. Petitioner put on no evidence regarding his ability to pay any monetary sanction. Petitioner stated that he had never met Gibbs and that an arbitration hearing had not occurred.

## II. DISCUSSION

The Court will first address whether to confirm the Award, as Petitioner requests. The Court will then address whether to vacate the Award, as Respondent requests. Finally, the Court will address Respondent's request that the Court impose sanctions on Petitioner.

### A. The Court will not confirm the Award.

Under the Federal Arbitration Act ("FAA"), a court may confirm an arbitration award "[i]f the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration . . . ." 9 U.S.C. § 9. To obtain confirmation of an award, the statute requires the moving party to file (1) the agreement, (2) the award, and (3) each notice, affidavit, or other paper used to confirm, modify or correct the award. 9 U.S.C. § 13. This allows the Court to determine whether a valid arbitration agreement and award exist upon which it can base its judgment. *See United Cmty. Bank v. Arruarana*, 2011 WL 2748722, at *2 (W.D.N.C. July 12, 2012) ("Without the filings required by § 13, the Court is unable to conclude from the record that a valid arbitration agreement and award exist and therefore is unable to determine whether the Petitioner is entitled to judgment as a matter of law."). Indeed, the FAA requires an agreement to arbitrate before the Court will compel arbitration. *See* 9 U.S.C. § 2 (arbitration agreements enforceable "save upon such grounds exist at law or equity for the revocation of any contract"). Whether a party agreed to arbitrate "is an issue for judicial

4

determination to be decided as a matter of contract." *Johnson v. Circuit City Stores, Inc.*, 148 F.3d 373, 377 (4th Cir. 1998).

Here, Petitioner did not file any agreement with his Motion to Confirm, in contravention of Section 13's requirement. In response to the Court ordering Petitioner to file, among other documents, "[d]ocuments demonstrating that Respondent agreed to arbitrate with SAA" (ECF No. 8), Petitioner filed nothing. During the evidentiary hearing, Petitioner did not produce a contract or argue that one existed, despite persistent questioning from the Court regarding the existence of a contract. Because Petitioner has not presented a valid agreement whereby the parties agreed to arbitrate a dispute, the Court will not confirm the Award under the FAA. Petitioner's Motion to Confirm will be denied.

### B. The Court will vacate the Award.

In addition to denying Petitioner's Motion to Confirm, Respondent asks the Court to vacate the Award. (ECF No. 6.) The FAA provides that a district court may vacate an arbitration award:

1. where the award was procured by corruption, fraud, or undue means;
2. where there was evident partiality or corruption in the arbitrators, or either of them;
3. where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or any other misbehavior by which the rights of any party have been prejudiced; or
4. where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). Further, courts recognize common law grounds for vacating awards, including "those circumstances where an award fails to draw its essence from the contract, or the award evidences a manifest disregard of the law." *Patten v. Signator Ins. Agency, Inc.*, 441 F.3d 230, 234 (4th Cir. 2006). However, the "process and extent of federal judicial review of an arbitration

5

award are substantially circumscribed." *Id.* Additionally, the Court undertakes its review of the Award with an understanding of the strong "national policy favoring" arbitration. *Hall Street Assocs. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008).

### i. *The Court Will Vacate the Award Pursuant to the FAA.*

Respondent argues that the Court should vacate the Award, because Petitioner procured it by fraud and Gibbs demonstrated a blatant disregard for the law in the Award. (Resp.'s Br. at 8-13.) The Court agrees. Petitioner did not have a valid basis to submit a dispute that he may have had with PennyMac to arbitration with SAA. Moreover, the Award does not appear to have any grounding in fact or law, similar to other SAA awards filed in this Court and others. For this reason, the Court has previously expressed great skepticism about the validity of SAA as an arbitration entity.[3] *Meekins v. Lakeview Loan Servicing*, 2019 WL 7340300, at *3 (E.D. Va. Dec. 30, 2019). This case has deepened that skepticism. Indeed, courts around the country have expressed doubts regarding SAA's validity. *See Kalmowitz v. Fed. Home Mortg. Corp.*, 2019 WL 6249298, at *2 (E.D. Tex. Oct. 22, 2019) ("The purported arbitration agreement and award

---

[3] SAA's "About Us" page on its website provides:

> We are a small group of individuals who have come together with our unique skills and history to help those who seek to resolve their contractual disputes and other matters in a peaceful setting.
>
> Our goal in our aim is to help individuals reduce the burden on governments, their courts, and their other administrative agencies. One way we do this is by helping the consumer with a preformatted generalize [*sic*] contract that includes all of the elements necessary for enforcement.
>
> As was brought out by the state of New Hampshire, the corporate state officials have by their silence deceived the American people, we are attempting to help balance or right the wrong/ship.

