**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**Eastern Division**

PENNYMAC LOAN SERVICES, LLC,

Plaintiff,

-vs-

INNOVATED HOLDINGS, INC. dba SITCOMM
ARBITRATION ASSOCIATION; MARK
MOFFETT; SANDRA GOULETTE; RONNIE
KAHAPEA; MARK JOHNSON, KIRK GIBBS;
BRETT "EEON" JONES aka EEON aka BRETT
JONES aka BRETT TORIANO
JONESTHEOPHILIOUS aka BRETT RANDOFF
TORIANO KEEFFE HENRY KANA-SHAPHEL
HITHRAPPES JONES-THEOPHILUS fka KEEFE
BRANCH; and RANCE MAGEE,

Defendants.

CIVIL ACTION
**Case No: 2:19-cv-00193-TBM- MTP**

**PLAINTIFF PENNYMAC LOAN
SERVICES, LLC'S MEMORANDUM
OF LAW IN SUPPORT OF ITS
MOTION FOR DEFAULT
JUDGMENT, OR IN THE
ALTERNATIVE, SUMMARY
JUDGMENT ON PLAINTIFF'S
THIRD, FOURTH, FIFTH, SIXTH,
AND SEVENTH CAUSES OF
ACTION**

**PLAINTIFF PENNYMAC LOAN SERVICES, LLC'S MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION FOR DEFAULT JUDGMENT, OR IN THE ALTERNATIVE,
SUMMARY JUDGMENT ON PLAINTIFF'S THIRD, FOURTH, FIFTH, SIXTH, AND
SEVENTH CAUSES OF ACTION[1]**

---

[1]  PennyMac files this Motion in accordance with the Court's April 6, 2021 text order denying the
Motion without prejudice and allowing PennyMac to re-file the Motion and supporting documents.

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ......................................................................................... 1

II.    ITEMIZATION OF UNDISPUTED FACTS ............................................... 2

    A.    The Parties .......................................................................................... 2
    B.    The Sitcomm Scheme ......................................................................... 5
    C.    The Kahapea Arbitration Award ......................................................... 6
    D.    The Johnson Arbitration Award ........................................................... 9

III.   PROCEDURAL HISTORY .......................................................................... 11

IV.   ARGUMENT .............................................................................................. 13

    A.    Legal Standard ................................................................................... 13
    B.    PennyMac Has Taken the Defaults of Defendants ............................... 14
    C.    PennyMac Should Be Granted Judgment on its Third Cause of Action for Libel and Defamation ........................................................... 15
    D.    PennyMac Should Be Granted Judgment on its Fourth Cause of Action for Tortious Interference with Prospective Economic Advantage ........................... 18
    E.    PennyMac Should Be Granted Judgment on its Fifth Cause of Action for Civil Conspiracy ........................................................................... 20
    F.    PennyMac Should Be Granted Judgment on its Sixth Cause for Federal Civil RICO ................................................................................ 22
    G.    PennyMac Should Be Granted Judgment on its Seventh Cause of Action for Conspiracy to Violate Federal Civil RICO ....................................... 24

V.    CONCLUSION .......................................................................................... 25

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ard v. Transcon. Gas Pipe Line Corp.*,
138 F.3d 596 (5th Cir. 1998).....................................................................18

*Beeding v. Hinds Cty., Miss.*,
No. 3:10CV713-DPJ-FKB, 2013 WL 6061338 (S.D. Miss. Nov.
18, 2013)..................................................................................................17

*Biglane v. Under The Hill Corp.*,
949 So. 2d 9 (Miss. 2007)..........................................................................19

*Brown v. Ally Fin. Inc.*,
No. 2:18-CV-70-KS-MTP, 2019 WL 6718672 (S.D. Miss. Dec.
10, 2019)..................................................................................................18

*Brown v. Ally Financial Incorporated*,
2:18cv70 (S.D. Miss.) . (Ex. 20 to Motion.) ...................................................4

*Chaney v. Dreyfus Serv. Corp.*,
595 F.3d 219 (5th Cir. 2010).....................................................................24

*Eichenseer v. Reserve Life Ins. Co.*,
934 F.2d 1377 (5th Cir. 1991)...................................................................18

*F.D.I.C. v. Barton*,
233 F.3d 859 (5th Cir. 2000).....................................................................21

*Franklin v. Thompson*,
722 So.2d 688 (Miss 1998)........................................................................16

*Gallagher Bassett Servs. v. Jeffcoat*,
887 So.2d 777 (Miss.2004)........................................................................20

*Gov't Employees Ins. Co. v. Parkway Med. Care, P.C.*,
No. 15CIV3670FBVMS, 2017 WL 1133282 (E.D.N.Y. Feb. 21,
2017)........................................................................................................24

ii

*Handshoe v. Torstar Corp.*,
No. 1:15-CV-113-KS-RHW, 2015 WL 8056364 (S.D. Miss. Dec.
4, 2015) ....................................................................................16

*HansaWorld USA, Inc. v. Carpenter*,
No. 2:15-CV-73-KS-JCG, 2015 WL 5794437 (S.D. Miss. Oct. 1,
2015), aff'd, 662 F. App'x 259 (5th Cir. 2016) ..............................22

*Helena Chem. Co. v. Goodman*,
No. 5:10-CV-121 DCB JMR, 2011 WL 1532200 (S.D. Miss. Apr.
21, 2011) ..................................................................................13

*Henderson v. Jones Cty. Sch. Dist.*,
No. 2:18-CV-188-KS-MTP, 2020 WL 5222376 (S.D. Miss. Sept.
1, 2020) ......................................................................................3

*Herrera v. Pearson*,
No. 5:12CV123-DPJ-FKB, 2013 WL 2637723 (S.D. Miss. June
12, 2013) ..................................................................................14

*Howell v. Operations Mgmt. Int'l, Inc.*,
161 F. Supp. 2d 713 (N.D. Miss. 2001), aff'd, 77 F. App'x 248
(5th Cir. 2003) ..........................................................................16

*In re Katrina Canal Breaches*,
533 F. Supp. 2d 615 (E.D. La. 2008) ...........................................3

*Johnson v. PennyMac Loan Services, LLC*,
Case No. 3:19-cv-00837-DJN ...............................................11, 17

*Kahapea v. PennyMac Loan Services, LLC et al.*,
Case No. 2:20-cv-05195-FMO-PDx ..........................................8, 9

*Kforce, Inc. v. Surrex Sols. Corp.*,
436 F.3d 981 (8th Cir. 2006) ......................................................22

*Loop Prod. v. Capital Connections LLC*,
797 F. Supp. 2d 338 (S.D.N.Y. 2011) ....................................23, 24

*Ltd. v. Jackel Int'l Ltd.*,
No. 3:18-CV-00534, 2020 WL 6878344 (W.D. La. Nov. 23, 2020) ...............3

iii

*Magee v. Nationstar Mortg., LLC,*
   No. 5:19-MC-017-H, 2020 WL 1188445 (N.D. Tex. Mar. 11,
   2020) ........................................................................................... 17, 18

*Newson v. Henry,*
   443 So.2d 817 (Miss. 1983) ................................................................ 17

*Nishimatsu Constr. Co., Ltd. v. Houston Nat. Bank,*
   515 F.2d 1200 (5th Cir. 1975) ............................................................ 13

*Riley v. F.A. Richard & Assocs., Inc.,*
   46 F. App'x 732 (5th Cir. 2002) .......................................................... 20

*Seacor Holdings, Inc. v. Commonwealth Ins. Co.,*
   635 F.3d 675 (5th Cir. 2011) .............................................................. 14

*Williams v. Allstate Ins. Co.,*
   No. 3:18CV665TSL-RHW, 2019 WL 1342830 (S.D. Miss. Mar.
   25, 2019) ............................................................................................ 14

**Statutes**

Federal Arbitration Act ............................................................................ 19