*See* The Sitcomm Arbitration Association SAA Home Page, https://saalimited.com/More%20about%20us.html (last visited September 4, 2020).

6

do not appear to have any meritorious basis in fact or law, and Sitcomm does not appear to be a valid entity of arbitration."); *U.S. Bank National Ass'n v. Nichols*, 2019 WL 4276995, at *2 (N.D. Okla. Sep. 10, 2019) (noting that the SAA award "is a bizarre jumble of inconsistent, nonsensical word salad" full of "legally bizarre determination[s] contrary to hornbook contract law").

The Award contains no specific factual findings or coherent legal conclusions. The contract that it references as giving it the authority to enter the Award does not exist. It refers to a contract dated June 6, 2015, but that would predate the parties' relationship. (Award at 3.) It further references an April 2015 contractual agreement that Respondent agreed to through "tacit acquiescence," because it did not respond to the contract. (Award at 5.) Even if Petitioner did mail such a contract — he did not, according to the evidence — Respondent's failure to respond could not form a contract. *See Meekins*, 2019 WL 7340300, at *2 (explaining how the same "tacit acquiescence" theory fails "under basic hornbook contract law"). Finally, the Award refers to an arbitration hearing that purportedly occurred on October 21, 2019. (Award at 4.) But, Petitioner admitted that no such hearing occurred. The Award has no legal validity and could only have been the product of undue means. Therefore, the Court will vacate the Award pursuant to 9 U.S.C. § 10(a).

### ii. *The Court Will Vacate the Award Pursuant to the Common Law.*

In addition to satisfying the statutory grounds for vacatur, the Court finds that common law grounds exist to vacate the Award. Courts may vacate an award when the award fails to draw its essence from the contract or the award evidences a manifest disregard of the law. *Patten v. Signator Ins. Agency, Inc.*, 441 F.3d 230, 234 (4th Cir. 2006). An arbitration award "fails to draw its essence from the agreement only when the result is not rationally inferable from

7

the contract." *Id.* at 235. Similarly, "a manifest disregard of the law is established where the arbitrator understands and correctly states the law, but proceeds to disregard the same." *Id.* The Court finds both defects present in the Award.

First, the Award fails to "draw its essence from the contract." Indeed, no contract exists from which it can draw its essence. Second, and relatedly, the arbitrator demonstrated a "manifest disregard of the law" in reaching the award. The arbitrator made patently false claims that the parties had agreed to contract and disregarded the law in stating that "tacit acquiescence" could form a contract. The arbitrators finding that it had the authority to enter the Award had no basis in the law.

Accordingly, the Court finds that the Award suffers from both of the common law defects that warrant vacatur of an arbitration award. Therefore, the Court hereby vacates the Award.

### C. The Court will sanction Petitioner pursuant to Rule 11.

Respondent asks the Court to sanction Petition in the amount of $89,294.88 to compensate it for the attorneys' fees and costs that it has incurred in defending this suit. Further, the Court ordered Petitioner to show cause as to why his misrepresentations regarding COVID-19 did not subject him to Rule 11 sanctions. Petitioner did not provide a comprehensible response to either.

Fed. R. Civ. P. 11 sets forth the requirements imposed on individuals filing documents in a federal court, the available sanctions for failing to meet those requirements and the procedural mechanisms for imposing those sanctions. By its terms, Rule 11 applies to both attorneys and *pro se* litigants. By presenting a motion or pleading to the Court, an attorney or unrepresented party certifies that, after a reasonable investigation under the circumstances:

1. it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

8

2. the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

3. the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

4. the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b)(2). Rule 11(c) allows a court, after notice and reasonable opportunity to respond, to impose sanctions on any party that has violated 11(b). *Id.* at (c)(1). A court may impose a sanction of

> nonmonetary directives; an order to pay a penalty into court; or if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorneys' fees and other expenses directly resulting from the violation.