RICO ............................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P.
   8(b)(6) ........................................................................................... 23, 24
   11 ....................................................................................................... 17
   55(a) ................................................................................................... 14
   55(b)(2) .............................................................................................. 13
   56 ....................................................................................................... 13
   56(a) ................................................................................................... 14

Fed. R. Evidence
   201 ....................................................................................................... 3
   804(b) ................................................................................................... 4
   804(b)(1)(B) ........................................................................................ 4
   804(b)(3) .............................................................................................. 4

Sitcomm's website https://saalimited.com/index.html (last accessed
    January 21, 2021.) ........................................................................3

136044.01923/125680863v.3

## I.   INTRODUCTION

Plaintiff PennyMac Loan Services, LLC ("PennyMac") brings this motion (the "Motion") for default judgment or, in the alternative summary judgment, against defendants Innovated Holdings, Inc. dba Sitcomm Arbitration Association ("Sitcomm"), Mark Moffett ("Moffett"), Sandra Goulette ("Goulette"), Kirk Gibbs ("Gibbs"), Bret "Eeon" Jones aka EEON aka Brett Jones aka Brett Toriano Jonestheophilious aka Brett Randoff Toriano Keeffe Henry Kana-Shaphel Hithrappes Jones-Theophilus fka Keefe Branch ("EeoN"), and Rance Magee ("Magee") (collectively, "Defendants") on PennyMac's Third Cause of Action for defamation, Fourth Cause of Action for tortious interference with prospective economic advantage, Fifth Cause of Action for civil conspiracy, Sixth Cause of Action for violations of the Federal Civil Racketeer Influenced and Corrupt Organizations ("RICO") Act, and Seventh Cause of Action for conspiracy to commit RICO violations.[2]

Defendants have engaged in a fraudulent enterprise to extort money from PennyMac through a nationwide scheme wherein Defendants manipulate the judicial system in an attempt to confirm fabricated arbitration awards issued by Sitcomm, the brainchild of co-defendant and convicted sex offender EeoN.

By failing to respond to PennyMac's First Amended Complaint ("FAC"), Defendants have admitted to all allegations as stated in the FAC. The FAC is well-pled and sets forth with detail all elements of PennyMac's claims – specifically, that Defendants were knowing members of the Sitcomm scheme, targeted PennyMac, published false statements against PennyMac, and utilized the U.S. mail and wires to perpetrate their long running enterprise. Further, Defendants, with the

---

[2]   On January 25, 2021, PennyMac moved for judgment on its first and second causes of action against defendants Ronnie Kahapea ("Kahapea") and Mark Johnson ("Johnson") by separate motion. (Dkt Nos. 157-158 161, and 162.) No oppositions were filed and the motion has not been ruled on by the Court.

exception of Goulette, have failed to engage in any discovery. Through this failure, Defendants are deemed to have admitted PennyMac's Requests for Admission, which also establish that Defendants knowingly and maliciously engaged in an enterprise, with the intention of defrauding PennyMac, to fabricate arbitration awards, and instructed customers, such as Kahapea and Johnson, to seek to confirm those awards against PennyMac. Goulette, inasmuch as she has provided deposition testimony under penalty of perjury, has only served to bolster that these admissions are indisputable. Therefore, there is no triable issue of fact and judgment should be granted in PennyMac's favor.

Additionally, as discussed below, PennyMac submits proof of its damages, which amount to attorneys' fees incurred in defending against the three federal actions brought by defendants Kahapea and Johnson and the amounts owed on the Kahapea and Johnson loans. Defendants conspired against PennyMac and issued multi-million dollar arbitration awards spun out of whole cloth in favor of Kahapea and Johnson, which Kahapea and Johnson then sought to confirm in federal proceedings. Due to the egregious nature of Defendants' scheme, which has been condemned by this Court in the Kahapea MS Action and sister courts, PennyMac also seeks an award of punitive damages. Such an award is necessary to deter Defendants from continuing their enterprise and from further pursuing this scheme so that their abuse of the judicial process comes to an end.

## II.     ITEMIZATION OF UNDISPUTED FACTS

### A.     The Parties

1.     Defendant Sitcomm is an organization run by EeoN. Sitcomm is a trade name registered in the State of Wyoming to Innovated Holdings, Inc. ("Innovated"). (Ex. 21 to Motion.)[3]

---

[3]   Ex. 21 to the Motion is a copy of State of Wyoming Secretary of State website that reflects that Sitcomm is the trade name for Innovated. The "Fifth Circuit has determined that courts may take judicial notice of

EeoN is a Director of Sitcomm and markets himself as the founder of Sitcomm. (Ex. 22 to Motion[4]; *see also* Goulette Trans. 43:14-23.[5])

2.      While Sitcomm markets itself as an arbitration association for the "economically challenged" that has reduced arbitration fees by "75% of their competitors [sic]," which, it claims, "is a sure indicator that [it] cannot be bought by the person with the larger wallet," Sitcomm does not in fact conduct arbitrations, has no licensed attorneys on staff serving as "arbitrators," and instead provides boilerplate forms on its website that advise its customers how to unilaterally create new contracts with their creditors in order to fabricate arbitration provisions. (Sitcomm Website, Ex. 23 to Motion; Sitcomm Forms Ex. 24 to Motion; Goulette Trans. 106:4-6, 120:22-121:19, Ex. 19 to Motion.)[6]  Using these fabricated arbitration provisions, Sitcomm then gives notice of arbitration hearings for which it anticipates that respondents will not attend, for which it takes no evidence and there are no witnesses, and after which it issues million dollar arbitration awards. (Ex. 24 to Motion; Kahapea Notice, Ex. 5 to Motion; Johnson Notice, Ex. 11 to Motion.)

governmental websites."  *Henderson v. Jones Cty. Sch. Dist.,* No. 2:18-CV-188-KS-MTP, 2020 WL 5222376, at *6 (S.D. Miss. Sept. 1, 2020) *citing In re Katrina Canal Breaches,* 533 F. Supp. 2d 615, 632 (E.D. La. 2008) (citing numerous cases).

[4]      Ex. 22 to the Motion is a copy of Sitcomm's 2020 Profit Corporation Annual Report filed with the Wyoming Secretary of State on May 15, 2020.

[5]      "Goulette Transcript" refers to the Transcript of the Goulette's deposition, taken on December 8, 2020 and continued on January 20, 2021, in this matter and annexed as Ex. 19 to the Motion.

[6]      Ex. 23 to the Motion is a copy of Sitcomm's website https://saalimited.com/index.html (last accessed January 21, 2021.)  PennyMac requests that this Court take judicial notice of Sitcomm's website as a publicly available document and as a document referenced in the FAC (p. 2). *See* Federal Rule of Evidence 201.  PennyMac does not ask the Court to take judicial notice of Sitcomm's website to prove the truthfulness of the underlying facts.

Exhibit 24 to the Motion are Sample Forms retrieved from Sitcomm's website in July 2020.  The Court may take judicial notice of these documents for the non-hearsay purpose of establishing that Sitcomm posted forms on its publicly available website. *See Luv n' care, Ltd. v. Jackel Int'l Ltd.,* No. 3:18-CV-00534, 2020 WL 6878344, at *3 (W.D. La. Nov. 23, 2020) (taking judicial notice of websites and noting that "the Court is not taking notice of the truthfulness of the underlying facts. Instead, the Court is only taking notice that the identified documents exist and that they say what they say").

3.      Goulette is the President and Director of Sitcomm.  (Ex. 22 to Motion); (Goulette Transcript 42:16-43:15, Ex. 19 to Motion.)  She has been involved in Sitcomm since January 2019, began serving as an arbitrator for Sitcomm in the same month (despite that she has no training as a lawyer) and became a director of Sitcomm in or about July 2019.  (Goulette Trans. 42:9-15; 57:22-58:7; 104:9-106:17.)  As a director of Sitcom, Goulette was responsible for "handling any complaints."  (*Id.* 70:21-71:15.)

4.      Magee is a Director of Sitcomm and a purported arbitrator.  (Ex. 22 to Motion; Goulette Trans. 99:6-7, Ex. 19 to Motion.)