*Id.* at (c)(4). Accordingly, the Court will analyze two questions: (1) whether sanctionable conduct has occurred and, if so, (2) the appropriate sanction to issue.

### a. Petitioner violated Rule 11.

The Fourth Circuit has stated that courts should use an objective standard to evaluate documents potentially violating Rule 11(b). *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 153 (4th Cir. 2002). An asserted position violates Rule 11(b) if it has "absolutely no chance of success under the existing precedent." *Id.* The rule does not serve to stifle creativity; rather, it serves to prevent the filing of frivolous claims with no legal or factual support. *Id.* Where the law could colorably support a claim, a Rule 11(b) violation may occur if there exists no factual support for the asserted claims. *Abbott v. Suntrust Mortg., Inc.*, 2009 WL 971267, at *4 (E.D. Va. Apr. 8, 2009) (citing *Edmonds v. Gilmore*, 988 F. Supp. 948, 956-57 (E.D. Va. 1997)). "Litigants proceeding *pro se* are liable for sanctions under Fed. R. Civ. P. 11(b) for filing frivolous pleadings when those pleadings lack any factual support." *Id.* In evaluating a filing

9

using an objective standard, "courts should avoid hindsight and resolve all doubts in favor of the signor." *Edmonds*, 988 F. Supp. at 956-57.

Under this objective standard, the Court finds Petitioner's Motion to Confirm frivolous. As previously determined, the Motion to Confirm clearly lacks merit. Petitioner had no basis to argue that Respondent had agreed to arbitrate with SAA. Despite this, Petitioner claims that Respondent owes him $2.25 million. Respondent afforded Petitioner the opportunity to withdraw his suit by sending him the Rule 11 Letter. Yet, he pressed on with the suit. Respondent afforded Petitioner another opportunity to withdraw his suit by sending him the Motion for Sanctions before filing. Yet, he pressed on with the suit. The Court ordered Petitioner to produce any evidence that Respondent had agreed to arbitrate with SAA. Yet, Petitioner did not produce a shred of evidence. In sum, any objectively reasonable investigation of the law and facts surrounding the case would have revealed that Petitioner's claim had "absolutely no chance of success under the existing precedent." *Brubaker v. City of Richmond*, 943 F.2d 1363, 1373 (4th Cir. 1991) (noting the standard for a Rule 11 violation). Therefore, Petitioner's Motion to Confirm, as well as his admittedly false claim of having COVID-19, violate Rule 11(b)(2).[4]

Of course, *pro se* litigants deserve leniency in the construction of their pleadings. *See Edmonds*, 988 F. Supp. at 957 (*pro se* status should be considered in deciding whether to issue sanctions). However, no amount of permissible leniency can excuse the baseless Motion to Confirm or false COVID-19 claim filed by Petitioner. Moreover, Petitioner failed to withdraw his frivolous Motion to Confirm even after Respondent twice warned him that his suit would subject him to sanctions.

---

[4]   Petitioner's false assertion that he had COVID-19 demonstrates his bad faith and malicious intent in the litigation of this case.

10

Additionally, the Court finds that Petitioner filed the instant lawsuit to harass PennyMac. Correspondence that Petitioner sent to Respondent demonstrates deep animosity towards PennyMac, using insults and language that the Court will not dignify by printing here. (ECF No. 28.) These correspondences, along with the false COVID-19 claim, exhibit an improper purpose behind Petitioner's lawsuit. Accordingly, Petitioner has violated Rule 11(b)(1) as well.

      **b.**    **The Court Will Sanction Petitioner in the Amount of $19,000.00.**

With Petitioner clearly having violated Rule 11, the Court must next determine the appropriate sanction. In determining the proper sanction, the Court keeps in mind that "the primary purpose of sanctions is to deter attorney and litigant misconduct, not to compensate the opposing party for its costs in defending a frivolous suit." *In re Kunstler*, 914 F.2d 505, 524 (4th Cir. 1990). To that end, "a district court is required to choose the least severe sanction to accomplish the purpose of Rule 11." *Id.* at 523. In deciding upon the appropriateness of a monetary sanction, the Court should consider "(1) the reasonableness of the opposing party's attorneys' fees; (2) the minimum to deter; (3) the ability to pay; and (4) factors related to the severity of the Rule 11 violation." *Id.* The Court will examine each factor in turn.