5.      Moffett is one of Sitcomm's purported arbitrators and issued the Kahapea Arbitration Award defined below.  (Moffett RFA[7] Nos. 1-2, Ex. 17 to Motion; Ex. 6 to the Motion.)  Moffett began to work for Sitcomm in or around July 2019.  (Moffett Testimony 57:9-16, Ex. 20 to Motion.)[8]

6.      Gibbs is one of Sitcomm's purported arbitrators and issued the Johnson Arbitration Award defined below.  (Gibbs RFA[9] Nos. 1-2, Ex. 18 to Motion; Ex. 12 to the Motion; Goulette Trans. 98:25-99:2, Ex. 19 to Motion.)

---

[7]      "Moffett RFA" refers to the Requests for Admission that PennyMac served on Moffett on October 8, 2020, which are deemed admitted because Moffett has not responded.  (Metral Decl. ¶¶ 8-12; Ex. 17 to Motion.)

[8]      "Moffett Testimony" refers to the sworn testimony given by Moffett in the hearing to affirm and vacate the arbitration award in *Brown v. Ally Financial Incorporated,* 2:18cv70 (S.D. Miss.) (the "Brown Hearing").  (Ex. 20 to Motion.)  The Court may consider Moffett's testimony in the Brown Hearing under Fed. R. Evid. 804(b) because, despite PennyMac's continuous efforts to secure his testimony and the Court's February 11, 2021 order requiring him to provide deposition dates, Moffett has not made himself available for a deposition.  Further, Moffett had an opportunity and similar motive to develop testimony in his favor by direct, cross-, or redirect examination.  *See* FRE 804(b)(1)(B).  Thus, Moffett's testimony during the Brown Hearing is admissible as a statement against interest.  *See* FRE 804(b)(3).

[9]      "Gibbs RFA" refers to the Requests for Admission that PennyMac served on Gibbs on October 8, 2020, which are deemed admitted because Gibbs has not responded.  (Metral Decl. ¶¶ 8-12; Ex. 18 to Motion.)

7.      EeoN is the founder of Sitcomm, appointed the arbitrators and directors of Sitcomm, and conducted training for Sitcomm arbitrators.  (Ex. 22 to Motion); (Goulette Trans. 101:19-22, 104:21-105:1, 109:7-110:1.)

**B.      The Sitcomm Scheme**

8.      The Sitcomm fraud scheme operates as follows:

a. An individual consumer, usually a debtor, under guidance and instruction from Sitcomm, transmits a sequence of formal-looking documents ("Transmission") over interstate U.S. mail, UPS or FedEx, which include various "conditional" acceptances and "tacit" agreements, demanding that a creditor "prove its claim" that the debtor owes it money. These documents contain several "provisions" that state that if the creditor refuses to respond, or does not do so in accordance with the terms set forth in the document, a new contract will be created – one which includes an arbitration provision, a forfeiture of certain rights and allows the fraudster to obtain a judgment (*see* Goulette, [10] Moffett, Gibbs RFA Nos. 3-4 RFA Nos. 3-4, Exs. 16-18 to Motion; Moffett Testimony 51:12-52:9, Ex. 20 to Motion; Kahapea Conditional Acceptance, Ex. 3 to Motion; Johnson Conditional Acceptance,[11] Ex. 10 to the Motion.)

b. When the creditor does not respond to the Transmission, the debtor submits the matter to Sitcomm and pays Sitcomm a fee.  Thereafter, Sitcomm or an employee, director or "arbitrator" working with Sitcomm issues a "Notice of Arbitration" and sends it to a creditor company over interstate U.S. mail, UPS, or FedEx. The Notice of Arbitration provides a date and time for an arbitration, but no location for the arbitration, no basis for the arbitration, no claims under which

---

[10]    "Goulette RFA" refers to the Requests for Admission that PennyMac served on Goulette on October 8, 2020, which are deemed admitted because Goulette has not responded.  (Metral Decl. ¶¶ 8-12; Ex. 16 to Motion.)

[11]    "Kahapea Conditional Acceptance," "Johnson Conditional Acceptance," "Kahapea Notice," "Johnson Notice," "Kahapea Arbitration Award," and "Johnson Arbitration Award" are defined on pages 8-10.

the arbitration is brought, and no other basic information that would allow the creditor to respond (*see* Goulette, Moffett, Gibbs RFA Nos. 5-8, Exs. 16-18 to Motion; Ex. 24 to Motion; Moffett Testimony 52:10-18, Sitcomm Forms, Ex. 20 to Motion; Kahapea Notice, Ex. 5 to Motion; Johnson Notice, Ex. 11 to Motion; Goulette Trans. 128:12-132:18, 148:18-149:18);

c. After the date listed in the Notice of Arbitration has passed, Sitcomm or an employee, director or "arbitrator" working with Sitcomm issues a "Final Arbitration Award" which falsely implies that the all parties to the arbitration participated and presented evidence at an arbitration hearing and the "arbitrator" issued a final multimillion dollar award to the debtor. No arbitration is actually held and not even the debtor or the "arbitrator" participate. (Goulette, Gibbs, Moffett RFA Nos. 9-13, Exs. 16-18 to Motion; Kahapea Arbitration Award, Ex. 6; Johnson Arbitration Award, Ex. 12; Kahapea and Johnson RFA Nos. 12 and 13, Exs. 14 and 15 to Motion[12]; Morton Decl.[13] ¶¶ 10, 18); and

d. The debtor, under guidance and instruction from Sitcomm, then files a petition to confirm the arbitration award in a United States District Court in an attempt to reduce the multimillion-dollar award to an enforceable judgment. (Goulette, Moffett, Gibbs RFA No. 16, Exs. 16-18 to Motion; decisions from legal actions filed by Kahapea and Johnson, Exs. 25-28 to Motion.)

C.     **The Kahapea Arbitration Award**

9.     Defendants utilized Kahapea as part of their fraudulent scheme. On or about April 1, 2016, Kahapea and his wife, Sunshine Mahana Hatsuko Kahapea, obtained a loan ("Kahapea Loan") in the amount of $277,634.00 from Plaza Home Mortgage, Inc. ("Plaza"). (Morton Decl.

---

[12]    The Kahapea and Johnson RFAs are Exhibits 14 and 15 to the Motion. (Metral Decl. ¶¶ 6-7, 11-12.)

[13]    "Morton Decl." refers to the Declaration of Johnny Morton submitted in support of this Motion.

¶ 6); (Kahapea RFA No. 9, Ex. 14 to Motion.) The Kahapea Loan was secured by the real property located at 11-2808 Kaleponi Drive, Volcano, HI 96785 (the "Kahapea Property"). (Morton Decl. ¶ 6.) PennyMac currently services the Kahapea Loan. (*Id.* ¶ 5.) Kahapea's loan is due for the May 1, 2019 payment. (*Id.*, ¶ 12.) The total payoff amount for the Kahapea loan through February 5, 2020 is $273,258.57. (*Id.* ¶ 13, Ex. 7 to Motion.)

10.     In March 2019, Kahapea sent PennyMac a "Conditional Acceptance for Value and Counter Offer" in which he states that he is conditionally accepting an unspecified offer under a list of terms and conditions. (*Id.* ¶ 8, Ex. 3 to Motion.) On or about April 22, 2019, Kahapea sent PennyMac a "Legal Notification – Notice of Fault Opportunity to Care" in which he states that PennyMac is "in fault of the agreement" and has consented to the "self-executing irrevocable durable power of attorney coupled with interest." (*Id.*, Ex. 4 to Motion.)

11.     Co-defendant Sitcomm, however, provided Kahapea with documents to fabricate a contract with PennyMac and supplied Kahapea with forms, contracts, and instructions for sending an arbitration agreement to PennyMac. (Kahapea RFA Nos. 3-4, Ex. 14 to Motion; *see also* Sitcomm Forms, Ex. 24 to Motion.) Kahapea, however, never received a signed arbitration agreement from PennyMac. (Kahapea RFA No. 7, Ex. 14 to Motion.) And, there is no enforceable arbitration contract between Kahapea and PennyMac. (Kahapea RFA No. 8, Ex. 14 to Motion); (Morton Decl. ¶ 7; *see also* Kahapea note and deed of trust, Exs. 1 and 2 to Motion.)