Here, the Court finds Respondent's attorneys' fees reasonable. It has submitted detailed billing records to support its request. The Court has reviewed the records supporting the request and does not find the request unreasonable. Respondent has even refrained from requesting its fees and costs associated with preparing for and attending the evidentiary hearing, further supporting the reasonableness of its request. Moreover, despite the Court stating that it would hear evidence and argument as to the reasonableness of Respondent's attorneys' fees (ECF No. 27), Petitioner raised no objection to the reasonableness of Respondent's fees. Although the Court finds Respondent's fees reasonable, the other factors counsel against awarding the full

amount of fees. *See In re Kunstler*, 914 F.2d at 523 ("Thus, a monetary sanction should never be based solely on the amount of attorney's fees claimed by the injured party, even where a court determines that the amount of the sanction should equal the fees claimed by the injured party.").

With respect to the minimum to deter factor, Rule 11 states that the sanction "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). The Fourth Circuit has instructed district courts to impose the *minimum* sanction to deter such conduct, such that "the limit of any sanction award should be that amount reasonably necessary to deter the wrongdoer." *In re Kunstler*, 914 F.2d at 524. As discussed above, Petitioner continued to press this frivolous litigation after Respondent twice warned him that his conduct would subject him to sanctions, thereby demonstrating that he is not easily deterred. Not only did he refuse to drop the litigation, but he made false claims to the Court that had the potential to cause a major disruption in the operation of the Court. Petitioner flouted the Rules of Civil Procedure and disrespected the Court in the name of harassing Respondent, thereby raising the minimum sanction necessary to deter him to something substantially greater than a *de minimis* sanction. The Court believes that a $19,000.00 sanction will sufficiently deter Petitioner and those similarly situated to him from filing similar frivolous motions to confirm based on sham arbitration awards. A lesser sanction may not serve to deter these types of filings, especially for would-be filers weighing the sanction against the possibility of obtaining a judgment in excess of two million dollars.

Third, the Court will consider Petitioner's ability to pay. The Court must "refrain from imposing a monetary award so great that it will bankrupt the offending parties . . . ." *In re Kunstler*, 914 F.2d at 524. However, courts treat the inability to pay an otherwise appropriate sanction as "reasonably akin to an affirmative defense," and "the burden is upon the part[y]

12

being sanctioned to come forward with evidence of [its] financial status." *Id.* Before the evidentiary hearing, the Court informed Petitioner that it would hear evidence on his ability to pay any sanction. During the evidentiary hearing, the Court repeatedly pressed Petitioner on whether he would put on any evidence or argument regarding his ability to pay. Petitioner persistently refused. Petitioner simply stated that he received a pension but did not say how much. In response to the Court's questioning as to the amount of the pension, whether he received "$20,000, $50,000, $100,000," Petitioner claimed it was "more than that," although it was unclear which number his pension exceeded. Given Petitioner's refusal to raise the defense of inability to pay, the Court finds that a $19,000 sanction should not exceed Petitioner's ability to pay.

Finally, the Court will consider other factors related to the severity of the Rule 11 violation. The Court considers Petitioner's violations severe. Petitioner's violation of Rule 11 manifested itself as an attempt to use the Court to order Respondents to pay him over two million dollars — with no basis for such a judgment. The Court does not take lightly such an abuse of the system and will protect its jurisdiction from such abuse. *See Morning Star Baptist Church v. James City Cty. Police*, 480 F. Supp. 2d 853, 860 (E.D. Va. 2007) (factoring in "the Court's Article III duty to protect its jurisdiction from abuse" when fashioning an appropriate remedy). Further, Petitioner falsely claimed that he had COVID-19, a misrepresentation that could have had no purpose other than to harass and intimidate Respondent and the Court. Given the severity of the COVID-19 global pandemic and that fear that it instilled, the Court cannot take his misrepresentation lightly.