12.     Nonetheless, on or about June 2019, Kahapea instituted an illegitimate arbitration proceeding through Sitcomm against PennyMac and Plaza (the "Kahapea Arbitration"). (Morton Decl. ¶ 9; Kahapea RFA Nos. 1-2, Ex. 14 to Motion.) On or about June 3, 2019, PennyMac received a notice of arbitration hearing ("Kahapea Notice") from Sitcomm by Priority U.S. mail sent from Laurel, Mississippi. (Ex. 5 to Motion.) The Kahapea Notice states that if a response is

not received within ten days from receipt of the notice, the "Arbitrator will presume your acceptance and may proceed to review the supporting documentation electronically and issue a binding decision." (*Id.*)  The Kahapea Notice purports to set an arbitration hearing for June 10, 2019 at 12:00 p.m.  (*Id.*)  The Kahapea Notice does not provide a location for the arbitration hearing. (*Id.*)

13.     And, on or about June 10, 2019, co-defendants Moffett and Goulette issued an arbitration award (the "Kahapea Arbitration Award") at Laurel, Mississippi against PennyMac and Plaza which purports to award Kahapea $600,000 for "breach of the contractual agreement of the parties" and $1,200,000 "as punitive damages under the treble damages provision of the agreement for their admitted deceptive and fraudulent business practices inherent in the loan and foreclosure racket and their breach of terms agreed upon.." (Ex. 6 to Motion; Goulette Trans. 226:15-227:12.)

14.     The Kahapea Arbitration Award implied that PennyMac and Kahapea were present at the arbitration.  (*Id.*)  PennyMac, however, in no way agreed to, participated in, affirmed the truth or validity of, or stipulated to the Kahapea Arbitration.  (Morton Decl. ¶¶ 10-11.)  Further, Kahapea also was not present at the Kahapea Arbitration.  (Kahapea RFA Nos. 13-15, Ex. 14 to Motion.)

15.     On November 18, 2019, Kahapea initiated an action against PennyMac and Plaza in the United States District Court, District of New Mexico by filing a "Motion" to confirm the Kahapea Arbitration Award.  (*Kahapea v. PennyMac Loan Services, LLC* et al., Case No. 1:19-mc-00028-MV (the "Kahapea NM Action").)  The New Mexico court issued a final judgment dismissing the case without prejudice and awarded PennyMac sanctions (the "Kahapea NM Order").  (Ex. 26 to Motion.)  The New Mexico court also issued sanctions against Kahapea for

continuing to request that the court confirm the Kahapea Arbitration Award without first establishing jurisdiction (the "Kahapea NM Fee Order").  (Ex. 27 to Motion.)

16.     In June of 2020, Kahapea initiated another action against PennyMac and Plaza in the United States District Court, District of California – Central District by filing a Motion to confirm the same Kahapea Arbitration Award.  (*Kahapea v. PennyMac Loan Services, LLC et al.*, Case No. 2:20-cv-05195-FMO-PDx (the "Kahapea MS Action"); FAC ¶ 37.)  The California court granted PennyMac's motion to transfer venue to the Southern District of Mississippi and on January 5, 2021, the court dismissed Kahapea's case with prejudice (the "Kahapea MS Order"). (Ex. 25 to Motion.)

### D.     The Johnson Arbitration Award

17.     On or about June 12, 2015, Johnson obtained a loan ("Johnson Loan") in the amount of $272,000 from Alcova Mortgage, LLC.  The Johnson Loan was secured by the real property located at 451 May Lane, Louisa, VA 23093 (the "Virginia Property").  (Morton Decl. ¶ 14; Johnson RFA No. 9, Ex. 15 to Motion.)  PennyMac currently services the Johnson Loan. (Morton Decl. ¶ 5.)  Johnson's loan is due for the October 1, 2019 payment.  (*Id.* ¶ 20.)  The total payoff amount for the Johnson loan through February 19, 2021, is $ 278,192.42.  (*Id.* ¶ 21, Ex. 13 to the Motion.)

18.     On or about December 20, 2018, Johnson sent PennyMac a handwritten note, written on Johnson's monthly mortgage statement dated September 13, 2018, explaining that he is "changing the terms of this contract for legal reasons" and further explained that he "will address the particulars in detail at a later date."  (*Id.* ¶ 16.)  On or about July 5, 2019, Johnson sent PennyMac a "Conditional Acceptance for Value and Counter Offer" on a form substantially similar to the one used by Kahapea.  (*Id.* ¶ 16; Ex. 10 to Motion.)  The form also states that Johnson

is conditionally accepting an unspecified offer under a list of terms and conditions.  (Ex. 10 to Motion.)

19.     Sitcomm, however, provided Johnson with documents to fabricate a contract with PennyMac and supplied Kahapea with forms, contracts, and instructions for sending an arbitration agreement to PennyMac.  (Johnson RFA Nos. 3-4, Ex. 15 to Motion; *see* Sitcomm Forms, Ex. 24 to Motion.)  Johnson, moreover, never received a signed arbitration agreement from PennyMac.  (Johnson RFA No. 7, Ex. 15 to Motion.)  And, there is no enforceable arbitration contract between Johnson and PennyMac.  (Johnson RFA No. 8, Ex. 15 to Motion; Morton Decl. ¶ 15; *see also* Johnson note and deed of trust, Exs. 8 and 9 to Motion.)

20.     Nonetheless, in or about October 2019, Johnson instituted an illegitimate arbitration proceeding against PennyMac (the "Johnson Arbitration").  (Morton Decl. ¶ 17.)  On or about October 10, 2019, PennyMac received a notice of arbitration hearing ("Johnson Notice") from Sitcomm by Priority U.S. Mail mailed from Laurel, Mississippi.  (Ex. 11 to Motion.)  The Johnson Notice purports to set an arbitration hearing for October 21, 2019 and states that if a response is not received within ten days from receipt of the notice, the "Arbitrator will presume your acceptance and may proceed to review the supporting documentation electronically and issue a binding decision." (*Id.)*  The Johnson Notice does not provide a location for the arbitration hearing. (*Id.*)

21.     On October 21, 2019, Gibbs and Goulette issued an arbitration award (the "Johnson Arbitration Award") at Lilburn, Georgia against PennyMac which purports to award Johnson $2,250,000 "as stipulated according to the terms of the contractual agreement as agreed to by the parties."  (Ex. 12 to Motion; Goulette Trans. 218:15-222:15, Ex. 19.)  The Johnson Arbitration Award falsely implies that PennyMac and Johnson participated in the Johnson Arbitration.  (*Id.*)

PennyMac, however, in no way agreed to, participated in, affirmed the truth or validity of, or stipulated to the Johnson Arbitration. (Morton Decl. ¶ 19.) Further, Johnson also was not present at the Johnson Arbitration. (Johnson RFA Nos. 13-15, Ex. 15 to Motion.)

22.     On November 12, 2019, Johnson initiated an action against PennyMac in the United States District Court, Eastern District of Virginia by filing a "Petition" to confirm the Johnson Arbitration Award. (*Johnson v. PennyMac Loan Services, LLC*, Case No. 3:19-cv-00837-DJN (the "Johnson VA Action").) On September 8, 2020, the Virginia court issued an opinion dismissing the Johnson VA Action and granting PennyMac sanctions (the "Johnson VA Order"). (Ex. 28 to Motion.)