The Court fashions its sanction bearing in mind that Petitioner did not act alone in this fraudulent scheme. Petitioner paid SAA over $600 for an Arbitration Award that stands no

13

chance of confirmation by any competent court. To that end, it has referred Gibbs and SAA to the United States Attorney's Office.[5] However, this does not absolve Petitioner of his obligation under Rule 11 to conduct a reasonable investigation of the facts and law before filing his Motion to Confirm. And, it provides no excuse for his patent misrepresentations regarding COVID-19. By continuing to press this litigation after the Rule 11 Letter explained its frivolity, and filing misrepresentations with the Court, Petitioner surrendered any benefit of the doubt that his status in relation to SAA may have afforded him.

On balance, an assessment of a modest amount of attorneys' fees under Rule 11 constitutes an appropriate sanction to help deter the filing of future frivolous pleadings. Considering all of the applicable factors, the Court finds it appropriate to impose on Petitioner a sanction requiring him to pay Respondent $19,000 as part of the fees and expense incurred as a result of Petitioner's violation of Rule 11.

### III.   CONCLUSION

For the foregoing reasons, and those stated from the bench during the evidentiary hearing, the Court will DENY Petitioner's Motion to Confirm (ECF No. 1), GRANT Respondent's Motion to Vacate (ECF No. 6), and GRANT Respondent's Motion for Sanctions (ECF Nos. 10, 40). Petitioner will be required to pay a monetary sanction in the total amount of $19,000 to Respondent.

An appropriate Order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically, notify all counsel of record, and send a copy of this Memorandum Opinion to *pro se* Petitioner at his address of record.

---

[5]   The Court has also initiated contempt proceedings against both for failing to both appear at the evidentiary hearing and to produce documents as ordered.

14

## NOTICE TO PETITIONER

To the extent that Petitioner believes that he has grounds to appeal this decision, Petitioner must file written notice of appeal with the Clerk of the Court within thirty (30) days of the entry of the Order. Failure to file a timely appeal may result in the loss of the right to appeal.

_____/s/_____
David J. Novak
United States District Judge

Richmond, Virginia
Dated: September 8, 2020

# CIVIL NON-JURY TRIAL OR MOTION HEARING:
## MINUTE SHEET

DATE: 8-31-2020

| United States District Court | Eastern District of Virginia - Richmond Division |
|---|---|
| CASE TITLE:<br>MARK C. JOHNSON<br>v.<br>PENNY MAC LOAN SERVICES, LLC | Case No. 3:19CV837 (DJN)<br>Judge: NOVAK<br>Court Reporter: TRACY Stroh, OCR |

MATTER COMES ON FOR: ( ) BENCH TRIAL ( ) MOTION HEARING ( ✓) OTHER: ✓

APPEARANCES: Parties by (✓) with ( ) counsel    Pro Se (✓)

MOTIONS BEFORE TRIAL: EVIDENTIARY HEARING

## TRIAL PROCEEDINGS:

WITNESSES EXCLUDED ON MOTION OF: PLAINTIFF(S) ( )   DEFENDANT(S) ( )   Court ( )

OPENING STATEMENTS MADE ( )   OPENING WAIVED ( )

PLAINTIFF(S) ADDUCED EVIDENCE ( ) RESTED ( ) MOTION ( ) _____

DEFENDANT(S) ADDUCED EVIDENCE ( )   RESTED ( ) MOTION ( ) _____

REBUTTAL EVIDENCE ADDUCED ( )   SUR-REBUTTAL EVIDENCE ADDUCED ( )

EVIDENCE CONCLUDED ( )   ARGUMENTS OF COUNSEL HEARD ( )

COURT FOUND IN FAVOR OF PLAINTIFF(S) ( )   MONETARY AWARD $_____

COURT FOUND IN FAVOR OF DEFENDANT(S) ( ) _____

CLERK TO ENTER JUDGMENT ON DECISION ( )   TRIAL EXHIBITS ( )

PRO-SE   MARK C. JOHNSON
~~Counsel for~~ Plaintiff(s):

ADRIEN C. PICKARD AND Michael P. TRAINOR
Counsel for Defendants:

SET: 2:00   Began: 2:00   ENDED: 2:50    TIME IN COURT: 50
RECESSES:

Motion to confirm Arbitration DENIED; Cross-motion to VACATE GRANTED AS WELL AS motion for Sanctions. Show Cause Order to enter as to Sitcomm Arbitration Association AND Kirk Gibbs — SEE ORDER