## III.    PROCEDURAL HISTORY

On December 11, 2019, PennyMac filed its original Complaint against Defendants, among others. (Dkt No. 1.) Sitcomm was served on December 23, 2019. (Dkt No. 18.) Goulette and Moffett were served on January 3, 2020. (Dkt Nos. 13 and 14.) Sitcomm, Goulette, and Moffett did not file timely responses to the original Complaint and, accordingly, the Clerk entered defaults against them on January 31, 2020.[14] (Dkt No. 23.) The Court vacated the default against Goulette, sua sponte, and deemed the document filed by Goulette at Dkt No. 35 to be her responsive pleading (the "Goulette Answer"). (Dkt No. 52.) Gibbs filed an answer to the original Complaint on or about February 3, 2020 (the "Gibbs Answer"). (Dkt No. 24.)

The original Complaint named the trade name Sitcomm as a defendant rather than Innovated. (Dkt No. 1.) Accordingly, on July 17, 2020, PennyMac moved to amend the complaint to add "Innovated Holdings, Inc. dba Sitcomm Arbitration Association" as a defendant as well as

---

[14]    The default against Goulette was vacated by the Court, *sua sponte*. (Dkt No. 52.)

EeoN and Magee, who were officers and directors of Sitcomm that were not listed in the original Complaint.  (Dkt No. 77.)

The Court granted PennyMac's motion and PennyMac filed the FAC on August 10, 2020 and served Goulette, Moffett, and Gibbs with copies of the FAC by first-class mail.  (Dkt No. 83; Metral Decl. ¶ 3.) [15]  PennyMac served Sitcomm, EeoN, and Magee personally with the FAC. (Dkt Nos. 86-88.)

None of the new Defendants timely responded to the FAC and none of the prior Defendants filed any new response to the FAC.  (Metral Decl. ¶ 5; Dkt Nos. 89-91.)  Accordingly, at PennyMac's request, the Clerk entered defaults against Sitcomm, EeoN, and Magee on October 9, 2020.  (Dkt No. 92.)  However, EeoN, Magee, Moffett, and Gibbs filed a "challenge to courts [sic] jurisdiction," Dkt No. 98, Affidavit in the Form of a Petition for Declaratory Judgment, Dkt No. 103, and Untimely Filing, Default Having Been Requested, Dkt No. 106.  PennyMac moved to dismiss these filings and by order, dated April 6, 2021, the Court struck these filings.  (Dkt No. 2-2.)

On October 8, 2020, PennyMac served Requests for Admission on Goulette, Johnson, Gibbs, Kahapea, and Johnson.  (Metral Decl. ¶¶ 6-10; Dkt No. 93.)  None of the defendants responded to the Requests for Admission or, with the exception of Goulette, appeared at their depositions.  (*Id.* ¶¶ 12-13.)

PennyMac filed Motions to Compel regarding the written discovery and depositions.  (Dkt Nos. 110, 113, 116, 119, 120, 125, 128, 131, 134, 142, and 147.)   On February 11, 2021, the Court issued an Order regarding the Motions to Compel and ordered Defendants to provide dates

---

[15]   "Metral Decl." refers to the Declaration of Nicole Metral submitted in support of this Motion.

they were available for deposition, provide their initial disclosures, provide written responses to the interrogatories and requests for production, to produce documents, and for the Defendants who failed to appear at their noticed depositions (except Goulette) to pay the cost of the videographer and court reporter.  (Dkt No. 171.)  None of the Defendants complied with the Court's Order and PennyMac filed Notices to the Court regarding their failures to comply.  (Dkt Nos. 182 and 188.)

Pursuant to this Court's Case Management Order, dated June 18, 2020, Dkt No. 57, the deadline to file dispositive motions was January 25, 2021 and PennyMac timely filed its motion. (Dkt Nos. 159-162.)  Prior to filing the motions, PennyMac requested that the discovery deadline and dispositive motion deadline be extended because of Defendants' failure to participate in discovery, which the Court granted on February 11, 2021 and that extended the dispositive motion deadline to March 29, 2021.  (Dkt No. 171.)  On March 5, 2021, PennyMac moved to correct its previously filed memorandum of law (Dkt No. 160) with updated citations to the Goulette Transcript and the excerpts of the Goulette Transcript (Dkt No. 159-19). (Dkt No. 186.)  On April 6, 2021, the Court granted PennyMac leave to re-file this Motion.  (Dkt No. 202.)

## IV.    ARGUMENT

### A.    Legal Standard

A "defaulting defendant admits the well-pleaded factual allegations therein and is barred from contesting on appeal the facts thus established." *Nishimatsu Constr. Co., Ltd. v. Houston Nat. Bank*, 515 F.2d 1200 (5th Cir.1975) (citation omitted).  Pursuant to Federal Rule of Civil Procedure 55(b)(2), a plaintiff may seek entry of default judgment for a defendant's failure to respond to the allegations of the complaint.  *Helena Chem. Co. v. Goodman*, No. 5:10-CV-121 DCB JMR, 2011 WL 1532200, at *1 (S.D. Miss. Apr. 21, 2011).

Under Federal Rule of Civil Procedure 56, "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary

judgment is sought." Fed. R. Civ. P. 56(a).  Summary judgment on a claim or part of a claim is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Seacor Holdings, Inc. v. Commonwealth Ins. Co.,* 635 F.3d 675, 680 (5th Cir. 2011) (quoting Rule 56(a)). "An issue as to a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also Williams v. Allstate Ins. Co.,* No. 3:18CV665TSL-RHW, 2019 WL 1342830, at *1 (S.D. Miss. Mar. 25, 2019).  "The nonmoving party must then go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Herrera v. Pearson*, No. 5:12CV123-DPJ-FKB, 2013 WL 2637723, at *2 (S.D. Miss. June 12, 2013) (internal quotations omitted).

### B.    PennyMac Has Taken the Defaults of Defendants

As an initial matter, the Clerk has already entered defaults against Sitcomm, EeoN, Moffett, and Magee, pursuant to Fed. R. Civ. P. 55(a).  (Dkt Nos. 23 and 92.)  Accordingly, PennyMac seeks the entry of default judgment against Sitcomm, EeoN, Moffett, and Magee on that the basis of the well-pled allegations of the FAC.

As for Gibbs, he has not answered or otherwise responded to the FAC,  Metral Decl. ¶ 5, and PennyMac has moved to dismiss each of his "challenge" related filings.  (Dkt Nos. 108-109.)  As for Goulette, she also has not answered or otherwise responded to the FAC.  Metral Decl. ¶ 5.

Accordingly, Goulette[16] and Gibbs[17] also are in default and, in any event, have not denied the allegations in the FAC.

Further, despite their defaults, Defendants have continued to file documents and appear at conferences.[18]   Accordingly, PennyMac sets forth below that summary judgment should be granted against all Defendants because there are no issues of fact.   PennyMac also provides its proof as to damages and requests that the Court issue a judgment for damages in the amounts set forth below.

### C.   PennyMac Should Be Granted Judgment on its Third Cause of Action for Libel and Defamation

PennyMac's Third Cause of Action alleges that Sitcomm, Moffett, Goulette, Gibbs, EeoN, and Magee knowingly published false and derogatory statements about PennyMac by way of the arbitration awards issued against PennyMac and that these actions were made maliciously, knowingly, willfully and in conscious disregard of PennyMac's rights, and were specifically

---

[16]   To the extent that the Court considers the Goulette Answer, which was in response to the original Complaint, that answer does not assert any viable defenses or raise an issue of fact sufficient to default PennyMac's Motion.  (Dkt No. 35.)  As best as can be interpreted, the defenses asserted in the Goulette Answer are arbitral immunity, lack of subject matter jurisdiction, and failure to state a claim.  (*Id.*)  This Court has already considered these defenses and found them lacking.  (Dkt No. 52.)  Further, the Court rejected Goulette's subject matter jurisdiction defense again when it denied Goulette's separately filed motion to dismiss, Dkt No. 58.  (Dkt No. 93.)  Finally, the Court has considered the affidavit filed by Goulette as Dkt No. 59, which was filed prior to the service of the FAC and that asserted that Goulette enjoyed arbitral immunity.  The Court held that the "the Affidavit shall not be construed as raising or containing any affirmative defense."  (Dkt No. 93.)

[17]   To the extent that the Court considers the Gibbs Answer, which was in response to the original Complaint, that answer also does not assert any viable defenses or raise an issue of fact sufficient to default PennyMac's Motion.  (Dkt No. 24.)  The Gibbs Answer, as best can be interpreted, appears also to assert arbitral immunity, lack of subject matter jurisdiction, and potentially failure to state a claim.  (*Id.*)  The Court has rejected Gibbs's separate motion to dismiss for lack of subject matter jurisdiction and failure to state a claim.  (Dkt No. 52.)  And, the Court has rejected the notion of arbitral immunity.  (Dkt No. 93.)

[18]   Despite entry of default against him, Moffett participated in the June 18, 2020 telephonic case management conference.  Moffett has not moved to vacate his default.

intended to – and did – cause damage to PennyMac's reputation.  (FAC ¶¶ 59-66.)  PennyMac seeks compensatory and punitive damages on this cause of action.  (*Id.* ¶ 66.)

The elements for defamation are: "(1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third person; (3) fault amounting to at least negligence on the part of the publisher; and (4) actionability irrespective of special harm or the existence of special harm." *Howell v. Operations Mgmt. Int'l, Inc.*, 161 F. Supp. 2d 713, 717 (N.D. Miss. 2001), aff'd, 77 F. App'x 248 (5th Cir. 2003).

Defendants are deemed to admit that they "have published false and derogatory factual statements about PennyMac by way of the arbitration awards." (Moffett, Goulette, Gibbs RFA No. 18, Exs. 16-18 to Motion.)  Likewise, they are deemed to admit that "the false and derogatory factual statements referenced in Admission #17 were made to third persons with the purpose of inflicting harm upon PennyMac." (*Id.* RFA No. 19.)  And, Defendants also admitted "that the false and derogatory factual statements referenced in Admission #17 were made maliciously, knowingly, willfully and in conscious disregard of PennyMac's rights, with specific intent to cause damage to PennyMac's reputation." (*Id.* RFA No. 20.)

Accordingly, Defendants have admitted all of the elements of PennyMac's defamation claim and judgment should be issued in PennyMac's favor.  *See e.g., Handshoe v. Torstar Corp.*, No. 1:15-CV-113-KS-RHW, 2015 WL 8056364, at *2 (S.D. Miss. Dec. 4, 2015); *Franklin v. Thompson*, 722 So.2d 688, 692 (Miss 1998).

PennyMac has suffered actual damages from Defendants publication of the false and derogatory statements contained in the Kahapea Arbitration Award and the Johnson Arbitration Award, as evidenced by the fact that Kahapea and Johnson have attempted to confirm arbitration awards and caused PennyMac to incur substantial attorneys' fees.  Indeed, PennyMac incurred

$89,294.88[19] in attorneys' fees and costs in the Johnson VA Action and $50,633.83 in the Kahapea NM Action, for a total of $139,928.71 in fees and costs (the "Attorneys' Fees"). (Exs. 28 and 29 to Motion.) The Attorneys' Fees have not been satisfied. (Morton Decl. ¶¶ 22-23.) Accordingly, PennyMac should be awarded compensatory damages on its Third Cause of Action against Defendants in the amount of the Attorneys' Fees.

Further, punitive damages should be assessed against each of the Defendants for their malicious and knowing disregard for PennyMac's rights. *See Beeding v. Hinds Cty., Miss.,* No. 3:10CV713-DPJ-FKB, 2013 WL 6061338, at *6 (S.D. Miss. Nov. 18, 2013) ("punitive damages can be awarded in cases of defamation") *citing Newson v. Henry,* 443 So.2d 817, 824 (Miss.1983). By advertising to borrowers through Sitcomm's website, providing form documents, and making PennyMac (and other loan servicers) a target for false arbitration awards, such as the Kahapea Arbitration Award and the Johnson Arbitration Award, Defendants have acted willfully and egregiously. (*See* Goulette Trans. 121:11-122:11, 126:2-127:2, Ex. 19 to Motion; Sitcomm Forms, Ex. 24 to Motion; Kahapea Arbitration Award, Ex. 6 to Motion, Johnson Arbitration Award, Ex. 12 to Motion.) Defendants have created a ripple effect by which more and more borrowers will seek false arbitration awards. And, a multitude of courts have recognized that Sitcomm arbitration awards are procured by "corrupt, fraudulent, and undue means." *Magee v. Nationstar Mortg., LLC,* No. 5:19-MC-017-H, 2020 WL 1188445, at *3 (N.D. Tex. Mar. 11, 2020) (vacating arbitration award and alerting U.S. Attorney's Office of Northern District of Texas "and the Attorney General Offices of Michigan, Mississippi, Hawaii, Virginia, Georgia, Wyoming, and

---

[19]   The Virginia court did not sanction Johnson in the entire amount of PennyMac's attorneys' fees and, instead sanctioned him $19,000 under Fed. R. Civ. P. 11. (Ex. 28 to the Motion.)

Nevada to Sitcomm's activities")[20]; *Brown v. Ally Fin. Inc.*, No. 2:18-CV-70-KS-MTP, 2019 WL 6718672, at *3, n1 (S.D. Miss. Dec. 10, 2019) (referring to Sitcomm arbitrations as "parts of a larger fraudulent enterprise").

This conduct should be penalized through the award of punitive damages in the amount of $1,000,000. *See Eichenseer v. Reserve Life Ins. Co.*, 934 F.2d 1377, 1383 (5th Cir. 1991) (affirming award of punitive damages and holding that "[o]ne of the fundamental purposes of punitive damages is to deter a wrongdoer from future misconduct"); *Ard v. Transcon. Gas Pipe Line Corp.*, 138 F.3d 596, 601 (5th Cir. 1998) ("under Mississippi law, punitive damages are 'fundamentally collective,' the purpose of which is 'to protect society by punishing and deterring wrongdoing.'")  This amount is not excessive in order to deter Defendants from seeking to enforce multimillion dollar "arbitration awards," such as the Kahapea Arbitration Award, which sought $600,000 in alleged contractual damages and $1.2 million in punitive damages from PennyMac and the Johnson Arbitration Award, which sought $2.25 million from PennyMac.  (Exs. 6 and 12 to Motion.)

### D.   PennyMac Should Be Granted Judgment on its Fourth Cause of Action for Tortious Interference with Prospective Economic Advantage

The Fourth Cause of Action seeks damages against Defendants for tortious interference with prospective economic advantage based on their communications with third parties, such as Kahapea and Johnson, and attempts to interfere with those business transactions.

"There are four elements necessary to prove a claim of tortious interference with a business relationship: (1) The acts were intentional and willful; (2) The acts were calculated to cause damage to the plaintiffs in their lawful business; (3) The acts were done with the unlawful purpose

---

[20]    The plaintiff in the *Magee v. Nationstar Mortg.* action is the same Rance Magee that is a defendant here.  Therefore, the court's reasoning in *Magee v. Nationstar Mortg* is directly on point as to why punitive damages should be issued as to Magee.

of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); (4) Actual damage and loss resulted." *Biglane v. Under The Hill Corp.*, 949 So. 2d 9, 15–16 (Miss. 2007)

Defendants cannot dispute that, through their involvement in Sitcomm, they provided third-parties with form arbitration documents and then encouraged those third-parties to pursue the false arbitration awards against PennyMac. (Goulette, Moffett, and Gibbs RFA Nos. 4, Exs. 16-18 to Motion (Defendants "cooperated with Sitcomm to supply consumers with forms, contracts, and instructions for sending arbitration agreements to the consumer's lenders and creditors") and No. 16 ("encourage[ed] consumers to enforce their arbitration agreements in a state or federal court under the Federal Arbitration Act")); (Goulette Trans. 32:5-19, Ex. 19 to Motion); (Moffett Testimony 64:17-65:5, Ex. 20 to Motion.) These intentional acts tortiously interfered with PennyMac's servicing of Kahapea's and Johnson's mortgage loans, which did not provide any arbitration options to Kahapea or Johnson. (Goulette, Moffett, and Gibbs RFA No. 21, Exs. 16-18 to Motion; Kahapea Note and DOT, Exs. 1 and 2 to Motion; Johnson Note and DOT, Exs. 8 and 9 to Motion.)

And, as a result of Defendants' tortious conduct, Kahapea and Johnson have disregarded their obligations under their loan documents and their loans are in default. (Morton Decl. ¶¶ 12 and 20.) Indeed, Kahapea's loan is due for the May 1, 2019 payment. (Morton Decl. ¶ 12.) The total payoff amount for the Kahapea loan through February 5, 2020 is $273,258.57. (*Id.* ¶ 13, Ex. 7 to Motion.) Johnson's loan is due for the October 1, 2019 payment. (*Id.* ¶ 20.) The total payoff amount for the Johnson loan through February 19, 2021, is $278,192.42. (*Id.* ¶ 21, Ex. 13 to the Motion.)

Accordingly, PennyMac should be granted judgment on its Fourth Cause of Action in the amount of unpaid principal, interest, and late fees due on each of the Kahapea and Johnson Loans. *See Riley v. F.A. Richard & Assocs., Inc.,* 46 F. App'x 732 (5th Cir. 2002) (plaintiff may be awarded actual damages caused by tortious interference with contract). This amount totals $551,450.99. (Morton Decl. ¶¶ 13, 21, Exs. 7, 13 to Motion.)[21]

### E.     PennyMac Should Be Granted Judgment on its Fifth Cause of Action for Civil Conspiracy

PennyMac seeks judgment against Defendants on its Fifth Cause of Action for Civil Conspiracy, which alleges that Defendants worked together to conspire to commit the wrongful acts alleged in Counts I through IV, all of which caused PennyMac to sustain damages. (FAC ¶¶ 70-73.)

Under Mississippi law, the elements of a civil conspiracy are: "(1) two or more persons or corporations; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result." *Gallagher Bassett Servs. v. Jeffcoat,* 887 So.2d 777, 786 (Miss.2004).

Defendants have admitted all of these elements of civil conspiracy by failing to respond to PennyMac's Requests for Admissions. Specifically, they have admitted that they "knowingly cooperated with Sitcomm, and the arbitrators hired by Sitcomm, including co-defendants Moffett, Gibbs, EeoN, and Magee, to commit the wrongful actions outlined in Claims I through V of PennyMac's Amended Complaint in this Litigation." (Moffett, Goulette, and Gibbs RFA No. 21, Exs. 16-18 to Motion.) They also admitted that the "arbitration decisions issued by you, with the

---

[21]   This amount consists of $273,258.57 in unpaid principal, late fees, and interest, through February 5, 2020, on the Kahapea Loan and $278,192.42 in unpaid principal, late fees, and interest, through February 19, 2021, on the Johnson Loan. (Morton Decl. ¶¶ 13, 20, Exs. 7 and 13 to Motion.)

knowing assistance of Sitcomm and the other co-defendants, were designed to defraud PennyMac and have money judgments filed against PennyMac." (*Id.* RFA No. 22.)

Further, Goulette testified that she first worked at Sitcomm as a secretary to arbitrators and scheduled hearings, handled accounting, sent out notices and contracts for all of the Sitcomm arbitrators. (Goulette Trans. 69:13-70:4, Ex. 19 to Motion.)  Then as a subsequently appointed arbitrator and a director, she continued her responsibilities as a secretary, and also handled complaints, conducted arbitrations (where respondents never appeared), issued arbitration awards (without taking evidence or witnesses) and worked with EeoN and Sitcomm arbitrators. (*Id.* at 70:11-71:15; 117:21-123:9, Ex. 19 to Motion.)  Because EeoN has been incarcerated, Goulette worked with him as the administrator of Sitcomm. (*Id.* 74:22-75:17.)

Moffett also testified that there was a "committee" that operates Sitcomm, which includes Goulette and that "committee" hired him to work at Sitcomm. (Moffett Testimony 57:18-58:14, Ex. 20 to Motion.)

As a result of Defendants' conspiracy to confirm and enforce fraudulent arbitration awards, such as the Kahapea Arbitration Award and the Johnson Arbitration Award, PennyMac has incurred significant attorneys' fees.  As discussed above, the Virginia court issued a judgment in the amount of $50,633.83 against Johnson and the New Mexico court issued a judgment in the amount of $19,000 against Kahapea. (Exs. 28 and 29 to Motion.)

The Attorneys' Fees were paid by PennyMac as a direct result of Defendants' conspiracy to obtain false arbitration awards and confirm those awards and, thus, are damages caused by Defendants' actions.  Accordingly, the Court should award judgment on PennyMac's Fifth Cause of Action against Defendants in the amount of the Attorneys' Fees. *See F.D.I.C. v. Barton,* 233 F.3d 859, 865 (5th Cir. 2000) (attorneys' fees incurred in collateral litigation were appropriate

form of damages); *Kforce, Inc. v. Surrex Sols. Corp.,* 436 F.3d 981, 986 (8th Cir. 2006) ("result of a wrong or breach of duty is to involve the wronged party in collateral litigation, reasonable attorney's fees ... incurred in protecting [one]self from the injurious consequence thereof are proper ... damages").

F.     **PennyMac Should Be Granted Judgment on its Sixth Cause for Federal Civil RICO**

The Sixth Cause of Action seeks judgment against Defendants for Civil RICO violations. (FAC ¶¶ 74-85.)

The elements of a Civil RICO claim are "1) a person who engages in 2) a pattern of racketeering activity, 3) connected to the acquisition, establishment, conduct, or control of an enterprise." *HansaWorld USA, Inc. v. Carpenter*, No. 2:15-CV-73-KS-JCG, 2015 WL 5794437, at *5 (S.D. Miss. Oct. 1, 2015), aff'd, 662 F. App'x 259 (5th Cir. 2016).

Defendants have admitted to every element necessary to establish a violation of Civil RICO. Namely, as discussed above in Section E, Defendants engaged in a conspiracy with the intent to commit the wrongful acts set forth in Counts I-IV of the FAC.  Further, Defendants admitted that they "U.S. Postal service to mail arbitration contracts, arbitrations notices, arbitration awards, and other documents related to your business operations." (Goulette, Moffett, Gibbs RFA No. 17, Exs. 16-18 to Motion); (Moffett Testimony 54:7-13; 60:1-21, Ex. 20 to Motion); (Ex. 24 to Motion) (documents mailed by Sitcomm via the U.S. Postal service); (Kahapea Notice, Ex. 6 to Motion); (Johnson Notice, Ex. 12 to Motion; (Goulette Trans. 185:16-24, 188:21-189:7, Ex. 19 to Motion). And, Goulette testified that Defendants utilized e-mail related to Sitcomm operations. (Goulette Trans. 117:21-122:11, Ex. 19 to Motion.)

Defendants' other admissions also establish that they acted with knowledge and specific intent with regard to their use of the U.S. Postal service and wires to carry out their scheme.

(Goulette, Moffett, Gibbs RFA No. 21, Exs. 16-18 to Motion; Goulette Trans. 185:16-24, 187:18-188:7, Ex. 19 to Motion.)  They also have admitted that the arbitration decisions "were designed to defraud PennyMac and have money judgments filed against PennyMac."  (Goulette, Moffett, Gibbs RFA No. 22, Exs. 16-18 to Motion.)  Further, it is clear that Defendants' RICO enterprise was carried out in multiple states since Kahapea and Johnson both sought to enforce their purported arbitration awards in states other than Mississippi.  (Johnson VA Order, Ex. 28 to Motion; Kahapea NM Order, Ex. 27 to Motion.)

Moreover, as discussed above, Defendants have failed to answer the FAC and the Clerk has entered a default against all Defendants, with the exception of Gibbs and Goulette (who failed to file any viable response to the FAC).  By virtue of their default, Defendants are deemed to admit the allegations of the FAC, including allegations regarding the continuity of conduct. Fed. R. Civ. P. 8(b)(6) ("An allegation--other than one relating to the amount of damages--is admitted if a responsive pleading is required and the allegation is not denied. If a responsive pleading is not required, an allegation is considered denied or avoided.").

In addition, Defendants' actions have caused injury to PennyMac through the payment of the Attorneys' Fees.  These fees would not have been incurred had Defendants not engaged in their enterprise to attempt to confirm false arbitration awards against PennyMac.

Thus, PennyMac should be granted judgment in its favor on its Sixth Cause of Action in the amount of three times the Attorneys' Fees and the attorneys' fees and costs incurred in this matter.[22] *See Loop Prod. v. Capital Connections LLC,* 797 F. Supp. 2d 338, 350 (S.D.N.Y. 2011) (because defendants were deemed to have admitted the allegations in the complaint by virtue of

---

[22]   If the Court grants PennyMac's Motion, PennyMac will submit a separate fee petition setting forth the attorneys' fees incurred in this action.

their default, plaintiff entitled to judgment on civil RICO claim); *Gov't Employees Ins. Co. v. Parkway Med. Care, P.C.*, No. 15CIV3670FBVMS, 2017 WL 1133282, at *10 (E.D.N.Y. Feb. 21, 2017), report and recommendation adopted, No. 15CV3670FBVMS, 2017 WL 1131901 (E.D.N.Y. Mar. 24, 2017) (entering default judgment on civil RICO claim based on well-pled allegations of complaint).

G.    **PennyMac Should Be Granted Judgment on its Seventh Cause of Action for Conspiracy to Violate Federal Civil RICO**

Judgment also should be granted in PennyMac's favor on the Seventh Cause of Action for conspiracy to violate Federal Civil RICO laws. (FAC ¶¶ 86-92.) In order to demonstrate a RICO conspiracy PennyMac must establish "1) that two or more people agreed to commit a substantive RICO offense and (2) that [Defendants] knew of and agreed to the overall objective of the RICO offense." *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 239 (5th Cir. 2010). "A conspirator must at least know of the conspiracy and 'adopt the goal of furthering or facilitating the criminal endeavor.'" *Id.*

As discussed above, Defendants engaged in a purposeful and knowing scheme to defraud PennyMac, which is a RICO offense. And, by failing to respond to PennyMac's Requests for Admissions and to the FAC, Defendants have admitted to committing the acts in furtherance of the conspiracy. (Goulette, Moffett, Gibbs RFA Nos. 13-17, 21, Exs. 16-18 to Motion.) Accordingly, judgment should be granted in favor of PennyMac. *See Loop*, 797 F. Supp. 2d at 350 ("Because of the Defaulting Defendants' knowing and willful failure to respond to the Complaint, each of them is deemed pursuant to Federal Rule of Civil Procedure 8(b)(6) to have admitted these allegations; in any event, none of them has offered any facts that could frame a genuine issue as to Plaintiff's allegations of fraudulent, conspiratorial activity accomplished through wire fraud. Plaintiff has thus met its burden of establishing its entitlement to relief as

against all of the Defaulting Defendants for the injury it allegedly sustained by reason of the RICO conspiracy.").

As a result of Defendants' conspiracy to commit RICO violations, PennyMac incurred the Attorneys' Fees and, thus, should be awarded damages in the amount of three times the Attorneys' Fees and the attorneys' fees and costs associated with this litigation.

## V.   CONCLUSION

For the foregoing reasons, PennyMac's Motion should be granted in its entirety and the Court should issue judgment in favor of PennyMac: (1) on the Third Cause of Action in the amount of $139,928.71 in compensatory damages representing the Attorneys' Fees and $1,000,000 in punitive damages; (2) on the Fourth Cause of Action in the amount of $551,450.99 consisting of $273,258.57 in unpaid principal, late fees, and interest through February 5, 2020, on the Kahapea Loan and $278,192.42 in unpaid principal, late fees, and interest through February 19, 2021, on the Johnson Loan[23]; (3) on the Fifth Cause of Action in the amount of $139,928.71 representing the Attorneys' Fees; and (4) on the Sixth and Seventh Causes of Action in the amount $419,786.13, representing a trebling of the Attorneys' Fees.  PennyMac also requests that if the Court grants its motion, the Court set a schedule for PennyMac to submit a fee application to recover the attorneys' fees and costs expended in this action.

---

[23]  PennyMac reserves the right to update and supplement its damages calculations with additional evidence regarding the amounts owed on the Kahapea and Johnson loans.

Dated:          April 7, 2021

Respectfully submitted,


/s/ Nicole Bartz Metral
Cheryl S. Chang (admitted *pro hac vice*)
chang@blankrome.com
Nicole Bartz Metral (admitted *pro hac vice*)
nbmetral@blankrome.com
Jessica A. McElroy (admitted *pro hac vice*)
jmcelroy@blankrome.com

BLANK ROME LLP
2029 Century Park East, 6th Floor
Los Angeles, California 90067-2907
Telephone: 424.239.3400
Facsimile:  424.239.3434

Harris F. Powers III
hpowers@upshawwilliams.com
Steven C. Cookston
scookston@upshawwilliams.com

Upshaw, Williams, Biggers & Beckham, LLP
309 Fulton Street
Post Office Drawer 8230
Greenwood, MS 38935-8230
Telephone: 662.455.1613
Facsimile: 662.453.9245

*Counsel for Plaintiff*

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is **BLANK ROME LLP**, 2029 Century Park East, 6th Floor, Los Angeles, California 90067.

On **April 7, 2021** I served the foregoing document(s):

**PLAINTIFF PENNYMAC LOAN SERVICES, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR DEFAULT JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY JUDGMENT ON PLAINTIFF'S THIRD, FOURTH, FIFTH, SIXTH, AND SEVENTH CAUSES OF ACTION**
on the interested parties in this action addressed and sent as follows:

### SEE ATTACHED SERVICE LIST

☒ **BY ENVELOPE:** by placing ☐ the original ☒ a true copy thereof enclosed in sealed envelope(s) addressed as indicated and delivering such envelope(s):

☒ **BY CERTIFIED MAIL:** I caused such envelope(s) to be deposited in the mail at Los Angeles, California with postage thereon fully prepaid to the office or home of the addressee(s) as indicated. I am "readily familiar" with this firm's practice of collection and processing documents for mailing. It is deposited with the U.S. Postal Service on that same day, with postage fully prepaid, in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

☒ **BY FEDEX:** I caused such envelope(s) to be deposited in a box or other facility regularly maintained by FedEx, an express service carrier, or delivered to a courier or driver authorized by said express service carrier to receive documents in an envelope designated by the said express service carrier, addressed as indicated, with delivery fees paid or provided for, to be transmitted by FedEx.

☒ **FEDERAL:** I declare that I am employed in the office of a member of the bar of this court at whose direction service was made.

Executed on **April 7, 2021**, at Los Angeles, California.

_____
Tina I. Melendez

**SERVICE LIST**

*Pennymac Loan Services, LLC v. Sitcomm Arbitration Association, et al.*;
Case No. 2:19-cv-00193-KS-MTP

**BY CERTIFIED MAIL:**

Ronnie Kahapea                    Defendant
P.O. Box 875
Volcano, HI 96785


**BY FEDEX:**

Mark Johnson
451 May Lane
Louisa, VA 23093                  Defendant

Kirk Gibbs                        Defendant
4115 Lawrenceville Rd.
PMB 8119
Lilburn, GA 30047

Sandra Goulette                   Defendant
3007 Crescent Hill Drive
Laurel, MS 39440

Mark Moffett                      Defendant
345 Coon Jeffcoat Road
Soso, MS 39480

Rance Magee                       Defendant
11294 Rose Road
Emmett, MI 48022

Innovated Holdings, Inc. dba      Defendant
Sitcomm Arbitration Association
C/O Registered Agents, Inc.
30 N. Gould Street, Suite R
Sheridan, WY 82801

Brett "Eeon" Jones                Defendant
304 S. Jones Blvd.
Unit Eeon-1967
Las Vegas, NV 89107